UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC.<br>    Plaintiff,<br>v.<br><br>HEALTHY SOLUTIONS, L.L.C., et al.,<br>    Defendants.<br><br>CAPPSEALS, INC.<br>    Plaintiff-in-Intervention,<br>v.<br><br>HEALTHY SOLUTIONS, L.L.C., d/b/a DIRECT BUSINESS CONCEPTS; ITV DIRECT, INC.; and DIRECT FULFILLMENT, LLC,<br>    Intervenor-Defendants.<br><br>HEALTHY SOLUTIONS, LLC dba DIRECT BUSINESS CONCEPTS, a California corporation; ALEJANDRO GUERRERO, an individual;<br>    Counterclaim Plaintiffs,<br>v.<br>ITV DIRECT, INC., a Massachusetts corporation; DIRECT FULFILLMENT LLC, a Massachusetts limited liability company, and DOES 1-10, inclusive,<br>    Counterclaim Defendants. | Civil Action No. 04-CV-10421-JLT<br><br>Judge Joseph L. Tauro<br><br>COUNTERCLAIM FOR:<br><br>1) BREACH OF CONTRACT;<br>2) ACCOUNT STATED;<br>3) OPEN ACCOUNT;<br>4) TRADEMARK INFRINGEMENT & UNFAIR COMPETITION - § 43(A) LANHAM ACT;<br>5) COMMON LAW UNFAIR COMPETITION – PASSING OFF;<br>6) UNFAIR COMPETITION - VIOLATION RIGHT TO PUBLICITY (M.G.L. c. 214, §3A; CAL. CIV. CODE §3344);<br>7) UNFAIR COMPETITION – VIOLATION OF COMMON LAW RIGHT TO PUBLICITY;<br>8) VIOLATION OF CALIFORNIA UNFAIR TRADE PRACTICES, CAL. BUS. & PROF. CODE §§ 17200 ET. SEQ.;<br>9) CONVERSION;<br>10) DECLARATORY JUDGMENT<br>11) UNFAIR BUSINESS ACTS UNDER SEC. 11 OF M.G.L. C. 98A<br>12) REACH AND APPLY<br><br><u>DEMAND FOR JURY TRIAL</u> |

DEFENDANTS and COUNTERCLAIM PLAINTIFFS HEALTHY SOLUTIONS, LLC dba DIRECT BUSINESS CONCEPTS; HEALTH SOLUTIONS, INC., a California corporation; ALEJANDRO GUERRERO, an individual (hereinafter collectively referred to as "HEALTHY SOLUTIONS" and/or "DEFENDANTS") allege as follows:

## JURISDICTION AND VENUE

1. DEFENDANT and COUNTERCLAIM PLAINTIFF HEALTHY SOLUTIONS, LLC is a business organized and existing under the laws of the State of California, with its principal offices in San Bernardino County, California.

2. DEFENDANT and COUNTERCLAIM PLAINTIFF HEALTH SOLUTIONS, INC. is a business organized and existing under the laws of the State of California, with its principal offices in San Bernardino County, California.

3. DEFENDANT and COUNTERCLAIM PLAINTIFF ALEJANDRO ("ALEX") GUERRERO, is an individual who resides in San Bernardino County, California.

4. PLAINTIFF and COUNTERCLAIM DEFENDANT ITV DIRECT, INC. ("ITV DIRECT") is, upon information and belief, incorporated in the Commonwealth of Massachusetts and its principal place of business is located in Beverly, Massachusetts.

5. COUNTERCLAIM DEFENDANT DIRECT FULFILLMENT LLC ("DIRECT FULFILLMENT") is, upon information and belief, incorporated in the Commonwealth of Massachusetts and having its principal place of business located in Beverly, Massachusetts. Upon information and belief, DIRECT FULFILLMENT is related to ITV DIRECT and serves in at least a warehousing capacity for ITV DIRECT and has acted in concert with ITV DIRECT, each at all relevant times acting for and as agent for the other.

6. DEFENDANTS do not know the true names and capacities, whether individual, corporate, partnership or otherwise of the Counterclaim Defendants named here as DOES 1-10, inclusive. DEFENDANTS therefore sue these Counterclaim Defendants by such fictitious names. DEFENDANTS will seek leave of Court to amend this Counterclaim to assert the DOES' true names and capacities when they have been ascertained.

7. This Court has jurisdiction over DEFENDANTS' federal claims under the laws of the United States, including Title 15 of the United States Code and more particularly, 15 U.S.C. 1051-1127, and on 28 U.S.C. §§ 1331, 1338 and 2201-02, and 15 U.S.C. § 1 et. seq. In addition and as a distinct basis for jurisdiction, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds

the sum of Seventy Five Thousand Dollars ($75,000.00), exclusive interest and costs. Venue is proper in this District under 28 U.S.C. §1391(a), (b) and (c).

