UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC. | Case No. 04-CV-10421-JLT |
| Plaintiff, | Judge Joseph L. Tauro |
| v. | MEMORANDUM OF POINTS AND |
| HEALTHY SOLUTIONS, L.L.C., et al., | AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING |
| Defendants. | ORDER [HEARING REQUESTED] |
| CAPPSEALS, INC. | |
| Plaintiff-in-Intervention, | |
| v. | |
| HEALTHY SOLUTIONS, L.L.C., d/b/a DIRECT BUSINESS CONCEPTS; ITV DIRECT, INC.; and DIRECT FULFILLMENT, LLC, | |
| Intervenor-Defendants. | |
| RELATED CASES | |

# TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................1

II.     BACKGROUND AND FACTS OF THE CASE...............................................3

III.    THE COURT HAS THE POWER TO GRANT A TEMPORARY
        RESTRAINING ORDER AND PRELIMINARY INJUNCTION.........................4

IV.     DEFENDANTS' REPUTATION AND ABILITY TO DO BUSINESS
        IN THE FUTURE WILL BE HARMED IF PLAINTIFF IS ALLOWED
        TO CONTINUE INFRINGING ITS MARK, VIOLATING ITS
        PUBLICITY RIGHTS AND SELLING PRODUCT IT HAS NOT PAID
        FOR..................................................................................................6

V.      DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS OF
        THEIR FEDERAL AND STATE UNFAIR COMPETITION AND
        INFRINGEMENT CLAIMS......................................................................8

        A.      Defendants Owns the Mark "SUPREME GREENS"...........................8

        B.      Plaintiff Has Infringed the Mark "SUPREME GREENS"
                In Violation of the Lanham Act And Common Law............................10

        C.      Plaintiff is Wrongfully Using the Likeness of Dr. Guerrero
                In Violation of M.G.L. ch. 214, §3A, Cal.Civ.Code §3344 and
                Cal. Bus. & Prof. Code §17200.......................................................13

VI.     THE PROCEEDS OF PLAINTIFF'S SALES OF SUPREME GREES
        SHOULD BE PUT IN ESCROW PENDING RESOLUTION OF
        THIS CASE......................................................................................14

VII.    A RESTRAINING ORDER DOES LITTLE OR NO HARM TO
        PLAINTIFF ACCORDING TO PLAINTIFF'S SWORN DECLARATIONS
        AND BOND SHOULD BE WAIVED.......................................................15

VIII.   CONCLUSION.................................................................................15

MEMOP&A TRO

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                          **Pages**

*Bell v. Streetwise Records, Ltd.,*
  640 F. Supp. 575, 580 (Dist. Mass. 1983),………………………………………………9,10,11

*Bertolli USA, Inc. v. Filippo BertolliFine Foods Ltd.,*
  662 F. supp. 203, 205-206 (S.D.N.Y. 1987)……………………………………………………...9,12

*Burger King Corp. v. Mason,*
  710 F.2d 1480, 1492-93 (11th Cir. 1983). ………………………………………………11,12

*Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.,*
  799 F.2d 6, 12-13 (1st Cir. 1986)……………………………………………………………5 ,7

*Cleary v. News Corp.,*
  30 F.3d 1255, 1262-63 (9th Cir. 1994)……………………………………………………11

*Coca-Cola Company v. Koke Company of America,*
  254 U.S. 143, 146 (1920)……………………………………………………………………12

*Committee on Children's Television, Inc. v. General Foods Corp.,*
  35 Cal.3d 197, 210 (1983)……………………………………………………………………14

*Costandi v. AAMCO Automatic Transmissions, Inc.,*
  456 F. 2d 941, 941-943 (9th Cir. 1972). ……………………………………………………11

*In re Polar Music International AB,*
  714 F.2d 1567 (Fed.Cir.1983)………………………………………………………………..9

*Int'l Kenel Club, Inc. v. Mighty Star, Inc.,*
  846 F.2d 1079, 6 U.S.P.Q.2d 1977, 1987 (7th Cir. 1988)…………………………………………7

*Lone Star Steakhouse & Saloon v. Alpha of Virginia,*
  43 F.3d 922, 33 U.S.P.Q.2d 1481, 1494 (4th Cir. 1995)……………………………………7

*Mobil Oil Corp. v. Auto-Brite,*
  615 F. Supp. 628 (D. Mass. 1984)……………………………………………………………10

*Pic Design Corp. v. Bearings Specialty Co.,*
  436 F.2d 804, 809 (1st Cir.1971)……………………………………………………………5

*Sengoku Works, Ltd. v. RMC International, LTD.,*
  96 F.3d 1217, 1220 (9th Cir. 1996)…………………………………………………………9

*Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.,*
  982 F.2d 633, 640 (1st Cir. 1992). …………………………………………………………6

