## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ITV DIRECT, INC.,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>HEALTHY SOLUTIONS, LLC, et al.,<br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| RELATED CASES | )<br>)<br>) |

CIVIL ACTION NO. 04-CV-10421-JLT

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY  AND PRELIMINARY INJUNCTION

ITV DIRECT, INC.

By their attorney(s),

Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Telecopier:  (617) 946-4801

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED
DISCOVERY  AND PRELIMINARY INJUNCTION**

Plaintiff, ITV Direct, Inc. ("ITV" or "Plaintiff"), submits this opposition to the Motion

for Temporary Restraining Order, for Expedited Discovery, and for Preliminary Injunction filed

by the Defendants, Healthy Solutions, LLC (d/b/a Direct Business Concepts) ("Healthy

Solutions"), Health Solutions, Inc. ("HS"), and Alejandro Guerrero ("Guerrero") (collectively,

the "Defendants").  For the reasons set forth below, the Defendants have utterly failed to show

that they are entitled to the drastic relief that they seek, and their motion must be denied.

**PRELIMINARY STATEMENT**

The Defendants' motion for a temporary restraining order, expedited discovery, and for a

preliminary injunction is based on their assertion that the Plaintiff has claimed it is unlawfully

producing non-genuine "Supreme Greens with MSM" product ("Product"), and that it is using

the likeness of "Dr. Guerrero" to market this non-genuine product, causing severe injury to

Guerrero.  The Defendants' motion must be denied, not only because there is no evidentiary

support or basis for their claims, but because the Defendants have committed fraud on ITV and

are before this Court with unclean hands, asking this Court to bless their own unlawful conduct.

The Plaintiff has recently discovered that the Defendants made false representations to

ITV and in promotional materials about Guerrero's status as a doctor, which he is not, and about

the scientific support for the health claims they made about the Product, of which there is none.

This fraud is evidenced by the very affidavits that the Defendants have submitted to this Court in

support of their motion, claiming again that Guerrero is a doctor and that his professional

reputation will be irreparably harmed by the Plaintiff's conduct.

Based on these false representations, the Defendants induced ITV into entering into the

Distribution Agreement on which they base their claims, and into expending millions of dollars

to market and distribute the Product.  The Defendants cannot now come before this Court seeking equity on a claim that is based on their own misrepresentations and fraud.

Furthermore, the Defendants' evidence that they are about to suffer immediate and irreparable injury through the imminent introduction of a "counterfeit" product into the market cannot withstand scrutiny.  The "evidence" consists entirely of alleged statements made to Guerrero and set forth in his own affidavit, testifying that he was told by an intermediary named Todd Stanwood ("Stanwood") that ITV had received "approximately 50,000 bottles of allegedly infringing product bearing the "SUPREME GREENS" mark, statements which are plainly untrue and which Stanwood vehemently denies making.[1]  (Stanwood Aff., ¶ 3.)  The inconsistencies in these sworn statements are themselves enough to render this evidence incredible and to justify denial of this motion.

Even if the Court were to give any weight to Guerrero's testimony, however, there is simply no evidence, such as products, packages, labels, or advertising, showing the existence of the alleged infringement and explaining why confusion is likely.  As Defendants put it, they "have not been able to ascertain how much non-genuine product there is, let alone where it is, where it came from, or what is in it."  (Geremesz Aff. ¶ 24, attached as Exhibit B to Defendants' Motion).  *The simple reason for this complete failure of proof is that there is no "non-genuine product."*  (Maihos Aff., ¶¶ 14-16.)  ITV has no current plans to produce any greens product, and, most importantly, if such a product is ultimately produced for marketing, it will not be sold under the "SUPREME GREENS" mark until a court has decided the issue of ownership of that mark.  (*Id*., ¶ 19.)  There is simply no current or threatened infringement to enjoin.

---

[1]  The affidavit of Mr. Robert Maihos, the principal shareholder of ITV who is responsible for its day-to-day operations, sets forth the true state of affairs about which Guerrero and plaintiffs can only speculate.  (Maihos Aff., ¶¶ 17-20.)

