CALIFORNIA CODES
BUSINESS AND **PROFESSIONS CODE**
SECTION 2050-2079

2050.  The Division of Licensing shall issue one form of certificate to all physicians and surgeons licensed by the board which shall be designated as a "physician's and surgeon's certificate."

2051.  The physician's and surgeon's certificate authorizes the holder to use drugs or devices in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, and other physical and mental conditions.

2052.  (a) Notwithstanding Section 146, any person who practices or attempts to practice, or who advertises or holds himself or herself out as practicing, any system or mode of treating the sick or afflicted in this state, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other physical or mental condition of any person, without having at the time of so doing a valid, unrevoked, or unsuspended certificate as provided in this chapter or without being authorized to perform the act pursuant to a certificate obtained in accordance with some other provision of law is guilty of a public offense, punishable by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the state prison, by imprisonment in a county jail not exceeding one year, or by both the fine and either imprisonment.
   (b) Any person who conspires with or aids or abets another to commit any act described in subdivision (a) is guilty of a public offense, subject to the punishment described in that subdivision.
   (c) The remedy provided in this section shall not preclude any other remedy provided by law.

2052.5.  (a) The proposed registration program developed pursuant to subdivision (b) shall provide that, for purposes of the proposed registration program:
   (1) A physician and surgeon practices medicine in this state across state lines when that person is located outside of this state but, through the use of any medium, including an electronic medium, practices or attempts to practice, or advertises or holds himself or herself out as practicing, any system or mode of treating the sick or afflicted in this state, or diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other physical or mental condition of any person in this state.
   (2) A doctor of podiatric medicine practices podiatric medicine in this state across state lines when that person is located outside of this state but, through the use of any medium, including an electronic medium, practices or attempts to practice podiatric medicine, as defined in Section 2472, in this state.
   (3) The proposed registration program shall not apply to any

consultation described in Section 2060.

(b) The board may, at its discretion, develop a proposed registration program to permit a physician and surgeon, or a doctor of podiatric medicine, located outside this state to register with the board to practice medicine or podiatric medicine in this state across state lines.

(1) The proposed registration program shall include proposed requirements for registration, including, but not limited to, licensure in the state or country where the physician and surgeon, or the doctor of podiatric medicine, resides, and education and training requirements.

(2) The proposed registration program may also include all of the following:  (A) standards for confidentiality, format, and retention of medical records, (B) access to medical records by the board, (C) registration fees, renewal fees, delinquency fees, and replacement document fees in an amount not to exceed the actual cost of administering the registration program, and (D) provisions ensuring that enforcement and consumer education shall be integral parts of administering the registration program.

(3) The proposed registration program may also provide all of the following:

(A) All laws, rules, and regulations that govern the practice of medicine or podiatric medicine in this state, including, but not limited to, confidentiality and reporting requirements, shall apply to a physician and surgeon, or a doctor of podiatric medicine, who is registered by the board to practice medicine or podiatric medicine in this state across state lines.

(B) The board may deny an application for registration or may suspend, revoke, or otherwise discipline a registrant for any of the following:  (i) on any ground prescribed by this chapter, (ii) failure to possess or to maintain a valid license in the state where the registrant resides, or (iii) if the applicant or registrant is not licensed by the state or country in which he or she resides, and that state or country prohibits the practice of medicine or podiatric medicine from that state or country into any other state or country without a valid registration or license issued by the state or country in which the applicant or registrant practices.  Action to deny or discipline a registrant shall be taken in the manner provided for in this chapter.

(C) Any of the following shall be grounds for discipline of a registrant:  (i) to allow any person to engage in the practice of medicine or podiatric medicine in this state across state lines under his or her registration, including, but not limited to, any nurse, physician assistant, medical assistant, or other person, (ii) to fail to include his or her registration number on any invoice or other type of billing statement submitted for care or treatment provided to a patient located in this state, (iii) to practice medicine or podiatric medicine in any other state or country without meeting the legal requirements to practice medicine or podiatric medicine in that state or country, or (iv) to fail to notify the board, in a manner prescribed by the board, of any restrictions placed on his or her medical license, or podiatric medical license, in any state.

