UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEALTHY SOLUTIONS, L.L.C., et al., <br><br> Defendants. <br><br> CAPPSEALS, INC., <br><br> Plaintiff-in-Intervention, <br><br> v. <br><br> HEALTHY SOLUTIONS, L.L.C., d/b/a DIRECT BUSINESS CONCEPTS; ITV DIRECT, INC.; and DIRECT FULFILLMENT, LLC, <br><br> Intervenor-Defendants. | Civil Action No. 04-CV-10421-JLT |

**MEMORANDUM IN SUPPORT OF PLAINTIFF-IN-INTERVENTION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff-in-Intervention Cappseals, Inc.'s (hereinafter "Cappseals") sole interest in this litigation is to be paid for a large number of goods it manufactured and shipped to plaintiff ITV Direct, Inc. (hereinafter "ITV Direct"), which has refused to pay for these goods even though it has re-sold a significant number, perhaps all, at a gross profit roughly ten to fifteen (10 – 15) times the amount owed to Cappseals for each good.

ITV Direct then used these ill-gotten profits to fund litigation against defendant Healthy Solutions, LLC, d/b/a Direct Business Concepts (hereinafter "DBC"). That litigation has nothing to do with the goods manufactured by Cappseals. The dispute between ITV Direct and DBC

concerns an alleged oral modification of a distribution agreement between the parties (purportedly giving ITV Direct rights to a trademark, a domain name, and to a percentage of profits derived from website sales) and to representations made by both parties in connection with marketing the goods at issue. This latter issue is central to a separate lawsuit recently filed by the Federal Trade Commission (hereinafter "FTC") against both ITV Direct and DBC, as well as their respective affiliates and principals. The FTC lawsuit further alleges that ITV Direct has made false or misleading statements when marketing an unrelated product and that ITV Direct inflated its sales by enrolling unsuspecting consumers into its auto-billing and auto-shipment programs. Tellingly, Cappseals is not a party to the FTC lawsuit.

None of these claims and allegations have any relationship to Cappseals' claims for breach of contract, action on an account, account stated, or reach and apply. There is no dispute in this case that the goods are conforming, that ITV Direct received them, and that the above sums are due and owing. In short, there are no allegations suggesting non-performance by Cappseals relating to the goods at issue. As a result, ITV Direct's assertion that it is entitled to withhold the price of these goods as a possible set-off for amounts it may or may not receive at trial from DBC is without merit. No such right to set-off exists under Massachusetts law where, as in this case, the dispute between parties to a distribution agreement does not concern the goods themselves.

Based upon the undisputed facts in this case, Cappseals is entitled to judgment in its favor and against DBC in the sum of $890,182.00 on its claims for breach of contract, action on an account, and account stated (the amount due and owing for the goods shipped to ITV Direct), and Cappseals is entitled to recover this sum from ITV Direct pursuant to Massachusetts' reach and apply statute.

## II.     FACTS

In or around August 2003, Defendant/Intervenor-Defendant DBC, a California limited liability company, began issuing purchase orders to Cappseals, a Washington corporation, on a weekly or near weekly basis requesting that Cappseals manufacture and bottle certain quantities of a product known as Supreme Greens with MSM (hereinafter "Supreme Greens") for $2.95 per bottle.  Plaintiff-In-Intervention's Concise Statement of Material Facts, ¶ 1.[1]  On or about November 11, 2003, DBC issued a standing purchase order to Cappseals requesting that Cappseals manufacture 50,000 bottles of Supreme Greens per week for shipment to Direct Fulfillment, LLC (hereinafter "Direct Fulfillment"), in Beverly, Massachusetts, an affiliate of DBC's distributor ITV Direct, a Massachusetts corporation (Direct Fulfillment  and ITV Direct are collectively referred to herein as "ITV Direct").[2]  CS ¶ 2.

Between December 29, 2003 and February 5, 2004, Cappseals made six weekly shipments to ITV Direct containing a total of approximately 303,644 bottles of Supreme Greens. CS ¶ 3.  DBC owes Cappseals approximately $890,182.09 for these goods, the entire sum of which is past due and remains unpaid.  DBC has acknowledged to Cappseals that it has an outstanding balance on its account in the amount of $890,182.09, but asserts that it is without resources to pay this sum because of ITV Direct's refusal to pay DBC for these same goods. CS ¶ 4.

