**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ITV DIRECT, INC.,<br>    Plaintiff,<br><br>v.<br><br>HEALTHY SOLUTIONS, LLC, et al.,<br>    Defendants.<br><br>RELATED CASES | CIVIL ACTION NO. 04-CV-10421-JLT |

**ITV DIRECT'S OPPOSITION TO CAPPSEALS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, ITV Direct, Inc. ("ITV" or "Plaintiff"), submits this opposition to Plaintiff-in-Intervenor Cappseal, Inc.'s ("Cappseals") Motion for Partial Summary Judgment.  For the reasons set forth below, Cappseals has failed to show that it is entitled to the relief that it seeks, and its motion must be denied.

**PRELIMINARY STATEMENT**

Cappseals cannot prevail on its motion at this stage of the proceedings because there are numerous genuine issues of fact precluding summary judgment.  Specifically, in its status solely as a reach and apply defendant, ITV cannot be held liable to Cappseals, with which Cappseals admits it had no direct relationship, unless and until Cappseals establishes that there is a "debt" owed by defendant Healthy Solutions LLC ("Healthy Solutions").  On July 7, 2004, Healthy Solutions opposed Cappseals' motion for partial summary judgment against it and raised substantial factual issues regarding its obligation to pay for products allegedly delivered on its behalf.  These factual issues preclude the entry of a reach and apply judgment against ITV.

Moreover, even if Cappseals could establish that there were no genuine issues of fact as to the debt between itself and Healthy Solutions, Cappseals cannot establish as a matter of law

BO1 15653829.1

that Healthy Solutions will prevail in obtaining a judgment against ITV for alleged amounts owed under the Distribution Agreement between ITV and Healthy Solutions. As set forth in ITV's complaint against Healthy Solutions, ITV was defrauded in connection with its entry into the Distribution Agreement, and Healthy Solutions agreed to indemnify and hold ITV harmless in connection with any health claims made by its president defendant Alejandro Guerrero ("Guerrero"). These claims, which arise under and are inextricably intertwined with the Distribution Agreement, cannot be separated from the delivery of product under the Distribution Agreement. Unlike the cases cited by Cappseals, in this case the Distribution Agreement identified the price and type of product to be delivered and all of the terms governing the sale, and was also expressly incorporated into every purchase order. Thus, contrary to the argument advanced by Cappseals, there was no separation of the purchase orders and invoices from the Distribution Agreement.

None of the cases cited by Cappseals in support of its motion for partial summary judgment against ITV involve an attempt by an unrelated third party to reach and apply an undetermined possibility of recovery by another party. Here, the value of any claim that Healthy Solutions might have against ITV, i.e. its "property", must be offset by any recovery that ITV may have against Healthy Solutions for its fraud and indemnification obligations to ITV. Only when the total amount of recovery, if any, is determined, does the ability to reach and apply that amount arise. That determination can only be made after a trial on the merits of the entirety of the claims, precluding summary judgment at this early stage.

## I.    STATEMENT OF FACTS[1]

ITV is in the business of marketing and distributing various healthcare related products to individual and retail customers through the utilization of infomercials. To this day, a substantial portion of ITV's revenue is derived from telephone orders for products that are advertised on 30-minute infomercials that are produced and owned by ITV or its affiliated companies. (Statement of Facts, ¶ 1.)

In or about early 2003, defendants Michael Howell ("Howell") and Greg Geremesz ("Geremesz") advised ITV's sales manager that their friend and business associate, Guerrero, had recently developed an organic dietary supplement known as "Supreme Greens with MSM" ("Supreme Greens" or "Product") and suggested that there be a meeting with ITV's principals to discuss ITV developing a market for the new product. (Statement of Facts ¶2.) Over the following months, ITV's principals met with Guerrero, Howell, and Geremesz to explore whether a financial commitment by ITV was possible. The Defendants lacked the necessary capital to successfully launch the product on their own and looked to ITV to contribute the millions of dollars necessary for production of one or more infomercials, test-marketing, and the purchase of media airtime. (Statement of Facts ¶3.) In consideration for ITV's investment, the Defendants agreed that ITV would, among other things, own the trademark rights to "Supreme Greens with MSM." (Id.)

During these meetings, Guerrero repeatedly referred to himself as a doctor and stated that he operated an active clinic with a number of patients. He also referred to himself as an OMD, which is a designation under California law that requires a medical degree or a doctorate degree from an accredited university in the State of California. (Statement of Facts, ¶4.) Guerrero also

---

[1] ITV has filed a separate Statement of Material Facts in Dispute ("Statement of Facts"), which includes all citations to the record. Citations in this Opposition will be to the relevant paragraphs of the Statement of Facts.

