# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

FEDERAL TRADE COMMISSION,

        Plaintiff,

    v.

DIRECT MARKETING CONCEPTS, INC.,      No. _____
d/b/a TODAY'S HEALTH, et al.,

        Defendants.

---

## DECLARATION OF KIAL S. YOUNG
### Pursuant to 28 U.S.C. § 1746

I, Kial S. Young, declare as follows:

1.    I am a citizen of the United States and over twenty-one years of age.

2.    I am an attorney for the plaintiff, the Federal Trade Commission ("FTC" or "Commission"). This declaration is made in connection with the FTC's Motion for a Temporary Restraining Order against Direct Marketing Concepts, Inc., ("DMC") and related parties. I have participated in the Commission's investigation of DMC, et al., since at least May 2003, and have participated in the preparation of the complaint filed in this action alleging violations of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52. I have personal knowledge of the matters contained in this declaration.

3.    I am a member in good standing of the Massachusetts Bar and the District of Columbia Bar.

4.      In June of 2003, I sent a letter to Donald Barrett ("Barrett"), President of DMC,

informing him that Commission staff had conducted a non-public investigation relating to claims

made in the Coral Calcium Daily infomercial.  I further informed him that FTC's Bureau of

Consumer Protection had approved a proposed complaint alleging, among other things, that

certain claims made in connection with the advertising and sale of a calcium supplement called

"Coral Calcium Daily" are false and/or unsubstantiated.  In addition, I notified Barrett that the

Bureau had authorized staff to offer DMC and Barrett the opportunity to negotiate a consent

order with the Commission in lieu of a litigated action.

5.      I was later contacted by counsel for DMC and Barrett, Peter S. Brooks and

Christopher Robertson, of the law firm Seyfarth Shaw in Boston.  During the Summer of 2003,

the Commission staff and counsel engaged in some negotiations over the summer but did not

reach a final resolution.

6.      In late August 2003, the Commission staff became aware that DMC and Barrett

were disseminating an infomercial promoting a dietary supplement called "Supreme Greens with

MSM.".

7.      During the Fall of 2003, I participated in numerous conversations with counsel for

DMC and Barrett relating to the FTC's investigation of DMC and Barrett generally, and the

Supreme Greens infomercial specifically.  On or about October 3, 2003, FTC attorneys informed

counsel by telephone that we believed many claims made in the Supreme Greens infomercial

were false and/or unsubstantiated, and we stated that DMC and Barrett had to cease airing the

infomercial if they wanted to continue negotiating a resolution of the FTC's investigation.

8.      On or about October 10, 2003, I participated in another telephone conversation

2

with counsel for DMC and Barrett, in which counsel stated they had recommended changes to the infomercial, that their client was committed to editing the existing version in light of the FTC's concerns, and that they would provide the FTC a copy of the revised tape when it was ready. Counsel then committed not to air the original version beyond two weeks from the date of the call, and to substitute a revised version thereafter.

9.      On or about October 22, 2003, my colleague Daniel Kaufman and I sent a letter to counsel for DMC and Barrett notifying them that the Supreme Greens infomercial ranked as the 10th most disseminated infomercial in September, and emphasizing the importance to the Commission of getting the revised version completed and substituted for the original.

10.     On or about October 30, 2003, I participated in another telephone conversation with counsel for DMC and Barrett. During this call, counsel indicated that the infomercial was still in the process of being re-edited, and that they hoped to provide a revised version to the FTC early the following week. Counsel further stated that the original version continued to air during pre-paid media time-slots, but that DMC and Barrett had not purchased any additional media time and would not do so until they resolved the FTC's concerns.

11.     On or about November 14, 2003, the FTC attorneys received from counsel for DMC and Barrett a copy of an edited version of the Supreme Greens infomercial. During this time, the FTC staff continued to engage in settlement negotiations with counsel for DMC and Barrett.

12.     On or about November 18, 2003, I participated in another telephone conversation with counsel for DMC and Barrett. The FTC attorneys stated that the revised Supreme Greens infomercial represented a good faith improvement and that we would like to see it substituted

3

immediately.  We further indicated that DMC and Barrett must have substantiation for all claims made in the revised version.  Counsel for DMC and Barrett stated they would find out how quickly the revised version could be substituted for the original.

