UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEALTHY SOLUTIONS, LLC, et al., <br><br> Defendants. | CIVIL ACTION NO. 04-CV-10421-JLT |
| RELATED CASES | |

### PLAINTIFF ITV DIRECT'S AND INTERVENOR-DEFENDANT DIRECT FULFILLMENT, LLC'S PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(D) of the United States District Court for the District of Massachusetts, plaintiff and intervenor-defendant ITV Direct, Inc. and intervenor-defendant Direct Fulfillment, LLC (collectively, "ITV" or "Plaintiff") hereby submit this Pretrial Memorandum.[1]

**1.    SUMMARY OF THE EVIDENCE**

    **A.    Plaintiff's Evidence**

The Plaintiff expects to offer the following evidence at trial:

ITV Direct is in the business of marketing and distributing various products, including healthcare products, to individual and retail customers through the utilization of television infomercials. In or about early 2003, Howell, Geremesz, and "Dr. Alex Guerrero" met with ITV's principals to discuss whether ITV would contribute the millions of dollars necessary to develop a new market for an organic dietary supplement, known as "Supreme Greens with

---

[1] At the clerk's suggestion, each of the parties has filed a separate pretrial memorandum in this action.

MSM" ("Supreme Greens") that Guerrero had developed in California. ITV's contribution would include the production of one or more infomercials in its television studio in Massachusetts, test-marketing the infomercial in various media markets, and the purchase of additional media airtime to promote Supreme Greens. In consideration for ITV's investment, the Defendants agreed that ITV would, among other things, own the trademark rights to "Supreme Greens with MSM." During these meetings, Guerrero repeatedly referred to himself as a "doctor" and as an "OMD" (doctor of oriental medicine), and stated that he operated an active clinic in California with a number of patients. Guerrero also made numerous health claims about the Product, which he claimed were supported by documentary and clinical evidence.

On April 4, 2003, ITV entered into an exclusive "Distribution Agreement" with Healthy Solutions for the manufacture and distribution of Supreme Greens ("Distribution Agreement"). The Distribution Agreement provided that ITV would produce an infomercial for the product featuring Guerrero, and that ITV would be the exclusive distributor of Supreme Greens in connection with the infomercial. The Distribution Agreement included, among others, the product's price, terms of sale, payment, and product warranties. In addition, the Distribution Agreement specifically provided that all purchase orders would be issued in accordance with its terms and would incorporate all such terms and conditions.

Between April 4, 2003 and February 6, 2004, ITV issued purchase orders to Healthy Solutions for the purchase of Supreme Greens in varying quantities. ITV's only relationship in connection with its purchases of Supreme Greens was with Healthy Solutions. At no time did ITV have any relationship, contractual or otherwise, with Cappseals. ITV never ordered any product from Cappseals, never received an invoice from Cappseals, and never paid any money to Cappseals. The only manufacturer of the product specified in the Distribution Agreement is

Healthy Solutions, and Healthy Solutions' decision to order product from Cappseals was entirely its own. Healthy Solutions' choice of Cappseals was never approved by ITV.

In order to promote the sale of Supreme Greens, ITV expended millions of dollars on advertising for the product, primarily in connection with the production and airing of two separate infomercials featuring Guerrero. ITV also developed the logo for Supreme Greens, and with the encouragement and approval of Healthy Solutions, filed an application for federal registration of the name "Supreme Greens with MSM." All of the recommended dosage information and information regarding the contents of the product was provided by Healthy Solutions and added to the label designed by ITV.

In the infomercials and in other media, including the Internet, Guerrero stated that he was a doctor and an OMD, and that he operated a clinic in California, where he had many patients with life-threatening diseases. He also made numerous controversial claims regarding the health benefits of Supreme Greens. In support of these claims, Guerrero represented that he conducted a study of over 200 terminally ill patients through his clinic, and that all but eight of these patients are still alive. These representations are contained on the raw footage of the infomercial tapes, as well as on an audio recording of a live presentation made by Guerrero to the ITV sales staff. On several occasions before and after the infomercial was produced, Guerrero confirmed to ITV that he possessed competent and reliable documentary and clinical support for each and every representation he made in the infomercials.

