UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HEALTHY SOLUTIONS, L.L.C., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| CAPPSEALS, INC., | )    Civil Action No.  04-CV-10421-JLT |
| | ) |
| Plaintiff-in-Intervention, | ) |
| | ) |
| v. | ) |
| | ) |
| HEALTHY SOLUTIONS, L.L.C., d/b/a | ) |
| DIRECT BUSINESS CONCEPTS; ITV | ) |
| DIRECT, INC.; and DIRECT | ) |
| FULFILLMENT, LLC, | ) |
| | ) |
| Intervenor-Defendants. | ) |

## CAPPSEALS, INC.'s PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(D) of the United States District Court for the District of

Massachusetts, plaintiff-in-intervention Cappseals, Inc. ("Cappseals" or "Plaintiff-in-

Intervention") hereby submit its portions of the Pretrial Memorandum.

**I.    SUMMARY OF CAPPSEALS' EVIDENCE.**[1]

Cappseals expects to offer the following evidence at trial:

**A.    The Distribution Agreement Between Healthy Solutions and ITV:**

In April, 2003, Healthy Solutions, LLC ("Healthy Solutions") and ITV Direct, Inc.

("ITV") executed a distribution agreement (the "Distribution Agreement") whereby ITV would

---

[1]    Currently pending before this Court is Cappseals' Motion for Sanctions as a result of ITV's failure to produce thousands of documents relevant to this case.  Cappseals specifically reserves its right to amend, supplement, edit and revise its statement of the evidence to be presented, its identification of proposed exhibits and it's witness list after the Court rules on Cappseals' Motion.

market through infomercials the dietary supplement formulated by Healthy Solutions – Supreme Greens (referred to herein as "Supreme Greens" or the "Product"). During negotiations for the Distribution Agreement the parties all understood that shipment of the Product would be coming from a separate third-party manufacturer other than Healthy Solutions. ITV and Healthy Solutions also had detailed discussions regarding the allocation of funds generated by the sale of Supreme Greens under the Distribution Agreement. Specifically, ITV and Healthy Solutions agreed that of the $6.50 that ITV was paying for the Product, Alex Guerrero (the purported inventor of the Product) would be paid approximately $1.00, Healthy Solutions would retain $1.00 and the remainder of the purchase price was to be paid to the actual manufacturer of the Product. It was always understood that the manufacturer was to be getting a "piece of the pot." Initially, during the parties' negotiations, ITV wanted "credit terms" such that it could make payment over a period of time as opposed to what the distribution agreement finally provided (50% upon ordering and 50% upon shipment). However, Healthy Solutions' principals insisted on payment at time of shipment because of the stated need to pay its manufacturer.

This arrangement of using a third-party manufacturer was customary in the industry, and, ITV's principals, Donald Barrett and Robert Maihos, were very familiar with the practice. In fact, the arrangement was identical to that ITV established during its marketing and distribution of other health products through infomercials, including the product Coral Calcium. In an almost identical situation to the present case, ITV was sued by MXM Essential Formulas, Inc. - the party that manufactured Coral Calcium - when payment of approximately $900,000 was withheld for product delivered to and accepted by ITV. (*Triad ML Marketing, Inc. v. MXM Essential Formulas, Inc.*, U.S.D.C. of Eastern District of Pennsylvania, C.A. No. 03-6047).

Beyond pricing, the Distribution Agreement also addressed liability issues.  Within Section 24 of the Distribution Agreement ITV and Healthy Solutions detailed the indemnification rights and obligations of both parties.  The indemnification provisions were written so as to have Healthy Solutions maintain any and all liability for production issues, while liability that arose from "market, sales and distribution efforts" regarding the product remained ITV's responsibility for which it continues to have an obligation to indemnify Healthy Solutions. The indemnification provisions were included within the Distribution Agreement in response to ITV's concern over legal issues that arose as a result of Mr. Barrett's involvement and knowledge of the legal trouble caused by the alleged unsubstantiated claims aired within the Coral Calcium infomercial.

The Distribution Agreement also set forth other logical obligations that would flow from ITV being the entity marketing the Product.  Section 9 of the Distribution Agreement states that ITV is responsible for all advertising and promotional expenses.  Section 11 of the Distribution Agreement grants ITV the "sole discretion" to select the "frequency, target market and selection of media outlets" for the marketing of Supreme Greens by infomercials.

**B.      Cappseals Ships Product to ITV:**

In or around August 2003, Healthy Solutions began issuing purchase orders to Cappseals on a weekly or near weekly basis requesting that Cappseals manufacture and bottle certain quantities of Supreme Greens for $2.95 per bottle.  Around the same time, ITV was issuing purchase orders to Healthy Solutions requesting shipment of the Product.

