```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2
    * * * * * * * * * * * * * *
 3  HEALTHY SOLUTIONS, LLC,     *
    et al                       *
 4        Plaintiffs,           *
                                *
 5           vs.                *       CIVIL ACTION
                                *       No. 04-10421-JLT
 6  ITV DIRECT, INC.            *
    et al                       *
 7        Defendants.           *
    * * * * * * * * * * * * * *
 8
              BEFORE THE HONORABLE JOSEPH L. TAURO
 9              UNITED STATES DISTRICT JUDGE
                    STATUS CONFERENCE
10
    A P P E A R A N C E S
11
           SEYFARTH SHAW LLP
12         World Trade Center East
           Two Seaport Lane, Suite 300
13         Boston, Massachusetts 02210
           for the plaintiff ITV Direct
14         By:  Christopher F. Robertson, Esq.

15

16

17         LEVIN & O'CONNOR
           384 Forest Avenue, Suite 13
18         Laguna Beach, California 92651
           for the defendants in the counterclaim
19         By:  Becky V. Christensen, Esq.

20

21

22
                              Courtroom No. 20
23                            John J. Moakley Courthouse
                              1 Courthouse Way
24                            Boston, Massachusetts 02210
                              February 1, 2005
25                            10:45 a.m.
```

```
 1   APPEARANCES, CONTINUED

 2

 3
          GADSBY & HANNAH LLP
 4        225 Franklin Street
          Boston, Massachusetts 02110
 5        for the plaintiff in intervention Cappseals
          By: Daniel J. Kelly, Esq.
 6            Scott A. Silverman, Esq.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20        CAROL LYNN SCOTT, CSR, RMR
             Official Court Reporter
21         One Courthouse Way, Suite 7204
           Boston, Massachusetts 02210
22               (617) 330-1377

23

24

25
```

## P R O C E E D I N G S

THE COURT: Have you worked out your dispute with respect to Judge O'Toole's order?

MR. KELLY: We have not, Your Honor. My name is Dan Kelly. I'm for the plaintiff --

THE COURT: Do you want to call it?

THE CLERK: I am going to call the case, Judge.

Civil action No. 04-10421, Healthy Solutions versus ITV Direct. Would counsel please identify themselves for the record.

MR. KELLY: My name is Dan Kelly, with Scott Silverman, from Gadsby. We represent Cappseals, the plaintiff in intervention.

MS. CHRISTENSEN: Good morning, Your Honor. I am Becky Christensen. I represent Healthy Solutions, LLC, Health Solutions, Inc., Alex Guerrero, Mike Howell and Greg Geremesz, all defendants in the counterclaim.

THE COURT: Okay.

MR. ROBERTSON: And Christopher Robertson, Seyfarth Shaw, for the plaintiff ITV Direct.

THE COURT: Okay. Now, how critical is this report? I mean, one path I can suggest is that we permit you to file a motion with Judge O'Toole and ask whether he will permit the distribution of the results of his order to

1    the parties in this case.
2              MR. KELLY: Well, let me explain why the
3    report is critical. There were initially --
4              THE COURT: No, how about that? I mean, I
5    will take your word for it.
6              MR. KELLY: Judge, I have already talked to
7    the lawyer who represents the FTC, the lead attorney, a
8    Mr. Daniel Kaufman. I spoke to him yesterday. He said that
9    he had no objection to the release of the report and any of
10   the documents that have been produced by ITV in that matter.
11             THE COURT: No, but the order is Judge
12   O'Toole's.
13             MR. KELLY: That's correct, Judge.
14             THE COURT: So all you have to do is just file
15   a motion with Judge O'Toole, saying all that and ask him to
16   just issue an order releasing the confidentiality of the --
17   relieving everybody from the confidentiality of his order.
18   And then I will allow the motion to produce.
19             MR. KELLY: We could go that route, Judge.
20   I'm not sure whether it's necessary. I am concerned about
21   the delay associated with filing such --
22             THE COURT: You could do it this afternoon. I
23   mean, he is right here in the building.
24             I think it is presumptuous of me to issue an order
25   that may be deemed to contradict what he said.