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

#### The Product

8. DEFENDANTS formulated a nutritional supplement based on enhanced and organically grown vegetables, grains, grasses and herbs ("the Product") which DEFENDANTS named "SUPREME GREENS with MSM." The ingredients include *inter alia* alfalfa, parsley, carrot, shave grass, rosemary, beet, celery, dandelion, spearmint, corn silk, grapefruit, peppermint, white willow, broccoli, cabbage, bilberry, echinacea, okra, raspberry, sage, spinach, strawberry, watercress, wheat grass, wintergreen, ginger, barley, dog grass, wheat, garlic, kale, Pau d'arco, slippery elm, goldenseal, aloe and methylsulfonymethane, commonly known as MSM. Genuine "SUPREME GREENS" does not contain caffeine, artificial flavors, artificial colors, artificial fragrances, dairy products or glutens. The precise formula is a trade secret and proprietary. DEFENDANTS have never disclosed the Product formula to Counterclaim Defendants. On information and belief, the Product formula has never been disclosed to Counterclaim Defendants.

9. SUPREME GREENS was developed based on the academic studies and the nutritional and herbal therapy practice of DEFENDANT Alejandro ("Alex") Guerrero, O.M.D. DEFENDANT Guerrero has been trained in the use of traditional Chinese medicine and has a Master of Science in Oriental Medicine. His studies included extensive work in nutritional and herbal therapies based on traditional and ancient Chinese models and western science.

10. In working with clients for over ten years Dr. Guerrero has concluded that proper nutrition is essential to good health. Many of Dr. Guerrero's clients have sought his help for ailments as diverse as chronic pain from injury or illness, depression, arthritis, diabetes, as well as his help for terminal illness such as cancer. Good nutrition supports and enhances treatment under conventional western medicine and assists wellness goals such as reducing stress and weight loss. Dr. Guerrero, however, was frustrated by the nutritional supplements available in the market and sought to develop a healthy supplement that he knew to be safe and of the highest quality. The result was the proprietary formula for the SUPREME GREENS Product. SUPREME GREENS is available in powder form or in capsule form. A photograph is attached as Exhibit A.

11. In preparing to manufacture and distribute SUPREME GREENS, DEFENDANTS reviewed the processes and procedures of each bottling plant for safety and quality. DEFENDANTS expended significant amounts of money and time in establishing the quality of the SUPREME

GREENS Product. DEFENDANTS have also taken reasonable steps to protect the secret formula for the Product.

### The Mark "SUPREME GREENS"

12. DEFENDANTS chose the name "SUPREME GREENS," designed labels and worked to find manufacturers and distributors for the Product. DEFENDANTS first used the name "SUPREME GREENS" in its correspondence and conversations with Counterclaim Defendant ITV DIRECT, a potential distributor, as early as December 2002, when DEFENDANTS presented ITV DIRECT with a sample of the Product and sample labels. Exhibit B.

13. DEFENDANTS ordered and paid for Product bearing the SUPREME GREENS mark as early as May 2003. DEFENDANTS sold Product bearing the name "SUPREME GREENS" in interstate commerce at least as early as June 2003. DEFENDANTS have continuously and exclusively used the name "SUPREME GREENS" and offered its Product bearing the mark "SUPREME GREENS" and has expanded its business geographically throughout the United States and internationally, including through an Internet web site. DEFENDANTS have entered into distribution agreements and licenses for a variety of marketing channels including via the Internet and sales to a variety of retailers.

14. Today, the DEFENDANTS enjoy a reputation for excellence and quality under the SUPREME GREENS trade name and marks throughout the United States and internationally. DEFENDANTS have expended considerable sums in advertising the trade name and marks "SUPREME GREENS" and have exerted every effort to maintain the highest standards of quality for the Product. This has created invaluable goodwill under the trade name and marks among its purchasing public and SUPREME GREENS has become associated in the minds of purchasers with DEFENDANTS.

15. The quality and characteristics of the SUPREME GREENS Product is often advertised and displayed in connection with the likeness and name of Dr. Guerrero and it is closely associated with his name and likeness. Examples of the strong association between Plaintiff Guerrero's name and likeness are attached as Exhibit C.

16. Comments, complaints and praise relating to the SUPREME GREENS Product are directed to DEFENDANTS.

17. On information and belief, both Counterclaim Defendants have had actual notice and full knowledge of DEFENDANTS' rights in the "SUPREME GREENS" trade name and marks since the mark was presented to ITV DIRECT in December 2002.

18. The Product has been successful, with orders coming in from all of North America. DEFENDANTS have sold more than 475,000 bottles of "SUPREME GREENS" worldwide.