*Transgo Inc. v. Ajac Transmission Parts Corp.,*
  768 F.2d 1001, 1016 (9th Cir. 1985) *cert. denied,* 474 U.S. 1059 (1986). ………………………12

*Tropiano v. Atlantic Monthly*
(1980) 379 Mass. 745, 750-751...................................................................................12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
 505 U.S. 763, 23 U.S.P.Q.2d 1081, 1083 (1992)........................................................11

*U.S. Structures, Inc. v. J.P. Structures, Inc.*,
130 F.3d 1185, 1190 (6th Cir. 1997). .....................................................................11

*Vision Sports, Inc. v. Melville Corp.*,
888 F.2d 609, 612, n.3 (9th Cir. 1989)......................................................................7.

## STATUTES

11 U.S.C. § 1060....................................................................................................10

15 U.S.C. §1116.....................................................................................................5

15 U.S.C. §1125(a)............................................................................................2,5,13

Cal. Civ. Code §3344........................................................................................2.5,13

Cal. Bus. & Prof. Code §17200............................................................................13,14

Cal. Bus. & Prof. Code §17203...............................................................................14

Federal Rules of Civil Procedures

65(c)....................................................................................15

Lanham Act §43(1).................................................................................................5

M.G.L. ch. 214 §3A...........................................................................................13,14

M.G.L. ch. 214 §1B...............................................................................................2

## TREATISE

*1 Gilson on Trademark Protection and Practice §2.16* ...............................................14

*2 McCarthy on Trademarks and Unfair Competition* §16.03 (3d ed.1996)..........................9

*5 McCarthy on Trademarks and Unfair Competition*, § 28:15 (4th ed. 1999)...................2,13

*5 McCarthy on Trademarks and Unfair Competition*, § 30:2, p. 30-7 (4th ed. 1999)..............7

MEMOP&A TRO

## I.    **INTRODUCTION**

When a former, non-exclusive distributor and licensee of a proprietary nutritional supplement, "SUPREME GREENS," claims to have produced infringing, non-genuine, unauthorized product bearing the trademark of the manufacturer promoted with the likeness of an individual without consent in violation of federal and state law, a temporary restraining order should be issued to prevent non-genuine goods of unknown origin, ingredients and quality from being sold to the public and to prevent confusion as to the source and nature of a nutritional supplement intended for human consumption.

Plaintiff should also be restrained from airing any infomercial or otherwise using the name, image, voice or likeness of Defendant Guerrero since such use is a violation of state and common law publicity rights causing severe injury to Defendant Guerrero's publicity rights.

Defendants seek a Temporary Restraining Order, an Order Expediting Discovery And Order To Show Cause re: Preliminary Injunction against its former distributor and trademark licensee, Plaintitiff ITV DIRECT INC.:

1.    Prohibiting the sale, distribution or transfer of non-genuine goods bearing the mark "SUPREME GREENS" or marks confusingly similar thereto;

2.    Prohibiting the broadcast or transmission of radio or television infomercials or other advertising or promotions, including websites, or explicitly or implicitly associating any of its products with Defendant GUERRERO, including specifically, but not limited to the use of Defendant Guerrero's name, voice or image;

3.    Maintaining all proceeds from the sale of Supreme Greens in a discrete escrow account pending resolution of this case;

4.    Expedited discovery ordering Plaintiff to identify, under oath, the source, quantities and location of all products bearing the mark "SUPREME GREENS" under its possession or control or on order from any source or entity;

5.    Expedited discovery ordering Plaintiff to identify, under oath, the source, quantities and

1

location of all labels bearing the mark "SUPREME GREENS" under its possession or control or on order from any source or entity;

6. Setting a hearing on whether the Temporary Restraining Order should become a Preliminary Injunction pending resolution of this case.

Defendants and the public are threatened with immediate and irreparable harm in that the Plaintiff ITV DIRECT claimed in late March 2004 to have produced a nutritional supplement of unknown quality falsely bearing the mark "SUPREME GREENS." (Dec. Guerrero pp.3-4). While Plaintiff ITV DIRECT now denies its intent and asserts that no such product exists, it admits that ingredients of unidentified nature and source have in fact been ordered on its behalf for delivery to an unknown supplier in preparation to produce a nutritional supplement, claiming now that the Defendants' mark will not be used. (Dec. Maihos, ¶9).

Plaintiff ITV DIRECT's new statements of intent are directly contrary to the written statements of its authorized agent made contemporaneous to the events and prior to lawyerly crafting of sworn statements. (Dec. Guerrero, ¶8, Exh. 7, ¶8, Exh. 8,¶8). In March, 2004, prior to Defendants' application for restraining orders, Plaintiff's authorized agents acknowledged in writing its intent to produce and sell non-genuine product. (Dec. Guerrero ¶8, Exh. 7, ¶8, Exh. 8,¶8; Dec. Stanwood, ¶¶ 2-3; Dec. Maihos ¶10-Stanwood "third party intermediary.").