In addition, as a result of the Defendants' misrepresentations concerning Guerrero's true background and the clinical support for the Product, the Plaintiff has asserted claims against the Defendants for fraud, breach of contract and indemnification, seeking damages in an amount that drastically exceeds any amounts claimed by the Defendants, which are a complete defense to the Defendants' claims. The Plaintiff is also seeking considerable royalties that are due from the Defendants for Internet sales of the Product. Thus, the Defendants have no chance of success on the merits. Finally, Defendants have failed to provide any evidence that they lack an adequate remedy at law.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

ITV is in the business of marketing and distributing various healthcare related products to individual and retail customers through the utilization of infomercials. To this day, a substantial portion of ITV's revenue is derived from telephone orders for products that are advertised on 30-minute infomercials that are produced and owned by ITV or its affiliated companies. As a result of its success, ITV is considered a leader in the development and use of infomercials to market vitamin and mineral supplements. (Amended Complaint, ¶¶ 10-11.)[2]

In or about early 2003, Defendants Michael Howell ("Howell") and Greg Geremesz ("Geremesz") advised ITV's sales manager that their friend and business associate, Guerrero, had recently developed an organic dietary supplement known as "Supreme Greens with MSM" and suggested that there be a meeting with ITV's principals to discuss ITV developing a market for the new product. (Amended Complaint, ¶ 13.) Over the following months, ITV's principals met with Guerrero, Howell, and Geremesz to explore whether a financial commitment by ITV

---

[2] As a result of the recent facts that have come to light regarding the Defendants' misrepresentations as to Guerrero's credentials and clinical studies, the Plaintiff has filed a Motion to Amend its Complaint simultaneous with this opposition. The proposed First Amended Complaint attached to that motion will be referred to as "Amended Complaint" throughout this opposition.

was possible.  The Defendants lacked the necessary capital to successfully launch the product on their own and looked to ITV to contribute the millions of dollars necessary for production of one or more infomercials, test-marketing, and the purchase of media airtime.  (*Id.*, ¶ 14.)  In consideration for ITV's investment, the Defendants agreed that ITV would, among other things, own the trademark rights to "Supreme Greens with MSM."  (*Id.*)

During these meetings, Guerrero repeatedly referred to himself as a doctor and stated that he operated an active clinic with a number of patients.  He also referred to himself as an OMD, which is a designation under California law that requires a medical degree or a doctorate degree from an accredited university in the State of California.  (*Id.*, ¶15; Maihos Aff., ¶3.)  Guerrero also made numerous health claims about the Product, which he claimed were supported by documentary and clinical evidence.  (Amended Complaint, ¶ 15.)

On April 4, 2003, ITV entered into an exclusive "Distribution Agreement" with Healthy Solutions for the manufacture and distribution of a product known as "Supreme Greens with MSM" ("Distribution Agreement").  (Maihos Aff., ¶ 2.)  The Distribution Agreement provided that ITV would produce an infomercial for the Product featuring Guerrero, and that ITV would be the exclusive distributor of the Product in connection with the infomercial.  (*Id.*)

Between April 4, 2003 and February 6, 2004, ITV issued purchase orders to Healthy Solutions for the purchase of the Supreme Greens with MSM product in varying quantities. (Maihos Aff., ¶4.)  In order to promote the sale of the Product, ITV expended millions of dollars on advertising for the product, primarily in connection with the production and airing of two separate infomercials featuring Guerrero.  ITV also developed the logo and labels for Supreme Greens with MSM, and with the encouragement and approval of Healthy Solutions, filed an application for federal registration of the name "Supreme Greens with MSM".  (*Id.*, ¶5.)   All of

4

the recommended dosage information and information regarding the contents of the product was provided by Defendants and added to the label designed by ITV.  (Amended Complaint, ¶19.)

In the infomercial and in other media, Guerrero states that he is a doctor and operates a clinic in California, where he has cancer patients, AIDS patients, and patients with MS, diabetes and Parkinson's disease.  (Maihos Aff., ¶3.)  He also made numerous controversial claims regarding the health benefits of Supreme Greens with MSM.  In support of these claims, Guerrero represented that he conducted a study of over 200 of patients through his clinic, all of whom were diagnosed as terminally ill, and that all but eight of these patients are still alive.  (*Id*.) In addition, Guerrero represented to ITV and in promotional materials that he received a doctorate degree in Traditional Chinese Medicine from the Samra University in California, and that he was an OMD (doctor of oriental medicine) in California.[3]  (*Id*., ¶3 and Exhibits B & C.) On several occasions prior to and after production of the infomercials, Guerrero confirmed to ITV that he possessed competent and reliable documentary and clinical support for each and every representation he made in the infomercials.  (Maihos Aff., ¶3.)

In late 2003, ITV learned that Healthy Solutions had filed a competing trademark application for federal registration of the name "Supreme Greens with MSM," in violation of the parties' agreement that the trademark would belong to ITV.  The Defendants assured ITV that it had been filed to protect the trademark pending the filing of ITV's application, and that they would withdraw the application.  (*Id*., ¶6; Amended Complaint ¶21.)