(D) A registration issued pursuant to the registration program shall automatically be suspended upon receipt of a copy, from the state that issued the license, of the surrender, revocation, suspension, or other similar type of action taken by another state or country against a medical license, or podiatric medical license, issued to a registrant.  The board shall notify the registrant in writing of the suspension and of the registrant's right to a hearing.

(4) Section 2314 shall not apply to the registration program.
(c) This section shall not be construed to authorize the board to implement a registration program for physicians and surgeons or doctors of podiatric medicine located outside this state. This section is intended to authorize the board to develop a proposed registration program to be authorized for implementation by future legislation.

2053.5. (a) Notwithstanding any other provision of law, a person who complies with the requirements of Section 2053.6 shall not be in violation of Section 2051, 2052, or 2053 unless that person does any of the following:
(1) Conducts surgery or any other procedure on another person that punctures the skin or harmfully invades the body.
(2) Administers or prescribes X-ray radiation to another person.

(3) Prescribes or administers legend drugs or controlled substances to another person.
(4) Recommends the discontinuance of legend drugs or controlled substances prescribed by an appropriately licensed practitioner.
(5) Willfully diagnoses and treats a physical or mental condition of any person under circumstances or conditions that cause or create a risk of great bodily harm, serious physical or mental illness, or death.
(6) Sets fractures.
(7) Treats lacerations or abrasions through electrotherapy.
(8) Holds out, states, indicates, advertises, or implies to a client or prospective client that he or she is a physician, a surgeon, or a physician and surgeon.
(b) A person who advertises any services that are not unlawful under Section 2051, 2052, or 2053 pursuant to subdivision (a) shall disclose in the advertisement that he or she is not licensed by the state as a healing arts practitioner.

2053.6. (a) A person who provides services pursuant to Section 2053.5 that are not unlawful under Section 2051, 2052, or 2053 shall, prior to providing those services, do the following:
(1) Disclose to the client in a written statement using plain language the following information:
(A) That he or she is not a licensed physician.
(B) That the treatment is alternative or complementary to healing arts services licensed by the state.
(C) That the services to be provided are not licensed by the state.
(D) The nature of the services to be provided.
(E) The theory of treatment upon which the services are based.
(F) His or her educational, training, experience, and other qualifications regarding the services to be provided.
(2) Obtain a written acknowledgement from the client stating that he or she has been provided with the information described in paragraph (1). The client shall be provided with a copy of the written acknowledgement, which shall be maintained by the person providing the service for three years.
(b) The information required by subdivision (a) shall be provided in a language that the client understands.
(c) Nothing in this section or in Section 2053.5 shall be construed to do the following:
(1) Affect the scope of practice of licensed physicians and

surgeons.
   (2) Limit the right of any person to seek relief for negligence or
any other civil remedy against a person providing services subject
to the requirements of this section.


2054. (a) Any person who uses in any sign, business card, or
letterhead, or, in an advertisement, the words "doctor" or
"physician," the letters or prefix "**Dr**.," the initials "M.D.," or any
other terms or letters indicating or implying that he or she is a
physician and surgeon, physician, surgeon, or practitioner under the
terms of this or any other law, or that he or she is entitled to
practice hereunder, or who represents or holds himself or herself out
as a physician and surgeon, physician, surgeon, or practitioner
under the terms of this or any other law, without having at the time
of so doing a valid, unrevoked, and unsuspended certificate as a
physician and surgeon under this chapter, is guilty of a misdemeanor.

   (b) A holder of a valid, unrevoked, and unsuspended certificate to
practice podiatric medicine may use the phrases "doctor of podiatric
medicine," "doctor of podiatry," and "podiatric doctor," or the
initials "D.P.M.," and shall not be in violation of subdivision (a).


2055. Notwithstanding any other provision of law, a person issued a
physician's and surgeon's certificate by the Medical Board of
California pursuant to the provisions of this chapter shall be
entitled to use of the initials "M.D."