---

[1] Citations to Plaintiff-In-Intervention's Concise Statement of Material Facts shall be referred to as "CS ¶ __".
[2] For all intents and purposes ITV Direct and Direct Fulfillment are one and the same company.  Both use the same address (the address the goods were shipped to is the same as the address provided for ITV Direct for billing purposes), and more importantly, the goods were shipped to Direct Fulfillment in order to fill purchase orders from ITV Direct.  *Compare* Exhibit A to Affidavit of Harry N. Anderson III in Support of Cappseals, Inc.'s Motion for Partial Summary Judgment to Exhibit E to DBC's Counterclaim Against ITV filed on April 19, 2004.

For each of the six weekly shipments of Supreme Greens to ITV Direct by Cappseals, DBC issued an invoice to ITV Direct expressly noting the specific date and quantity of goods shipped to ITV Direct by Cappseals.  The total amount due and owing to DBC by ITV Direct pursuant to these six invoices for the 303,644 bottles of Supreme Greens goods shipped by Cappseals is $1,821,864.  CS ¶ 5.

Neither DBC nor ITV Direct has ever notified Cappseals of any non-conformity relating to the 303,644 bottles of Supreme Greens shipped to ITV Direct.  CS ¶ 6.  Likewise, no pleading or affidavit filed in this action contains any assertion of non-conformity relating to the 303,644 bottles of Supreme Greens shipped to ITV Direct by Cappseals. CS ¶ 7.

### III.    ARGUMENT

**<u>Cappseals is Entitled to Recover the Debt Owed to it by Defendant DBC from Plaintiff ITV Direct Pursuant to Massachusetts' Reach and Apply Statute.</u>**

Pursuant to M.G.L. c. 214, § 3(6), a creditor can reach and apply, in payment of the amount owed to it by a debtor, "any property, right, title or interest, legal or equitable," of the debtor "which cannot be reached to be attached or taken on execution . . . if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court." This includes a debtor's contractual right to money or property, as long as the creditor has sufficient evidence to prove the debtor's contractual right in court.  *Berman v. Caroll*, 1 Mass. L. Rep. 507, 1994 Mass. Super. LEXIS 372 (Mass. Sup. Ct. 1994).  (Attached hereto as Exhibit A.)

In *Berman*, two attorneys sought payment on a promissory note made in their favor by a former client for fees incurred in relation to a partnership dispute.  The former client and the adverse partner resolved the dispute by entering into a settlement agreement that obligated the adverse partner to transfer certain partnership assets to the former client.  This transfer never occurred, meaning that the former client had only a contractual right to the assets that could not

4

be attached. In order to reach these assets, the attorneys first obtained a default judgment against their former client for the amount due and owing under the note and then brought an action against the former partner under M.G.L. c. 214, § 3(6).

At trial, a jury found that the former client was entitled to specific performance under the terms of the settlement agreement or, in the alternative, that the adverse partner owed the former client $686,570 in damages for breach of the settlement agreement. Based on these findings of fact, the court ordered the adverse partner to either transfer the subject assets to the client, which could then be levied by the attorneys in satisfaction of the default judgment, or to pay the attorneys the full amount of their default judgment against the former client.

Following the logic of *Berman*, Cappseals is entitled to an order from this Court pursuant to M.G.L. c. 214, § 3(6) requiring ITV Direct to pay Cappseals the amount owed to it by DBC because, based upon the undisputed facts in this case: (1) Cappseals is entitled to judgment in its favor and against DBC on its claims for breach of contract, action on an account, and account stated relating to the 303,644 goods manufactured by Cappseals and shipped to ITV Direct and (2) DBC is entitled to judgment against ITV Direct on an action for price under the Uniform Commercial Code, as adopted by Massachusetts.

    **1.**    **Defendant DBC owes Cappseals the sum of $890,182.09.**

For the reasons stated below, Cappseals is entitled to judgment in its favor and against defendant DBC on Cappseals' claims for breach of contract, action on an account, and account stated in the sum of $890,182.09, plus statutory interest and cost and disbursements incurred herein.

There is no question of fact that on or about November 11, 2003, DBC issued a standing purchase order to Cappseals requesting that Cappseals manufacture 50,000 bottles of Supreme Greens per week for shipment to DBC's distributor, ITV Direct in Beverly, Massachusetts. CS

5

¶ 2. Pursuant to this standing order, Cappseals made six weekly shipments to ITV Direct between December 29, 2003 and February 5, 2004, containing a total of 303,644 bottles of Supreme Greens. CS ¶ 3. The amount due and owing to Cappseals by DBC for these goods is $890,182.09, the entire sum of which is past due and remains unpaid. CS ¶ 4.