3

made numerous health claims about the Product, which he claimed were supported by documentary and clinical evidence. (Id.)

On April 4, 2003, ITV entered into an exclusive "Distribution Agreement" with Healthy Solutions for the manufacture and distribution of Supreme Greens ("Distribution Agreement"). (Statement of Facts, ¶5.) The Distribution Agreement provided that ITV would produce an infomercial for the Product featuring Guerrero, and that ITV would be the exclusive distributor of the Product in connection with the infomercial. (Id.) The Distribution Agreement identified the product that would be manufactured and its price, and included, among others, the terms of sale, terms of payment, and product warranties. (Id., ¶6.) In addition, the Distribution Agreement specifically contemplated that purchase orders would be issued in accordance with its terms, and stated that all purchase orders would be "placed under the terms and conditions of the Distributor Agreement between Distributor and Manufacturer." (Id.) Thus, each purchase order expressly incorporated all of the terms and conditions of the Distribution Agreement. (Id.)

Between April 4, 2003 and February 6, 2004, ITV issued purchase orders to Healthy Solutions for the purchase of the Supreme Greens with MSM product in varying quantities. (Id., ¶7.) In order to promote the sale of the Product, ITV expended millions of dollars on advertising for the product, primarily in connection with the production and airing of two separate infomercials featuring Guerrero. ITV also developed the logo for Supreme Greens, and with the encouragement and approval of Healthy Solutions, filed an application for federal registration of the name "Supreme Greens with MSM". (Id., ¶8.) All of the recommended dosage information and information regarding the contents of the product was provided by Defendants and added to the label designed by ITV. (Id.)

ITV's only relationship in connection with its purchases of Supreme Greens was with Healthy Solutions. (Statement of Facts, ¶9.) At no time did ITV have any relationship, contractual or otherwise, with Cappseals. (Id.) ITV never spoke to anyone at Cappseals, never ordered any product from Cappseals, never received an invoice from Cappseals, never corresponded in any way with Cappseals, and never paid any money to Cappseals. (Id.) Nothing in the Distribution Agreement or in any other agreement specified any particular manufacturer of the product other than Healthy Solutions. (Statement of Facts, ¶10.) Healthy Solutions' decision to order product from Cappseals was entirely its own and was never discussed or approved by ITV. (Id.)

In the infomercial and in other media, Guerrero states that he is a doctor and operates a clinic in California, where he has cancer patients, AIDS patients, and patients with MS, diabetes and Parkinson's disease. (Statement of Facts, ¶11.) He also made numerous controversial claims regarding the health benefits of Supreme Greens. (Id.) In support of these claims, Guerrero represented that he conducted a study of over 200 of patients through his clinic, all of whom were diagnosed as terminally ill, and that all but eight of these patients are still alive. (Id.) In addition, Guerrero represented that he received a doctorate degree in Traditional Chinese Medicine from the Samra University in California, and that he was an OMD (doctor of oriental medicine) in California. (Id.) On several occasions, Guerrero confirmed to ITV that he possessed competent and reliable documentary and clinical support for each and every representation he made in the infomercials. (Id.)

In late 2003, ITV learned that Healthy Solutions had filed a competing trademark application for federal registration of the name "Supreme Greens with MSM," in violation of the parties' agreement that the trademark would belong to ITV. The Defendants assured ITV that it

5

had been filed to protect the trademark pending the filing of ITV's application, and that they would withdraw the application. (Id., ¶12.)

Based solely on the efforts of ITV, the initial infomercial was successful and the Defendants received millions of dollars in product orders from ITV. These orders, however, did not generate sufficient income for ITV to recoup its tremendous investment in marketing the product. (Statement of Facts, ¶13.) As a result, in early 2004, the parties orally modified the prior Distribution Agreement, and agreed, among other things, that the Defendants would (i) pay royalties to ITV for their direct sales of Supreme Greens with MSM over the Internet, (ii) transfer to ITV of ownership of the website address "www.supremegreens.com", and (iii) withdraw Healthy Solutions' competing trademark application. (Id.) Relying on this modified agreement, ITV expended well in excess of a million dollars on additional marketing and advertising for the product which it has yet to recoup. (Id., ¶14.) In addition, ITV forwarded a check in an additional amount of $7,500 to confirm Healthy Solution's agreement to transfer ownership of the website, which Healthy Solutions cashed, confirming the agreement. (Id.)