13.    On or about November 25, 2003, counsel for DMC and Barrett indicated to the FTC attorneys that they believed that the revised infomercial had begun the "dubbing" process and was being "rotated into stations."

14.    On or about December 3, 2003, counsel for DMC and Barrett indicated to the FTC that they revised Supreme Greens infomercial had been "dubbed and substituted in over two dozen stations," and that "the changeover process [was] continuing."

15.    In or around late March 2004, the FTC staff learned from an informant that DMC and/or ITV was disseminating the original Supreme Greens infomercial on certain regional television stations in the New England area.  Based on this information, I contacted Maureen Carney, the Traffic Manager at Fox Sports Net New England to confirm whether that station was in fact airing the infomercial.

16.    On April 23, 2004, Ms. Carney provided me with a letter confirming that Fox Sports Net New England cable network had aired the Supreme Greens infomercial through March 26, 2004.  See Letter fr. M. Carney to K. Young (attached to this Declaration as Attachment A).  The letter contained a chart setting forth the dates and times that the infomercial ran on the network.  The chart indicates that the infomercial ran almost daily from late October 2003 through the end of February 2004, and on approximately ten (10) days in March 2004. Accompanying the letter was a tape of the infomercial which I reviewed and confirmed was the original Supreme Greens infomercial.

4

17.     The FTC received further confirmation that DMC and/or ITV was continuing to disseminate the original Supreme Greens infomercial.  As set forth in the declaration of Scott Stanwood, PX F, and attachment A thereto, ITV provided media schedules to a company called Ideal Health, which has done business with ITV.  These media schedules indicate that the Supreme Greens infomercial aired at least through April 18, 2004.

18.     In addition, my colleagues and I have recently spoken with six (6) persons who were formerly employed by, or had business relationships with, DMC, ITV, and/or Barrett.  Two of these individuals, Scott Sarver and Richard Cushman, have filed declarations in support of the Commission's motion for a temporary restraining order and other relief.  (See PX D and PX E to Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order.)  The other four individuals provided the Commission with similar information to that set forth in the Sarver and Cushman declarations regarding:  (1) DMC, ITV, and Barrett charging consumers autoshipment programs without the consumers' consent; (2) DMC, ITV, and Barrett disseminating the original Supreme Greens infomercial after agreeing with the FTC to take it off the air; and/or (3) Barrett moving or hiding corporate funds from DMC and/or ITV.


I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 30th day of ___May___, 2004 at Washington, DC.


                                    _Kial S. Young_
                                    KIAL S. YOUNG


5

**FOX SPORTS NET NEW ENGLAND**

42-44 Third Avenue
Burlington, MA 01803
Phone 781 270 7200 • Fax 781 221 7408

April 23, 2004
Via Federal Express

Kial S. Young
Staff Attorney, Bureau of Consumer Protection
Federal Trade Commission
601 New Jersey Avenue, NW
Room 3212
Washington, D.C.  20001

Re: Supreme Greens Infomercial

Dear Ms. Young:

In response to your request, the chart below sets forth the dates and times that the Supreme Greens Infomercial ran on the Fox Sports Net New England cable network.

| Best Dt | Act Time |
|---------|----------|
| 10/27/2003 | 09:00:08AM |
| 10/28/2003 | 09:30:10AM |
| 10/29/2003 | 11:30:10AM |
| 10/30/2003 | 09:30:10AM |
| 10/31/2003 | 11:30:10AM |
| 11/01/2003 | 1:30:10PM |
| 11/03/2003 | 11:30:10AM |
| 11/04/2003 | 11:30:06AM |
| 11/05/2003 | 09:00:10AM |
| 11/06/2003 | 09:00:10AM |
| 11/07/2003 | 11:30:11AM |
| 11/08/2003 | 10:30:15AM |
| 11/10/2003 | 11:30:10AM |
| 11/11/2003 | 09:00:10AM |
| 11/12/2003 | 09:00:11AM |
| 11/13/2003 | 11:30:09AM |
| 11/14/2003 | 11:30:11AM |
| 11/15/2003 | 10:30:10AM |
| 11/16/2003 | 03:30:08AM |
| 11/17/2003 | 09:30:10AM |
| 11/18/2003 | 11:30:10AM |
| 11/19/2003 | 11:00:19AM |