In late 2003, ITV learned that Healthy Solutions had filed a competing trademark application for federal registration of the name "Supreme Greens with MSM," in violation of the parties' agreement that the trademark would belong to ITV. The Defendants assured ITV that it

3

had been filed to protect the trademark pending the filing of ITV's application, and that they would withdraw the application.

Although the initial infomercial was successful, the orders for Supreme Greens did not generate sufficient income for ITV to recoup its tremendous investment in marketing the product. As a result, in early 2004, the parties orally modified the Distribution Agreement, and agreed, among other things, that the Defendants would (i) pay royalties to ITV for their direct sales of Supreme Greens over the Internet, (ii) transfer to ITV of ownership of the website address "www.supremegreens.com", and (iii) withdraw Healthy Solutions' competing trademark application. Relying on this modified agreement, ITV expended well in excess of a million dollars on additional marketing and advertising for the product. ITV also made an additional payment to the Defendants for the web site.

In February 2004, ITV learned that, despite the modified agreement, payment for the website, and ITV's continued expenditures on marketing and advertising, Healthy Solutions had failed to provide an accounting of its substantial Internet sales to ITV, failed to pay royalties due to ITV for direct sales of Supreme Greens, and had failed to withdraw its trademark application as promised. Healthy Solutions also sought to establish relationships with other distributors and media production companies, despite the exclusivity provision in the Distribution Agreement.

In the Distribution Agreement, Healthy Solutions agreed to indemnify and hold harmless ITV and its officers, directors, employees, shareholders and affiliates from any and all claims, lawsuits, actions and proceedings in court or by any governmental unit, relating to the manufacture and content of Supreme Greens, and claims made by Guerrero concerning the claimed impact the Product would have on the health of users of the Product. During 2004, ITV was contacted by both the United States Food and Drug Administration ("FDA") and the Federal

4

Trade Commission ("FTC") concerning the health claims that Guerrero has made in connection with Supreme Greens, both in the product labeling and packaging information provided by the Defendants and in the infomercials. Each agency indicated that they do not believe that Guerrero is a doctor, or that Healthy Solutions or Guerrero can provide competent and reliable scientific evidence to support the health claims made by Guerrero in connection with Supreme Greens. As a result of the FDA's investigation, ITV engaged in corrective action at its own expense to correct label defects identified by the FDA. ITV also agreed to cease running the infomercial. Thereafter, on May 25, 2004, the FTC filed a civil injunction action in the District of Massachusetts against ITV and Healthy Solutions, seeking millions of dollars in restitution for allegedly false claims made by Guerrero.

ITV subsequently discovered that Guerrero is not a doctor or an OMD as he represented, and that he has never received a doctorate of any kind. As a result of the FTC and FDA investigations regarding the health claims made by Guerrero concerning Supreme Greens, and the discovery that he is not a doctor, on April 21, 2004, ITV sent an indemnification demand to Healthy Solutions seeking indemnification under the Distribution Agreement of all liabilities and expenses it has incurred and may incur as a result of the FTC and FDA investigations. Healthy Solutions refused ITV's demand, and has not defended ITV in connection with the FTC's action or indemnified ITV for the corrective action it took as a result of the FDA's investigation.

2. **AGREED FACTS**[2]

    a.    ITV Direct, Inc. is a Massachusetts corporation with its principal place of business in Beverly, Massachusetts.

---

[2] These were factual allegations that the parties admitted in the various pleadings in this action.