On October 8, 2003, ITV issued a "standing purchase order" requesting shipment of 160,000 bottles of Supreme Greens per month.  Thereafter, on November 11, 2003, ITV issued a "replacement" purchase order to Healthy Solutions, increasing its request to shipment of  50,000 bottles of Supreme Greens *per week*.  These purchase orders issued by ITV do not reference the

Distribution Agreement nor do they incorporate any terms from the Distribution Agreement. Pursuant to the purchase orders, between December 29, 2003 and February 5, 2004, Cappseals made six weekly shipments to ITV containing a total of approximately 303,644 bottles of Supreme Greens. For each of the shipments beginning in April, 2003 through the last shipment in February, 2004, ITV received both packing slips and bills of lading indicating that shipment was coming from Cappseals.[2]

Under Section 14(b) of the Distribution Agreement ITV had ten (10) days to reject any specific shipment if it "failed to meet the manufacturer's formulation or if the product was improperly packaged." However, there is no evidence that ITV ever rejected any of the shipments from Cappseals. Additionally, neither Healthy Solutions nor ITV has ever notified Cappseals of any non-conformity relating to the 303,644 bottles of Supreme Greens shipped to ITV.

For each of the six weekly shipments of Supreme Greens to ITV by Cappseals, Healthy Solutions issued an invoice to ITV expressly noting the specific date and quantity of goods shipped to ITV by Cappseals. The total amount due and owing to Healthy Solutions by ITV pursuant to these six invoices for the 303,644 bottles of Supreme Greens goods shipped by Cappseals is $1,821,864. Concurrently, Healthy Solutions and ITV owe Cappseals approximately $890,182.09 for these goods, the entire sum of which is past due and remains unpaid. Healthy Solutions has acknowledged to Cappseals that it has an outstanding balance on

---

[2]    Cappseals' management also had multiple communications with ITV personnel to coordinate shipping efforts.

its account in the amount of $890,182.09, but asserts that it is without resources to pay this sum

because of ITV's refusal to pay Healthy Solutions for these same goods.[3]

### C.    ITV Raises Pretextual Defenses to Payment for Supreme Greens:

There is no hint in this case that Healthy Solutions or Cappseals acted improperly in any

way regarding the actual sale of Supreme Greens to ITV.  No notice of any non-conformity has

been provided, and no allegation of any non-conformity exists in any pleading submitted in this

case.  Instead, ITV has made claims against Healthy Solutions and its related entities for:

(1)    Breach of contract, based upon allegations that Healthy Solutions or one of its related entities failed to pay royalties for sales through its Web site, and, that Solutions or one of its related entities failed to withdraw its application for registration of the trademarks "Supreme Greens with MSM, and that Healthy Solutions or one of its related entities failed to assign the domain name "supremegreens.com" to ITV (Amended Complaint, 38 –42);

(2)    Conversion, based upon the same allegations made in support of ITV 's breach of contract claim (Amended Complaint, 43 – 45);

(3)    Fraud in the inducement, based upon allegations that Healthy Solutions or one of its related entities fraudulently represented that the product spokesman, Mr. Guerrero, was a doctor and OMD, and that Healthy Solutions fraudulently represented that they possessed reliable scientific evidence for the health claims made by Guerrero concerning Supreme Greens (Amended Complaint, 46 – 50);

(4)    Misrepresentation, based upon allegations that Healthy Solutions fraudulently represented that ITV would have exclusive rights to the Supreme Greens trademark and domain name and that Healthy Solutions would pay ITV royalties for web site sales (Amended Complaint, 52 – 57);

(5)    Indemnification, based upon allegations that Healthy Solutions must hold

---

[3]    As of the filing of this pre-trial memorandum, Healthy Solutions has served an offer of judgment upon Cappseals.  Healthy Solutions has offered to allow judgment to enter against Healthy Solutions and in favor of Cappseals for the principal sum of $890,182.09, together with post judgment after April 15, 2005 at the statutory rate until paid in full, together with prejudgment interest accrued through and including April 15, 2005 in the sum of $123,609.00, for a total of $1,013,791.09, together with costs and disbursements as allowed pursuant to Fed.R.Civ.P. 54.  Cappseals has accepted this Offer of Judgment and, pursuant to Fed.R.Civ. P. 68, judgment should be entered shortly.

ITV harmless from the lawsuit filed by the Federal Trade Commission (Amended Complaint, 58 – 63);

(6)      Violation of M.G.L. c. 93A (unfair trade practices), based upon the above allegations (Amended Complaint, 64 – 67);

(7)      Accounting/appointment of receiver, based upon the allegation that Healthy Solutions had a obligation to pay ITV royalties for web site sales (Amended Complaint, 68 – 71); and

(8)      Declaratory relief, based upon the allegation the ITV is the exclusive owner of the Supreme Greens' trademark and domain name (Amended Complaint, 72 – 77).

Contrary to many of these claims or defenses, ITV never reasonably relied on any representation by Healthy Solutions or Alex Guerero and the thrust of its arguments are a mis-direction intended to avoid the fact that it owes payment for the goods it accepted and sold for significant profits.