1            MR. KELLY:  I understand that, Judge.  But the
2   Court is certainly within its rights to address the
3   supplementation of the initial disclosures, because it's not
4   just the report that we're requesting.  We have not seen any
5   of the additional documents from the -- from ITV since the
6   initial disclosures back in February.
7            This case in large respects concern what they have
8   done with respect to the sale of these products that
9   originated with our client and any expenses or costs that
10  they incurred with respect to the sale of those products.
11           THE COURT:  That is a different issue; isn't
12  it?
13           MR. KELLY:  It is a different issue but it is
14  included within our motion, Judge.
15           THE COURT:  Well, it may be but I am parsing
16  it up.  I am saying I am not going to do anything with
17  respect to Judge O'Toole's order.  I will let you try to
18  have him release the confidentiality of it.
19           That may be an overabundance of caution on my part.
20  But, anyway, that is the way it is.
21           As far as bringing up-to-date what is Rule 26
22  material, you have an obligation to bring that up-to-date.
23           MR. ROBERTSON:  And we agree, Your Honor.
24  What we have not agreed to produce are -- as part of the
25  FTC, our clients have been required to prepare asset

```
 1    disclosures and asset statements which have nothing to do
 2    with the liability or the merits claimed in this case.  They
 3    have to do with potential recovery once they get a judgment.
 4          And as we have cited in our briefing, asset
 5    disclosures, you know, is for after they get that judgment,
 6    not now.  These are truly just asset documents.  In their
 7    motion they don't hide the fact that that's what they are
 8    looking for.  They are simply looking for documents that
 9    reflect where our assets are.
10          THE COURT:  Doesn't that go towards damages?
11          MR. ROBERTSON:  No, it doesn't --
12          THE COURT:  Their assets -- excuse me.
13          MR. ROBERTSON:  I'm sorry.
14          THE COURT:  Their assets are probably affected
15    by the profit picture.
16          MR. ROBERTSON:  Well, no, it doesn't go to
17    their claim.  Their claim is that they shipped a certain
18    amount of product to us.  What happened to it afterwards is
19    irrelevant on that issue.
20          Whether we have --
21          MR. KELLY:  That is in regard to their claims,
22    Judge.  They're claiming a host of setoff defenses based
23    upon all of these costs that they incurred, a fraudulent
24    misrepresentation by the party in the middle of this Healthy
25    Solutions.  They're claiming that they don't have to pay us
```

```
 1   anything because they've incurred all these damages and
 2   costs associated with producing this product.  And that's
 3   one of the things that is in our motion.
 4           They have never articulated exactly what their
 5   damages are as they're required to do in the initial
 6   disclosures, nor have they given us any documents which
 7   support their claim for damages.  That's why it's relevant.
 8           (Pause in proceedings.)
 9           THE COURT:  I think what he says is correct.
10   I think that you do have an obligation under Rule 26, if you
11   have got a counterclaim of some sort, to set forth the basis
12   for your assertion of financial loss.
13           MS. CHRISTENSEN:  I don't disagree with that,
14   Your Honor, at all.  What we produced is we produced all the
15   invoices, all those documents.  We can certainly go back
16   through what we produced and see if there are other
17   documents.
18           What we have not agreed to produce are financial
19   statements, individual and company financial statements that
20   were prepared specifically for the Federal Trade Commission
21   in connection with attempting to resolve that case with
22   them.
23           THE COURT:  All right.  So what is wrong with
24   that?
25           MR. KELLY:  It's just not true, Judge.  They
```

```
 1    haven't produced any documents.  I think my colleague will
 2    back me up.  They only produced the bare minimum of
 3    documents associated with the sale by Healthy Solutions of
 4    these products that we manufacture.
 5            THE COURT:  Why don't I do this, why don't I
 6    let you take a deposition of them with the authority to
 7    summons in whatever, a 30(b)(6).
 8            MR. KELLY:  A custodian of record deposition?
 9            THE COURT:  Yes.  Bring it all in.  And have
10    somebody there that understands the numbers and get it that
11    way if they don't want to give it to you the easy way.