### The Agreement

19. On or about April 4, 2003, DEFENDANTS entered into a Distribution Agreement with Massachusetts's television infomercial producer, and Counterclaim Defendant ITV DIRECT, INC. ITV DIRECT was granted exclusive right to distribute the Product bearing the SUPREME GREENS mark through the "direct response telemarketing channel," in other words, infomercials. A copy of the Distributorship Agreement is attached as Exhibit D. The Agreement includes a limited license to use DEFENDANTS' marks and a license to sell, but not to manufacture, the Product.

20. Defendant GUERRERO was designated in the Distribution Agreement to be the spokesperson for SUPREME GREENS in infomercials scripted and produced by the ITV DIRECT. Editorial control was exclusively with ITV DIRECT. It is Dr. Guerrero's name, likeness, voice, credentials and experience that are featured in ITV DIRECT's infomercials for SUPREME GREENS. Indeed, Defendant GUERRERO has been contacted by members of the public who have seen SUPREME GREENS and identify it and associate it with him.

21. DEFENDANTS are informed and believe that ITV DIRECT completed production of its infomercial and began airing it on cable television in 30-minute spots no earlier than August or September of 2003. ITV DIRECT is also selling SUPREME GREENS via the Internet from a website leased from Plaintiffs.

22. Beginning with invoices dating from at least as early as December 2003, Counterclaim Defendants failed to pay for Product delivered to it, resulting in multiple direct and material violations of the Agreement. Total invoices for One Million Eight Hundred Twenty One Thousand Eight Hundred Sixty Four Dollars ($1,821,864.00) are now past due and owing. A demand by DEFENDANTS for cure has been made and ignored, with the time for cure pursuant to the terms of the Agreement having passed.

23. On or about March 2, 2004, Plaintiff and Counterclaim Defendant ITV DIRECT filed the underlying action against DEFENDANTS in the United States District Court for the District of Massachusetts improperly asserting *inter alia* ownership of the SUPREME GREENS mark, a clear repudiation and further violation of the Agreement and violation of the doctrine of licensee estoppel.

24. On or about March 24, 2004, an agent for ITV DIRECT informed DEFENDANTS that it had ordered approximately 50,000 bottles of alleged "product" from an unidentified manufacturer. ITV DIRECT admitted that the so-called "product" bears the SUPREME GREENS mark. Later, ITV

DIRECT stated again it had ordered 50,000 bottles of the non-genuine product. DEFENDANTS demanded to know the source of this phony product and its contents. However, ITV DIRECT refused to identify any manufacturer and refused to provide the formula being used. On another occasion in March of 2004, an agent for ITV DIRECT acknowledged that ITV DIRECT had placed orders for the SUPREME GREENS Product with manufacturers other than DEFENDANTS and expects to receive delivery thereof.

25. The Agreement between DEFENDANTS and Counterclaim Defendant ITV DIRECT and all appurtenant licenses and rights has expired, been repudiated and materially breached, and all licenses, consents and authority to use the mark "SUPREME GREENS" or the likeness, image, voice or name of Plaintiff Guerrero are invalid, expired and revoked.

FIRST CAUSE OF ACTION

BREACH OF CONTRACT

26. DEFENDANTS reallege and incorporate herein the allegations of paragraphs 1 through 25.

27. DEFENDANTS have performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement.

28. Counterclaim Defendants have breached the Agreement in failing to pay as agreed for products delivered to them. The outstanding and past due invoices are attached hereto as Exhibit E and by this reference incorporated herein.

29. Counterclaim Defendants have breached the Agreement in asserting ownership of the mark and name "SUPREME GREENS" during the term of the agreement in violation of its duties as a licensee.

30. Counterclaim Defendants have breached the Agreement in applying the "SUPREME GREENS" mark to non-genuine product in violation of its duties as a licensee.

31. DEFENDANTS have repeatedly demanded payment and full performance of the Agreement by Counterclaim Defendants; however, Counterclaim Defendants have refused to pay the sums past due and owing.

32. In addition, on information and belief, the Agreement has been repudiated in its entirety by Counterclaim Defendants' failure to pay, Counterclaim Defendants' ordering and production of phony and unauthorized Product, and ITV DIRECT's filing of a lawsuit claiming *inter alia* ownership of the mark.

33. As a result of Counterclaim Defendants' breach of the Agreement, DEFENDANTS have

been damaged in the sum to be proven at trial, but in no event less than One Million Eight Hundred Twenty One Thousand Eight Hundred Sixty Four Dollars ($1,821,864.00).