Without expedited discovery, there is no way to verify, confirm or contradict Plaintiff's newly found statement of intent not to produce or sell non-genuine goods.

Independently of the mark "SUPREME GREENS", Plaintiff ITV DIRECT has infringed and violated Defendant Guerrero's rights to publicity. This is in itself a violation of the Lanham Act, 15 U.S.C. 1125(a) as a false endorsement of a product. *McCarthy on Trademarks, §28:15 (4th Ed. 1999).* It also violates Defendant Guerrero's rights under Massachusetts law, M.G.L. c. 214, §1B, California law, Cal. Civ. Code §3344, and the common law in airing infomercials with Guerrero's name, image, voice and likeness without his consent for commercial purposes falsely implying association and endorsement.

2

## II.    BACKGROUND AND FACTS OF THE CASE

Plaintiff ITV DIRECT is a television advertisement producer. Defendants are the owner of the mark "SUPREME GREENS" (Health Solutions, Inc.), the owner of the trade secret formula marketed under the "SUPREME GREENS" mark (Alejandro "Alex" Guerrero"), and the marketing company for "SUPREME GREENS" (Healthy Solutions LLC).

In April 2004, Plaintiff and defendant Healthy Solutions LLC entered into a written and fully executed Distribution Agreement. (Dec. Geremesz,¶ 9, Exh. 3). Plaintiff  became Defendants' distributor, promoter and licensee of  Supreme Greens. Plaintiff acknowledged in this written contract that "SUPREME GREENS" is not its mark. (Exh. 3, p. 1, ¶2). The contract states: "Manufacturer [Healthy Solutions] produces and sells a vegetable/grass/algae food supplement known as "Supreme Greens with MSM" (the "Product") as formulated . . ." (Exh. 3, p. 1, ¶2). The contract also allowed Plaintiff to use defendant Guerrero as its spokesperson. (Exh. 3, p.6, ¶16(b)4.)

At first the parties performed under the Agreement, but it was not long until Plaintiff launched a series of material breaches and repudiations of the contract.  It stopped paying for the Product beginning with December 2003 invoice. (Dec. Geremesz, ¶20, Exh 9). Defendants are now owed $1,821,864 for 303,446 bottles of Supreme Greens for which Plaintiff has not paid a dime.

Plaintiff has wrongfully claimed ownership of the mark, going so far as to send cease and desist letters to Defendants' distributor. (Dec. Geremesz ¶ 22, Exh. 6).

After breaching the Agreement, Plaintiff, through its agents, claimed in late March 2004 to have ordered unauthorized product. (Dec. Guerrero pp.3-4; Dec. Geremesz ¶¶ 20, 22).   These statements were reiterated in writing. (Dec. Guerrero ¶ 8, Exh. 7, 8).

Plaintiff ITV DIRECT tried to negotiate the purchase of the mark "SUPREME GREENS" in late 2003 and again in Febrary 2004, but when that failed, it said it would produce unauthorized product and contacted defendants' distributor asserting mark ownership in direct violation of  the parties written agreement. (Dec. Geremesz ¶22; Dec. Guerrero ¶¶ 8-10).

Plaintiff filed this action on March 2, 2004. (Geremesz ¶22).1

In spite of being on notice that the mark belongs to defendants, in spite of defendants demands for payment, and in spite of defendants objection to Plaintiff's airing of the infomercials featuring Defendant Guerrero, Plaintiff has continued to wrongfully promote and infringe SUPREME GREENS mark and to use and infringe Guerrero's image, name and voice.2

The ingredients, proportions and source of this non-genuine product Defendant has marked or intended to mark with the "SUPREME GREENS" name is unknown to Defendants. Whether the unauthorized product has the proper ingredients, in the proper proportions, and is manufactured under safe conditions is unknown.

In this case, genuine "SUPREME GREENS" is a nutritional supplement developed by Defendant Alex Guerrero, from grasses, herbs and vegetables based on his decade long practice in herbal and nutritional therapy.(Dec. Guerrero pp. 2-3). Dr. Guerrero's trade secret and proprietary formula for SUPREME GREENS has been sold under the trade name and mark "SUPREME GREENS," by Defendants and many others, and formerly, by license, by the Plaintiff. (Dec. Geremesz ¶¶ 9, 15 ,17). Genuine "SUPREME GREENS" is a proprietary formula ("the Product"), which is safe for human consumption. It specifically does not include irritants and allergens such as caffeine, dairy products, and artificial flavors, artificial colors, and artificial fragrances. "SUPREME GREENS" safety and quality is associated with its owner, Defendant Alex Guerrero personally. (Dec. Guerrero p. 3, Dec. Geremesz ¶¶ 17, 23).