Based solely on the efforts of ITV, the initial infomercial was successful and the Defendants received millions of dollars in product orders from ITV.  These orders, however, did not generate sufficient income for ITV to recoup its tremendous investment in marketing the

---

[3] In addition, in his affidavit filed in support of this Motion, Defendant Geremesz represents to this Court that Guerrero is an OMD in California. (Geremesz Aff., ¶ 5, attached as Exhibit B to Defendants' Motion.)

product.  (Amended Complaint, ¶¶ 22, 23.)  As a result, in early 2004, the parties orally modified the prior Distribution Agreement, and agreed, among other things, that the Defendants would (i) pay royalties to ITV for their direct sales of Supreme Greens with MSM over the Internet, (ii) transfer to ITV of ownership of the website address "www.supremegreens.com", and (iii) withdraw Healthy Solutions' competing trademark application.  (Maihos Aff., ¶6.)  Relying on this modified agreement, ITV expended well in excess of a million dollars on additional marketing and advertising for the product which it has yet to recoup.  (*Id*.)  In addition, on January 9, 2004, ITV forwarded a check in an additional amount of $7,500 to confirm Healthy Solution's agreement to transfer ownership of the website.  Healthy Solutions has cashed this check, confirming the agreement.  (*Id.*, ¶6 and Exhibit D.)

In February 2004, ITV learned that, despite the modified agreement, payment for the website and ITV's continued expenditures on marketing and advertising, Healthy Solutions had failed to provide an accounting of its substantial Internet sales to ITV, failed to pay royalties due to ITV for direct sales of the Product, and had failed to withdraw its trademark application as promised.  (Maihos Aff., ¶7; Amended Complaint, ¶31.)  Healthy Solutions also sought to establish relationships with other distributors and media production companies, despite the exclusivity provision in the Distribution Agreement.  (Maihos Aff., ¶7.)

In the Distribution Agreement signed by Guerrero, Healthy Solutions agreed to indemnify and hold harmless ITV and its officers, directors, employees, shareholders and affiliates from any and all claims, lawsuits, actions and proceedings in court or by any governmental unit, relating to the manufacture and content of Supreme Greens with MSM, and health claims made by Guerrero concerning the claimed impact the product would have on the health of users of the product.  (Maihos Aff., ¶9 and Exhibit A.)

Within the last two weeks, ITV has been contacted by both the United States Food and Drug Administration (FDA) and the Federal Trade Commission (FTC) concerning the health claims that Guerrero has made in connection with the Supreme Greens with MSM product, both in the product labeling and packaging information provided by Guerrero and Healthy Solutions and in the infomercials. (Maihos Aff., ¶10; Robertson Aff., ¶¶ 3, 6-7.) Each agency has indicated that they do not believe Healthy Solutions or Guerrero can provide competent and reliable scientific evidence to support the health claims made by Guerrero in connection with Supreme Greens with MSM. (*Id*.)

In addition, in connection with the FDA and FTC investigations, ITV has investigated the background of Guerrero, who has represented to ITV, the public and the Court that he is a doctor and an OMD. Neither claim appears to be true. (Maihos Aff., ¶11; Robertson Aff., ¶7.) Rather, it appears that Guerrero received only a Masters Degree from Samra University in Los Angeles, and has never received a doctorate of any kind at any time. (*Id*.) As a result of the FTC and FDA investigations of the health claims made by Guerrero concerning Supreme Greens with MSM, and the discovery that Guerrero is not a doctor as he repeatedly represented to ITV and publicly, on April 21, 2004, ITV sent an indemnification demand to Healthy Solutions seeking indemnification under the Distribution Agreement of all liabilities and expenses it may incur in connection with the pending FTC and FDA investigations. (Robertson Aff., ¶8 and Exhibit A.)

On April 23, 2004, ABC News aired a segment on its news program "20/20" regarding Supreme Greens with MSM, in which Guerrero was interviewed. (Maihos Aff., ¶12; Robertson Aff., ¶9.) During that interview, Guerrero stated for the first time that he had no written documentation to support his clinical studies or the health claims he has made regarding

Supreme Greens with MSM.  According to Guerrero, "there is no scientific support for Supreme Greens."  (Robertson Aff., ¶9.)

Based on the Defendants' fraudulent representations, indemnification obligations, failure to account to ITV for Internet sales, breaches of contract and other acts, ITV has refused to pay Healthy Solutions under the Distribution Agreement, and filed this action.  (*See* First Amended Complaint.)  In its Amended Complaint, ITV alleges that it has been and will continue to be substantially damaged by Defendants' fraud, breach of contract, and conversion.  ITV believes that its damages caused by the Defendants' conduct drastically exceed any amounts that the Defendants currently claim is owed to them and could put ITV out of business, and that ITV is entitled to indemnification for these amounts under the Distribution Agreement.