2056. (a) The purpose of this section is to provide protection
against retaliation for physicians who advocate for medically
appropriate health care for their patients pursuant to Wickline v.
State of California 192 Cal. App. 3d 1630.
   (b) It is the public policy of the State of California that a
physician and surgeon be encouraged to advocate for medically
appropriate health care for his or her patients.  For purposes of
this section, "to advocate for medically appropriate health care"
means to appeal a payor's decision to deny payment for a service
pursuant to the reasonable grievance or appeal procedure established
by a medical group, independent practice association, preferred
provider organization, foundation, hospital medical staff and
governing body, or payer, or to protest a decision, policy, or
practice that the physician, consistent with that degree of learning
and skill ordinarily possessed by reputable physicians practicing
according to the applicable legal standard of care, reasonably
believes impairs the physician's ability to provide medically
appropriate health care to his or her patients.
   (c) The application and rendering by any person of a decision to
terminate an employment or other contractual relationship with, or
otherwise penalize, a physician and surgeon principally for
advocating for medically appropriate health care consistent with that
degree of learning and skill ordinarily possessed by reputable
physicians practicing according to the applicable legal standard of
care violates the public policy of this state.  No person shall
terminate, retaliate against, or otherwise penalize a physician and
surgeon for that advocacy, nor shall any person prohibit, restrict,
or in any way discourage a physician and surgeon from communicating

to a patient information in furtherance of medically appropriate health care.

   (d) This section shall not be construed to prohibit a payer from making a determination not to pay for a particular medical treatment or service, or to prohibit a medical group, independent practice association, preferred provider organization, foundation, hospital medical staff, hospital governing body acting pursuant to Section 809.05, or payer from enforcing reasonable peer review or utilization review protocols or determining whether a physician has complied with those protocols.

   (e) Medically appropriate health care in a hospital licensed pursuant to Section 1250 of the Health and Safety **Code** shall be defined by the hospital medical staff and approved by the governing body, consistent with that degree of learning and skill ordinarily possessed by reputable physicians practicing according to the applicable legal standard of care.

   (f) Nothing in this section shall be construed to prohibit the governing body of a hospital from taking disciplinary actions against a physician and surgeon as authorized by Sections 809.05, 809.4, and 809.5.

   (g) Nothing in this section shall be construed to prohibit the Medical Board of California from taking disciplinary actions against a physician and surgeon under Article 12 (commencing with Section 2220).

   (h) For purposes of this section, "person" has the same meaning as set forth in Section 2032.


2056.1.  (a) The purpose of this section is to ensure that health care service plans and their contracting entities do not enter into contracts with physicians and surgeons or other licensed health care providers that interfere with any ethical responsibility or legal right of physicians and surgeons or other licensed health care providers to discuss with their patients information relevant to their patients' health care.  It is the intent of the Legislature to guarantee that a physician and surgeon or other licensed health care provider can communicate freely with, and act as advocate for, his or her patient.

   (b) Health care service plans and their contracting entities shall not include provisions in their contracts that interfere with the ability of a physician and surgeon or other licensed health care provider to communicate with a patient regarding his or her health care, including, but not limited to, communications regarding treatment options, alternative plans, or other coverage arrangements.
  Nothing in this section shall preclude a contract provision that provides that a physician and surgeon, or other licensed health care provider, may not solicit for alternative coverage arrangements for the primary purpose of securing financial gain.

   (c) Any contractual provision inconsistent with this section shall be void and unenforceable.

   (d) For purposes of this section, "licensed health care provider" means any person licensed or certified pursuant to this division or licensed pursuant to the Osteopathic Initiative Act or the Chiropractic Initiative Act.

   (e) No communication regarding treatment options shall be represented or construed to expand or revise the scope of benefits or covered services under a health care service plan or insurance contract.

2058. (a) Nothing in this chapter prohibits service in the case of emergency, or the domestic administration of family remedies.
   (b) Nothing in this chapter shall be construed to prohibit obtaining a blood specimen by skin puncture for the purpose of performing blood glucose testing for the purposes of monitoring a minor child in accordance with paragraph (6) of subdivision (b) of Section 1241.


2060. Nothing in this chapter applies to any practitioner located outside this state, when in actual consultation, whether within this state or across state lines, with a licensed practitioner of this state, or when an invited guest of the California Medical Association or the California Podiatric Medical Association, or one of their component county societies, or of an approved medical or podiatric medical school or college for the sole purpose of engaging in professional education through lectures, clinics, or demonstrations, if he or she is, at the time of the consultation, lecture, or demonstration a licensed physician and surgeon or a licensed doctor of podiatric medicine in the state or country in which he or she resides.  This practitioner shall not open an office, appoint a place to meet patients, receive calls from patients within the limits of this state, give orders, or have ultimate authority over the care or primary diagnosis of a patient who is located within this state.