Accordingly, DBC is in default and has breached its contractual obligations to pay Cappseals for these goods. Cappseals is entitled to judgment in its favor and against DBC on Cappseals' claims for breach of contract and action on account in the sum of $890,182.09, plus statutory interest and costs and disbursements incurred herein.

In addition, DBC has acknowledged to Cappseals that it has an outstanding and unpaid balance on its account in the sum of $890,182.09. CS ¶ 4. Because DBC has failed to pay any of this amount due, Cappseals is also entitled to judgment in its favor and against DBC on Cappseals' claim for account stated in the sum of $890,182.09, plus statutory interest and costs and disbursements incurred herein.

## 2. Plaintiff ITV Direct owes defendant DBC $1,821,864.

For the reasons stated below, DBC is entitled to judgment in its favor and against ITV Direct on an action for price in the sum of $1,821,864 for the goods shipped to it by Cappseals and which it has continued to sell throughout the course of this litigation.

Under Massachusetts law, a buyer of goods such as ITV Direct "*must* pay at the contract rate for all goods accepted." M.G.L. c. 106, § 2-607(1) (emphasis added). Where the buyer fails to pay the price for accepted goods when it becomes due, the seller's remedy is an action for price. M.G.L. c. 106, § 2-709(1).

In this case, there is no dispute that the 303,644 bottles of Supreme Greens manufactured by Cappseals were shipped to and accepted by ITV Direct in Beverly, Massachusetts. CS ¶ 3. There is also no dispute regarding the amount due and owing for these goods. For each of the six

shipments made by Cappseals between December 29, 2003 and February 5, 2004, DBC issued an invoice to ITV Direct expressly noting the specific date and quantity of goods shipped to ITV Direct by Cappseals. The total amount due and owing to DBC by ITV Direct pursuant to these six invoices for the 303,644 bottles of Supreme Greens goods shipped by Cappseals is $1,821,864. CS ¶ 6. Finally, it is undisputed that ITV Direct has refused to pay for these goods. CS ¶ 8.

Therefore, because there is no question of fact that ITV Direct has accepted the goods shipped to it by Cappseals and that it has failed to pay for the price when due, DBC is entitled to judgment in its favor and against ITV Direct in the sum of at least $1,821,864 pursuant to M.G.L. c. 106, §§ 2-607(1) & 709(1).

### 3.   ITV Direct is not entitled to a set-off.

Cappseals anticipates that ITV Direct will argue (as it has in other pleadings) that it is justified under UCC 2-717 to withhold the sums due and owing to DBC for the goods shipped by Cappseals as a potential set-off against any damages it recovers against DBC at trial. In light of the claims and allegations being made by ITV Direct against DBC in this case, ITV Direct has no such right to set-off under Massachusetts law.

Pursuant to M.G.L. c. 106, § 2-717, the "buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." As an initial matter, there is no evidence in the record that ITV Direct ever provided notice to DBC of its intention to deduct from the price of the goods any alleged damages resulting from any breach of the agreement. Without such notice, ITV Direct is not entitled to withhold payment as a potential set-off. *Gutor International AG. v. Raymond Packer Co.,* 493 F.2d 938, 944 (1st Cir. 1974).

Even assuming for the sake of argument that ITV Direct is able to submit credible evidence that notice was provided to DBC as required, UCC § 2-717 still does not apply to the dispute between ITV Direct and DBC because, as it is described in ITV Direct's own pleadings, this dispute does not relate to the goods at issue. No pleading or affidavit filed in this action contains any assertion of non-conformity relating to the 303,644 bottles of Supreme Greens shipped to ITV Direct by Cappseals. CS ¶ 7. Further, neither DBC nor ITV Direct has ever notified Cappseals of any non-conformity relating to the 303,644 bottles of Supreme Greens shipped to ITV Direct. CS ¶ 6.