In February 2004, ITV learned that, despite the modified agreement, payment for the website and ITV's continued expenditures on marketing and advertising, Healthy Solutions had failed to provide an accounting of its substantial Internet sales to ITV, failed to pay royalties due to ITV for direct sales of the Product, and had failed to withdraw its trademark application as promised. (Statement of Facts, ¶15.) Healthy Solutions also sought to establish relationships with other distributors and media production companies, despite the exclusivity provision in the Distribution Agreement. (Id.)

In the Distribution Agreement, Healthy Solutions agreed to indemnify and hold harmless ITV and its officers, directors, employees, shareholders and affiliates from any and all claims,

lawsuits, actions and proceedings in court or by any governmental unit, relating to the manufacture and content of Supreme Greens, and claims made by Guerrero concerning the claimed impact the Product would have on the health of users of the Product.  (Statement of Facts, ¶16.)

Within the last several months, ITV has been contacted by both the United States Food and Drug Administration (FDA) and the Federal Trade Commission (FTC) concerning the health claims that Guerrero has made in connection with Supreme Greens, both in the product labeling and packaging information provided by Guerrero and Healthy Solutions and in the infomercials.  (Statement of Facts, ¶17.)  Each agency has indicated that they do not believe Healthy Solutions or Guerrero can provide competent and reliable scientific evidence to support the health claims made by Guerrero in connection with Supreme Greens with MSM.  (Id.)  As a result of the FDA's investigation, ITV engaged in corrective action at its own expense to correct label defects and alleged misrepresentations by Guerrero as identified by the FDA in connection with the Product.  (Id., ¶18.)  Thereafter, on May 25, 2004, the FTC filed a civil injunction action in the District of Massachusetts against ITV and Healthy Solutions, seeking millions of dollars in restitution for the false claims made by Guerrero.  (Id., ¶19.)

In addition, in connection with the FDA and FTC investigations, ITV investigated the background of Guerrero, and has discovered that he is not a doctor or an OMD as he represented, and that he has never received a doctorate of any kind.  (Statement of Facts, ¶20.)  As a result of the FTC and FDA investigations regarding the health claims made by Guerrero concerning Supreme Greens, and the discovery that Guerrero is not a doctor, on April 21, 2004, ITV sent an indemnification demand to Healthy Solutions seeking indemnification under the Distribution Agreement of all liabilities and expenses it has incurred and may incur in connection with the

7

pending FTC and FDA investigations. (Id., ¶21.) Healthy Solutions has refused ITV's demand, and has not defended ITV in connection with the FTC's action or indemnified ITV for the corrective action it took as a result of the FDA's investigation. (Id., ¶22.)

Based on the Defendants' fraudulent representations concerning the Product and Guerrero, indemnification obligations, failure to account to ITV for Internet sales, breaches of contract in labeling and other acts, ITV has refused to pay Healthy Solutions under the Distribution Agreement, and filed this action. (Statement of Facts, ¶23.) In its Amended Complaint, ITV alleges that it has been and will continue to be substantially damaged by Defendants' fraud, breach of contract, and conversion. ITV believes that its damages caused by Healthy Solutions' conduct drastically exceed any amounts that Healthy Solutions currently claims is owed, and that ITV is entitled to indemnification for these amounts under the Distribution Agreement, as well as set-off to Healthy Solutions claim.[2] (Id., ¶24.)

## LEGAL ARGUMENT

**A.   Summary Judgment Standard**

To win summary judgment on a particular issue, the moving party must show that "there is an absence of evidence to support" the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The district court must resolve all genuine factual disputes in favor of the party opposing the motion and draw all reasonable inferences derived from the facts in that party's favor. Atlantic Fish Spotters Ass'n v. Evans, 321 F.3d 220, 223 (1st Cir.2003). At the summary judgment stage, there is "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of

---

[2] The Healthy Solutions' Defendants filed a motion for temporary restraining order, preliminary injunction and motion for expedited discovery in this case. The Court denied the motion on May 20, 2004, recognizing that there is no likelihood that the Defendants will succeed on the merits of their claims against ITV.

probability and likelihood." Greenburg v. Puerto Rico Mar. Shipping Authority, 835 F.2d 932, 936 (1st Cir.1987). When hearing a motion for summary judgment, it is the responsibility of the trial judge to determine whether a reasonable trier of fact could find for the nonmoving party based on the admissible evidence, and to refrain from invading the province of the jury by weighing the evidence or making credibility determinations. Mahan v. Boston Water & Sewer Comm'n., 179 F.R.D. 49, 56 (D.Mass.1998). Resolving all factual issues and drawing all reasonable inferences in favor of ITV, it is plain to see that Cappseals' motion must be denied.