A RAINBOW SPORTS COMPANY

03/17/05  11:12 FAX 912023262190          AD PRACT AND ENFORCEMENT                    ☑009



42-44 Third Avenue
Burlington, MA 01803
Phone 781 270 7200 • Fax 781 221 7408

| 11/20/2003 | 09:30:09AM |
| 11/21/2003 | 11:00:15AM |
| 11/22/2003 | 10:30:10AM |
| 11/22/2003 | 03:30:10AM |
| 11/23/2003 | 04:30:10AM |
| 11/24/2003 | 10:00:10AM |
| 11/25/2003 | 09:00:10AM |
| 11/26/2003 | 10:00:14AM |
| 11/28/2003 | 10:00:11AM |
| 11/29/2003 | 3:30:13PM |
| 11/30/2003 | 02:30:12AM |
| 12/01/2003 | 10:00:10AM |
| 12/02/2003 | 10:00:10AM |
| 12/03/2003 | 10:00:10AM |
| 12/04/2003 | 10:00:13AM |
| 12/05/2003 | 10:00:14AM |
| 12/06/2003 | 10:30:10AM |
| 12/07/2003 | 08:00:10AM |
| 12/08/2003 | 10:00:10AM |
| 12/09/2003 | 10:00:10AM |
| 12/10/2003 | 10:00:10AM |
| 12/11/2003 | 10:00:10AM |
| 12/12/2003 | 10:00:12AM |
| 12/13/2003 | 10:30:10AM |
| 12/14/2003 | 08:00:10AM |
| 12/15/2003 | 10:00:10AM |
| 12/16/2003 | 10:00:10AM |
| 12/17/2003 | 10:00:15AM |
| 12/18/2003 | 10:00:10AM |
| 12/19/2003 | 10:00:10AM |
| 12/20/2003 | 10:30:15AM |
| 12/21/2003 | 08:00:11AM |
| 12/22/2003 | 10:00:13AM |
| 12/23/2003 | 10:00:12AM |
| 12/24/2003 | 10:00:12AM |
| 12/25/2003 | 10:00:10AM |
| 12/26/2003 | 10:00:13AM |
| 12/27/2003 | 10:30:11AM |
| 12/28/2003 | 08:00:06AM |
| 12/30/2003 | 10:00:12AM |

A RAINBOW SPORTS COMPANY

03/17/05  11:12 FAX 912023262190        AD PRACT AND ENFORCEMENT                    ☑010



42-44 Third Avenue
Burlington, MA 01803
Phone 781 270 7200 • Fax 781 221 7408

| | |
|---|---|
| 12/31/2003 | 10:00:10AM |
| 01/01/2004 | 10:00:10AM |
| 01/02/2004 | 10:00:10AM |
| 01/03/2004 | 10:00:11AM |
| 01/04/2004 | 08:00:10AM |
| 01/05/2004 | 10:00:10AM |
| 01/06/2004 | 10:00:11AM |
| 01/07/2004 | 10:00:12AM |
| 01/08/2004 | 10:00:10AM |
| 01/09/2004 | 10:00:11AM |
| 01/10/2004 | 11:00:08AM |
| 01/12/2004 | 10:00:12AM |
| 01/13/2004 | 10:00:10AM |
| 01/14/2004 | 10:00:12AM |
| 01/15/2004 | 10:00:15AM |
| 01/16/2004 | 10:00:14AM |
| 01/17/2004 | 11:00:12AM |
| 01/18/2004 | 08:00:05AM |
| 01/19/2004 | 10:00:12AM |
| 01/20/2004 | 10:00:14AM |
| 01/21/2004 | 10:00:17AM |
| 01/22/2004 | 10:00:11AM |
| 01/23/2004 | 10:00:17AM |
| 01/24/2004 | 11:00:08AM |
| 01/25/2004 | 08:00:10AM |
| 01/28/2004 | 10:00:15AM |
| 01/29/2004 | 10:00:15AM |
| 01/30/2004 | 10:00:13AM |
| 01/31/2004 | 10:30:17AM |
| 02/01/2004 | 08:00:09AM |
| 02/02/2004 | 10:00:13AM |
| 02/07/2004 | 10:00:09AM |
| 02/08/2004 | 08:00:06AM |
| 02/09/2004 | 10:00:11AM |
| 02/10/2004 | 10:00:13AM |
| 02/11/2004 | 10:00:18AM |
| 02/12/2004 | 10:00:12AM |
| 02/13/2004 | 10:00:08AM |
| 02/14/2004 | 10:30:05AM |
| 02/15/2004 | 08:00:07AM |