5

  b. Direct Fulfillment, LLC is a Massachusetts limited liability company with its principal place of business in Beverly Massachusetts.

  c. Healthy Solutions, LLC d/b/a Direct Business Concepts, is a California limited liability company with its principal place of business at 9528 Miramar Road, No. 100, San Diego, California.

  d. Health Solutions, Inc. is a California corporation with a principal place of business at 16843 Valley Boulevard, Suite 540 E., Fontana, California.

  e. Guerrero is a California resident doing business at 9528 Miramar Road, No. 100, San Diego, California and 16843 Valley Boulevard, Fontana, California.

  f. Howell is a California resident doing business at 9528 Miramar Road, no. 100, San Diego, California and 16843 Valley Boulevard, Fontana, California.

  g. Geremesz is a California resident doing business at 9528 Miramar Road, no. 100, San Diego, California and 16843 Valley Boulevard, Fontana, California.

  h. Cappseals is a Washington corporation with its principal place of business in Vancouver, Washington.

  i. ITV, among other things, markets and distributes various healthcare related products to individual and retail consumers. ITV has utilized infomercials for the promotion of a variety of nutritional products.

  j. In or about 2002, Howell and Geremesz were in communication with ITV on behalf of Healthy Solutions, LLC and Health Solutions, Inc. and sought information about ITV's products. These discussions continued into 2003, and resulted in a discussion regarding Alex Guerrero and Supreme Greens.

6

k. In or about April 2003, an agreement was finalized between Healthy Solutions and ITV, whereby ITV would become the exclusive infomercial distributor of Supreme Greens.

l. ITV produced the first of two infomercials promoting Supreme Greens in April 2003. All of the production costs, editing expenses, and test airings for the infomercials were born exclusively by ITV.

m. The Supreme Greens product has been advertised in connection with the likeness and name of Guerrero.

n. ITV has sold Supreme Greens through a Distribution Agreement that provides that purchases would be made from Healthy Solutions.

o. Healthy Solutions provided ITV with ingredient lists for Supreme Greens and the suggested dosage information, but did not disclose the precise formula for Supreme Greens to ITV.

p. ITV produced a second infomercial for Supreme Greens, and bore all of the production and associated costs.

q. ITV sent multiple emails to Healthy Solutions and its principals requesting that they take the necessary steps to have the "supremegreens.com" website assigned to ITV.

r. Healthy Solutions received an indemnification demand from ITV for liabilities and expenses it may incur in connection with the pending FDA and FTC investigations.

s. Healthy Solutions rejected ITV's demand for indemnification.

**3.     CONTESTED FACTS[3]**

    a.     ITV claims, and Defendants dispute, that in consideration for ITV's investment, the Defendants agreed that ITV would, among other things, own the trademark rights to "Supreme Greens with MSM."

    b.     ITV claims that Guerrero misrepresented his credentials, education, and the fact that he operated an active clinic with a number of patients. ITV also claims that Guerrero made numerous health claims to ITV about Supreme Greens with MSM, which he assured ITV were supported by documentary and clinical evidence. ITV claims that such documentary and clinical evidence does not exist.

    c.     ITV claims that Healthy Solutions encouraged ITV to file, and approved of its filing of, an application for federal registration of the name "Supreme Greens with MSM."

    d.     ITV was unaware that Guerrero's statements in the infomercial produced by ITV, and in other media, that he was a doctor and OMD, and operated a clinic in California, where he treated terminally ill patients, were a misrepresentation.

    e.     ITV was unaware that Guerrero had no support for the numerous controversial claims he made regarding the health benefits of Supreme Greens. ITV reasonably believed Guerrero's representations that he had conducted a study of over 200 of patients through his clinic, all of whom were diagnosed as terminally ill, and that all but eight of these patients are still alive.