ITV began their relationship with Healthy Solutions just as ITV's principals were being investigated by the FTC concerning their marketing of another health product, Coral Calcium. In the context of the FTC's active investigation, the FTC's concerns turned towards ITV's marketing of Supreme Greens. ITV was communicating with the FTC regarding Supreme Greens as early as October 2003.[4] As a result of communications with the FTC, ITV agreed to discontinue airing the original Supreme Greens infomercial and were committed to editing and revising the infomercial to address the FTC's concerns. Accordingly, a second infomercial was taped on October 24, 2003 and, after review, endorsed by the FTC as a "good faith improvement" over the first infomercial. However, ITV's use of the "original infomercial"

---

[4]      While there was a similar investigation by the FDA into the Product itself, on May 12, 2004, the Food and Drug Administration sent a letter to ITV's counsel stating that the corrective action proposed by ITV appeared to be adequate.

continued unabated for months after it had been warned by the FTC that the infomercial contained unsubstantiated information.[5]

Not only did ITV continue to disseminate unsubstantiated claims months after the FTC's demands, ITV accepted all shipments from Cappseals (the last occurring on February 5, 2004) well before it ceased its knowing conduct questioned by the FTC.[6]  Additionally, the extensive communications and negotiations with the FTC that resulted in the initial editing of the Supreme Greens infomercial, also occurred well before ITV issued its November 21, 2003 "standing purchase order" for the Product.  Accordingly, ITV never reasonably relied upon the alleged misrepresentations of Healthy Solutions such that it has no legitimate defense against claims for payment of the Product.

### D.    ITV's Pattern and Practice of Deceptive Conduct:

ITV has established a culture of obfuscation, delay and excuse whereby it markets questionable products, reaps the benefit of its relationships with vendors and thereafter attempts to avoid paying debts based upon pretextual and self-serving excuses.  The defenses raised by ITV are simply an extension of their dishonorable business practices designed to leave someone else in the "lurch" for their potentially unlawful conduct.

Through its relationship with other infomercial producing entities, ITV has a long and sordid history as well a pattern and practice of knowingly marketing questionable products and thereafter avoiding creditors under the guise of Donald Barrett's stated strategy with regard to the FTC, "we'll fight them with their own money."  It was in this context of continuing

---

[5]      At all relevant times ITV continued to have exclusive and unfettered control over the strategy for, and purchase of, "media" whereby the different versions of the Supreme Greens information were aired to the public.

[6]      Documentary evidence regarding this inconsistency is just one example of categories of material that exists but has been purposely withheld and/or concealed by ITV.  This conduct is the subject of Cappseals' Motion for Sanctions still pending before the Court.

investigations by governmental entities such as the FTC - where unsubstantiated claims and credentials of other "experts" used by ITV were constantly questioned - that ITV began its allegedly "innocent" relationship with Alex Guerrero. ITV was at all times aware of Alex Guerero's qualifications and the potential lack of substantiation for the Product.

E.    **The Parties' Settlement Agreement and Ensuing Breach By ITV and Healthy Solutions:**

During a status conference on February 1, 2004 all parties represented to the Court that, without qualification or reservation, all parties had reached an agreement in principal which would result in Cappseals obtaining an agreement for judgment from Healthy Solutions while preserving, and NOT compromising, Cappseals' claims against ITV. The only caveat that was ever raised with the Court was the parties need to reconcile the settlement with the existing injunction that had been awarded to Cappseals preventing ITV and Healthy Solutions from dissipating their assets in light of Cappseals' likelihood of recovering the money it was owed. This ministerial issue did not impact any material aspect of the parties' agreement or the binding effect of the parties' representations. ITV and Healthy Solutions have now filed a motion to dismiss pursuant to F.R.C.P. 41, to dismiss with prejudice the claims they raised against each other in the Amended Complaint and the Counterclaim. As articulated further within Sections 5 and 8 of this memorandum, Cappseals maintains that the efforts of ITV and Healthy Solutions to dismiss their claims against each other are in direct violation of this Court's April 14, 2004 preliminary injunction and the parties' settlement agreement described to the Court during the status conference on February 1, 2004.

II.     **CONTESTED FACTS.**

    A.     **Cappseals Statement:**

Cappseals states that the inclusion of any issue within this section shall not serve as an admission or acknowledgement that such issue is relevant to the issues that will be litigated at the time of trial. Cappseals specifically reserves, and does not waive, its right to assert that any of the issues identified herein are irrelevant during the trial of this matter or through an appropriate motion in limine.

    1.     ITV's knowledge and understanding of the facts surrounding Guerrero's statements in the infomercial produced by ITV, and in other media, that he was a doctor and OMD, and operated a clinic in California, where he treated terminally ill patients.