12            MR. ROBERTSON:  And certainly if they get an
13    order from O'Toole releasing the report, we will give them
14    the report, which has all the data.  I mean, I can tell you,
15    I can tell them, I will tell you --
16            THE COURT:  Do you want to settle this?
17            MR. ROBERTSON:  Well, we'll talk about that in
18    a minute.  We have had those discussions, Your Honor.
19            THE COURT:  Why don't we talk about now.
20            MR. ROBERTSON:  Sure.
21            MS. CHRISTENSEN:  I've been the quiet one,
22    Your Honor, for a reason, which is we've had some very --
23            THE COURT:  You are holding the money.
24        (Laughter.)
25            MS. CHRISTENSEN:  Well, I wish we were.  We
```

```
1    had some very productive settlement discussions just this
2    morning.  And we have agreements in principle but we could
3    use the Court's assistance in making sure that we do this
4    properly.
5            Here's the overall framework.
6            Mr. Robertson's client had received over 300,000
7    bottles of goods.  Those were sold to Mr. Robertson's client
8    by my clients.
9            Mr. Kelly represents the company that actually made
10   this product and shipped it.  My client and Mr. Kelly's
11   clients have not been paid.  Our claim is 1.8 million
12   without interest.  Theirs is $890,000 plus, without interest
13   or cost for fees and so forth.
14           My clients would like to move on with their lives
15   and get out of the litigation.  And so in principle we have
16   agreed to allow the product supplier to enter judgment
17   against us.
18           And then we have agreed in principle with
19   Mr. Robertson who represents ITV Direct and Direct
20   Fulfillment that we will release each other except to the
21   extent that Healthy Solutions owes money to the supplier
22   manufacturer of the goods.
23                 THE COURT:  Who is?
24                 MR. KELLY:  My client, Judge, Cappseals.
25                 MS. CHRISTENSEN:  Now, you say --
```

```
 1                THE COURT:  You mean to the extent he owes
 2   money to you?
 3                MS. CHRISTENSEN:  No.  To the extent that he
 4   owes my client and carving out what we owe to Mr. Kelly's
 5   client who is the supplier, the manufacturer of this
 6   product.
 7           Where we need the Court's assistance is if the
 8   Court --
 9                THE COURT:  You have got a million eight
10   coming to you but you have got to pay for the foods.
11                MS. CHRISTENSEN:  Correct.
12                THE COURT:  Which is eight hundred thousand.
13                MR. KELLY:  Nine hundred thousand plus
14   interest.
15                THE COURT:  Nine hundred thousand.  So that
16   leaves nine hundred thousand.  And you are saying that that
17   would end the case except that his client is owed some money
18   by your client?
19                MR. ROBERTSON:  Actually, Your Honor, the way
20   this works is that there is a claim by Cappseals against
21   Healthy Solutions and a claim by Healthy Solutions against
22   us.  We have counterclaims against Healthy Solutions.
23           We are willing to resolve our issues with Healthy
24   Solutions only to the extent that we would essentially each
25   step in the shoes of the other.  And they would still have
```

```
 1    their claims against us but we would also retain our
 2    affirmative defenses and rights of setoff.  Basically that
 3    we would be able to make those defenses at any trial in this
 4    action --
 5              THE COURT:  You are just paring it down.
 6              MR. ROBERTSON:  Paring it down, yes.
 7              THE COURT:  That doesn't excite me, so I will
 8    stick with you.  You just lost my interest.
 9         Why can't you settle the whole thing?
10              MR. ROBERTSON:  Because we are still actively
11    engaged in litigation with the Federal Trade Commission who
12    in their view has determined that all of this money we are
13    fighting about is likely to go back to them.  So we can't --
14              THE COURT:  Well, that is a different case.
15    Why doesn't that just go before --
16              MR. ROBERTSON:  Because we have an
17    indemnification agreement with her client that they're
18    liable for any amounts that we ultimately have to pay.  And
19    so --
20              MS. CHRISTENSEN:  Your Honor, we don't agree
21    with that at all but we're willing to let it all go so that
22    my clients can move on with their lives and do business.
23         We have an indemnity action against his clients in
24    Judge O'Toole's court which is in the FTC action.
25         But the barrier for my client in settling simply
```