## SECOND CAUSE OF ACTION
## ACCOUNT STATED

34. DEFENDANTS reallege paragraphs 1 through 33 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

35. The invoices attached hereto as Exhibit E constitute an account stated for which payment is past due and owing, with interest accruing thereon from the date of each invoice at the highest rate allowed by law in an amount to be proven at trial but in any event not less than One Million Eight Hundred Twenty One Thousand Eight Hundred Sixty Four Dollars ($1,821,864.00).

## THIRD CAUSE OF ACTION
## OPEN ACCOUNT

36. DEFENDANTS reallege paragraphs 1 through 35 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

37. Counterclaim Defendants' failure to pay the sums due as herein alleged constitute an open book account for goods delivered, specifically an estimated 303,644 units of SUPREME GREENS Product, at the special instance and request of Counterclaim Defendants.

38. Although demand has been made, there is now due, owing and unpaid a sum in an amount to be proven at trial but in any event not less than One Million Eight Hundred Twenty One Thousand Eight Hundred Sixty Four Dollars ($1,821,864.00) with interest accruing thereon at the highest rate allowed by law.

## FOURTH CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF §43(A) THE LANHAM ACT

39. DEFENDANTS reallege paragraphs 1 through 38 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

40. Counterclaim Defendants, in violation of 15 U.S.C. § 1125 (a), Section 43(a) of the Lanham Act, have infringed the mark "SUPREME GREENS", owned by DEFENDANTS, by affixing it to non-genuine products of unknown origin and unknown quality. Counterclaim Defendants have also, without DEFENDANTS' authorization or license, advertised, promoted, offered for sale or sold products bearing the SUPREME GREENS mark and falsely represented DEFENDANTS as the source and origin of the Product and owners or authorized licensees of the

mark.

41. The conduct of Counterclaim Defendants constitutes false designation of origin, false or misleading description and false or misleading statements of fact, likely to cause confusion or mistake as to the origin, sponsorship and/or approval of goods being sold, including among other things confusion or mistake with genuine Product and the sponsorship and approval of Defendant GUERRERO.

42. Purchasers are likely to purchase Counterclaim Defendants' goods bearing the "SUPREME GREENS" mark believing they are DEFENDANTS', thereby resulting in a loss of sales and other damages to the DEFENDANTS, including but not limited to damage to goodwill, lost sales, the cost of a corrective advertising campaign, and/or a reasonable royalty, in an amount to be proven at trial and which, upon information and belief, will be in a sum of not less than Three Million Dollars ($3,000,000.00).

43. Upon information and belief, and based upon an estimate only since the sales and other records are solely within Counterclaim Defendants' possession, custody and control, as a direct and proximate result of Counterclaim Defendants' infringement, DEFENDANTS are entitled to Counterclaim Defendants' gross revenues from the infringement, interest, costs and consequential damages, except for any such legally allowable costs as Counterclaim Defendants are able to prove.

44. The goodwill of the DEFENDANTS' business under its SUPREME GREENS trade names and marks is of tremendous value, and the DEFENDANTS have suffered and will continue to suffer irreparable harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill, entitling DEFENDANTS to a preliminary and permanent injunction against such wrongful acts alleged herein. Counterclaim Defendants' infringement will continue unless enjoined by this Court.

45. Counterclaim Defendants' acts in its infringing use are likely to damage the reputation and business of DEFENDANTS, which damage cannot be compensated for by money damages and for which preliminary and permanent injunctive relieve is proper.

46. Counterclaim Defendants' acts are knowing and intentional and entitle DEFENDANTS to treble damages and the award of attorney fees.

FIFTH CAUSE OF ACTION

COMMON LAW UNFAIR COMPETITION –PASSING OFF

47. DEFENDANTS reallege paragraphs 1 through 46 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

48. DEFENDANTS own and enjoy common law rights in California and in other parts of the United States in and to the SUPREME GREENS trade name and marks for the nutritional supplements as set forth above, which are prior to and superior to any rights which Counterclaim Defendants may claim in and to the trademark in any form or style with respect to nutritional supplements.

49. Use by Counterclaim Defendants of the "SUPREME GREENS" trademark on non-genuine product is likely to cause confusion or mistake or deception of purchasers as to the source of origin of its goods or services or their sponsorship or affiliation with DEFENDANTS.

50. Purchasers are likely to purchase Counterclaim Defendants' goods bearing the "SUPREME GREENS" mark believing they are DEFENDANTS', thereby resulting in a loss of sales and other damages to the DEFENDANTS, including but not limited to damage to goodwill, lost sales, the cost of a corrective advertising campaign, and/or a reasonable royalty, in an amount to be proven at trial and which, upon information and belief, will be in a sum of not less than of Three Million Dollars ($3,000,000.00).

51. Upon information and belief, and based upon an estimate only since the sales and other records are solely within Counterclaim Defendants' possession, custody and control, as a direct and proximate result of Counterclaim Defendants' infringement, DEFENDANTS are entitled to Counterclaim Defendants' gross revenues from the infringement, interest, costs and consequential damages, except for any such legally allowable costs as Counterclaim Defendants are able to prove.