Plaintiff's claimed production of non-genuine product falsely bearing the SUPREME GREENS mark will cause irreparable harm in that is a potential threat to the public safety and health and a threat to the genuine "SUPREME GREENS" and a threat to Defendant Guerrero's reputation. (Dec. Guerrero p. 3-4).

---

1 Defendants agreed to accept service, but the complete Complaint herein was not sent to defendants until April 12, 2004.

2 Defendants commenced suit in the U.S. District Court for the Central District of California, Eastern Division on March 3, 2004, served Plaintiff ITV Direct on March 11, 2004 and applied for a Temporary Restraining Order on April 7, 2004. That action has been transferred to this Court by order dated April 15, 2004.

Plaintiff ITV DIRECT's unauthorized use of the mark "SUPREME GREENS" on non-genuine goods is also federal unfair competition as an infringement of an unregistered mark and as a false designation of origin under the Lanham Act §43(1), 15 U.S.C. 1125(a) which is likely to cause confusion in the market. In addition, such use is common law unfair competition.

In addition, all authority or right of Plaintiff to use the image, voice or likeness of Defendant Guerrero ceased upon its breach of its written agreement with defendant Healthy Solutions LLC, upon its repudiation of the written agreement by filing this action and falsely claiming ownership of the mark, and/or the expiration of the agreement. Their persistent use of defendant's Guerrero is a clear violation of defendant Guerrero's publicity rights. 15 U.S.C. 1125(a); M.G.L. ch.214, § 1B; Cal. Civ. Code §3344.

Each of these claims independently entitle DEFENDANTS to a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue.

## III.    THE COURT HAS THE POWER TO GRANT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This Court has the power to grant Defendants' requested injunctive relief under the Lanham Federal Trademark Act, 15 U.S.C. § 1116, the common law and Rule 65 of the Federal Rules of Civil Procedure.

To obtain a temporary or preliminary injunction in the First Circuit, the defendants must satisfy four criteria in order to be entitled to a preliminary injunction: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12-13 (1st Cir. 1986). The Court has broad discretion to grant preliminary injunctive relief. *Pic Design Corp. v. Bearings Specialty Co.*, 436 F.2d 804, 809 (1st Cir.1971).

5

## IV.   <u>DEFENDANTS'REPUTATION AND ABILITY TO DO BUSINESS IN THE FUTURE WILL BE HARMED IF PLAINTIFF IS ALLOWED TO CONTINUE INFRINGING ITS MARK, VIOLATING ITS PUBLICITY RIGHTS AND SELLING PRODUCT IT HAS NOT PAID FOR.</u>

Nearly one quarter million bottles of genuine SUPREME GREENS has already been sold to the public in either the form of capsules or powder.(Dec. Geremesz ¶ 16).  The genuine Product already has an excellent reputation for quality. (Dec. Geremesz ¶  16; Dec. Guerrero p. 3). It is so strongly associated with defendant Guerrero personally that strangers stop him on the street to comment on Supreme Greens. (Dec. Geremesz ¶ 17; Dec. Guerrero p. 3). Genuine "SUPREME GREENS" is in part specifically marketed to buyers who want to avoid caffeine and artificial ingredients. (Dec. Geremesz ¶ 23). Indeed, some purchasers rely on the fact that allergens are NOT present. Consumers could be harmed or injured if they mistakenly consume a product to which they are allergic.  The ingredients and process for manufacturing the unauthorized ITV DIRECT product is entirely unknown. (Dec. Geremesz ¶13, 23-25). The manufacturer  of the fake product is entirely unknown. (Dec. Guerrero pp. 3-4).  Defendant is a TV commercial producer, not chemists or doctors. Whether the fake product is mixed in a clean environment, whether bottles are properly sealed, whether contamination of supplies by chemicals, germs or animals are avoided is all entirely unknown. <u>Id</u>.

Defendants have no control over the nature or quality of the product Plaintiff said it intends to sell. Any failure, neglect or harm by Plaintiff in providing such  product will reflect adversely on Defendants as the believed source or origin. Any such adverse results will hamper Defendants' efforts to protect its reputation for a quality product, will damage its sales and will impair the value of expenditures in promoting its mark. (Dec. Howell ¶ 7; Dec. Geremesz ¶¶ 13, 16-17). Such harm is truly irreparable. <u>See</u> <u>Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.</u>, 982 F.2d 633, 640 (1st Cir. 1992).  Indeed, "[i]rreparable harm flows from an unlawful trademark infringement as a matter

6

of law." Id.