The Defendants filed a Counterclaim against ITV alleging, among other things, breach of contract, trademark infringement, and unfair competition.[4]  At the same time, the Defendants filed this Motion seeking injunctive relief based on the claim that ITV has produced, or is well into the process of producing, a "non-genuine" nutritional supplement bearing the mark "Supreme Greens."  The Defendants claim that the risk of injury to Guerrero's reputation and ability to do business as a result of the production of a non-genuine product is "severe" and warrants extraordinary relief.  (Motion, p. 12.)  As set forth below, the Defendants have absolutely no evidentiary support for their claims and their Motion must be denied.

## LEGAL ARGUMENT

## I.    DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE THEY HAVE UNCLEAN HANDS

---

[4]  Subsequent to this action, the Defendants filed an action against the Plaintiff in the United States District Court for the Central District of California, C.A. No. 04-00236, asserting essentially the same claims they asserted in their counterclaim (the "California Action").  After the Defendants filed a motion for injunctive relief in the California Action, it was transferred to this Court.

The Supreme Court has declared, "[i]t is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244 (1933). The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief," however improper may have been the behavior of the non-movant. *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 910-12 (1st Cir. 1989) (discussing "unclean hands" doctrine in relation to the equitable maxim that "he who seeks equity must do equity"). Thus, a court called upon to do equity "should always consider whether the petitioning party has acted in bad faith or with unclean hands" before permitting such extraordinary relief. *Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995).

Here, the Defendants have engaged in a fraudulent scheme against ITV and are not entitled to the equitable relief they seek. As set forth in the affidavit of Maihos and in the Amended Complaint, in order to induce ITV into agreeing to market and brand the "Supreme Greens with MSM" product, the Defendants repeatedly claimed that Guerrero was a doctor, or OMD, who operated an active clinic with a number of patients, and who had conducted clinical trials in his medical practice. (Maihos Aff., ¶¶3, 8; Amended Complaint, ¶15.) The Defendants also fraudulently represented that they possessed competent and reliable scientific evidence for the health claims made by Guerrero concerning the Product. (Amended Complaint, ¶15.)

In reliance on the Defendants' representations, ITV entered into the Distribution Agreement and spent millions of dollars marketing and branding the "Supreme Greens with

MSM" trademark and product. In the first infomercial ITV produced pursuant to that Agreement, Guerrero repeated the representations about his credentials as a doctor, the clinical trials that he had conducted, and the health benefits of the Product on patients with cancer, AIDS, MS, diabetes and Parkinson's disease. (Maihos Aff., ¶¶3, 8.) Guerrero again represented to ITV that he possessed competent and reliable scientific evidence for each of the health claims made in the infomercial, including the safety of the Product and its effects on patients in his clinic. (*Id.*, ¶8.)

Based on the Defendants' representations, ITV continued to pour millions of dollars into the promotion and marketing of "Supreme Greens with MSM," only to discover that the representations regarding Guerrero's status as a doctor and the scientific support for the claims made about the Product's health benefits were false. (*Id.*, ¶¶5, 10, 11.) On April 7, 2004, the Federal Trade Commission contacted ITV in connection with the Guerrero/Supreme Greens with MSM infomercial and other marketing materials featuring Guerrero, and notified ITV that it was conducting an investigation of the claims made by Guerrero concerning the health and curative benefits of the product. (*Id.*, ¶10.) The FDA also notified ITV that it has concerns regarding the labeling of the Supreme Greens with MSM product and the health claims made by Guerrero. (Robertson Aff., ¶6.) In light of the FTC and FDA investigations, each agency has indicated that Guerrero is not a medical doctor and has not been awarded a doctorate by any university. (Robertson Aff., ¶7.) This was confirmed by a private investigation commissioned by ITV, which also revealed that Guerrero is not a doctor as he has repeatedly represented to ITV and publicly. (Maihos Aff., ¶11.)

Even more recently, on April 23, 2004, ABC News aired a segment of its news program "20/20" regarding Supreme Greens with MSM, in which Guerrero was interviewed. During that

interview, Guerrero admitted for the first time that he had no written documentation to support

his clinical studies or the health claims he has made regarding supreme Greens with MSM.

(Maihos, ¶12.)  Specifically, the transcript of that portion of 20/20 reads as follows:

> **ABC News**:  What kind of study is it that you have that supports this product?
> **Guerrero**:  Well, there is no study.
> **ABC News**:  So, when you say your clinical experience, what are you referring to?
> **Guerrero**:  Just my clients that I have seen.
> **ABC News**:  So, we have only your word.  There is nothing published.
> **Guerrero**:  Nothing published.
> **ABC News**:  There is nothing written?
> **Guerrero**:  No.
> **ABC News**:  So, you have no scientific support for Supreme Greens?
> **Guerrero**:  No, there is no scientific support for Supreme Greens.