2061. Nothing in this chapter shall be construed as limiting the practice of other persons licensed, certified, or registered under any other provision of law relating to the healing arts when such person is engaged in his or her authorized and licensed practice.


2062. Testing and guidance programs in schools, colleges, and universities and physical fitness tests given by public and private agencies in connection with employment or issuance or renewal of licenses or permits do not constitute the practice of medicine within the meaning or intent of this chapter.


2063. Nothing in this chapter shall be construed so as to discriminate against any particular school of medicine or surgery, school or college of podiatric medicine, or any other treatment, nor shall it regulate, prohibit, or apply to any kind of treatment by prayer, nor interfere in any way with the practice of religion.


2064. Nothing in this chapter shall be construed to prevent a regularly matriculated student undertaking a course of professional instruction in an approved medical school, or to prevent a foreign medical student who is enrolled in an approved medical school or clinical training program in this state, or to students enrolled in a program of supervised clinical training under the direction of an

approved medical school pursuant to Section 2104, from engaging in the practice of medicine whenever and wherever prescribed as a part of his or her course of study.

2064.1. Notwithstanding the provisions of Section 2064 or any other provisions of this chapter, a regularly matriculated student undertaking a course of professional instruction in a medical school approved by the American Osteopathic Association or the Osteopathic Medical Board of California is eligible for enrollment in elective clerkships or preceptorships in any medical school or clinical training program in this state.

2064.2. No medical school or clinical training program shall deny access to elective clerkships or preceptorships in any medical school or clinical training program in this state solely on the basis that a student is enrolled in an osteopathic medical school.
   Any violation of this section or Section 2064.1 may be enjoined in an action brought in the name of the people of the State of California by the district attorney of the county in which the violation occurs, upon receipt of a complaint by an aggrieved student.

2065. Unless otherwise provided by law, no postgraduate trainee, intern, resident, postdoctoral fellow, or instructor may engage in the practice of medicine, or receive compensation therefor, or offer to engage in the practice of medicine unless he or she holds a valid, unrevoked, and unsuspended physician's and surgeon's certificate issued by the board. However, a graduate of an approved medical school, who is registered with the Division of Licensing and who is enrolled in a postgraduate training program approved by the division, may engage in the practice of medicine whenever and wherever required as a part of the program under the following conditions:
   (a) A graduate enrolled in an approved first-year postgraduate training program may so engage in the practice of medicine for a period not to exceed one year whenever and wherever required as a part of the training program, and may receive compensation for that practice.
   (b) A graduate who has completed the first year of postgraduate training may, in an approved residency or fellowship, engage in the practice of medicine whenever and wherever required as part of that residency or fellowship, and may receive compensation for that practice. The resident or fellow shall qualify for, take, and pass the next succeeding written examination for licensure given by the division, or shall qualify for and receive a physician's and surgeon's certificate by one of the other methods specified in this chapter. If the resident or fellow fails to receive a license to practice medicine under this chapter within one year from the commencement of the residency or fellowship or if the division denies his or her application for licensure, all privileges and exemptions under this section shall automatically cease.

2066. (a) Nothing in this chapter shall be construed to prohibit a foreign medical graduate from engaging in the practice of medicine

whenever and wherever required as a part of a clinical service program under the following conditions:
   (1) The clinical service is in a postgraduate training program approved by the Division of Licensing.
   (2) The graduate is registered with the division for the clinical service.
   (b) A graduate may engage in the practice of medicine under this section until the receipt of his or her physician and surgeon's certificate.  If the graduate fails to pass the examination and receive a certificate by the completion of the graduate's third year of postgraduate training or if the division denies his or her application for licensure, all privileges and exemptions under this section shall automatically cease.
   (c) Nothing in this section shall preclude a foreign medical graduate from engaging in the practice of medicine under any other exemption contained in this chapter.


2067.  An applicant for a physician's and surgeon's certificate who is found by the Division of Licensing to be deficient in the education and clinical instruction required by Sections 2089 and 2089.5 or who is required pursuant to Section 2185 to complete additional medical instruction may engage in the practice of medicine in this state in any setting approved by the Division of Licensing for the period of time prescribed by the Division of Licensing.