Because non-conformity is not an issue in this case, ITV Direct would only be entitled to a set-off if UCC § 2-717 was a general set-off provision applicable to all disputes between contracting parties. However, under Massachusetts law, UCC § 2-717 "is *not* a general set-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer." *C.R. Bard, Inc. v. Medical Electronics Corp.*, 529 F. Supp. 1382, 1388 (D. Mass. 1982) (emphasis added). Rather, "[d]amages are deductible only against the price still due and owing under the same contract." *Id*. According to the Supreme Judicial Court of Massachusetts, it is "well settled" under Massachusetts law that a buyer's "obligation to pay for goods tendered and accepted does not arise under the 'same contract' as the alleged breach of an exclusive dealing or distributorship arrangement by the seller." *Travenol Laboratories, Inc. v. Zotal, Ltd*, 394 Mass. 95, 99, 474 N.E.2d 1070, 1073 (1985). That is, even if the basic relationship between a buyer and seller is defined by a distribution agreement, as in this case, it is the specific requests made for specific quantities of goods (purchase orders) that constitute the "contract" giving rise to a buyer's obligation to pay for the goods, not the

distribution agreement itself. This logic is reflected in the fact that DBC issued specific invoices to ITV Direct for each of the six shipments of Supreme Greens it accepted.

Moreover, even if the distribution agreement were to be considered the operative document giving rise to ITV Direct's payment obligations to DBC, ITV Direct is still not entitled to a set-off because the asserted breach does not go to the "essence" of the transaction -- the conformity of the goods. *C.R. Bard, Inc.,* 529 F. Supp. at 1388 (in order for a buyer to invoke U.C.C. § 2-717, the asserted breach must go to the essence of the transaction under which the seller seeks to recover his price). ITV Direct "should not be able, by asserting a remote breach of contract, to delay payment for goods accepted." *Id. See also, Computer Systems Engineering, Inc. v. Qantel Corp.*, 571 F. Supp 1379, 1381 (D. Mass. 1983) (a buyer should not be allowed to delay payment for goods accepted by asserting "a remote breach of contract" relating largely to termination of the distributorship agreement where "there is no hint that the seller acted improperly in any way regarding the actual sale of the goods").

Again, there is no hint in this case that DBC or Cappseals acted improperly in any way regarding the actual sale of Supreme Greens to ITV Direct. No notice of any non-conformity has been provided, and no allegation of any non-conformity exists in any pleading submitted in this case. Instead, ITV Direct has made claims against DBC for:

> (1) <u>Breach of contract</u>, based upon allegations that DBC failed to pay royalties for sales by DBC through its Web site, that DBC failed to withdraw its application for registration of the trademarks "Supreme Greens with MSM, and that DBC failed to assign the domain name "supremegreens.com" to ITV Direct (Amended Complaint, ¶¶ 38 –42);

> (2) <u>Conversion,</u> based upon the same allegations made in support of ITV

9

        Direct's breach of contract claim (Amended Complaint, ¶¶ 43 – 45);

(3)    <u>Fraud in the inducement,</u> based upon allegations that DBC fraudulently represented that the product spokesman, Mr. Guerrero, was a doctor and OMD, and that DBC fraudulently represented that they possessed reliable scientific evidence for the health claims made by Guerrero concerning Supreme Greens (Amended Complaint, ¶¶ 46 – 50);

(4)    <u>Misrepresentation</u>, based upon allegations that DBC fraudulently represented that ITV Direct would have exclusive rights to the Supreme Greens trademark and domain name and that DBC would pay ITV Direct royalties for web site sales (Amended Complaint, ¶¶ 52 – 57);

(5)    <u>Indemnification,</u> based upon allegations that DBC must hold ITV Direct harmless from the lawsuit filed by the Federal Trade Commission (Amended Complaint, ¶¶ 58 – 63);

(6)    <u>Violation of M.G.L. c. 93A (unfair trade practices),</u> based upon the above allegations (Amended Complaint, ¶¶ 64 – 67);

(7)    <u>Accounting/appointment of receiver,</u> based upon the allegation that DBC had a obligation to pay ITV Direct royalties for web site sales (Amended Complaint, ¶¶ 68 – 71); and

(8)    <u>Declaratory relief,</u> based upon the allegation the ITV Direct is the exclusive owner of the Supreme Greens' trademark and domain name (Amended Complaint, ¶¶ 72 – 77).

Based upon ITV Direct's own allegations, most of its claims are based solely upon an alleged oral modification to the distribution agreement rather than upon any applicable language contained within the written distribution agreement. These allegations include ITV Direct's claims for breach of contract, conversion, misrepresentation, violation of M.G.L. c. 93A, accounting/appointment of receiver, and declaratory relief. Even if it is assumed that a modification of the distribution agreement actually took place, all of these claims relate to a trademark, a domain name, and royalties from web site sales. No straight-faced argument can be made asserting that these alleged breaches "go to the essence of the transaction" giving rise to IV Direct's payment obligation to DBC (i.e., ITV Direct's ordering of and acceptance of 303,644 bottles of Supreme Greens). Therefore, ITV Direct is not entitled to a set-off under UCC 2-717 for these claims.