**B.     Genuine Issues of Fact Exist Regarding
          Cappseals' Claims Against Healthy Solutions**

It is well settled that application of Massachusetts' reach and apply statute, G.L. c. 214, § 3(6), requires "a two step process to establish (1) the indebtedness of the defendant and (2) the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." Hunter v. Youthstream Media Networks, Inc., 241 F. Supp. 2d 52, 57 (D. Mass. 2002), quoting General Motors Acceptance Corp. v. Camilleri Bros. Chevrolet of Holyoke, Inc., 188 F. Supp. 2d 73, 76 (D. Mass. 2002). "The first step is in the nature of an action at law and requires the plaintiff to establish the debt owed by the principal defendant to the plaintiff." Id, quoting Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687 (1984), Trustees v. Baldwin Steel Co., Inc., 2001 WL 1555539, *3-5 (D. Mass. 2001) (the plaintiff, in the first step, must show the existence of a debt owed by the principal defendant). In the second step, the plaintiff must satisfy the debt "out of property held by one who owes a debt to the principal defendant." Massachusetts Elec. Co., 391 Mass. at 688. Where a plaintiff cannot meet this threshold statutory prerequisite and establish the indebtedness of the defendant, reach and apply is not available. Hunter, 241 F.Supp. 2d. at 58.

In <u>Hunter</u>, for example, the court rejected the plaintiff's attempt to reach and apply the assets of a third party, where the underlying "debt" had not been established and reduced to judgment. Quoting <u>H.G. Kilbourne Co. v. Standard Stamp Affixer Co.</u>, 216 Mass. 118, 119 (1913), the court held "that the word 'debt' in the statute as now amended is not to include all actions founded upon a contractual liability, but only debts as distinguished from mere claims for damages." <u>Hunter</u>, 241 F. Supp. 2d at 58. Similarly, in <u>In re Rare Coin Galleries of America, Inc.</u>, 862 F.2d 896, 904 (1st Cir. 1988), the First Circuit, quoting <u>Kilbourne</u>, stated that "the word 'debt' has never been made to include the simple possibility of being responsible in damages for the breach of an executory contract where neither the fact of liability nor the amount can be held to exist until a judgment shall have been recovered."

Here, Cappseals cannot meet the threshold statutory prerequisite for reach and apply, namely, establishment of the debt against Healthy Solutions. Contrary to its assertion, Cappseals has not obtained a judgment against Healthy Solutions, and Healthy Solutions has raised genuine issues of fact as to whether any such amount is due and owing. In particular, Healthy Solutions has raised a genuine issue as to whether there were conditions precedent to its obligation to pay Cappseals. (<u>See</u> Healthy Solutions' Opposition to Cappseals' Motion, pp. 2-3.) According to the evidence submitted by Healthy Solutions, Cappseals explicitly agreed that Healthy Solutions' payment for the Product delivered to ITV would be made only when Healthy Solutions received payment from ITV. (<u>See</u> Declaration of Gregory R. Geremesz, filed in opposition to Cappseals' Motion for Partial Summary Judgment, ¶¶3-4.) Further, the parties' course of conduct confirms that Cappseals agreed that Healthy Solutions' payment for the Product would be subject to the defenses asserted by ITV against Healthy Solutions, and to the resolution of those defenses. (<u>Id</u>.)

Until these issues are decided, there can be no judgment against Healthy Solutions, and

thus no "debt" triggering the second step of the reach and apply statute.  See, e.g., Tanzman, Rock & Kaban, LLC v. MarketXT Holdings Corp., 18 Mass. L. Rptr. 390 (Mass. Super. March 1, 2004) (concluding that issues of fact on claim between principal defendant and plaintiff precluded determination of a "debt" sufficient to trigger application of the reach and apply statute); Stockbridge v. Mixer, 215 Mass. 415, 418 (1913) (jury issues on underlying claims preclude equitable relief of attachment).  On that basis alone, summary judgment cannot be entered in favor of Cappseals.