A RAINBOW SPORTS COMPANY



42-44 Third Avenue
Burlington, MA 01803
Phone 781 270 7200 • Fax 781 221 7408

| 02/16/2004 | 10:00:13AM |
|---|---|
| 02/17/2004 | 10:00:13AM |
| 02/18/2004 | 10:00:12AM |
| 02/19/2004 | 10:00:10AM |
| 02/20/2004 | 10:00:13AM |
| 02/23/2004 | 10:00:15AM |
| 02/24/2004 | 10:00:10AM |
| 02/25/2004 | 10:00:12AM |
| 02/26/2004 | 10:00:17AM |
| 02/27/2004 | 10:00:11AM |
| 03/05/2004 | 09:30:11AM |
| 03/08/2004 | 09:30:13AM |
| 03/10/2004 | 09:30:14AM |
| 03/12/2004 | 09:30:11AM |
| 03/13/2004 | 07:00:10AM |
| 03/15/2004 | 09:30:12AM |
| 03/17/2004 | 09:30:09AM |
| 03/22/2004 | 09:30:11AM |
| 03/24/2004 | 09:30:09AM |
| 03/26/2004 | 09:30:12AM |

The Supreme Greens Infomercial that we ran on the Fox Sports Net New England cable network was one that started out by Mr. Barrett introducing Dr. Guerrero. There was no disclaimer in the lead-in except for the statement, "The following is a paid advertisement for Supreme Greens." We have not run this infomercial on Fox Sports Net New England since March 26, 2004.

I hope this answers your inquiry.

Sincerely,

Maureen A. Carney
Traffic Manager
Fox Sports Net New England

A RAINBOW SPORTS COMPANY

# MEMO

**To:**   Cecile Proverbs

**From:**   Hannah Mahoney

**Date:**   3/18/05

**Re:**   Performance Appraisal Update

---

Dear Cecile:

As part of my ongoing efforts to help provide you with constructive feedback as you work to achieve your performance goals, I wanted to give you a brief written update on my observations of your progress toward goals as outlined in your review this past January.

Day-to-day lapses of the kind mentioned in your review and as we discussed in mid-February unfortunately continue to slip through, including misspellings and errors such as incorrect author or illustrator names. I can provide you with some examples if that would be helpful.

I was also disappointed by your work on two major titles: *Wizardology* and *Judy Moody Around the World in 8½ Days*. Specifically, *Wizardology* included encoded symbols throughout, which were not checked and contained errors. The manuscript also included several spelling inconsistencies and errors, inconsistent treatment of foreign terms, and inconsistencies with other books in the series.

*Judy Moody* included Italian terms, which were not checked and contained several errors, as well as an anagram puzzle, which was also not checked and also contained an error. There were also spelling inconsistencies, including inconsistent treatment of hyphenated terms. (An accompanying note saying that hyphenated terms would need to be checked later was inappropriate. As we've discussed, you need to take the time and care to do a full copyedit when it is scheduled; if you need more time, you need to ask for it.)

Thoroughness, attention to detail, internal consistency, and checking references continue to be areas that need improvement. As I've mentioned before, I'm always available to provide any guidance that might be helpful, either before you approach a particular manuscript or as you are in progress. I'm more than willing to help identify specific strategies, resources, or approaches that might be helpful for you.

As indicated in your January review, we will be meeting in early April to reassess your performance.

Thank you.

Hannah