---

[3] ITV and Healthy Solutions are filing a stipulation and joint motion to dismiss pursuant to F.R.C.P. 41, to dismiss with prejudice all of the claims and causes of action they raised against each other in this action. Assuming that such motion is granted by this Court, the majority of these issues of contested fact will be irrelevant to this action, as they are unrelated to the remaining claims brought by Cappseals against Healthy Solutions (for breach of contract) and against ITV (for breach of contract and reach and apply).

  f. ITV reasonably believed Guerrero on the several occasions prior to and after production of the infomercials, when he confirmed to ITV that he possessed competent and reliable documentary and clinical support for each and every representation he made in the infomercials. ITV was unaware that Guerrero lacked this documentary and clinical support, or the credentials he claimed he possessed.

  g. Whether the Healthy Solutions defendants assured ITV in late 2003 that their competing trademark application for federal registration of the name "Supreme Greens with MSM," had been filed solely to protect the trademark pending the filing of ITV's application, and that they would withdraw the application.

  h. Whether the orders for Supreme Greens generated sufficient income for ITV to recoup its tremendous investment in marketing the product.

  i. Whether Healthy Solutions and ITV orally modified the prior Distribution Agreement in early 2004, and agreed, among other things, that Healthy Solutions would (i) pay royalties to ITV for their direct sales of Supreme Greens over the Internet, (ii) transfer to ITV of ownership of the website address "www.supremegreens.com", and (iii) withdraw Healthy Solutions' competing trademark application.

  j. Whether ITV was relying on this modified agreement when it expended well in excess of a million dollars on additional marketing and advertising for the product which it has yet to recoup.

  k. Whether Healthy Solutions confirmed its agreement to transfer ownership of the www.supremegreens.com web sit to ITV when it cashed ITV's check in the amount of $7500, dated January 9, 2004.

9

l.  Whether Healthy Solutions had failed to provide an accounting of its substantial Internet sales to ITV, had failed to pay royalties due to ITV for direct sales of the Product, and had failed to withdraw its trademark application as promised.

m.  Whether Healthy Solutions sought to establish relationships with other distributors and media production companies, despite the exclusivity provision in the Distribution Agreement.

n.  Whether ITV engaged in corrective action at its own significant expense to correct the labeling defects and the alleged misrepresentations by Guerrero identified by the FDA in connection with the Product.

**4.   JURISDICTIONAL QUESTIONS**

The parties are unaware of any jurisdictional questions.

**5.   QUESTIONS RAISED BY PENDING MOTIONS**

a.  *ITV's and Healthy Solutions' Stipulation and Motion to Dismiss:*

ITV and Healthy Solutions recently filed a Joint Motion to Dismiss pursuant to Fed. R. Civ. P. 41 and Stipulation of Dismissal, seeking to dismiss with prejudice the claims and causes of action they have raised against each other in the Amended Complaint and the Counterclaim.

b.  *Cappseals' Motion For Sanctions:*

Cappseals' has a pending Motion for Sanctions against ITV, alleging it has failed to comply with this Court's order requiring ITV to supplement its damages disclosure. Cappseals also has a pending motion in a related action before Judge O'Toole, entitled FTC v. Direct Marketing Concepts, et al., in which Cappseals is seeking leave of a protective order to gain access to certain financial information prepared by ITV in that action.

**6.    ISSUES OF LAW**

a.    Whether the Healthy Solutions Defendants' fraudulent inducement and breach of contract likewise excuses any obligation of the Plaintiff to perform under the Distribution Agreement.  See Shaw's Supermarkets, Inc. v. Delgiacco, 410 Mass. 840, 842 (1991) ("a contract induced by fraudulent misrepresentations is voidable ..."); Espinal v. Liberty Mutual Ins. Co., 47 Mass. App. Ct. 593, 598 (1999) (rejecting argument that reach and apply defendant could not raise fraud between itself and principal defendant to defeat liability); Joseph Martinelli & Co. v. Simon Siegel Co. , 176 F.2d 98, 100 (1st Cir. 1949) ("fraud in the inception of a contract . . . renders it voidable at the election of the person defrauded, with the result that if the defrauded party to a contract breaks it before he discovers the fraud, he may nevertheless assert the fraud as a defense as soon as he discovers it, and demand rescission on that account when sued for breach of contract.");