    2.     Whether Healthy Solutions and ITV orally modified the prior Distribution Agreement in early 2004, and agreed, among other things, that Healthy Solutions would (i) pay royalties to ITV for their direct sales of Supreme Greens over the Internet, (ii) transfer to ITV of ownership of the website address "www.supremegreens.com", and (iii) withdraw Healthy Solutions' competing trademark application.

    3.     Whether the FTC's investigation is focused on the manufacturing of Supreme Greens, or, the marketing and selling of Supreme Greens.

    4.     The amounts expended by ITV marketing Supreme Greens. The amount of gross and net revenue ITV generated selling Supreme Greens.

    5.     The dates upon which ITV sold the Supreme Greens that was manufactured by Cappseals.

    6.     The dates upon which ITV sold Supreme Greens that was manufactured by companies other than Cappseals.

    7.     Whether ITV knowingly continued to order, accept shipment and sell

Supreme Greens when the FTC was actively investigating and questioning its marketing and sale efforts.

8.   Whether ITV is continuing to sell Supreme Greens, or an equivalent, manufactured by Cappseals or any other manufacturer.

9.   Whether ITV and Healthy Solutions intended that a third-party manufacturer was to be paid out of funds generated under the Distribution Agreement.

10.   ITV's knowledge regarding Cappseals manufacturing of Supreme Greens.

11.   Whether ITV ever rejected the shipments of Supreme Greens and whether ITV ever claimed that the Supreme Greens shipped by Cappseals were in any manner non-conforming.

12.   Whether the Distribution Agreement obligates either ITV or Healthy Solutions to indemnify the other against claims initiated by the FTC.

13.   The amounts owed to Healthy Solutions by ITV under the Distribution Agreement.  The amounts owed to Cappseals by either Healthy Solutions or ITV as a result of Cappseals manufacturing and shipment of Supreme Greens to ITV.

14.   ITV's knowledge, understanding and past experience with investigations by the FTC and other federal agencies.

15.   ITV's experience, understanding and knowledge gained from its participation in previous infomercials.

16.   ITV's knowing violations of agreements and representations made to the FTC including its use of the "original infomercial".

III.    **JURISDICTIONAL QUESTIONS.**

Cappseals is unaware of any jurisdictional questions.

IV.    **QUESTIONS RAISED BY PENDING MOTIONS.**

A.    **ITV's and Healthy Solutions' Stipulation and Motion to Dismiss:**

ITV and Healthy Solutions have filed a Stipulation and Motion to Dismiss pursuant to

Fed. R. Civ. P. 41, seeking to dismiss with prejudice the claims they have raised against each

other in the Amended Complaint and the Counterclaim.

B.    **Cappseals' Motion For Sanctions:**

Cappseals' has a pending Motion for Sanctions against ITV alleging that ITV has

actively concealed relevant evidence and failed to comply with this Court's order requiring ITV

to supplement its automatic disclosure pursuant to Rule 26.1. Cappseals also has a pending

motion in a related action before Judge O'Toole, entitled *FTC v. Direct Marketing Concepts, et

al.*, in which Cappseals is seeking leave of a protective order to gain access to certain financial

information prepared by ITV in that action.

C.    **Cappseals' Motion to Enforce Settlement Agreement:**

On the eve of this filing, ITV and Healthy Solutions have filed a motion to dismiss and a

stipulation of judgment. Cappseals maintains that these actions are a calculated attempt to

compromise Cappseals' claims and insulate ITV and Healthy Solutions from liability. These

actions are also in direct violation of this Court's April 14, 2004 preliminary injunction and the

settlement agreement reached by all parties as described to the Court during the status conference

on February 1, 2004. The preliminary injunction currently prevents Healthy Solutions and ITV

from "selling, compromising, transferring, assigning, or otherwise disposing of, alienating or

hypothecating its interest in any and all monies due or to become due to DBC from ITV Direct

for the manufacture and shipment of Supreme Greens to ITV Direct or its interest in any and all

11

intellectual property related to Supreme Greens." Cappseals intends on filing a motion to enforce the parties' settlement agreement. Additionally, Cappseals may need to amend its claims to add breach of contract claims, claims pursuant to G.L. c. 93A covering the conspiracy and attempts by ITV and Healthy Solutions to deprive Cappseals of the fruits of a negotiated settlement, and, potential fraud claims against the principals of Healthy Solutions for their misrepresentations and participation in the ITV's and Healthy Solutions attempts to undermine Cappseals' claims.

## V.    ISSUES OF LAW.

### A.    Cappseals' Statement:

1.     Pursuant to M.G.L. c. 214, § 3(6), a creditor can reach and apply in payment of the amount owed to it by a debtor, "any property, right, title or interest, legal or equitable," of the debtor "which cannot be reached to be attached or taken on execution … if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court."