1  has to do with the existence of the court's injunction.  And
2  we want to be careful, and the three sets of attorneys are
3  in agreement, that Cappseals' rights to bring its claims and
4  ITV Direct's rights would not be impaired by letting us out.
5  And that's where we need the Court's assistance, that we
6  don't run afoul of the injunction that says that we can't
7  compromise the only asset that we have, which is the
8  receivable for over 1.8 million.
9           **THE COURT:**  Well, as long as everybody agrees
10 to it, I mean, I am not going to stand in your way.
11          What you have to do is to come up with an agreement
12 for judgment that sets all of this down in some
13 understandable way.  And if you are looking for approval
14 from me, I will approve it as long as everybody else is
15 agreed to it.
16          **MR. KELLY:**  We just don't want to interfere,
17 Judge, with our continued prosecution of these claims.  We'd
18 like to get this discovery as you suggested completed as
19 soon as possible and a trial date so that we can go forward
20 on this.
21          **THE COURT:**  Well, we can do that too.  So
22 there are two distinct features here.
23          One is some agreement you are going to enter into
24 that pares down the issues.
25          And the second, the continuation of the discovery

```
 1   in what will be the remaining case regardless of what
 2   happens in this settlement agreement.  And that requires you
 3   going to Judge O'Toole for permission to get the
 4   confidential order that results from his order, confidential
 5   material that results from his order and the deposition of
 6   the -- what is the name of your company again?
 7           MR. ROBERTSON:  ITV.  I would actually -- I'm
 8   sorry, Your Honor.
 9           THE COURT:  Go ahead.
10           MR. ROBERTSON:  I was just going to propose if
11   they want to submit written interrogatories to us, we can do
12   it that way.
13           THE COURT:  Well, I think depositions are
14   faster.
15           MR. ROBERTSON:  Okay.  I would also just
16   propose -- I think all the information they want is sitting
17   in that report.  And, again, O'Toole's finding --
18           THE COURT:  Well, if he gets -- maybe that is
19   the thing to do.
20           MR. ROBERTSON:  Maybe just wait --
21           THE COURT:  Just go to Judge O'Toole first.
22   He will give you the order.  They get the report and then
23   see if you need anything else.  Maybe they don't.
24           MR. ROBERTSON:  If you want a deposition with
25   the report --
```

```
 1            MR. KELLY:  Well, remember, we are talking
 2   about not only what's in the report but we are talking about
 3   their damages here.  We're required under the initial
 4   disclosures --
 5            THE COURT:  You may look at the report and say
 6   I don't need anything else.  You may look at the report and
 7   say I still need to take the deposition, which I am giving
 8   you permission to do.
 9            MR. KELLY:  Could we set a date for that,
10   Judge?
11            THE COURT:  Yes.  First of all, how much time
12   do you need to make the request to go to Judge O'Toole?
13            MR. KELLY:  I assume we can do that within the
14   next two days.
15            THE COURT:  All right.  So let's say you will
16   do that within the next 48 hours.
17       We can't say when he will respond.
18            MR. KELLY:  May I ask some clarification?  Is
19   it permissible, Judge, to represent to Judge O'Toole that
20   you would be willing to issue an order requiring the
21   production of the report, assuming we work out the issues
22   concerning confidentiality?
23            THE COURT:  As long as he agrees.
24            MR. KELLY:  Right.
25            THE COURT:  All you have to do is just spend a
```

```
 1    little money and Carol can type it up, this last portion,
 2    and you can attach that to your motion.
 3             MR. KELLY:  Right.  Just so I'm clear, the
 4    Court's view is that the report is relevant.  It's
 5    permissible for us to --
 6             THE COURT:  It might well be relevant.  I