52. The DEFENDANTS have no control over the quality of goods sold by Counterclaim Defendants, and because of the confusion as to the source or sponsorship or affiliation engendered by the Counterclaim Defendants, the DEFENDANTS' valuable goodwill in respect to its aforesaid trade name and trademark is at the mercy of Counterclaim Defendants.

53. The goodwill of the DEFENDANTS' business under its SUPREME GREENS trade name and marks is of tremendous value, and the DEFENDANTS has suffered and will continue to suffer irreparable harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill, entitling DEFENDANTS to a preliminary and permanent injunction against such wrongful acts alleged herein. Counterclaim Defendants' infringement will continue unless enjoined by this Court.

54. Counterclaim Defendants' introduction of a non-genuine product under the "SUPREME GREENS" mark, after DEFENDANTS' prior use of the mark, was done intentionally and knowingly by Counterclaim Defendants, with full knowledge of DEFENDANTS' prior and superior rights, and

in callous and reckless disregard of those rights and the rights of the public, and was malicious, fraudulent or oppressive within the meaning of California's punitive damage statute, entitling DEFENDANTS to an appropriate amount of punitive damages to deter Counterclaim Defendants and others from following their example, under the claims in this Counterclaim on which punitive damages are allowable, in an amount to be proven at trial.

SIXTH CAUSE OF ACTION

UNFAIR COMPETITION – VIOLATION OF DEFENDANT GUERRERO'S STATUTORY RIGHT TO PUBLICITY (M.G.L. ch. 214, §3A, Cal. Civ. Code 3344)

55. DEFENDANTS reallege paragraphs 1 through 54 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

56. On information and belief, Counterclaim Defendants are knowingly and wrongfully using the name, voice and/or likeness of Defendant GUERRERO for purposes of advertising or selling, or soliciting purchases of products or merchandise without Defendant GUERRERO's consent or authority in violation of M.G.L. ch 214, §3A and Cal. Civ. Code § 3344, which conduct has and will continue to cause damage to Defendant GUERRERO in an amount to be proven at trial, but in any event not less than One Million Dollars ($1,000,000.00). Counterclaim Defendants' conduct entitles Defendant GUERRERO to recovery of and to any profits from the unauthorized use of his name, voice and/or likeness and treble damages.

57. On information and belief, Counterclaim Defendants' conduct is continuing and ongoing and will continue if not prohibited by this Court.

58. As a direct and proximate result of Counterclaim Defendants' wrongful conduct, DEFENDANTS will suffer and continue to suffer injury and it has no adequate remedy at law. DEFENDANTS will be irreparably harmed unless Counterclaim Defendants are immediately and permanently restrained from committing and continuing to commit such wrongful acts.

SEVENTH CAUSE OF ACTION

UNFAIR COMPETITION – VIOLATION OF DEFENDANT GUERRERO'S COMMON LAW RIGHT TO PUBLICITY

59. DEFENDANTS reallege paragraphs 1 through 58 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

60. On information and belief, Counterclaim Defendants are wrongfully using the name, voice and/or likeness of Defendant GUERRERO for purposes of commercial advantage without Defendant GUERRERO's consent, which conduct has and will continue to cause damage to

Defendant GUERRERO in an amount to be proven at trial, but in any event not less than One Million Dollars ($1,000,000.00).

61. Counterclaim Defendants' conduct entitles Defendant GUERRERO to recovery of and to any profits from the unauthorized use of his name, voice and/or likeness.

62. On information and belief, Counterclaim Defendants' conduct in continuing and ongoing and will continue if not prohibited by this court.

63. As a direct and proximate result of Counterclaim Defendants' wrongful conduct, DEFENDANTS will suffer and continue to suffer injury and it has no adequate remedy at law. DEFENDANTS will be irreparably harmed unless Counterclaim Defendants are immediately and permanently restrained from committing and continuing to commit such wrongful acts.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA UNFAIR TRADE PRACTICES,
## CAL. BUS. & PROF. CODE §§17200 et seq.

64. DEFENDANTS reallege paragraphs 1 through 63 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

65. Counterclaim Defendants' actions, as alleged above, constitute unfair competition under California Business & Professions Code Sections 17200 et seq. as they constitute unlawful, unfair and fraudulent acts or practices that are likely to deceive the public as to the origin of its nutritional supplement, and the relationship between DEFENDANTS and Counterclaim Defendants among other things.

66. As a direct and proximate result of Counterclaim Defendants' wrongful conduct, DEFENDANTS will suffer and continue to suffer injury and it has no adequate remedy at law. DEFENDANTS will be irreparably harmed unless Counterclaim Defendants are immediately and permanently restrained from committing and continuing to commit such wrongful acts.