Even if a potentially dangerous product were not at issue, injunction is appropriate in trademark and unfair competition matters because the trademark owner is damaged by an infringing use which place[s] the owner's reputation beyond its control, though no loss in business is shown.'" 5 *McCarthy on Trademarks and Unfair Competition*, § 30:2, p. 30-7 (4th ed. 1999) (*citing Int'l Kenel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 6 U.S.P.Q.2d 1977, 1987 (7th Cir. 1988), and *Lone Star Steakhouse & Saloon v. Alpha of Virginia*, 43 F.3d 922, 33 U.S.P.Q.2d 1481, 1494 (4th Cir. 1995)). The First Circuit is in agreement. *Camel Hair And Cashmere Institute of America Inc. v. Associated Dry Goods Corp.*, 799 F.2d, 6, 14-15 (1st Cir. 1986). Because it is difficult to calculate, damage to the goodwill of a business has been found to constitute irreparable injury in this Circuit. Id.

In this case, by Plaintiff's admission, non-genuine product bearing the "SUPREME GREENS" mark, entirely outside the mark owner's control, will be or has been launched into the market. (Dec. Guerrero, ¶8, Exh. 7, 8).   Such conduct should be restrained.

Indeed, in trademark infringement cases, once a party establishes a likelihood of confusion, the Courts ordinarily presume there will be irreparable harm. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612, n.3 (9th Cir. 1989). In this case, the genuine and non-genuine products both bear the "SUPREME GREENS" mark so that confusion is inevitable.

Furthermore, in this case, control over the quality and content of SUPREME GREENS is at the core of Defendants' business success and all future business. (Dec. Howell ¶ 7; Dec. Geremesz ¶¶ 13, 16-17).

By contrast, the most that Plaintiff ITV DIRECT risks is lost profits, profits which today Plaintiff, by its own admissions have not made or are very low. (Dec. Geremesz ¶ 20).

Indeed, by granting such an order, Plaintiff admits that no harm will occur to it.  The principle shareholder of ITV, Mr. Robert Maihos, has stated that ITV "has cancelled all future media purchases in connection with the Supreme Greens infomercial" and "will be completely replaced within 7 to 10 days." Dec. Maihos, ¶ 14 (April 9, 2004). Plaintiff  also intends to stop

MEMOP&A TRO

selling Supreme Greens after existing inventory is sold. (Dec. Maihos ¶ 14). There is no significant harm to Plaintiff's future to do business with other products in contrast to the severe damage to reputation at stake for Defendants.

Significantly, there is no statement as to the amount of that inventory that Plaintiff holds. Plaintiff is selling goods for which it has not paid and Temporary Restraining Order and a Preliminary Injunction should prevent Plaintiff from carrying out its stated plan and disbursing funds from the sale of Supreme Greens.

## V.    DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FEDERAL AND STATE UNFAIR COMPETITION AND INFRINGEMENT CLAIMS.

A central issue in this action is the ownership of the name and mark "SUPREME GREENS." In fact, one of Plaintiff ITV DIRECT's multiple acts of breach and repudiation of the Distributorship Agreement, was its improper claim to ownership of the mark by sending an unauthorized cease and desist letter to Defendants' authorized distributor (Dec. Geremesz ¶ 22).

As a matter of law, however, Defendants clearly own the mark "Supreme Greens" as its first user, the source of genuine and proprietary Product, the holder of all distribution, manufacturing and promotional rights, and the entity responsible for quality control. The parties Distribution Agreement of April 2003, explicitly cites defendants as owners of the mark. (Exh. 3, p.1, ¶ 2). It explicitly retains distribution rights for marketing channels other than informercials to defendants. (Exh. 3, p. 7, ¶ 16(h)).

### A.    Defendants Own the Mark "SUPREME GREENS".

In this case, there is no question that Defendants were using the mark as early as December 2002 and January 2003 (Dec. Geremesz ¶¶ 6-7; Dec. Howell ¶¶ 2-4). There is no question that Defendants were the first to apply the mark to goods sold in interstate commerce. (Dec. Howell ¶ 4).

MEMOP&A TRO

ITV DIRECT had no genuine product to sell until at least August 2003. (Dec. Geremesz ¶¶ 10-12). Indeed, it has been held that providing a sample to Plaintiff and printing labels which Defendants did in December 20003, is sufficient to satisfy the use in commerce test to establish mark rights. *Bertolli USA, Inc. v. Filippo BertolliFine Foods Ltd.,* 662 F. supp. 203, 205-206 (S.D.N.Y. 1987).

In fact, the Distribution Agreement itself is an agreement to license the mark to Plaintiff for the direct response telemarketing channel, even though the license is not exclusive to other channels such as the Internet, retailers or direct sales to consumers. (Dec. Geremesz, ¶9, Exh. 3, p. 1, ¶ 2, p.7, ¶ 16(f),(g), (h)). There is no question that Plaintiff considered Defendants to be the owners, given that Plaintiff asked to buy the mark in late 2003 and again in 2004. (Dec. Geremesz ¶ 22).