(Robertson Aff., ¶9.)

It is now clear that the Defendants induced the Plaintiff into entering into the Distribution

Agreement based on false claims regarding the Product's health benefits, clinical testing, and

Guerrero's credentials.  As a result of this fraud, the Plaintiff could be exposed to an action by

the FTC that could shut down its business.  (Maihos Aff., ¶10.)  The Defendants are clearly

"tainted with inequitableness or bad faith relative to the matter in which [they] seek relief," as

their fraudulent conduct in inducing Plaintiff to enter into the Distribution Agreement and

expending millions of dollars to market and distribute the Product is directly related to the merits

of the controversy between the parties and with the equity that they seek in this case.  *Precision

Instrument Mfg. Co.*, 324 U.S. at 814; *K-Mart Corp.*, 875 F.2d at 910-12.  Accordingly, as a

court sitting in equity, this Court should not aid the wrongdoer and should bar the recovery

sought by the Defendants.  On the basis of Defendants' unclean hands alone, their Motion for a

temporary restraining order and preliminary injunction should be denied.

## II.   EVEN IF THE DEFENDANTS DID NOT HAVE UNCLEAN HANDS, THEY HAVE NO EVIDENCE TO SUPPORT THE EXTRAORDINARY RELIEF OF A PRELIMINARY INJUNCTION

### A.   Defendants Cannot Meet The Standard For A Preliminary Injunction.

It is well settled that "the granting of interlocutory injunctive relief is a drastic procedure . . . allowed at a time when the parties have not had full opportunity to present their case to the court." *International Ass'n of Machinists and Aerospace Workers v. Eastern Air Lines, Inc.*, 826 F.2d 1141, 1144 (1st Cir. 1987). Accordingly, "a preliminary injunction . . . should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In order to prevail on a motion for preliminary injunction, the moving party must show: (1) it is substantially likely to succeed on the merits;  (2) there is a significant potential for irreparable harm in the absence of immediate relief;  (3) that the balance of hardships weighs in its favor; and (4) that the granting of prompt injunctive relief will promote the public interest. *McGuire v. Reilly,* 260 F.3d 36, 42 (1st Cir. 2001) (*citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996)).  *See also Lanier Professional Services, Inc. v. Ricci,* 192 F.3d 1 (1st Cir. 1999) (federal preliminary injunction standard applies in diversity case).  The request for preliminary injunction should be granted only if the movant proves that all four factors favor relief, and the focal point of the inquiry is generally the likelihood of success. *International Ass'n of Machinists*, 826 F.2d at 1144; *McGuire*, 260 F.3d at 51.  Here, the Defendants cannot meet their burden of proof on any of these factors.

### B.   Defendants Have Failed To Prove A Likelihood Of Success On The Merits.

Defendants move for a preliminary injunction on the basis of their counterclaims alleging that the Plaintiff has threatened or has engaged in acts that constitute unfair competition under

Section 43(a) of the Lanham Act, unfair competition under California common law and Section 17200 of the California Business and Professions Code, and a violation of Guerrero's alleged right of publicity under M.G.L., ch. 214, §3A and Section 3344(a) of the California Civil Code. They are also seeking to reach and apply the proceeds from ITV's sale of genuine Supreme Greens with MSM based on their claims for breach of the Distribution Agreement, claiming they are entitled to approximately $1.8 million from the Plaintiff. (*See* Defendants' Counterclaim.) The Defendants are unlikely to succeed on any of these claims.

> 1.    Defendants Cannot Succeed On Their Claims For Trademark Infringement, Unfair Competition, And Infringement of Guerrero's Publicity Rights.

To prevail at trial on their claim under Section 43(a) of the Lanham Act, defendants must prove that ITV "*uses in commerce*" "*on or in connection with any goods or services, or any container for goods*" a "word, term, name, symbol, or device, or any combination thereof . . . which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . ." 15 U.S.C. § 1125(a)(1) (emphasis added).

Professor McCarthy notes that under certain limited circumstances, injunctive relief may be granted before a defendant has sold any products, but "if the threatened trademark infringement is merely a possibility and there is no evidence that defendant has, or intends to, use the allegedly infringing mark, then no injunction will be granted." 5 J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30:10 at 3021-30-22 (4th ed. 2003). *See also Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990); *U-Haul Intern. Inc. v. Kresch*, 35 USPQ2d (BNA) 1317, 1319 (E.D. Mich. 1994); *CogniTest Corp. v. Riverside Publshg. Co.*, 36 USPQ2d (BNA) 1363, 1365 (N.D. Ill. 1995).