2068.  This chapter shall not be construed to prohibit any person from providing nutritional advice or giving advice concerning proper nutrition.  However, this section confers no authority to practice medicine or surgery or to undertake the prevention, treatment, or cure of disease, pain, injury, deformity, or physical or mental conditions or to state that any product might cure any disease, disorder, or condition in violation of any provision of law.
   For purposes of this section the terms "providing nutritional advice or giving advice concerning proper nutrition" means the giving of information as to the use and role of food and food ingredients, including dietary supplements.
   Any person in commercial practice providing nutritional advice or giving advice concerning proper nutrition shall post in an easily visible and prominent place the following statement in his or her place of business:

      "NOTICE"

   "State law allows any person to provide nutritional advice or give advice concerning proper nutrition--which is the giving of advice as to the role of food and food ingredients, including dietary supplements.  This state law does NOT confer authority to practice medicine or to undertake the diagnosis, prevention, treatment, or cure of any disease, pain, deformity, injury, or physical or mental condition and specifically does not authorize any person other than one who is a licensed health practitioner to state that any product might cure any disease, disorder, or condition."

   The notice required by this section shall not be smaller than 81/2 inches by 11 inches and shall be legibly printed with lettering no smaller than 1/2 inch in length, except the lettering of the word

```
"NOTICE" shall not be smaller than 1 inch in length.
```

2069. (a) (1) Notwithstanding any other provision of law, a medical assistant may administer medication only by intradermal, subcutaneous, or intramuscular injections and perform skin tests and additional technical supportive services upon the specific authorization and supervision of a licensed physician and surgeon or a licensed podiatrist.  A medical assistant may also perform all these tasks and services in a clinic licensed pursuant to subdivision (a) of Section 1204 of the Health and Safety Code upon the specific authorization of a physician assistant, a nurse practitioner, or a nurse-midwife.

　　(2) The supervising physician and surgeon at a clinic described in paragraph (1) may, at his or her discretion, in consultation with the nurse practitioner, nurse-midwife, or physician assistant provide written instructions to be followed by a medical assistant in the performance of tasks or supportive services.  These written instructions may provide that the supervisory function for the medical assistant for these tasks or supportive services may be delegated to the nurse practitioner, nurse-midwife, or physician assistant within the standardized procedures or protocol, and that tasks may be performed when the supervising physician and surgeon is not onsite, so long as the following apply:

　　(A) The nurse practitioner or nurse-midwife is functioning pursuant to standardized procedures, as defined by Section 2725, or protocol.  The standardized procedures or protocol shall be developed and approved by the supervising physician and surgeon, the nurse practitioner or nurse-midwife, and the facility administrator or his or her designee.

　　(B) The physician assistant is functioning pursuant to regulated services defined in Section 3502 and is approved to do so by the supervising physician or surgeon.

　　(b) As used in this section and Sections 2070 and 2071, the following definitions shall apply:

　　(1) "Medical assistant" means a person who may be unlicensed, who performs basic administrative, clerical, and technical supportive services in compliance with this section and Section 2070 for a licensed physician and surgeon or a licensed podiatrist, or group thereof, for a medical or podiatry corporation, for a physician assistant, a nurse practitioner, or a nurse-midwife as provided in subdivision (a), or for a health care service plan, who is at least 18 years of age, and who has had at least the minimum amount of hours of appropriate training pursuant to standards established by the Division of Licensing.  The medical assistant shall be issued a certificate by the training institution or instructor indicating satisfactory completion of the required training.  A copy of the certificate shall be retained as a record by each employer of the medical assistant.

　　(2) "Specific authorization" means a specific written order prepared by the supervising physician and surgeon or the supervising podiatrist, or the physician assistant, the nurse practitioner, or the nurse-midwife as provided in subdivision (a), authorizing the procedures to be performed on a patient, which shall be placed in the patient's medical record, or a standing order prepared by the supervising physician and surgeon or the supervising podiatrist, or the physician assistant, the nurse practitioner, or the nurse-midwife as provided in subdivision (a), authorizing the procedures to be performed, the duration of which shall be consistent with accepted

medical practice. A notation of the standing order shall be placed on the patient's medical record.