With regard to ITV Direct's claim for fraud in the inducement, ITV Direct has previously argued that if it succeeds on its claim it would be excused from *any* obligation to pay DBC for the Supreme Greens it has accepted and re-sold because fraud in the inducement renders a contract voidable. Plaintiff's Opposition to Defendants' Motion for a Temporary Restraining Order, pp. 14-15. This argument is a red-herring. In its amended complaint, ITV Direct specifically chose to seek damages resulting from any proven fraud, not rescission of the distribution agreement. Amended Complaint, ¶ 51 ("As a result of the defendants misrepresentations and fraud, ITV has sustained *damage*[.]" Emphasis added); Amended Complaint, p. 13 ("WHEREFORE, the plaintiff, ITV Direct, Inc., requests this Court to: a. Determine the *damages* sustained by the plaintiff and enter judgment against the defendants jointly and severally in that amount together with interest and costs[.]" Emphasis added).

Rescission is simply not a claim being made by ITV Direct, even in the alternative. This argument is disingenuous at best.

Even as a damages claim, however, ITV Direct's claim for fraud is still not a "breach of the contract" as is required by the express language of UCC 2-717 to justify a set-off. Nowhere in the distribution agreement can one find any representations regarding Mr. Guerrero or clinical studies. Even if these representations were a part of the distribution agreement, statements by Mr. Guerrero that he was a doctor and that he had clinical studies regarding Supreme Greens have no relationship to ITV Direct's acceptance and re-sale of 303,644 bottles of Supreme Greens at a substantial profit. Again, it is well settled in Massachusetts that a buyer's "obligation to pay for goods tendered and accepted does not arise under the 'same contract' as the alleged breach of an exclusive dealing or distributorship arrangement by the seller." *Travenol Laboratories, Inc.*, 392 Mass. at 99, 474 N.E.2d at 1073 (1985).

Finally, ITV Direct's claim for indemnification cannot support a set-off under UCC § 2-717 and, like its fraud claim, is largely a red-herring. First, there is no indemnity language in the distribution agreement making DBC liable for claims relating to the marketing and sale of Supreme Greens. In fact, just the opposite is true. According to the express terms of the distribution agreement, ITV Direct must indemnify DBC for "claims . . . arising out of or relating to Distributor's [ITV Direct's] marketing, sales and distribution efforts pertaining to the Product." DBC's potential liability for indemnity relates only to "claims . . . arising out of or relating to the Product as manufactured, its contents or impact of the health of the person." Because the FTC lawsuit is solely related to ITV Direct and DBC's efforts to market Supreme Greens, ITV Direct has no basis to claim indemnity.

Second, even if the FTC lawsuit were related to the actual goods at issue (as opposed to alleged misrepresentations made in connection with efforts to market the goods), indemnity would only be triggered at the time judgment is entered against ITV Direct. As such, ITV Direct's claim for indemnity cannot even be adjudicated within the context of this litigation because it is necessarily dependant upon a separate action. It is certainly not a cause of action that goes to the essence of the sales transaction giving rise to ITV Direct's duty to pay as is required by Massachusetts law.

In sum, no allegation or claim made by ITV Direct in this matter relates to the goods shipped to it by Cappseals. As a result, ITV Direct has no legal basis to refuse to pay for the goods it has accepted. DBC is entitled to judgment against ITV Direct on an action for the price in the sum of $1,821,864.

**4.     Cappseals is entitled to reach and apply the debt owed by ITV Direct to DBC in satisfaction of DBC's debt to Cappseals.**

Based upon the above, Cappseals is entitled to an order from the court requiring ITV Direct to pay Cappseals the $890,182.09 debt owed it by DBC for the 303,644 bottles of Supreme Greens shipped to ITV Direct by Cappseals.

## IV.  CONCLUSION

Based upon the undisputed facts in this case, Cappseals is entitled to judgment in its favor and against DBC in the sum of $890,182.09 (the amount due and owing for the goods shipped to plaintiff) and is entitled to recover this sum from ITV Direct pursuant to Massachusetts' "reach and apply" statute.

Respectfully submitted,
CAPPSEALS, INC.
By its attorney,

/s/ Daniel J. Kelly
Daniel J. Kelly
BBO# 553926
dkelly@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110

DATED:  June 24, 2004                    (617) 345-7000