**C.      Genuine Issues of Fact Exist Regarding Healthy Solutions' Claims Against ITV**

Even if Cappseals could establish as a matter of law that Healthy Solutions is liable to Cappseals for some amount of money, which it has not done, that is only the first step of a two step process under the reach and apply statute.  The second step requires the plaintiff to establish that ITV is in possession of some sort of "property" of Healthy Solutions that is subject to attachment.  Massachusetts Elec. Co., 391 Mass. at 688.  In this case, Cappseals asserts that this property is Healthy Solutions' counterclaim against ITV for goods sold and delivered.  Thus, assuming Cappseals could establish the first statutory prerequisite, in order to prevail at this stage of the proceedings, Cappseals must establish as a matter of law that ITV has a "debt" due and owing to Healthy Solutions that can be attached.  This it cannot do, providing an additional reason for the denial of its motion for partial summary judgment.

As a preliminary matter, ITV has numerous defenses to the claims being asserted by Healthy Solutions in the present lawsuit, which cannot be determined as a matter of law at this stage of the case.  First, the Plaintiff has asserted that the Defendants fraudulently induced ITV into entering the Distribution Agreement at issue.  Under Massachusetts law, the Defendants' fraudulent inducement likewise excuses any obligation of the Plaintiff to perform under the

11

Distribution Agreement. See Shaw's Supermarkets, Inc. v. Delgiacco, 410 Mass. 840, 842 (1991) ("a contract induced by fraudulent misrepresentations is voidable ..."); Espinal v. Liberty Mutual Ins. Co., 47 Mass. App. Ct. 593, 598 (1999) (rejecting argument that reach and apply defendant could not raise fraud between itself and principal defendant to defeat liability). As stated by the court in Joseph Martinelli & Co. v. Simon Siegel Co., 176 F.2d 98, 100 (1st Cir. 1949), "fraud in the inception of a contract . . . renders it voidable at the election of the person defrauded, with the result that if the defrauded party to a contract breaks it before he discovers the fraud, he may nevertheless assert the fraud as a defense as soon as he discovers it, and demand rescission on that account when sued for breach of contract."

Thus, the Plaintiff can avoid any obligation it may have had under the Distribution Agreement based on the Defendants' actions in fraudulently misrepresenting information material to the contract regarding Guerrero, his clinical trials, the health claims about the Product, and the scientific support for such claims, intending that ITV would rely on that information. ITV did in fact rely on that information in its decision to enter into the Distribution Agreement, which is a complete defense to any claim for breach of the Distribution Agreement.[3] Martinelli, 176 F.2d at 100. The disputed factual issues underlying ITV's claims, which are a complete defense to Healthy Solutions' claim for goods sold and delivered, cannot be decided on summary judgment. See also Created Gemstones, Inc. v. Union Carbide Corp., 47 N.Y.2d 250, 255, 391 N.E.2d 987, 989 (1979) ("a buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying

---

[3] Similarly, the existence of a claim of fraudulent inducement in connection with the Distribution Agreement distinguishes this case from the cases cited by Cappseals for the proposition that set-off is inapplicable in cases alleging goods sold and delivered. In Dubied Machinery Co. v. Vermont Knitting Co., Inc., 739 F. Supp. 867, 871-72 (S.D.N.Y. 1990), for example, the court found that there were genuine issues of fact as to liability. In doing so, the Court distinguished similar authority cited by the plaintiff, stating that "in none of the cases cited was the Court faced with an affirmative defense going to the viability of the contract relationship."

sales agreement."); LaBarba v. Morrell & Co., 272 A.D.2d 165, 710 N.Y.S.2d 24, 25 (1st Dept. 2000) ("Where a buyer incurs damages by virtue of the seller's breach of the parties' contract, the buyer's liability for goods sold and delivered is diminished to the extent of his damages").

Furthermore, the Plaintiff is entitled to indemnification from the Defendants under the Distribution Agreement for any penalties or fines that may be assessed against ITV by the FTC or FDA as a result of Defendants' fraudulent representations about Guerrero's status as a doctor, the health claims about the Product, and the scientific substantiation for such health claims, or the labeling of the Product. The Distribution Agreement provides that:

> Manufacturer [Healthy Solutions] agrees upon demand to defend, indemnify and hold harmless Distributor [ITV], its officers, directors, employees, shareholders and affiliates from any and all claims, lawsuits, actions and proceedings in any court or by any governmental unit arising out of or relating to the Product as manufactured, its contents or impact n the health of any person. (Statement of Facts, ¶16.)