b.     Whether the Plaintiff is entitled to indemnification from the Defendants under the Distribution Agreement for all legal defense costs, as well as any penalties or fines that may be assessed against ITV by the FTC or FDA as a result of Defendants' fraudulent representations about Guerrero's status as a doctor, the health claims about the Product, the scientific substantiation for such health claims, or the labeling of the Product.  Lumber Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995) (interpretation of a written contract is a question of law, not of fact); Post v. Belmont Country Club, Inc., 60 Mass. App. Ct. 645, 647 (2004) (where no facts in dispute, interpretation of indemnity provision was a question of law).

c.    Whether Cappseals can maintain a claim for reach and apply against ITV where, because of a dismissal with prejudice of Healthy Solutions' claims against ITV, there is no debt owed to Healthy Solutions by ITV.  Hunter v. Youthstream Media Networks, Inc., 241

F.Supp.2d 52, 57 (D. Mass. 2002); Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687 (1984).

   d. Whether Cappseals can maintain a direct action against ITV as an intended, as opposed to an incidental, beneficiary of the contract between ITV and Healthy Solutions.  See Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366-67 (1997); Miller v. Mooney, 431 Mass. 57 (2000) (failure to specify clear and definite intention to benefit third party results only in an incidental beneficiary with no enforceable contract rights); Spinner v. Nutt, 417 Mass. 549, 555 (1994) (no evidence of any manifestation of intent by the contracting parties to confer a benefit upon the plaintiff); Macksey v. Egan, 36 Mass.App.Ct. 463, 468-69 (1994) (finding no evidence that the contracting parties had as their objective any benefit to the plaintiff); Volpe Constr. Co., Inc. v. First Nat'l Bank of Boston, 30 Mass.App.Ct. 249, 256 (contract was distinct arrangement between contracting parties and conferred no benefit upon plaintiff).

   e. Whether ITV has a complete defense to Healthy Solutions' claim for goods sold and delivered as a result of Healthy Solutions' breach of contract, and is entitled to set-off.  See Created Gemstones, Inc. v. Union Carbide Corp., 47 N.Y.2d 250, 255, 391 N.E.2d 987, 989 (1979) ("a buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying sales agreement."); LaBarba v. Morrell & Co., 272 A.D.2d 165, 710 N.Y.S.2d 24, 25 (1st Dept. 2000) ("Where a buyer incurs damages by virtue of the seller's breach of the parties' contract, the buyer's liability for goods sold and delivered is diminished to the extent of his damages"); RPJ Sportswear, Inc. v. Xylo Tex, LTD, 681 F.Supp. 225 (S.D.N.Y. 1988) (Where the buyer's claim against the seller

is "inextricably interwoven" with the seller's cause of action, the buyer is entitled to claim a right of set-off.)

**7.    AMENDMENTS TO THE PLEADINGS**

There are no requested amendments to the pleadings.

**8.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF ACTION**

ITV and Healthy Solutions have agreed to settle all of their claims against each other in this action by agreeing to dismiss all such claims with prejudice. In accordance with that agreement, they have filed a Stipulation of Dismissal and Joint Motion to Dismiss pursuant to Fed.R.Civ. P. 41, requesting an order dismissing with prejudice the claims raised in ITV's Amended Complaint and the Healthy Solutions Defendant's Counterclaim. If such motion is granted, a trial would no longer be necessary in this action, as Cappseals' remaining claims against ITV likely can be decided on summary judgment as a matter of law.[4]

**9.    LENGTH OF TRIAL**

The probable length of trial is 1-2 days if the Motion to Dismiss pursuant to F.R.C.P. 41 is allowed and the only remaining claims are those brought by Cappseals. Further, if the Motion to Dismiss is allowed, it is likely that the claims by Cappseals can be disposed of on summary judgment and no trial will be necessary. If the Motion to Dismiss is not allowed, the probable length of trial will be 7-8 days.