2.     The Massachusetts reach and apply statute is very broadly written. *Tilcon Capaldi, Inc. v. Feldman,* 249 F.3d 54, 61 (1st Cir. 2001). "[M]ere potential for [] problems in some cases, for which tailored solutions are usually possible, is no reason to bar the reach and apply statute from the start." *Tilcon Capaldi,* 249 F.3d at 61.

3.     Under M.G.L. c. 214, § 3(6), the court must undertake a "two-step process to establish (1) the indebtedness of the defendant and (2) the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." *Hunter v. Youthstream Media Networks, Inc.,* 241 F. Supp. 2d 52, 57 (D. Mass. 2002) (citing M.G.L. c. 214 §§ 3(6) and (7); *Papamechail v. Holyoke Mut. Ins. Co.,* 397 N.E.2d 1153, 1156 (Mass. App. Ct. 1979)). "The first step, must show the existence of a debt owed the company by [] the principal defendant."

*Mass. Electric Co. v. Athol One, Inc.,* 391 Mass. 685, 687 (1984).  The second step of the

process involves "satisfying the debt out of property held by one who owes a debt to the

principal defendant."  *Mass. Electric,* 391 Mass. at 687.

   4. Under Massachusetts law, a third party can maintain an action for breach

of contract if it is an intended beneficiary of the contract.  *Rousseau v. Diemer,* 24 F.Supp. 2d

137, 144 (D. Mass. 1998) (citations omitted).  Intent of the parties determines whether a third

party is an intended beneficiary.  *Id.*  A party is an "intended beneficiary" of a contract, if

recognition of a right to performance in the beneficiary is appropriate to effectuate the intention

of the parties and the circumstances indicate that the promise intends to give the beneficiary the

benefit of the promised performance.  *Id.* at 144-45.  Courts must look to the language and

circumstances of the contract for indicia of intention to give the beneficiary the benefit of the

promised performance.  *Id.* at 145.  "The intended, party need not be specifically or individually

identified in the contract, but must fall within a class clearly intended by the parties to benefit

from the contract."  *In re Pharm. Indus. Average Wholesale Price Litig. v. Abbott Labs.,* 339 F.

Supp. 2d 165, 178 (D. Mass. 2004) (quoting *Klamath Water Users Protective Ass'n v. Patterson,*

204 F.3d 1206, 1211)

   5. Under Massachusetts law, a buyer of goods "*must* pay at the contract rate

for all goods accepted."  M.G.L. c. 106, § 2-607(1) (emphasis added).  Where the buyer fails to

pay the price for accepted goods when it becomes due, the seller's remedy is an action for price.

M.G.L. c. 106, § 2-709(1).

   6. Pursuant to M.G.L. c. 106, § 2-717, the "buyer on notifying the seller of

his intention to do so may deduct all or any part of the damages resulting from any breach of the

contract from any part of the price still due under the *same contract.*"  (emphasis added).

However, "[t]his section does not allow a buyer to be excused from payment." *Adamatic v. Progressive Baking Co., Inc.*, 667 A.2d 871, 874 (Me. 1995).

7.    Section 2-717 "is not a general set-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer." *C.R. Bard v. Medical Electronics Corp.*, 529 F. Supp. 1382, 1388 (D. Mass. 1982) (emphasis added). Rather, "[d]amages are deductible only against the price still due and owing under the *same contract.*" *Id*. (emphasis added).

8.    It is "well established that the buyer's "obligation to pay for goods tendered and accepted does not arise under the 'same contract' as the alleged breach of an exclusive dealing or distributorship agreement" by the seller." *Travenol Laboratories, Inc.*, 394 Mass. 95, 98 (1985)(citing *Hellendall Distribs., Inc. v. S.B. Thomas, Inc.*, 559 F. Supp. 573, 574-575 (E.D.Pa. 1983); *C.R. Bard*, 529 F. Supp. at 1387 (D. Mass. 1982)).

9.    Distribution agreements which merely contemplate sales should <u>not</u> be considered the "same contract" as individual purchase orders. See *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1067 (7th Cir.1987) (as to any particular sale, the price, type, and quantity of goods sold resulted from accepted purchase orders and not from the distributorship agreement); *S.A.M. Electronics, Inc. v. Osaraprasop*, 39 F. Supp. 1074, 1086 (N.D. Ill. 1999); *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 703 (7th Cir. 1995)("distributorship agreements and the purchase orders that arise under them are not the same contract for purposes of § 2-717.").

10.    To achieve a right to set-off the Distribution Agreement would need to have been made part of every purchase order such that they were one agreement. *ECHO*, 52 F.3d at 707.

11.    While there is no magic language that courts require to accomplish incorporation, the courts do require language sufficient to evidence the intent to incorporate – which language is completely absent from the Settlement Agreement. See *United States v. Boston Scientific*, 167 F. Supp. 2d 424, 431-32 (D. Mass. 2001).