 7    don't even know what it says.  But it is nothing as far as I
 8    am concerned.  It is up to Judge O'Toole.  If he says they
 9    can get it, it is fine by me.  They can look at it.  And
10    then you determine what relevance it has.  I am not going to
11    determine relevance in advance.
12             Then, in addition to that, so you are going to
13    accomplish that in two days.  We will see when Judge O'Toole
14    gets back to you.
15             You then want to take this deposition.  When do you
16    want to take it?
17             MR. KELLY:  Well, let me say, Judge, the
18    report is fine but we would like to have all of the
19    underlying data supporting the report.
20             THE COURT:  Just --
21             MR. KELLY:  And there is no reason why they
22    can't produce that independent of our review of the report.
23             In other words, this report is based upon --
24             THE COURT:  Do you want to take your chances
25    on that?  I am giving you a chance to summons it in and sit
```

```
 1    there in the same office and have it handed to you.
 2              When do you want to?  So that is the course we will
 3    follow.  If you do it voluntarily, then you don't need the
 4    deposition.
 5              When do you want to have the material available for
 6    your deposition?
 7              MR. KELLY:  As soon as possible, Judge.
 8              THE COURT:  That doesn't help out.
 9              MR. KELLY:  Two weeks.
10              THE COURT:  All right, two weeks.
11              MR. KELLY:  And that deposition would not only
12    cover the material underlying their damages claim but it
13    would also require them to articulate what their damages
14    claim is pursuant to the initial disclosure rule.
15              THE COURT:  Rule 26, right.
16              MR. KELLY:  Right.
17              THE COURT:  They have to meet the requirements
18    of Rule 26.  Okay.  My Rule 26 order.  Okay.
19              All right.  So we will issue an order memorializing
20    all this.  And then we will bring you back, let's say sixty
21    days from now, around then, to see what you have done to
22    each other and give you a trial date.
23              MR. KELLY:  Judge, I would just as soon
24    schedule, could we have a final pretrial conference on that
25    date so that we don't --
```

```
 1            THE COURT:  Yes, that is what I am doing.
 2            MR. KELLY:  In other words, required within
 3   the Court's rules, all of the things that are required
 4   before the submission, before the attendance of the final
 5   pretrial conference on that date.  In other words, the
 6   identification of exhibits, of witnesses, I just want to get
 7   to the end game.
 8            THE COURT:  Yes, we can do that.  She will
 9   send out an order requiring the names of the witnesses and
10   how much time each one will take.
11            MR. KELLY:  Marking of exhibits.
12            THE COURT:  Okay.
13            THE CLERK:  April 5th for the pretrial.
14            MS. CHRISTENSEN:  I'm sorry?
15            THE CLERK:  April 5th, eleven o'clock.
16            MR. ROBERTSON:  In the interim, Your Honor, we
17   will see if we can work out a document that articulates
18   where we are.
19            THE COURT:  Okay.
20            MR. KELLY:  Judge, should we wait until you --
21   you just mentioned you are going to put together an order.
22   Should we wait until we receive that before we go to Judge
23   O'Toole?
24            THE COURT:  You can do that.  They are pretty
25   good.  They will have it out today.
```

```
 1                MR. KELLY:  Okay.  So once we receive that, we
 2    will move within 48 hours.
 3                THE COURT:  Okay.  Anything else?
 4    All right.  Thank you.
 5                MR. KELLY:  Thank you, Your Honor.
 6                MS. CHRISTENSEN:  Thank you, Your Honor.
 7                MR. ROBERTSON:  Thank you, Your Honor.
 8    (WHEREUPON, the proceedings were recessed at 11:05
 9    a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

     I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377