67. As a direct and proximate result of Counterclaim Defendants' unfair competition, DEFENDANTS have been damaged as previously alleged, and is entitled to injunctive relief.

## NINTH CAUSE OF ACTION
## CONVERSION

68. DEFENDANTS reallege paragraphs 1 through 67 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

69. On information and belief, Counterclaim Defendants have been selling and are continuing to sell Product for which they have never paid and are converting the proceeds for unknown uses to

which DEFENDANTS are entitled as payment for the Product. Therefore DEFENDANTS are entitled to a full accounting of Product sold, and requests a constructive trust of said proceeds until such time as the Court determines all payments due.

## TENTH CAUSE OF ACTION
## FOR DECLARATORY RELIEF

70. DEFENDANTS reallege paragraphs 1 through 69 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

71. Counterclaim Defendants' assertions that DEFENDANTS are violating Counterclaim Defendants' legal rights and Counterclaim Defendants' claim to ownership of the trade name and mark "SUPREME GREENS" irreparably injure DEFENDANTS and adversely affects DEFENDANTS' business, and seeking monetary damages for same, and unless prevented by this Court, will continue to so affect DEFENDANTS' business, and the immense investment it has made in its trade name and mark "SUPREME GREENS".

72. Defendant Health Solutions, Inc. is entitled to a Declaration that it owns the name and mark "SUPREME GREENS" and that Counterclaim Defendants' rights as licensee and/or distributor are terminated.

## ELEVENTH CAUSE OF ACTION
## UNLAWFUL BUSINESS PRACTICES- M.G.L. c. 93A.

73. DEFENDANTS reallege paragraphs 1 through 72 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

74. Counterclaim Defendants have admitted that DEFENDANTS have received millions of dollars in product orders from ITV DIRECT, an experienced infomercial producer and promoter of other's products, and that such orders were not paid for because of ITV DIRECT's expenses associated with promotion and marketing of the SUPREME GREENS Product. By its terms, the Distribution Agreement holds ITV DIRECT responsible for all such expenses. ¶¶ 9, 16 Agreement. In order to coerce a reduction or elimination of its obligation to pay DEFENDANTS for Product ordered, ITV DIRECT concocted and implemented a scheme to represent that it, and not DEFENDANTS, is the rightful owner of the SUPREME GREENS mark and Product.

75. Counterclaim Defendants also had a scheme to purchase Product from DEFENDANTS at about $6 per bottle, sell it at about $30 per bottle, obtain enormous profits therefrom, and strong-arm DEFENDANTS through litigation into accepting only more promises to pay or a great reduction in what is due. ITV DIRECT has stated that the SUPREME GREENS' infomercials were greatly

successful. On information and belief, ITV DIRECT has sold SUPREME GREENS at a rate of 20,000 to 30,000 bottles per week.

76. On or about March 11, 2004, Mr. Robert Maihos, an officer, director, and the largest shareholder of ITV DIRECT, stated to Mr. Greg Geremesz, Chief Executive Officer of Defendant Healthy Solutions, LLC, dba Direct Business Concepts ("DBC") that "no money will be paid to DBC until the current contract is renegotiated and DBC gives up rights to the SUPREME GREENS product." ITV DIRECT is thus withholding monies due and owing DEFENDANTS under the Agreement as improper leverage and pressure in attempts to unfairly force upon DEFENDANTS more advantageous terms including mere promises to pay after written assignment of the SUPREME GREENS mark and proprietary Product formula. At least a portion of ITV DIRECT's scheme is evidenced in the proposed terms of a settlement communication dated March 30, 2004, from an agent of ITV DIRECT, Todd Stanwood, to Defendant GUERRERO. Exhibit F, Exhibit G.

77. ITV DIRECT's failure and refusal to pay sums due and owing under the Agreement for the reasons set forth above, constitutes unfair competition and unfair or deceptive business act in the conduct of trade, such conduct being proscribed by Section 2 of M.G.L. c. 93A.

78. The conduct of ITV DIRECT was willful and/or knowing violations of Section 2 of M.G.L. c. 93A warranting enhanced damages and attorneys' fees.

79. As a result of ITV DIRECT's conduct, DEFENDANTS have been damaged in an amount of at least $1,821,864.00, plus interest thereon at the statutory rate, costs, disbursements, and attorneys' fees.

## TWELFTH CAUSE OF ACTION
## REACH AND APPLY

80. DEFENDANTS reallege paragraphs 1 through 79 above, inclusive, of this Counterclaim and incorporate them herein by this reference as if set forth in full below.