Plaintiff ITV DIRECT is not the first licensee/distributor who tried to claim ownership of a manufacturer's mark. Where prior ownership by one of several claimants cannot be established, the legal task is to determine which party "controls or determines the nature and quality of the goods which have been marketed under the mark in question." *Bell v. Streetwise Records, Ltd.,* 640 F. Supp. 575, 580 (Dist. Mass. 1983), *citing In re Polar Music International AB,* 714 F.2d 1567 (Fed.Cir.1983); *generally* J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* §16.03 (3d ed.1996).

When disputes arise between a manufacturer and distributor, Courts will look first to any agreement; but in the absence of an agreement between the parties, the manufacturer is presumed to own the trademark." *Sengoku Works, Ltd. v. RMC International, LTD.,* 96 F.3d 1217, 1220 (9th Cir. 1996)(emphasis added). Here, the Distribution Agreement specifically identifies Defendants as the owner of the "SUPREME GREENS" mark, and licenses it to Plaintiff. (Dec. Geremesz ¶9, Exh. 3, p. 1, ¶ 2, p.7, ¶ 16(f),(g), (h)).

Quality is the responsibility of Defendants. (Dec. Geremesz ¶¶ 13, 19). Complaints are fielded by Defendants. (Dec. Geremesz ¶¶ 17-19). Indeed, the primary method of quality control is the trade secret formula and control over the manufacturing process. (Dec. Geremesz¶¶ 13, 19).

There is also no question that the mark and Product are associated with "SUPREME GREENS" and Defendant Guerrero as the source and origin of the Product. That Plaintiff ITV

9

DIRECT is a distributor with strong sales, in fact the majority of Plaintiff's sales, is legally irrelevant. _Bell v. Streetwise Records, Ltd.,_ 640 F. Supp. 575, 581 (D. Mass. 1986). The manufacturer and mark owner obviously seeks extensive sales from its distributors, in this case Defendant ITV Direct, and as a practical matter, the mark owners and other distributors support such sales in any way it can. The volume of sales is not determinative. _Id._ Where, as is the case here, the owner used the mark prior to the distributor and is associated with the mark, the ownership is with the manufacturer. _See Bell v. Streetwise Records, Ltd.,_ 640 F. Supp. at 581-582. Use by a former licensee is infringement. _Mobil Oil Corp. v. Auto-Brite,_ 615 F. Supp. 628 (D. Mass. 1984).

In _Sengoku Works, Ltd. v. RMC International, LTD.,_ 96 F.3d at 1220, an exclusive distributor for kerosene heaters claimed the ownership of the mark "Keroheat." Even though only the American distributor's name appeared on the product and packaging and the American distributor handled customer complaints, the Ninth Circuit ruled the mark belonged to the Korean manufacturer who first used the mark, who exercised control over product quality and who first affixed the mark to kerosene heaters. _Id._ Such is this case here.

Plaintiff claims that, "Healthy Solutions [sic] had filed a competing trademark application for federal registration of the name "Supreme Greens with MSM" in violation of the parties' agreement that the trademark would belong to ITV." (Dec. Maihos ¶5). No such agreement is contained in the written Distribution Agreement. While Defendants absolutely deny that they agreed the mark would belong to ITV Direct (Dec. Guerrero ¶ 11), it is required by law that trademark assignments for marks under application for federal registration like "SUPREME GREENS", unlike licenses, must be in writing. 11 U.S.C. § 1060.

**B.    Plaintiff Has Infringed the Mark "SUPREME GREENS" in Violation of the Lanham Act And Common Law.**

The United States Supreme Court has said:    "The Lanham Act was intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in . . . commerce against unfair competition. Section 43(a) prohibits a broader range of practices than does

MEMOP&A TRO

§ 32, which applies to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles of qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 23 U.S.P.Q.2d 1081, 1083 (1992). (Citations and internal quotation marks omitted).

Infringement is shown and injunctive relief is appropriate if the Defendants show that: (1) they own the mark, 2)have a valid, protectable trademark in the name "SUPREME GREENS," (3) the Plaintiff's use of the mark creates a likelihood of confusion. *Bell v. Streetwise Records, Ltd.*, 640 F. Supp. at 579; *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)(noting claims for state law infringement and unfair competition are substantially convergent with claims under Lanham Act).

In fact, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient by itself to establish likelihood of confusion. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997). Here the license terminated by at least three independent means.

First, Plaintiff breached by its failure to pay over $1.8 million pursuant to the terms of the Agreement. (Dec. Geremesz ¶ 20), causing the termination of all licenses and rendering further use of the mark infringing. *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983).