Although the Defendants boldly claim that ITV "has produced a nutritional supplement of unknown quality falsely bearing the mark the mark 'SUPREME GREENS,'" (Memo. at 2), and that "non-genuine product bearing the 'SUPREME GREENS' mark, entirely out of the mark owner's control, is or has been launched into the market," (Memo. at 7), there is simply no evidence of any threatened infringement.  The Defendants fail to satisfy even the most relaxed standard for proof of "use in commerce," such as that set forth in *Bertolli USA, Inc. v. Filippo Bertolli Find Foods, Ltd.*, 662 F. Supp. 203 (S.D.N.Y 1997), in which the court found "use in commerce" under the analogous provision of Section 32(1) of the Lanham Act based upon the defendant's printing of labels and cartons and the sale of a sample to a distributor.

Here, the Defendants offer *no* evidence of the production of labels, boxes, or products, much less any evidence of sales or marketing of products bearing the "SUPREME GREENS" mark.  That is so because ITV has produced no labels, boxes, or products bearing the disputed "SUPREME GREENS" mark and does not intend to do so unless and until the issue of ownership of that mark is resolved in its favor.  (Maihos Aff. ¶¶ 15, 16 -19.)  Likewise, ITV has never manufactured, bottled, or sold any "non-genuine" product bearing the "Supreme Greens with MSM" label.  (*Id*., ¶14.)  The Defendants' only "evidence" that they are about to suffer immediate and irreparable injury through the imminent introduction of a "counterfeit" product consists entirely of alleged statements made to Guerrero and set forth in his affidavit, which differs from the story he told in the first affidavit he filed in the California Action.  In Guerrero's first affidavit dated April 6, 2004, he testified that he was told by Maihos on or about March 24, 2004 that ITV had received approximately 50,000 bottles of allegedly infringing product bearing the "SUPREME GREENS" mark.  (*Id*., ¶16.)  But two days later, in an "amended" affidavit filed in the California Action dated April 8, 2004, and again in his affidavit filed in this Court,

Guerrero now attributes these March 24, 2004 statements not to Mr. Maihos, but rather to an intermediary named Stanwood.  (Guerrero Aff., ¶8, attached as Exhibit A to Defendants' Motion.)  Stanwood vehemently denies making such statements in an affidavit dated April 12, 2004, which the Defendants filed in support of their motion.  (*See* Exhibit E to Defendants' Motion; Maihos Aff., at ¶¶16-18.)

Because there is and will be no use by ITV of the disputed "SUPREME GREENS" mark on "non-genuine" product, there can be no possibility of confusion, and the Defendants cannot carry their burden of showing probable success on the merits.[5]  As a result, this Court should also deny the Defendants' motion for expedited discovery, which is based on their unsupported claim that the Plaintiff is producing and selling "non-genuine" Product.  (Memo, p. 2.)

2.     The Defendants Cannot Succeed On Their Claim
       Seeking 1.8 Million From Plaintiffs Under the Distribution Agreement.

The Defendants cannot possibly succeed on their claim seeking $1,821,864 from the Plaintiff, which they allege they are due under the Distribution Agreement for shipments of the Product that have not been paid by ITV.  (Defendants' Counterclaim, ¶22.)  First, the Plaintiff has asserted that the Defendants fraudulently induced ITV into entering the Distribution Agreement at issue.  Under Massachusetts law, the Defendants' fraudulent inducement likewise excuses any obligation of the Plaintiff to perform under the Distribution Agreement.  *See Shaw's Supermarkets, Inc. v. Delgiacco,* 410 Mass. 840, 842 (1991) ("a contract induced by fraudulent

---

[5] It is unclear from Defendants' memorandum of points and authorities as to their theory of liability under M.G.L. c. 214, §3A and Section 3344(a) of the California Civil Code.  Defendants appear, however, to tie the use of Guerrero's name and likeness, through broadcast of the infomercial, to the alleged "produc[tion of] a non-genuine, unauthorized product bearing the trademark of the manufacturer and using the likeness of an individual without consent . . ."  Memo. at 2.  ITV has no intention of using the infomercial to sell "fake" product because there is no such product.  In light of the FTC investigation of the claims made by Guerrero and ITV's belief that his representations about being a doctor are false and fraudulent, ITV has cancelled all future media purchases in connection with Supreme Greens with MSM's infomercial featuring Guerrero, and has no intention to air this infomercial in the future.  (Maihos Aff., ¶20.)  Thus, there is no merit to the Defendants' claim for infringement of publicity rights.