(3) "Supervision" means the supervision of procedures authorized by this section by the following practitioners, within the scope of their respective practices, who shall be physically present in the treatment facility during the performance of those procedures:

(A) A licensed physician and surgeon.

(B) A licensed podiatrist.

(C) A physician assistant, nurse practitioner, or nurse-midwife as provided in subdivision (a).

(4) "Technical supportive services" means simple routine medical tasks and procedures that may be safely performed by a medical assistant who has limited training and who functions under the supervision of a licensed physician and surgeon or a licensed podiatrist, or a physician assistant, a nurse practitioner, or a nurse-midwife as provided in subdivision (a).

(c) Nothing in this section shall be construed as authorizing the licensure of medical assistants. Nothing in this section shall be construed as authorizing the administration of local anesthetic agents by a medical assistant. Nothing in this section shall be construed as authorizing the division to adopt any regulations that violate the prohibitions on diagnosis or treatment in Section 2052.

(d) Notwithstanding any other provision of law, a medical assistant may not be employed for inpatient care in a licensed general acute care hospital as defined in subdivision (a) of Section 1250 of the Health and Safety **Code**.

(e) Nothing in this section shall be construed as authorizing a medical assistant to perform any clinical laboratory test or examination for which he or she is not authorized by Chapter 3 (commencing with Section 1206.5). Nothing in this section shall be construed as authorizing a nurse practitioner, nurse-midwife, or physician assistant to be a laboratory director of a clinical laboratory, as those terms are defined in paragraph (7) of subdivision (a) of Section 1206 and subdivision (a) of Section 1209.


2070. Notwithstanding any other provision of law, a medical assistant may perform venipuncture or skin puncture for the purposes of withdrawing blood upon specific authorization and under the supervision of a licensed physician and surgeon or a licensed podiatrist, or a physician assistant, a nurse practitioner, or a nurse-midwife as provided in subdivision (a) of Section 2069, if prior thereto the medical assistant has had at least the minimum amount of hours of appropriate training pursuant to standards established by the Division of Licensing. The medical assistant shall be issued a certificate by the training institution or instructor indicating satisfactory completion of the training required. A copy of the certificate shall be retained as a record by each employer of the medical assistant.


2071. The Division of Licensing shall adopt and administer regulations that establish standards for technical supportive services that may be performed by a medical assistant. Nothing in this section shall prohibit the board or division from amending or repealing regulations covering medical assistants. The board or division shall, prior to the adoption of any regulations, request

recommendations regarding these standards from appropriate public agencies, including, but not limited to, the State Board of Optometry, the Board of Registered Nursing, the Board of Vocational Nursing and Psychiatric Technicians, the Laboratory Field Services division of the State Department of Health Services, those divisions of the State Department of Education that pertain to private postsecondary education and career and vocational preparation, the Chancellor of the California Community Colleges, the California Board of Podiatric Medicine, the Physician Assistant Examining Committee, and the Physical Therapy Examining Committee.  The Division of Licensing shall also request recommendations regarding these standards from associations of medical assistants, physicians, nurses, doctors of podiatric medicine, physician assistants, physical therapists, laboratory technologists, optometrists, and others as the board or division finds appropriate, including, but not limited to, the California Optometric Association, the California Nurses Association, the California Medical Association, the California Society of Medical Assistants, the California Medical Assistants' Association, and the California Chapter of the American Physical Therapy Association.  Nothing in this section shall be construed to supersede or modify that portion of the Administrative Procedure Act which relates to the procedure for the adoption of regulations and which is set forth in Article 5 (commencing with Section 11346) of Chapter 3.5 of Part 1 of Division 3 of Title 2 of the Government **Code**.


2072.  Notwithstanding any other provision of law and subject to the provisions of the State Civil Service Act, any person who is licensed to practice medicine in any other state, who meets the requirements for application set forth in this chapter and who registers with and is approved by the Division of Licensing, may be appointed to the medical staff within a state institution and, under the supervision of a physician and surgeon licensed in this state, may engage in the practice of medicine on persons under the jurisdiction of any state institution.  Qualified physicians and surgeons licensed in this state shall not be recruited pursuant to this section.
   No person appointed pursuant to this section shall be employed in any state institution for a period in excess of two years from the date the person was first employed, and the appointment shall not be extended beyond the two-year period.  At the end of the two-year period, the physician shall have been issued a physician's and surgeon's certificate by the board in order to continue employment. Until the physician has obtained a physician's and surgeon's certificate from the board, he or she shall not engage in the practice of medicine in this state except to the extent expressly permitted herein.