Based on the FTC and FDA investigations into the health claims made by Guerrero about the Product, the discovery that Guerrero is not a doctor, and the potential harm these fraudulent representations may have on the health of consumers, on April 21, 2004, ITV sent an indemnification demand to Healthy Solutions seeking indemnification of all liabilities and expenses it has incurred or may incur in connection with the pending investigations. (Statement of Facts, ¶21.) Healthy Solutions refused ITV's demand, and has not defended ITV in connection with the FTC's action or the FDA's investigation. (Id., ¶22.) ITV's potential legal exposure to the FTC far exceeds any amounts that the Defendants claim they are due under the Distribution Agreement.[4] (Statement of Facts, ¶19.) See, e.g., FTC v. Febre, 128 F.3d 530, 534-

---

[4] Cappseals dismisses ITV's claim for indemnification against Healthy Solutions, arguing that it cannot support a set-off because the FTC's lawsuit is solely related to the marketing of Supreme Greens, and ITV is not indemnified for such claims. Contrary to Cappseals' assertion, however, the FTC's cause of action against ITV includes claims for injury to the health of consumers as a result of Defendants' representations about the Product, which fall squarely within the coverage of the indemnification clause.

535 (7th Cir. 1997). Thus, the potential indemnification that ITV will be entitled to from the Defendants for the action brought by the FTC against ITV will likely far exceed the amounts that the Defendants claim they are due from ITV under the Distribution Agreement, which amounts Cappseals is seeking to attach. See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 13 (1st Cir. 1987) (withholding of amounts due as a set-off is appropriate).

Attempting to end-run the substantial claims that ITV has against Healthy Solutions for its fraudulent conduct in connection with the Distribution Agreement, Cappseals first argues that ITV is not entitled to a set-off of any amounts due and owing for product sold and delivered to ITV because ITV had not made a claim that goes to the essence of the transaction, namely, a claim relating to the conformity of the goods. (Cappseals' Memorandum at p. 8.)  In the first instance, Cappseals fails to explain why the broad language of the indemnification clause is limited to claims for non-conforming goods. Rather, the Healthy Solutions agreed to indemnify ITV for "any and all claims . . . arising out of or relating to the Product …." (Statement of Facts, ¶16.)

In any event, contrary to Cappseals' assertion, ITV does not need to make a claim against Healthy Solutions for non-conforming goods to invoke its right to set-off.[5] Where, as here, the buyer's claim against the seller is "inextricably interwoven" with the seller's cause of action, the buyer is entitled to claim a right of set-off and summary judgment cannot be granted on the seller's breach of contract claim. RPJ Sportswear, Inc. v. Xylo Tex, LTD, 681 F.Supp. 225 (S.D.N.Y. 1988). ITV's claims for misrepresentation and fraud in the inducement go to the very

---

[5] Similarly misplaced is Cappseals' argument that none of ITV's claims go to the non-conformity of the goods. Although such a claim is not necessary in order for ITV to invoke its right to set-off, one of the claims asserted by ITV relates to indemnification for the FTC's and FDA's investigation of the "labeling" of the product, which was the responsibility of Healthy Solutions under the Distribution Agreement. To the extent that ITV has suffered damages because the labeling of the product was in violation of federal law, that claim does relate to the nonconformity of the goods. In addition, this labeling issue further demonstrates how intertwined the sale of these particular goods was with the Distribution Agreement, which set out the labeling criteria.

essence of the parties' contract, as the false representations themselves regarding the Product's health benefits underlie the Distribution Agreement, and are clearly "inextricably interwoven" with Healthy Solutions' claim for goods sold and delivered under the agreement.  In such a case, the ITV has a right to claim a set-off against Healthy Solutions' claim.  This requires a resolution of factual issues concerning ITV's claims under the Distribution Agreement, precluding the entry of summary judgment.  Id., 681 F.Supp. at 228.  As a result, Cappseals cannot establish that ITV owes a "debt" to Healthy Solutions, and its motion must be denied.

The case of RPJ Sportswear, Inc. is instructive.  The court recognized therein that the buyer had a claim for set-off, although it was not based on the non-conformity of the goods sold and delivered.  Rather, the buyer, RPJ, claimed a right to set-off based on its claim that the seller had breached the parties' exclusivity agreement, by which the seller agreed that it would provide certain goods and patterns exclusively to RPJ.  Id., 681 F. Supp. at 226.  When the defendant provided other manufacturers with the same goods and patterns, RPJ refused to pay the outstanding amount of the invoice for the goods it had bought.  Id., 681 F. Supp. at 226.  On the seller's motion for summary judgment on the unpaid invoices, the court found that the RPJ's claim for breach of the underlying contract of sale was "inextricably interwoven" with the seller's claim, and summary judgment could not be granted.  Id. at 228-229.  The court recognized that RPJ had a right of set-off under § 2-717 of the U.C.C., despite the fact that it had not claimed that the goods delivered by the defendant were non-conforming.  Id.