---

[4]    Whether Cappseals can maintain a claim for reach and apply against ITV where there is no debt to Healthy Solutions for Cappseals' to reach and apply, and whether Cappseals is an intended or incidental third-party beneficiary to ITV's contract with Healthy Solutions, are both questions of law that can be decided on summary judgment.

**10.**     **WITNESSES**

   *a.*   *Fact Witnesses:*

   1.   Donald Barrett, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400;

   2.   Robert Maihos, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400;

   3.   Eileen Barrett, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400;

   4.   Jason Bernabei, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400;

   5.   Wayne Callahan, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400;

   6.   Steve Paris, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400;

   7.   Luke Goljan, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400;

   8.   Dan Warner, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA, 978-299-4400

   9.   Alejandro Guerrero, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126;

   10.  Michael Howell, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126;

   11.  Greg Geremesz, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126;

   12.  Cappseals, Inc.
        12607 NE 95TH ST #A-100
        Vancouver, WA  98682
        Harry N. Anderson
        Donald Webb

   *b.*   *Expert Witnesses:*

        None.

11. **PROPOSED TRIAL EXHIBITS**[5]

   Plaintiffs' Proposed List of Exhibits:

   1. Samra University of Oriental Medicine Master of Science Degree to Alejandro Guerrero

   2. Print-out from Health Solutions, Inc.'s web site regarding Dr. Alex Guerrero

   3. Dr. Alex Guerrero's Supreme Greens with MSM Diet Information printed from www.supreme-green-product.com

   4. Email from Michael Howell to Jason Bernabei, dated September 10, 2003 regarding Guerrero biography

   5. Product Licensing and Marketing Agreement between Healthy Solutions, LLC and Guerrero, dated April 4, 2003

   6. Distribution Agreement between ITV Direct and Healthy Solutions, LLC, dated April 4, 2003

   7. Transcript from April 11, 2003, Show 2, for Supreme Greens with MSM

   8. Transcript from Dr. Guerrero Sales Seminar

   9. Email from Dr. Alex Guerrero to Donald Barrett on September 21, 2003

   10. Email exchange between D. Barrett to Guerrero on September 17, 2003

   11. Transcript from Supreme Greens video tape recorded on August 23, 2003

   12. Letter from E. Barrett to Dr. Guerrero, dated January 9, 2004 and copy of cancelled check to Direct Business Concepts for $7500

   13. Email from E. Barrett to G. Geremesz, dated February 16, 2004

   14. Email form E. Barrett to D. Barrett, dated March 10, 2004, and attached transcript of Dr. Guerrero's voicemail on D. Barrett's cell phone

   15. Email from C. Georgiades at AM Marketing, dated March 15, 2004, and attached copy of letter from Dr. Alex Guerrero to Supreme Greens Distributors

   16. Email from Mike to Jim at Superfoods, dated April 30, 2004, and attached letter from Dr. Alex Guerrero to Supreme Greens with MSM Affiliates

---

[5] Again, if the Court allows ITV's and Healthy Solutions' Motion to Dismiss, almost none of these trial exhibits will be necessary, as the only remaining claim is that brought by Cappseals.

17. Print out from www.supreme-greens.net regarding health benefits of Supreme Greens

18. ITV's indemnification demand to Healthy Solutions, LLC, dated April 21, 2004

19. Healthy Solutions, LLC rejection of ITV's request for indemnification, dated April 29, 2004

20. Email exchange between E. Barrett and G. Geremesz dated November 19th and 25th, 2003 regarding substantiation for claims made about Supreme Greens, with attached article from Indian Journal of Pharmacology

21. Email exchange between D. Warner and G. Geremesz on August 21st and 23rd, 2003 with attachments regarding Supreme Greens and testimonials