12.    Even a clear or specific reference to another document does not equate to incorporation. See *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 379 F.3d 1, 10 (1st Cir. 2004); *Rosenblum v. Travelbyus.com ltd.*, 299 F.3d 657, 666 (7th Cir. 2002) ("mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate.")

13.    A buyer's failure to provide notice to the seller, within a reasonable time after he discovers or should have discovered any breach, will effectively bar the buyer from exercising his rights under § 2-717. *See* M.G.L. c. 106, §§ 2-717 and 2-607(3)(a). The determination of "[w]hat constitutes reasonable time depends on the particular circumstances of a case." *M.K. Assoc. v. Stowell Products, Inc.,* 697 F. Supp. 20, 21 (D. Me. 1988).

14.    In order for a buyer to invoke § 2-717, the asserted breach must go to the *essence of the transaction* under which the seller seeks to recover his price. *Bard,* 529 F. Supp. at 1387 (emphasis added). When the seller does not act improperly with regard to the actual sale or delivery of the goods, an alleged breach does not go to the essence of the contract. *Id.* Furthermore, a contract "fails *in its essence* … where ordered goods are not delivered at all or are delivered with significant faults rendering them inoperable." *McNally Wellman Co., a Div. of Boliden Allis, Inc. v. New York State Elec. & Gas Corp.,* 63 F.3d 1188, 1199-1200 (2d. 1995).

15.    When alleged oral misrepresentations are inconsistent with the terms of the contract regarding the same issue, a party has not made out a plain case of fraud as to the

essence of the contract. *Teragram Corp. v. Marketwatch.com, Inc.,* 2004 WL 3086883, *12 (D. Mass. Dec. 29, 2004).

16.     A buyer can not assert a claim for damages against the seller by way of counterclaim and at the same time raise the claim in recoupment to reduce the recovery of the purchase price by the seller, as this would allow the buyer to recover duplicating damages. *See International Computer Group, Inc. v. Data General Corp.,* 283 S.E.2d 12 (Ga. App. 1981). Reasonable reliance is an inherent element of any claim for Fraud. *Nei v. Burley*, 388 Mass. 307, 311 (1983); *Bishay v. Foreign Motors, Inc.,* 416 Mass. 1, 12 (1993).

17.     When interpreting a contract, 'There is no surer way to find out what the parties meant, than to see what they have done." *Martino v. First National Bank of Boston,* 361 Mass 325, 332 (1972) (citation omitted).  This is because "[a] person's actions subsequent to executing a legal document which tend to show his understanding of the document's legal effect may be considered in determining his intention at the time of execution." *Bourgeois v. Hurley,* 8 Mass. App. Ct. 213 (1979).  *See Mass. Municipal Wholesale Electric Co. v. Danvers,* 411 Mass. 39, 59 (1991) (conduct after signing agreement is indicative of parties' intent).

18.     The particular construction given to a contract by the parties, as evidenced by their conduct, is "of great weight and will usually be adopted by the court." *C.K. Smith & Co. v. Charest,* 348 Mass. 314 (1965), *quoting Canadian Club Beverage Co. v. Canadian Club Corp.,* 268 Mass. 561, 569 (1929); *Eldridge v. Provident Cos.,* 2001 Mass. Super. LEXIS 82 (Mass. Super. Ct., March 13, 2001, Filed)(subsequent conduct is entitled to great weight when determining the parties' intentions).

19.     In Massachusetts, settlement agreements made orally and in open court are enforceable. See *Correia v. DeSimone,* 34 Mass. App. Ct. 601, 604 (Mass. App. Ct., 1993). An

enforceable settlement agreement requires agreement on its material terms by representatives authorized to settle the case. See *Flebotte v. Dow Jones & Co.,* at *8 2001 U.S. Dist. LEXIS 21327 (citing *Therma-scan, Inc. v. Thermoscan, Inc.,* 217 F.3d 414, 419 (6th Cir. 2000 and *McKelvey v. American Seafoods,* No. C99-2108L, 2000 WL 33179292, at *1 (W.D. Wash. Apr. 7, 2000). Agreements made in open court have the imprimatur of legitimacy that other agreements lack and are thus upheld by the court. See *Paixao v. Paixao,* 429 Mass. 307, 309 (Mass., 1999).

20.    To allow a party to renounce such an agreement made in court by its representative would be unfair and illogical. The Superior Court has reinforced this rule as recently as January 2005 in *Marshall, et al. v. Burchell, et al.,* Lawyers Weekly No. 12-002-05 (Super. Ct. 2005)("It defies logic and fundamental principals of fairness to allow a represented party who has sought justice in a forum to contradict and undermine an agreement it reached and acknowledged in the same forum, especially when the judge and other litigants appear to have relied on that acknowledgment.") citing *Correia v. DeSimone,* 34 Mass. Appt. Ct. 610 at 604 (1993).