81. ITV DIRECT owes DEFENDANTS at least $1,821,864.00 for purchase of SUPREME GREENS Product pursuant to the Agreement and is now past due.

82. On information and belief, Counterclaim Defendants have no other assets known to DEFENDANTS to satisfy the future judgment DEFENDANTS seek to obtain against Counterclaim Defendants. ITV DIRECT has expressed that sales of the SUPREME GREENS Product "did not generate sufficient income for ITV DIRECT to recoup its tremendous investment in marketing the product on a national level." ¶ 21, Complaint. Mr. Robert Maihos, officer, director and principal shareholder of ITV DIRECT, has stated as recently as April 9, 2004, that ITV DIRECT intends to

sell off its existing inventory of SUPREME GREENS Product through reorders and its auto-ship program." Decl. Maihos, ¶ 14, April 9, 2004.

83. DEFENDANTS are aware of no other available remedy at law to enforce judgment in its favor.

84. Pursuant to M.G.L. c. 214, Section 3(6), DEFENDANTS request this Court to (1) immediately place an equitable lien and/or constructive trust to be paid into court or to be held by ITV DIRECT all monies, funds, and other consideration received by Counterclaim Defendants in connection with sales of SUPREME GREENS Product and with sales of any other products bearing a mark confusingly similar to SUPREME GREENS, (2) immediately enjoin Counterclaim Defendants from selling, transferring, assigning, or otherwise disposing of, alienating or hypothecating, its interest in any and all such monies, funds, and consideration and to pay into the court or hold such monies, funds, and consideration in escrow pending the determination of its rightful owner, (3) determine the amount owed to DEFENDANTS by Counterclaim Defendants, (4) render judgment in favor of DEFENDANTS and against Counterclaim Defendants in at least the amount determined to be owed, and (5) reach and apply the amount owed to satisfy the judgment.

## PRAYER FOR RELIEF

WHEREFORE, DEFENDANTS/Counterclaim Plaintiffs HEALTHY SOLUTIONS, LLC, HEALTH SOLUTIONS, INC. and ALEJANDRO GUERRERO pray for judgment against PLAINTIFF/Counterclaim Defendant ITV DIRECT, INC. and Counterclaim Defendant DIRECT FULFILLMENT LLC jointly and severally as follows:

## MONETARY RELIEF

1. For compensatory damages for breaches of contract to Defendant HEALTHY SOLUTIONS, LLC, in a sum to be proven at trial, but in any event not less than One Million Eight Twenty One Thousand Eight Hundred Sixty Four Dollars ($1,821,864.00);

2. For pre-judgment and post judgment interest at the highest rate allowed by law;

3. That Counterclaim Defendants be required to pay DEFENDANTS' actual damages, Counterclaim Defendants' profits, damage to DEFENDANTS' goodwill, lost sales, the costs of a corrective advertising campaign, and/or a reasonable royalty, suffered by DEFENDANTS, together with interest and costs including prejudgment interest to the fullest extent allowed by law;

4. DEFENDANTS be awarded treble damages to the fullest extent allowed by the law;

5. Defendant GUERRERO be awarded statutory damages for violation of his statutory and/or common law publicity rights in an amount to be proven at trial, but in any event, no less than

One Million Dollars ($1,000,000.00);

    6.    DEFENDANTS be awarded punitive damages, in an amount to be proven at trial; and

    7.    DEFENDANTS be awarded its attorney's fees and litigation costs.

## DECLARATORY RELIEF

A Declaratory Judgment that:

    a.    Defendant HEALTH SOLUTIONS, INC. is the owner of the trade name and mark "SUPREME GREENS" throughout the United States;

    b.    DEFENDANTS have the right to use, in connection with nutritional supplements and herbs, the SUPREME GREENS trade name and marks free from interference by Counterclaim Defendants, its officers, agents, servants, employees, attorneys, privies, representatives, successors, and assigns, and any and all persons acting by, through, or under authority from Counterclaim Defendants, either separately or jointly, in the United States or in any foreign country where the activities of DEFENDANTS or Counterclaim Defendants have a substantial effect on interstate or foreign commerce;

    c.    DEFENDANTS' trade name and mark "SUPREME GREENS" does not violate Counterclaim Defendants' rights under the trademark laws of the United States, the State of California, or any other laws; and

    d.    Counterclaim Defendants have no right, title or interest in DEFENDANTS' trade name or mark "SUPREME GREENS" as a licensee, distributor, or otherwise.