Secondly, Plaintiff repudiated the contract in claiming ownership of the mark and filing suit against the Defendants. Filing suit against a franchisor, in and of itself, is a repudiation of the contract. See *Costandi v. AAMCO Automatic Transmissions, Inc.*, 456 F. 2d 941, 941-943 (9th Cir. 1972). In *Costandi v. AAMCO Automatic Transmissions, Inc.*, the Ninth Circuit stated:

> "The franchisees' argument that they are entitled to the continued use of AAMCO's trademark, pending final outcome of the litigation, is not persuasive. It is an elementary rule of contract law that one cannot repudiate a contract and at the same time retain the consideration or any part thereof received under the contract." *Id.* (Emphasis added) (citations omitted).

11

Thirdly, Plaintiff wrongfully represented that they had ordered non-genuine product, and affixed the mark to it, another repudiation. The Plaintiff's product cannot legitimately be genuine product because Defendants never gave Plaintiff the secret formula to the Product.(Dec.Germesz¶¶13-14,Exh.3,p.1).

Where a trademark license has been canceled, as it has been here by breach and repudiation, there is such a strong risk of confusion that Courts have held that mere continued use of a mark by the former licensee satisfies the likelihood of confusion test and constitutes trademark infringement. *Burger King Corp. v. Mason*, 710 F.2d at 1492-93. In fact, under these circumstances, the allegedly infringing merchandise need not be available to the consuming public. *Bertolli U.S.A., Inc. v. Filippo Bertolli Fine Foods, Ltd.* 662 F. Supp. 203, 205-206 (S.D.N.Y. 1987).

There can be no doubt that Plaintiff's use of Supreme Greens or confusingly similar marks and the use of Guerrero's name and likeness is infringing and that a Temporary Restraining Order should issue.

There is also unfair competition under common law. Under California law, unfair competition is shown by the following elements: 1) that the mark has acquired secondary meaning; 2) that defendant's use of the mark is deceptive and likely to confuse purchasers; and 3) that Plaintiff has been damaged thereby. *Transgo Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985) *cert. denied*, 474 U.S. 1059 (1986).

Secondary meaning means that the product is associated in the minds of purchasers with a single source, even if they do no know who or what that source is. *Coca-Cola Company v. Koke Company of America*, 254 U.S. 143, 146 (1920). That source need not be identified and may be anonymous. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1983). In this case, the Product is strongly identified as being Dr. Guerrero's formula. (Dec. Guerrero p. 3, Dec. Geremesz ¶ 17, Exh. 5). It is heavily promoted that way. (Dec. Geremesz, ¶ 17, Exh. 5). Strangers have stopped Dr. Guerrero in stores, on golf courses, even in an amusement park, because they associate "SUPREME GREENS" with him. (Dec. Guerrero p. 3). It is in fact, the strong association that makes the risk of injury so severe in this case.

MEMOP&A TRO

Confusion is inevitable and the damage to Defendants in reputation and lost sales is so probable, that a Temporary Restraining Order should issue.

**C.** __ **Plaintiff is Wrongfully Using the Likeness of Dr. Guerrero in Violation of M.G.L. ch. 214, § 3A, Cal. Civ. Code §3344 and Cal. Bus. & Prof. Code §17200.**

Any right or consent Plaintiff had to use defendant Guerrero's image, name, voice and likeness ceased upon its breaches and repudiations of its contract with defendants. Its continued use violates federal and state law.

Plaintiff's use of Guerrero's voice, image and likeness in persisting to air the infomercial a violation of the Lanham Act, 15 U.S.C. 1125(a) as a false endorsement of a product. *McCarthy on Trademarks, §28:15 (4th Ed. 1999).*

In addition, it is a clear violation of M.G.L. ch. 214, §3A which protects against unauthorized commercial use of one's image. *See Tropiano v. Atlantic Monthly* (1980) 379 Mass. 745, 750-751. M.G.L. ch. 214, §3A states in pertinent part:

"§ 3A. Unauthorized Use of Name, Portrait, or Picture of Person; Remedies; Exceptions.

"Any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent may bring a civil action in the superior court against the person so using his name, portrait or picture, to prevent and restrain the use thereof; and may recover damages for any injuries sustained by reason of such use. If the defendant shall have knowingly used such person's name, portrait or picture in such manner as is prohibited or unlawful, the court, in its discretion, may award the plaintiff treble the amount of the damages sustained by him. . . . " 3

Similarly, California has a sister statute to protect its citizens.Cal. Civ. Code § 3344 states in pertinent part:

"§ 3344.  Unauthorized commercial use of name, voice, signature, photograph or likeness
(a) Any person who knowingly uses another's name, voice, signature, photograph, or

---

3  The statutory exception for goods bearing a picture is not at issue here. M.G.L. ch. 214, §3A.

MEMOP&A TRO

likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. . ."

California, Cal. Bus. & Prof. Code §17200 and §17203, prohibits unfair competition, including misleading advertising and violations of state law and making injunctive relief available. *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 210 (1983).