misrepresentations is voidable ..."). As stated by the court in *Martinelli v. Siegel*, 176 F.2d 98, 100 (1st Cir. 1949), "fraud in the inception of a contract . . . renders it voidable at the election of the person defrauded, with the result that if the defrauded party to a contract breaks it before he discovers the fraud, he may nevertheless assert the fraud as a defense as soon as he discovers it, and demand rescission on that account when sued for breach of contract." Thus the Plaintiff can avoid any obligation it may have had under the Distribution Agreement based on the Defendants' actions in fraudulently misrepresenting information material to the contract regarding Guerrero, his clinical trials, and the scientific support for the Defendants' claims about the Product, intending that the Plaintiff would rely on that information. The Plaintiff did in fact rely on that information in its decision to enter into the Distribution Agreement, which is a complete defense to any claim for breach of the Distribution Agreement. *Martinelli*, 176 F.2d at 100. Thus, the Defendants are not entitled to an injunction attaching approximately $1.8 million of the Plaintiff's money when there is no likelihood they will succeed on the merits of their claims.

In the alternative, if the Plaintiff seeks to enforce rather than void the Distribution Agreement, the Plaintiff has asserted claims against the Defendants for breach of contract based on, among other things, the Defendants failure to pay royalties due to ITV for Internet sales of the Product, their failure to withdraw their competing application for registration of the trademark "Supreme Greens with MSM," and their failure to assign the domain name "supremegreens.com" to ITV. (Amended Complaint, Counts I, II, V.) With regard to the Internet sales alone, the leading direct response industry magazine recently listed Internet searches for Supreme Greens as the fourteenth most popular search for February 2004, with over 55,000 searches. (Maihos Aff., ¶7.) Based upon this data, ITV believes that Healthy Solutions' Internet sales are substantial and possibly equal or exceed the amounts the Defendants claim is

owed by ITV and are seeking to attach by this Motion.  (*Id.*)  Without an accounting, ITV has no

measure of the exact amount of royalties it is due, but clearly this amount would set-off any

amounts that the Defendants claim they are owed by ITV, even assuming they could succeed on

such claims.

Furthermore, the Plaintiff is entitled to indemnification from the Defendants under the

Distribution Agreement for any penalties or fines that may be assessed against ITV by the FTC

or FDA as a result of the Defendants' fraudulent representations about Guerrero's status as a

doctor and the scientific substantiation for the health claims they made about the Product.  The

Distribution Agreement provides that:

> Manufacturer [Healthy Solutions] agrees upon demand to defend,
> indemnify and hold harmless Distributor [ITV], its officers, directors,
> employees, shareholders and affiliates from any and all claims, lawsuits,
> actions and proceedings in any court or by any governmental unit arising
> out of or relating to the Product as manufactured, its contents or impact n
> the health of any person.  (Maihos Aff., ¶9 and Exhibit A, ¶ 24.)

Based on the FTC and FDA investigations into the health claims made by Guerrero and

the discovery that Guerrero is not a doctor, on April 21, 2004 ITV sent an indemnification

demand to Healthy Solutions seeking indemnification of all liabilities and expenses it may incur

in connection with the pending investigations.  (Robertson Aff., ¶ 8 and Exhibit A.)  ITV's

potential legal exposure far exceeds any amounts that the Defendants claim they are due under

the Distribution Agreement.  Should the FTC decide to file suit against ITV, Guerrero, Healthy

Solutions and others based on the claims made by Guerrero in connection with Supreme Greens

with MSM, the FTC could seek restitution damages in the amount of *gross sales revenue* from

the Product.  *See, e.g., FTC v. Febre*, 128 F.3d 530, 534-535 (7th Cir. 1997).  ITV's gross sales

revenue for the Product far exceeds the approximately $1.8 million that the Defendants claim

they are due from ITV in their counterclaim.  (Maihos Aff., ¶ 10.)  Thus, the potential

indemnification that ITV will be entitled to from the Defendants for any legal action brought by the FTC against ITV will likely far exceed the amounts that the Defendants are seeking to attach by this motion. Since the "likelihood of success is the sine qua non of preliminary injunctive relief," the Court should deny the Defendants' motion without further analysis. *McGuire*, 260 F.3d at 51, *citing Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993).