2073.  Notwithstanding any other provision of law, any person who is licensed to practice medicine in any other state who meets the requirements for application set forth in this chapter, and who registers with and is approved by the Division of Licensing, may be employed on the resident medical staff within a county general hospital and, under the supervision of a physician and surgeon licensed in this state, may engage in the practice of medicine on persons within the county institution.  Employment pursuant to this section is authorized only when an adequate number of qualified resident physicians cannot be recruited from intern staffs in this

state.
   No person appointed pursuant to this section shall be employed in any county general hospital for a period in excess of two years from the date the person was first employed, and the employment shall not be extended beyond the two-year period.  At the end of the two-year period, the physician shall have been issued a physician's and surgeon's certificate by the board in order to continue as a member of the resident staff.  Until the physician has obtained a physician's and surgeon's certificate from the board, he or she shall not engage in the practice of medicine in this state except to the extent expressly permitted herein.


2074.  Nothing in this chapter shall prohibit the employment of a licensed physician and surgeon practicing in the specialty of ophthalmology by an optometrist licensed under the provisions of Chapter 7 (commencing with Section 3000) or by an optometric corporation certificated under that chapter.


2075.  The performance of acupuncture by a certified acupuncturist or other licentiate legally authorized to practice acupuncture within his or her scope of practice or a person licensed or certified in another state to perform acupuncture or other forms of traditional oriental medicine, alone or in conjunction with other forms of traditional oriental medicine, when carried on in a program affiliated with and under the jurisdiction of an approved medical school or approved acupuncture school, for the primary purpose of scientific investigation of acupuncture, shall not be in violation of this chapter, but those procedures  shall be carried on only under the supervision of a licensed physician and surgeon.
   Any medical school or approved acupuncture school conducting research into acupuncture under this section shall report to the Legislature annually on the fifth legislative day of the regular session of the Legislature concerning the results of that research, the suitability of acupuncture as a therapeutic technique, and performance standards for persons who perform acupuncture.


2076.  (a) Notwithstanding any other provision of law, a physician and surgeon who is licensed to practice medicine in another state or country shall be exempt from licensure requirements under this act while practicing medicine in this state if all of the following conditions are met:
   (1) The physician and surgeon has an oral or written agreement with a sports team to provide general or emergency medical care to the team members, coaching staff, and families traveling with the team for a specific sporting event to take place in this state.
   (2) Except as provided in Section 2058 or 2060, the physician and surgeon may not provide care or consultation to any person residing in this state, other than a person described in paragraph (1).
   (b) The exemption shall remain in force while the physician and surgeon is traveling with the team, but shall be no longer than 10 days per individual sporting event.
   (c) The executive director may grant a physician and surgeon additional time for exemption, up to 20 additional days per sporting event, upon prior request by the physician and surgeon.  The total

number of days a physician may be exempt, including additional time granted upon request, may not exceed 30 days per sporting event.
   (d) A physician and surgeon who is exempt from licensure requirements under this section is not authorized to practice medicine at a health care clinic or facility, including an acute care facility.


2076.5.  (a) Notwithstanding any other provision of law, a physician and surgeon lawfully practicing medicine in another state or country may be exempted from licensure while practicing medicine in this state under the following conditions:
   (1) The physician and surgeon has been invited by the United States Olympic Committee to provide medical services at training sites designated by the olympic training center or to provide medical services at an event in this state sanctioned by the committee.
   (2) The United States Olympic Committee certifies to the board the name of the physician and surgeon, the state or country of the applicant's licensure, and the dates within which the applicant has been invited to provide medical services.
   (3) The physician and surgeon's practice is limited to that required by the United States Olympic Committee.  Those medical services shall be within the area of the physician's and surgeon's competence and shall only be provided to athletes or team personnel registered to train at the olympic training center or registered to compete in an event conducted under the sanction of the United States Olympic Committee.
   (b) The exemption provided in this section shall remain in force while the holder is providing medical services at the invitation of the United States Olympic Committee and only during the time certified to the board, but in no event longer than 90 days.
   (c) Notwithstanding any other provision of law, the official team manager who is responsible for any team member participating in events at the invitation of the United States Olympic Committee in California may give consent to the furnishing of hospital, medical, and surgical care to a minor who is a team member and that consent shall not be subject to disaffirmance because of minority.  The consent of the parent, or parents, of that person shall not be necessary in order to authorize hospital, medical, and surgical care.