Cappseals next tries to avoid the substantial claims that ITV has against Healthy Solutions for its fraudulent conduct in connection with the Distribution Agreement, by arguing that ITV is not entitled to a set-off because the purchase orders issued by ITV to Healthy Solutions created separate contracts from the Distribution Agreement.  This argument, however,

15

fails to recognize that the Distribution Agreement and all of its terms and conditions were *expressly incorporated* by the terms of the Distribution Agreement into every purchase order issued by ITV.  See Distribution Agreement at  p. 5.  See also Everett J. Prescott, Inc. v. S&H Contracting Co., Inc., 2000 WL 781585 (Mass. Super. April 13, 2000.) (Defendant's acceptance of terms in the contract included an acceptance of the term that each purchase order was subject to contract's terms and conditions.)  This express incorporation, which inextricably intertwines the Distribution Agreement with the purchases of product, distinguishes this case from each of the cases cited by Cappseals.[6]  It is clear from the express language of the Distribution Agreement that the parties intended that the Distribution Agreement and the purchase orders were part of a single integrated agreement.   See Hackel v. Federal Deposit Insurance Corporation, 858 F.Supp. 289, 291-292 (D.Mass. 1994.) (under Massachusetts law, whether separate documents should be read together as one integrated agreement is a question of fact, which turns on the intentions of the parties.) see also S&F Concrete Contractors, Inc. v. Strickland Systems, Inc., 1995 WL 808874 (Mass. Super. April 25, 1995) (whether purchase orders are separate contracts turns on the intentions of the parties, and cannot be resolved on summary judgment.)  Moreover, the fact that the Distribution Agreement between Healthy Solutions and ITV also set forth the price and type of product to be ordered, the rights and duties of the parties with respect to the purchase orders, the terms of sale and terms of payment, and the

---

[6] See, e.g., C.R. Bard, Inc. v. Medical Electronics Corp., 529 F. Supp. 1382 (D. Mass. 1982) (noting that the breach of contract alleged by defendant, which included claims that plaintiff enticed defendant's sales representative to work for plaintiff and failed to renew the agreement, was "remote"); Computer Systems Engineering, Inc. v. Quantel Corp., 571 F. Supp. 1379 (D. Mass. 1983) (similarly noting that alleged breach of agreement was "remote"). Moreover, in Quantel the issue was not whether a set-off would apply to reduce the award to the plaintiff, but whether the claim for goods sold and delivered could be maintained at all in light of the breach of the agreement. Although the court rejected that argument, it still applied a set-off, contrary to the argument advanced by Cappseals. Quantel, 571 F. Supp. at  1384 (applying off-set).

Product warranties, further distinguishes the authority cited by Cappseals.  (See Distribution Agreement at pp. 1, 3-6.)

The Court's decision in Infusion Resources, Inc. v. Minimed, Inc., 2000 WL 1639397 (E.D. La. Oct. 31, 2000) is on point.  In that case, the counterclaim plaintiff argued, as Cappseals argues here, that purchase orders issued pursuant to a distribution agreement constituted separate and distinct contracts.  Denying the counterclaim plaintiff's motion for summary judgment, the Infusion court noted that, unlike the cases cited by the counterclaim plaintiff, the distribution agreement set forth the price and type of goods, as well as the shipping terms.  On that basis the Court held that it "could determine that, as a matter of law, the Distribution Agreement and purchase orders are one contract."  2000 WL 1639397, at *3.  Here, not only is the Distribution Agreement expressly incorporated into each and every purchase order, the Distribution Agreement provides for the type of goods, the price of those goods, labeling instructions, shipping instructions, ordering instructions, inspection instructions, packing instructions, acceptance criteria, cancellation instructions, and payment criteria.  No such information is included on the purchase orders themselves.  Any argument that the purchase orders could somehow stand alone from the Distribution Agreement cannot withstand scrutiny.[7]