22. Email from G. Geremesz to D. Warner, dated August 26, 2003, attaching list of ingredients

23. Email exchange between E. Barrett and C. Brown, dated February 2nd and 4th, 2004

24. Email from C. Brown to E. Barrett, dated February 4 and 10, 2004 regarding domain name

25. Email from C. Brown to G. Geremesz, sent on February 17, 18, 20, 23, 25, 26 and March 1, and 3, 2004

26. Email from E. Barrett to G. Geremesz and Guerrero, dated February 13, 2004 regarding FDA Investigation

27. Email from E. Barrett to G. Geremesz and Guerrero, dated March 12, 2004 regarding FDA Investigation

28. Email from M. Howell to B. Christensen, dated May 24, 2004, attaching FDA complaint against ITV

29. Label for Supreme Greens with MSM distributed by Health Solutions

30. Document containing six journal articles regarding: metabolism of tumors, cancer therapy, and electromagnetism

31. Audio tape of Tony Robbins show "Get the Edge" featuring Guerrero

32. Health Solutions' Invoices to customers in 2003 -2004

33. Spreadsheets of internet sales made by Health Solutions

34. Document faxed by Healthy Solutions to Eileen Barrett, dated 9/18/03 regarding studies on ingredients in Supreme Greens

35. Supreme Greens with MSM infomercial Overview

36. Printout from www.hsnow.com regarding Supreme Greens

37. Supreme Greens rough footage videos dated 4/11/03 and 10/24/03

38. Videotape of 1/5/03, Version 1.1, "Dr. Guerrero's Alkalizing System"

39. Videotape of Supreme Greens FTC edit version 7, Diabetes Show, 11/25/03

40. Videotape of Supreme Greens FTC edit version 8, 11/26/03

41. Video tape of Supreme Greens 4.1 dated 4/28/04

42. Videotape of 20/20 show in which Guerrero was featured

43. Transcript of 20/20 show

44. Audio tape of Dr. Guerrero's sales seminar to ITV staff

45. Supreme Greens Media Costs by month for January 2003-June 2004, prepared by Wayne P. Callahan

46. Letters exchanged between ITV and the FDA

47. Letters exchanged between ITV or its counsel and the Federal Trade Commission

48. Invoices from Direct Business Concepts to ITV for Supreme Greens product

49. Letter from counsel for Cappseals to counsel for Healthy Solutions, dated March 25, 2004

50. Email from E. Barrett to G. Geremesz, dated November 12, 2003 regarding trademark application

50. Healthy Solutions' Trademark Application

51. Email from S. Favalora to G. Geremesz, dated August 29, 3003 regarding labels

52. Email from G. Geremesz to E. Barrett, dated September 23 and December 17, 2003 regarding labels

53. Email from S. Paris to E. Barrett, dated October 24, 2003, forwarding emails from G. Geremesz and attachments.

54. Report prepared for the FTC regarding Supreme Greens accounting and supporting work papers. (If Judge O'Toole rules favorably upon the pending motion for modification of his prior entered protective order).

55. Pleadings, affidavits and other documents filed with the court in the present litigation or in <u>FTC v. Direct Marketing Concepts, Inc., et al.</u>, Civ. Act. No. 04-11136 (GAO)

56. Deposition transcripts and exhibits from the depositions of Messrs. Guerrero, Geremesz, Howell, Bernabei, Barrett, and Maihos

                                                        Respectfully submitted,

                                                        ITV DIRECT, INC.

                                                        By their attorney(s),

                                                        <u>/s/ Susan Gelwick</u>
                                                        Peter S. Brooks, BBO #058980
                                                        Christopher F. Robertson, BBO #642094
                                                        Susan W. Gelwick, BBO #567115
                                                        Seyfarth Shaw LLP
                                                        Two Seaport Lane, Suite 300
                                                        Boston, MA 02210-2028
                                                        Telephone:    (617) 946-4800
                                                        Telecopier:    (617) 946-4801

Dated: April 1, 2005