## VI.  AMENDMENTS TO THE PLEADINGS.

Cappseals may seek leave to amend its pleadings to add breach of contract claims, claims pursuant to G.L. c. 93A covering the conspiracy and attempts by ITV and Healthy Solutions to deprive Cappseals of the fruits of a negotiated settlement, and, potential fraud claims against the principals of Healthy Solutions for their misrepresentations and participation in the ITV's and Healthy Solutions attempts to undermine Cappseals claims.

## VII.  ADDITIONAL MATTERS TO AID IN DISPOSITION OF ACTION.

ITV and Healthy Solutions have a Motion to Dismiss pursuant to Fed.R.Civ. P. 41, requesting an order dismissing with prejudice the claims raised in ITV's Amended Complaint

and the Healthy Solutions Defendant's Counterclaim.  Cappseals disputes the ability of ITV and

Healthy Solutions to dismiss the claims they have brought against each other.  As articulated in

detail herein, Cappseals maintains that the efforts of ITV and Healthy solutions described in this

section constitute a breach of contract and an unjustified attempt to violate this Court's

preliminary injunction prohibiting the dissipation of assets that may satisfy the judgment

Cappseals is expected to achieve in this litigation.

## VIII.   LENGTH OF TRIAL.

The probably length of trial will be 7-8 full days.

## IX.   WITNESSES.

Cappseals hereby submits its witness list in the above referenced matter.  Cappseals

reserves the right to supplement this list to add witnesses to rebut testimony presented during the

trial by other witnesses, either of  ITV or Healthy Solutions.  Cappseals reserves the right to call,

separately and independently from either ITV or Healthy Solutions, any witness listed on either

of their witness lists.  Cappseals also reserves its right to amend, supplement, edit and revise its

witness list after the Court rules on Cappseals' Motion for Sanctions.

a.    *Cappseals Fact Witnesses:*

1.    Alex Guerrero, a/k/a/ Alejandro Guerrero, c/o O'Connor Christensen & McLaughlin LLP 1920 Main Street, Suite 150, Irvice, CA 92614

2.    Michael Howell, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126

3.    Greg Geremesz, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126

4.    Donald Webb, c/o Cappseals, Inc., 12607 NE 95th Street, #A-100, Vancouver, WA 98682

5.    Harry Anderson, III c/o Cappseals, Inc., 12607 NE 95th Street, #A-100, Vancouver, WA 98682

6.    William Tarmey, 16 Willow Street, Beverly MA 01915

7.      Kimberly York, Charlestown, MA

8.      Kevin Trudeau, c/o Shop America (USA), LLC, 1462 Elmhurst Road, Elk Grove Village, IL 60007-6417

9.      Becky Brainard, c/o MXM Essential Formulas, Inc., 6821 South 220th Street, Kent, Washington 98032

10.     Victoria Michaels, New York, NY

11.     Federal Trade Commission

12.     Peter Brooks, c/o Seyfarth Shaw LLP, Two Seaport Lane, Suite 300, Boston, MA 02210

13.     Donald Barrett, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA

14.     Robert Maihos, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA

15.     Eileen Barrett, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA

16.     Wayne Callahan, c/o ITV Direct, Inc., 100 Cummings Center, Suite 125A, Beverly, MA

17.     Todd Stanwood c/o Ideal Health, 17250 Dallas Parkway, Dallas, TX  75248

18.     Scott Stanwood c/o Ideal Health, 17250 Dallas Parkway, Dallas, TX  75248

*b.*      *Expert Witnesses:*

        None.

## X.     CAPPSEALS PROPOSED LIST OF EXHIBITS:

Some of the documents identified below will only be offered for the purpose of establishing notice.  Accordingly, the inclusion of any document within Cappseals' list of potential exhibits should not be taken as an admission or acknowledgement that Cappseals concedes the truth of any matter discussed therein.  Cappseals reserves the right to use, separately and independently from either ITV or Healthy Solutions, any exhibit identified within

their lists.  However, Cappseals does not waive its right to object to the admissibility of any

document identified within the exhibit lists of ITV or Healthy Solutions.

1.    Label from Supreme Greens bottle – Jason Bernabei Deposition Exhibit 31

2.    Email from Eileen Barrett to Alex Guerrero attaching Revised Export Management Agreement dated November 20, 2003

3.    Email from Eileen Barrett to Greg Geremesz attaching draft response letter to Attorney General regarding Supreme Greens dated January 15, 2004

4.    Email from Eileen Barrett to Greg Geremesz regarding Supreme Greens sheet going out in packages dated January 19, 2004

5.    Email from Eileen Barrett regarding FDA Investigation – Greg Geremesz deposition exhibit 28

6.    Email from Eileen Barrett to Greg Geremesz regarding Supreme Greens Website dated February 16, 2004

7.    Email from Chris Brown regarding Supreme Greens website dated February 17, 2004

8.    Email from Eileen Barrett attaching Version 2 – Restated and Amended Distribution Agreement Health Solutions dated February 20, 2004