## INJUNCTIVE RELIEF

Counterclaim Defendants, its officers, agents, servants, employees, attorneys, privies, representatives, successors, and assigns, and any and all persons in active concert or participation with or under authority from Counterclaim Defendants, either separately or jointly, be temporarily, preliminarily and permanently enjoined and restrained from:

    a.    Interfering with, or threatening to interfere with, use of the SUPREME GREENS trade name and marks of DEFENDANTS, its related companies, successors or assigns, in connection with its or their business;

    b.    Instituting or prosecuting any suit or other proceeding placing in issue the right of DEFENDANTS or said related companies, successors, or assigns, to register or use the SUPREME GREENS trade name and marks in connection with nutritional supplements and herbs;

    c.    That a preliminary injunction and a permanent injunction issue restraining Counterclaim Defendants, its agents, servants, employees, successors and assigns and all others in

concert and in privity with them from infringement of DEFENDANTS' SUPREME GREENS trade name and marks, from injuring DEFENDANTS' business reputation, from unfairly competing with DEFENDANTS, and from engaging in unfair and deceptive trade practices;

  d. That a permanent injunction issue restraining Counterclaim Defendants its agents, servants, employees, successors and assigns and all others in concert and in privity with them from using any confusingly similar mark in any way in SUPREME GREENS' trade areas;

  e. That a permanent injunction issue compelling Counterclaim Defendants its agents, servants, employees, successors and assigns and all others in concert and in privity with them to destroy all non-genuine product bearing the SUPREME GREENS mark or any similar marks or dress, and/or the image, name or likeness of Defendant ALEJANDRO ("Alex") GUERRERO and to account therefore to this Court;

  f. That a permanent injunction issue restraining Counterclaim Defendants its agents, servants, employees, successors and assigns and all others in concert and in privity with them from using the likeness, name, voice or image of Defendant ALEJANDRO GUERRERO for any commercial purpose;

  g. That Counterclaim Defendants is compelled to account for all sales of goods bearing a SUPREME GREENS mark, including the identity of the sources of all goods known by Counterclaim Defendants to bear or having borne a SUPREME GREENS mark and to whom the goods were sold;

  h. That a constructive trust and/or equitable lien be imposed on all proceeds derived from Counterclaim Defendants' use of the SUPREME GREENS mark;

  i. That Counterclaim Defendants be compelled to account for all sales of non-genuine SUPREME GREENS product and a constructive trust and/or equitable lien be imposed on the proceeds of said sales.

  j. That this Court (1) immediately place an equitable lien and/or constructive trust to be paid into court or to be held by ITV DIRECT all monies, funds, and other consideration received by Counterclaim Defendants in connection with sales of SUPREME GREENS Product and with sales of any other products bearing a mark confusingly similar to SUPREME GREENS, (2) immediately enjoin Counterclaim Defendants from selling, transferring, assigning, or otherwise disposing of, alienating or hypothecating, its interest in any and all such monies, funds, and consideration and to pay into the court or hold such monies, funds, and consideration in escrow pending the determination of its rightful owner, (3) determine the amount owed to DEFENDANTS by Counterclaim

Defendants, (4) render judgment in favor of DEFENDANTS and against Counterclaim Defendants in at least the amount determined to be owed, and (5) reach and apply the amount owed to satisfy the judgment.

OTHER RELIEF

That DEFENDANTS have all such other further and general relief as may be just and proper under the circumstances.

Respectfully submitted,
HEALTHY SOLUTIONS, LLC,
HEALTH SOLUTIONS, INC.,
ALEJANDRO GUERRERO
By its attorneys,

Becky V. Christensen, Esq. CA State Bar # 147013
Craig McLaughlin, Esq. CA State Bar #182876
LEVIN & O'CONNOR
384 Forest Avenue, Suite 13
Laguna Beach, CA  92651
(949) 497-7676

Dustin F. Hecker
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts  02199-8004

DATED: April 19, 2004    (617) 973-6100

**I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY HAND/MAIL ON**

*In accordance with separately-filed Certificate of Service, copies of these pleadings were filed on the counsel of record by California counsel for the defendants by Federal Express on 4-19-04.*

## DEMAND FOR JURY TRIAL

DEFENDANTS hereby demand trial by jury of all issues so triable in this action pursuant to Federal Rules of Civil Procedure 38(a).

Respectfully submitted,
HEALTHY SOLUTIONS, LLC,
HEALTH SOLUTIONS, INC.,
ALEJANDRO GUERRERO
By its attorneys,

*/s/ Becky V. Christensen*

Becky V. Christensen, Esq. CA State Bar # 147013
Craig McLaughlin, Esq. CA State Bar #182876
LEVIN & O'CONNOR
384 Forest Avenue, Suite 13
Laguna Beach, CA 92651
(949) 497-7676

Dustin F. Hecker
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-8004
(617) 973-6100

DATED: April 19, 2004

---

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY HAND/MAIL ON

*In accordance with separately-filed Certificate of Service, copies of these pleadings were filed on the counsel of record by California counsel for the defendants by Federal Express on 4-19-04.*