A Temporary Restraining Order and Preliminary Injunction stopping further use of Guerrero's name, image and voice are proper under the same analysis of irreparable harm and likelihood of success on the merits discussed above. Defendants' harm is irreparable as discussed above.

By contrast, ITV DIRECT claims that its motives are pure and it intended to stop using Defendant Guerrero's image and the mark as late as April 19, 2004. (Dec. Maihos, p. 5, ¶ 14). The fact that an "infringer" exploits an image, commercially indicates that it has been established and that it has commercial value. Similarly, under trademark law intentional infringement creates an inference that the public is likely to be confused. *1 Gilson on Trademark Protection and Practice §2.16*

Plaintiff admits that no harm will occur to it if the Order is entered. Indeed, ITV "has cancelled all future media purchases in connection with the Supreme Greens infomercial" and "will be completely replaced within 7 to 10 days." (Dec. Maihos, ¶ 14). The stakes, however, are so high that Defendant Guerrero should not be forced to rely on mere expressions of intent. Thus, an order prohibiting use of Dr. Guerrero's likeness, voice and name therefore does ITV no harm and should be granted.

## VI.    THE PROCEEDS OF PLAINTIFF'S SALES OF SUPREME GREENS SHOULD BE PUT IN ESCROW PENDING RESOLUTION OF THIS CASE.

ITV DIRECT owes DEFENDANTS at least $1,821,864.00 for purchase of SUPREME GREENS Product pursuant to the Agreement and is now past due. ITV DIRECT says that sales of

14

the SUPREME GREENS Product "did not generate sufficient income for ITV DIRECT to recoup its tremendous investment in marketing the product on a national level." (ITV DIRECT Complaint, ¶21).   ITV DIRECT intends to sell off its existing inventory of SUPREME GREENS Product through reorders and its auto-ship program." (Dec. Maihos, ¶ 14).

Pursuant to M.G.L. c. 214, Section 3(6), Defendants request this Court to (1) immediately place an equitable lien and/or constructive trust to be paid into court or to be held by ITV DIRECT all monies, funds, and other consideration received by Counterclaim Defendants in connection with sales of SUPREME GREENS Product  and (2) immediately enjoin Counterclaim Defendants from selling, transferring, assigning, or otherwise disposing of, alienating or hypothecating, its interest in any and all such monies and to pay into the court or hold such monies, funds, and consideration in escrow pending the determination of its rightful owner until such time as this Court determines the amount owed to Defendants.

## VII.    A RESTRAINING ORDER DOES LITTLE OR NO HARM TO PLAINTIFF ACCORDING TO PLAINTIFF'S SWORN DECLARATIONS AND BOND SHOULD BE WAIVED.

Plaintiff continues to sell Supreme Greens that it has received for free. (Dec. Maihos ¶14). Whatever its intentions, the most Plaintiff risks is profits it claims it is not making.

Under Rule 65(c) of the Federal Rules of Civil Procedure, it is within the Court's discretion to fix the amount of a bond "in such sum as the court deems proper."  Here, the Plaintiff will be prohibited from making sales of clearly infringing product, product for which they have repeatedly admitted making little or no profit. (Dec. Gemeresz ¶ 20; Dec. Guerrero p. 3). Therefore, Defendant requests that the bond be waived.

## VIII.    CONCLUSION

For all of the reasons stated above, Defendants respectfully requests that the Court to issue a temporary restraining order against Plaintiff ITV DIRECT, Inc., its officers, owners, agents, servants and all those participating with them, enjoining them from the actions set forth specifically in

15

the Proposed Temporary Restraining Order and an Order to Show Cause as to why they should not

be so preliminarily enjoined pending the resolution of this case.

Dated: April _19_, 2004                    Respectfully submitted,

                              By: _Becky V. Christensen_
                              Becky V. Christensen, Esq. (State Bar No. 147013)
                              Craig McLaughlin, Esq. (State Bar No. 182876)
                              LEVIN & O'CONNOR
                              384 Forest Avenue, Suite 13
                              Laguna Beach, California 92651
                              Telephone: (949) 497-7676
                              Facsimile: (949) 497-7679

                              Dustin F. Hecker
                              POSTERNAK BLANKSTEIN & LUND LLP
                              Prudential Tower
                              800 Boylston Street
                              Boston, Massachusetts 02199-8004
                              Telephone: (617) 973-6100
                              Fax: (6117) 367-2315

                              Attorneys for DEFENDANTS
                              HEALTHY SOLUTIONS, LLC,
                              HEALTH SOLUTIONS, INC.
                              and ALEJANDRO GUERRERO

**I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY HAND/MAIL ON**

_In accordance with separately filed Certificate
of Service, copies of these pleadings were filed
on the counsel of record by California counsel
for the defendants by Federal Express on 4-19-04._

16

MEMOP&A TRO