### C.    Defendants Cannot Show the Possibility of Irreparable Harm.

To obtain a temporary restraining order, the Defendants must do more than merely allege imminent harm; they must demonstrate immediate threatened injury. *Ross-Simons of  Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12 (1st Cir. 1996). Speculative injury does not constitute irreparable injury. "Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined." *Mass. Coalition of Citizens with Disabilities v. Civil Defense Agency and Office of Emergency Preparedness of the Commonwealth of Mass.*, 649 F.2d 71, 74 (1st Cir. 1981), *citing Parks v. Dunlop*, 517 F.2d 785 (5th Cir. 1975). A preliminary injunction will not be issued simply to prevent a mere possibility of injury. A presently existing, actual threat must be shown. *Id*. at 74.

As set forth above, there is absolutely no evidence of imminent or threatened infringement or unfair competition, and there can thus be no harm, much less immediate and irreparable harm, to the Defendants. In any event, Guerrero cannot claim any harm to his reputation as a doctor or his ability to conduct business, when he is not a doctor and his reputation was based on a fraud. Any damage to Guerrero's reputation is merely the result of the recent exposure of this fraud. Because the Defendants can show no possibility of any injury whatsoever, their motion for the extraordinary relief of a TRO on these claims must be denied.[6]

---

[6]  Even if the Court is inclined to grant any relief against some phantom "non-genuine product," it cannot enter the TRO sought by the Defendants. According to their proposed TRO, it would prohibit, among other things, "using the

Furthermore, there can be no irreparable harm to the Defendants based on their claims for breach of the Distribution Agreement and conversion where the law provides an adequate remedy. *Interco, Inc. v. First Natn'l Bank of Boston*, 560 F.2d 480, 485-86 (1st Cir. 1977). The Defendants are seeking damages for these contract claims in the amount of approximately $1.8 million, which is the kind of harm that is ordinarily redressed by an award of monetary damages. *Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 61 (1st Cir. 1998). And, "an entitlement to monetary damages, without more, rarely constitutes an adequate basis for injunctive relief." *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 622 (1st Cir. 1995). Here, the harm caused by the alleged breach of the Distribution Agreement is easy to measure accurately, there is no unique property at issue, and money damages will be an adequate remedy. The Defendants have failed to meet their burden and offer any evidence to demonstrate a viable threat of immediate and irreparable harm to warrant preliminary injunctive relief.

### D.    The Balance of Equities Lies in Favor of the Plaintiff

In considering the balance of equities, the court must balance the harm to the moving party from the denial of the preliminary injunction with the harm to the nonmoving party if the injunction is granted. Here, based on the fraudulent conduct of the Defendants, the Plaintiff could be subject to an FTC action, which could result in substantial damages in the amount of the Product's gross sales, shut down its business, and put hundreds of Massachusetts employees out

---

SUPREME GREENS mark … in the sale, offering for sale, distribution, promotion, broadcast or advertisement of nutritional supplements or similar merchandise." (Proposed TRO ¶ 1.) This language would prohibit the resale of even genuine product, in violation of ITV's legal right to resell its inventory of genuine "SUPREME GREENS" products ordered from Healthy Solutions. *See, e.g., Sebastian Intern., Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) ("the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition"); *McCarthy, supra*, § 25:41 at 25-88-25-92 and cases cited therein. As the Defendants know, ITV has customers on "autoship, in which Product is automatically shipped and billed at specific intervals to customers." (Geremesz Aff. ¶ 18; Maihos Aff, ¶ 20.) If the Court is inclined to grant any relief, which ITV contends would be wholly unwarranted, it should narrowly tailor that relief to prohibit only the sale of non-genuine products, so that ITV can sell off its existing inventory of genuine products as the law permits.

of work.  (Maihos Aff., ¶10.)  Attaching approximately $1.8 million of the Plaintiff's funds from its lawful sales of the Product would put ITV's business and the jobs of its employees in jeopardy.  Further, in the event that the FTC does take such action, the Plaintiff is entitled to complete indemnification from the Defendants for such action.  Meanwhile, the Defendants have been receiving millions of dollars manufacturing a Product that is based on the false representations and reputation of "Dr. Guerrero."  As there is no likelihood they will succeed in this case, they will not be harmed if the requested injunctions do not issue.  The balance of equities clearly weighs in the Plaintiff's favor.  *See McGuire*, 260 F.3d at 42 (issuance of the injunction should not impose more of a burden on the nonmovant that its absence will impose on the movant).

## **CONCLUSION**

Based on the foregoing, the Defendants have no likelihood of success on the merits of their claims, will not suffer irreparable harm,  and their motion must be denied.  As a result, this Court should also deny Defendants' motion for expedited discovery, which is clearly not warranted in this case where there is absolutely no basis for the Defendants' claims for trademark infringement and unfair competition.

Dated:  April 30, 2004

Respectfully submitted,
ITV DIRECT, INC.
By their attorney(s),

 /s/ Peter S. Brooks
Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

BO1 15639693.1