2077.  (a) Notwithstanding any other provision of law, a physician and surgeon may delegate various orthopaedic medical tasks to individuals who have completed training as orthopaedic physician assistants and who are working under the supervision and direction of a physician and surgeon.  Those assistants who perform only those tasks which may under existing law be so delegated shall not be required to be licensed as physician assistants under Chapter 7.7 (commencing with Section 3500).
   (b) As used in this section, "orthopaedic physician assistant" means an individual who meets all of the following requirements:
   (1) Successful completion of training as an orthopaedic physician assistant from an approved California orthopaedic physician assistant's program in any year between 1971 and 1974, inclusive.  As used in this section, "approved California orthopaedic physician assistant's program" means an orthopaedic physician assistant's course of training that has been accredited by the American Medical Association Council on Medical Education.

 (2) Continuous experience as an orthopaedic physician assistant upon completion of the program described in paragraph (1), which may include experience in the United States Armed Services.
 (3) Successful fulfillment of the certification requirements of the National Board for Certification of Orthopaedic Physician Assistants.
 (c) Nothing in this section shall authorize any individual to hold himself or herself out as a licensed physician assistant in violation of Section 3503.


2078. (a) As used in this section, "DMSO" means dimethyl sulfoxide.

 (b) A licensed physician and surgeon shall, prior to treating a patient with a DMSO preparation, inform the patient in writing if DMSO has not been approved as a treatment or cure by the Food and Drug Administration for the disorder for which it is being prescribed.
 (c) If DMSO is prescribed for any purpose other than for those purposes approved pursuant to Section 111550 of the Health and Safety **Code**, informed consent shall first be obtained from the patient.
 As used in this subdivision, "informed consent" means the authorization given by the patient for treatment with DMSO after each of the following conditions have been satisfied:
 (1) The patient is informed verbally, in nontechnical terms, about all of the following:
 (A) A description of treatment procedures to be used in administering DMSO.
 (B) A description of any attendant discomfort and risks to the patient that can be reasonably expected from treatment with DMSO.
 (C) An explanation of any benefits to the patient that can be reasonably expected.
 (D) An explanation of any appropriate alternative procedures, drugs, or devices that might be advantageous to the patient, and their relative risks and benefits.
 (E) An offer to answer any inquiries concerning the treatment of the procedures involved.
 (2) The patient signs and dates a written consent form acknowledging that disclosure has been given pursuant to paragraph (1), and acknowledging consent to treatment with DMSO pursuant to this section. The patient shall be provided with a copy of the signed and dated form.
 (d) An organized health care system may require that the administration of DMSO within the organized health care system be performed pursuant to standardized procedures developed by the organized health care system through collaboration among administrators and health professionals.


2079. (a) A physician and surgeon who desires to administer general anesthesia in the office of a dentist pursuant to Section 1646.9, shall provide the Medical Board of California with a copy of the application submitted to the Dental Board of California pursuant to subdivision (b) of Section 1646.9 and a fee established by the board not to exceed the costs of processing the application as provided in this section.
 (b) The Medical Board of California shall review the information submitted and take action as follows:

   (1) Inform the Dental Board of California whether the physician and surgeon has a current license in good standing to practice medicine in this state.

   (2) Verify whether the applicant has successfully completed a postgraduate residency training program in anesthesiology and whether the program has been recognized by the American Council on Graduate Medical Education.

   (3) Inform the Dental Board of California whether the Medical Board of California has determined that the applicant has successfully completed the postgraduate residency training program in anesthesiology recognized by the American Council on Graduate Medicine.

   (c) This section shall remain in effect until January 1, 2007, and as of that date is repealed, unless a later enacted statute, which is enacted on or before January 1, 2007, deletes or extends that date.