Likewise, in Pacific Western Resin Co. v. Condux Pipe Systems, Inc., 771 F.Supp. 313 (D. Ore. 1991), the court denied the seller's motion for summary judgment on its claim for breach of individual invoices, holding that triable issues of fact existed as to whether the buyer was entitled to a set-off based on its claim that the seller had breached the underlying requirements contract.  As in this case, the seller argued that the buyer's obligation to pay for

---

[7] In rejecting the counterclaim plaintiff's motion for summary judgment, the court in Infusion specifically distinguished C.R. Bard, Inc. v. Medical Electronics Corp., 529 F. Supp. 1382 (D. Mass. 1982), relied upon heavily by Cappseals.  The Court noted that in C.R. Bard, as well as the other cases cited by the counterclaim plaintiff, the Distribution Agreement was silent on such terms as type and price of the goods.

17

accepted goods and the seller's alleged breach of the requirements contract were not the same contract. Id. at 315. In rejecting the plaintiff's argument, the court found that there was competent evidence to establish that the individual invoices did not establish separate contracts, but that the single long-term requirements contract controlled the terms of the parties' business relationship, and that all purchase orders were made pursuant to that contract. Id. at 316.

In its analysis, the court rejected the very authorities cited by Cappseals in this case, finding that the buyer clearly had a right to claim a set-off under § 2-717 based on its claim of breach by the seller. Pacific Western Resin Co., 771 F.Supp. at 316. According to the court, whether the plaintiff has breached and the defendant has a right of set-off is a factual question that cannot be decided on summary judgment, recognizing that "'[a]cceptance of a seller's product, and refusal to pay, alone do not necessarily constitute breach.'" Id. at 317, quoting Purofied Down Prod. Corp. v. Royal Down Prod., Inc., 87 F.R.D. 685, 690 (W.D. Mich. 1980) (court held summary judgment was not appropriate when buyer claimed a right of set-off under § 2-717); see also American Elec. Power Co. v. Westinghouse Elec. Corp., 418 F.Supp. 435, 460 (S.D.N.Y. 1976)(seller's motion for summary judgment denied where buyer's claims as to seller's performance under the contract and its right to set-off cannot be resolved until trial).

Similarly misplaced is Cappseals argument that no notice was provided to Healthy Solutions regarding ITV's intent to set-off amounts for breach of the Distribution Agreement from amounts allegedly due for goods delivered to ITV. By Cappseals' own admission, the last delivery of product was made to ITV on February 6, 2004, under an invoice that stated its terms were "Net 30" and thus due on March 8, 2004. (See Cappseals' Statement of Facts, ¶¶3, 5; Statement of Facts, ¶23.) On March 2, 2004, before this invoice was due to be paid, ITV filed the present action in this Court against Healthy Solutions, specifically stating that the

18

Distribution Agreement had been breached, and that it refused to pay for the goods that had been delivered until its claims for damages were adjudicated. Shortly thereafter, ITV submitted its demand for indemnification to Healthy Solutions in connection with the FDA and FTC investigations, and notified Healthy Solutions that it intended to withhold payment until the extent of its damages was determined in that action.[8] Without question, this notice was provided while the amounts were "still due" under outstanding invoices, satisfying this provision of M.G.L. ch. 106 § 2-717.

ITV is clearly entitled to claim a right of set-off against Healthy Solutions' claim for goods sold and delivered, which requires the resolution of factual disputes that cannot be decided on summary judgment. Thus, Cappseals cannot meet the second statutory prerequisite for reach and apply and establish as a matter of law that ITV owes a debt to Healthy Solutions.

---

[8] In Gutor Int'l AG v. Raymond Packer Co., 493 F.2d 938 (1st Cir. 1974), cited by Cappseals, for example, the delay in notice of an intent to offset was *over three years* and was only made in connection with a counterclaim filed in response to an action to recover amounts for goods sold and delivered. Here, notice was provided in less than thirty days and was made by the affirmative filing of an action in this Court before any action was commenced to collect amounts allegedly due and owing.

## CONCLUSION

Based on the foregoing, Cappseals' motion for partial summary judgment against ITV must be denied.

>Respectfully submitted,
>ITV DIRECT, INC.
>By their attorney(s),
>
>/s/ Peter S. Brooks
>Peter S. Brooks, BBO #058980
>Christopher F. Robertson, BBO #642094
>Susan W. Gelwick, BBO #567115
>SEYFARTH SHAW LLP
>Two Seaport Lane, Suite 300
>Boston, MA 02210-2028
>Telephone:    (617) 946-4800

Dated: July 16, 2004                Telecopier:    (617) 946-4801