9.    Email from Eileen Barrett regarding FDA Investigation dated March 12, 2004

10.   Email from Jason Bernabei to Eileen Barrett attaching letter on Supreme Greens dated April 30, 2004

11.   Email from Michael Howell to Jason Bernabei attaching revised biography of Alex Guerrero – Alex Guerrero Deposition Exhibit 4 dated September 10, 2003

12.   Printed Screens from Supreme Greens infomercial

13.   Purchase Orders and Invoices for Supreme Greens Capsules from ITV Direct to Direct Marketing Concepts

14.   Purchase Orders and Invoices for Supreme Greens Capsules from ITV Direct to Healthy Solutions, Inc.

15.   Packing Lists and Slips for Supreme Green Capsules

16.   Bills of Lading and Shipping Orders for Supreme Green Capsules

17.   Transcript of Dr. Guerrero Sales Seminar – Alex Guerrero Deposition Exhibit 8

18.    Warning Letter from Food and Drug Administration to Donald Barrett / ITV Direct, Inc. / Direct Marketing Concepts, Inc. dated April 19, 2004

19.    Letter from Food and Drug Administration to Christopher F. Robertson, Esq. dated May 12, 2004

20.    Letter from Christopher F. Robertson to Food and Drug Administration dated May 10, 2004

21.    Email from Donald Barrett to Eileen Barrett regarding documentation folder – Alex Guerrero Deposition Exhibit 10

22.    Invoice from Cappseals, Inc. to Direct Business Concepts dated December 31, 2003

23.    Email from Michael Howell to Becky Christensen attaching FDA letter – Gregory Geremesz Deposition Exhibit 30

24.    Email from Todd Stanwood to Alex Guerrero attaching Settlement Agreement dated March 30, 2004

25.    Certificate of Good Manufacturing Process for Cappseals, Inc. dated March 16, 2004

26.    Letter from Christopher F. Robertson to Healthy Solutions, Inc. regarding Indemnification Demand – Gregory Geremesz Deposition Exhibit 18

27.    Letter from Becky V. Christensen to Christopher Robertson, Esq. regarding indemnification dated April 29, 2004

28.    Statement of Account from Cappseals, Inc. for Direct Business Concepts with List of Invoices attached

29.    Any and all pleadings for United States District Court, Eastern District of Pennsylvania Civil Matter 03-CV-06047:  Triad ML Marketing, Inc. v. MXM Essential Formulas, Inc.

30.    Verified Complaint for United States District Court, Eastern District of Pennsylvania Civil Matter 03-CV-06047:  Triad ML Marketing, Inc. v. MXM Essential Formulas, Inc. dated October 31, 2003

31.    Amended Answer, Affirmative Defenses, Cross-Claims, and Counterclaims of MXM Essential Formulas, Inc. for United States District Court, Eastern District of Pennsylvania Civil Matter 03-CV-06047:  Triad ML Marketing, Inc. v. MXM Essential Formulas, Inc. dated August 18, 2004

32.    Cover page from Dr. Lorraine Day's Official Website – www.drday.com

33.    Amended Complaint for Permanent Injunction and Other Equitable Relief in Federal Trade Commission v. Kevin Trudeau matter, United States District Court, Northern District of Illinois, No. 98-C-0168 dated November 7, 2003

34.    Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as to Defendants Robert Barefoot, Deonna Enterprises, Inc. and Karbo Enterprises, Inc. in Federal Trade Commission v. Kevin Trudeau matter, United States District Court, Northern District of Illinois, No. 98-C-0168 dated January 22, 2004

35.    Federal Trade Commission Press Release dated January 22, 2004

36.    Warning Letter from the Food and Drug Administration to Lynnell W. Braught of Reality Health Research, Inc. dated March 4, 2004

37.    Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as to Defendants Kevin Trudeau, et al. in Federal Trade Commission v. Kevin Trudeau matter, United States District Court, Northern District of Illinois, No. 98-C-0168 dated September 7, 2004

Respectfully submitted,
CAPPSEALS, INC.
By its attorneys,


/s/ Scott A. Silverman
Daniel J. Kelly BBO# 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO #638087
ssilverman@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
DATED:  April 1, 2005                     (617) 345-7000

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served on the attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

Via electronic notification:

Peter S. Brooks            pbrooks@seyfarth.com

Susan W. Gelwick        sgelwick@seyfarth.com

Dustin F. Hecker          dhecker@pbl.com

Christopher F. Robertson        crobertson@seyfarth.com

Becky Christensen        bvc@ocmiplaw.com

> /s/ Scott A. Silverman
> Daniel J. Kelly BBO# 553926
> dkelly@ghlaw.com
> Scott A. Silverman, BBO #638087
> ssilverman@ghlaw.com
> Gadsby Hannah LLP
> 225 Franklin Street
> Boston, MA 02110

DATED: April 1, 2005                (617) 345-7000