1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

2

   * * * * * * * * * * * * * * *
3   HEALTHY SOLUTIONS, LLC,     *
   et al                   *
4           Plaintiffs,    *
                        *
5             vs.         *      CIVIL ACTION
                        *      No. 04-10421-JLT
6   ITV DIRECT, INC.       *
   et al                   *
7         Defendants.    *
   * * * * * * * * * * * * * * *
8

         BEFORE THE HONORABLE JOSEPH L. TAURO
9           UNITED STATES DISTRICT JUDGE
              **PRETRIAL CONFERENCE**
10

   A P P E A R A N C E S
11

12        O'CONNOR, CHRISTENSEN & McLAUGHLIN, LLP
         1920 Main Street, Suite 150
13        Irvine, California 92614
         for Healthy Solutions, LLC
14        By: Becky V. Christensen, Esq.

15

16

17

         SEYFARTH SHAW, LLP
18        Two Seaport Lane, Suite 300
         Boston, Massachusetts 02110-2028
19        for ITV Direct, Inc.
         By: Peter S. Brooks, Esq.
20           Susan W. Gelwick, Esq.

21

22                       Courtroom No. 20
                        John J. Moakley Courthouse
23                     1 Courthouse Way
                        Boston, Massachusetts 02210
24                     April 5, 2005
                        11:00 a.m.

25

1    **APPEARANCES, CONTINUED**

2

3

                GADSBY & HANNAH LLP
4               225 Franklin Street
                Boston, Massachusetts 02110
5               for Cappseals, Inc.
                By: Daniel J. Kelly, Esq.
6                   Scott A. Silverman, Esq.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21                 CAROL LYNN SCOTT, CSR, RMR
                     Official Court Reporter
22               One Courthouse Way, Suite 7204
                   Boston, Massachusetts 02210
23                     (617) 330-1377

24

25

<u>P R O C E E D I N G S</u>

       **THE CLERK:**  Civil action No. 04-10421, Healthy Solutions versus ITV Direct, et al.

       Counsel please come forward and identify themselves for the record.

       **MS. CHRISTENSEN:**  Good morning, Your Honor. I'm Becky Christensen.  I represent the five parties, Healthy Solutions, LLC, Healthy Solutions, Inc., Alejandro Guerrero, Michael Howell and Greg Geremesz.

       **MR. KELLY:**  Your Honor, my name is Dan Kelly. I'm here with Scott Silverman from Gadsby & Hannah.  We represent Cappseals, Inc. which is the plaintiff in intervenor.

       **MR. BROOKS:**  Good morning, Your Honor.  Peter Brooks.  With me is Sue Gelwick from Seyfarth Shaw.  We represent ITV Direct.

       **THE COURT:**  Okay.  Now, maybe I have this wrong but I thought the case was settled and that the only thing that remained was for everybody to get paid off.

       **MR. KELLY:**  Judge, let me explain.

       What happened at the hearing the last time we were before you --

       **THE COURT:**  Have I got that wrong?

       **MR. KELLY:**  You have got that wrong, that's correct.

1          **THE COURT:**  Okay.  Go ahead.

2          **MR. KELLY:**  When we were before you -- let me

3      just explain how the parties are configured.

4          My client Cappseals, Inc. manufactured --

5          **THE COURT:**  I know all that.  You have told me

6      all that.  All I want to know is what happened to the

7      settlement.

8          **MR. KELLY:**  What we had agreed the last time

9      we were before you is that Healthy Solutions, the middleman,

10     would be able to settle with the ultimate distributor ITV by

11     a mutual dismissal of claims.  In addition, Healthy

12     Solutions agreed to give us an agreement for judgment for

13     the full amount owed.

14         The caveat, however, which was expressly

15     represented to the Court by all three lawyers is that in

16     this stipulation of dismissal they would carve out or

17     reserve Cappseals' rights to go after ITV as a reach and

18     apply plaintiff.

19         In other words, their motion to dismiss would not

20     compromise ITV -- our client Cappseals' rights to piggyback

21     on top of Healthy Solutions to go after ITV for the money

22     owed by ITV to Healthy Solutions.

23         **THE COURT:**  Her.

24         **MR. KELLY:**  Her client.

25         **THE COURT:**  But she is already going to pay

1    you what is owed.

2              MR. KELLY:  No, her client has agreed to a

3    judgment; but it is a judgment on paper only.  Her client is

4    judgment proof.  Their only asset is the claim that they

5    have against ITV.

6         When we first came in here a year ago, we sought a

7    preliminary injunction as a reach and apply plaintiff to

8    enjoin them from doing exactly what they're trying to do

9    now.  That is, compromise the claim --

10             THE COURT:  All right.  So what do you want?

11   Do you want to try your case now?

12             MR. KELLY:  We want to undo the motion to

13   dismiss, enforce the settlement agreement that had been

14   reached by the parties and try our case against ITV.  That's

15   what we want to do.

16             THE COURT:  You don't have a settlement

17   agreement.  You don't have a meeting of the minds.

18             MR. KELLY:  We do have a meeting of the

19   minds -- well, actually, Your Honor, we don't even need the

20   settlement agreement.  We have the agreement for judgment

21   which we filed with the Court, which the Court has endorsed.

22        Healthy Solutions, it would certainly be in their

23   interests to enforce the settlement agreement, which was

24   agreed to by all three parties.  But that's irrelevant to

25   us.

1          All we want to do now is proceed as a reach and

2    apply plaintiff and a third-party beneficiary plaintiff

3    against ITV.

4          THE COURT:  What does everybody else want?

5          MR. BROOKS:  Your Honor, if I may.  You do

6    have the transcript of that last hearing as part of the

7    record.  It is very clear from the transcript that what the

8    parties were talking about at that point in time was the

9    concept, the general framework of a possible settlement.

10         At Page 12 of the transcript you instructed the

11   parties that it all needs to be set down in a writing in

12   some understandable way.

13         It was clear at that time there was no definitive

14   agreement.  The parties were talking conceptually about

15   settling the claim --

16         THE COURT:  Was it ever reduced to writing?

17         MR. BROOKS:  No.

18         MR. KELLY:  It was reduced to a writing,

19   Judge.  It was exchanged between counsel for Healthy

20   Solutions and Cappseals.  We agreed on it.  It consisted of

21   a plain vanilla agreement for judgment and a stipulation of

22   dismissal.  We carved out our rights but they never

23   responded so they did not agree.

24         THE COURT:  So you don't have a settlement.

25         MR. KELLY:  We don't --

1          **THE COURT:**  Everybody has got to agree.  You

2      can't have two out of three.

3          **MR. KELLY:**  Yes, Judge.  But there has been a

4      great deal of cases on this issue that have been an

5      agreement is stated before the Court orally.

6          But, Judge, we don't care about the settlement.  We

7      want to proceed with our claims against ITV.

8          **THE COURT:**  You want a trial.

9          **MR. KELLY:**  That's correct.

10         **THE COURT:**  Good.  We will give you a trial.

11     It is easy to do that.  No more discovery, no nothing.

12         **MR. KELLY:**  No, Judge, we have an outstanding

13     motion for sanctions related to a discovery issue.

14         **THE COURT:**  You got the discovery.

15         **MR. KELLY:**  We did not get the discovery.  We

16     did not get the report nor did we get any of the documents

17     associated --

18         (Whereupon, the Court and the Clerk conferred.)

19         **MR. KELLY:**  We got a three-page general

20     description of the damages.  We have no documents from them,

21     nor did we get the --

22         **THE COURT:**  Who do you want the documents

23     from?

24         **MR. KELLY:**  I'm sorry?

25         **THE COURT:**  Who?

1    **MR. KELLY:**  From ITV.

2    **THE COURT:**  Why don't you give it to them?

3    **MR. BROOKS:**  Because it's subject to the

4    confidentiality order of Judge O'Toole.  We have stated --

5    **THE COURT:**  Oh, that is the one.  We haven't

6    heard from Judge O'Toole.

7    **MR. SILVERMAN:**  Your Honor, if I may interject

8    with regard to this point?

9    One of the things that we tried to make clear

10   throughout this proceeding is that there is a litany of

11   documents that we have become aware of that are not in any

12   way covered by Judge O'Toole's order.

13   Judge O'Toole's order ordered that an accounting

14   report be prepared.  And it described how the

15   confidentiality of that report may cover some of the process

16   involved in preparing that report.

17   There are documents relating to their defenses and

18   their affirmative actions against Healthy Solutions

19   regarding reliance, regarding the fraud that they claim

20   seems to offset the claims that we have for the products

21   that were delivered.

22   **THE COURT:**  I will tell you what, I am going

23   to order that the documents be produced within thirty days.

24   That will give you plenty of time to go to Judge O'Toole and

25   ask him to -- I will say as part of the order that it will

1   be subject to, of course, Judge O'Toole deciding that such

2   an order should not issue.  And if that is the case, I will

3   withdraw it.

4                   MR. SILVERMAN:  Well, Your Honor, all that

5   does --

6                   THE COURT:  I want to get this case moving.

7                   MR. SILVERMAN:  That order puts us in the

8   exact same position that we were in the last time we were

9   here.  ITV was ordered to produce those documents by

10  February 15th.  That day came and went.  We got no

11  additional documents.

12                  THE COURT:  But if they do it again, I am

13  going to default them.  With prejudice.

14                  MR. BROOKS:  Absolutely, Your Honor.

15          First of all, there was no such order that we

16  produce any documents.  Your order is very clear, that we

17  were supposed to give them the report that was done for the

18  FTC that is subject to Judge O'Toole's order.  They have

19  moved for permission from Judge O'Toole.

20                  THE COURT:  Do you have that?  Have you given

21  them that report yet?

22                  MR. BROOKS:  I can't because it is subject to

23  Judge O'Toole's --

24                  THE COURT:  That is the one.

25                  MR. BROOKS:  Right.  I have it right here

1    (indicating).

2              **THE COURT:**  I think that if you get the

3    report, then you look through that and see if you need

4    anything else.

5              **MR. KELLY:**  Judge, I cannot -- we had this

6    fight a month and a half ago.

7              The report, as you can see, is only about, what,

8    fifteen pages.  We need the underlying financial data and

9    all the other documents which support their affirmative

10   defenses.

11             They have given us five hundred pages of simply

12   invoices.  Or you should strike their affirmative defenses.

13             They should not be able to sort of hide behind this

14   confidentiality order and say we can't give you anything

15   because of this confidentiality.  There is no reason that

16   Judge O'Toole's order on the confidentiality of that report

17   has anything to do with all of their records associated with

18   these affirmative defenses.

19             You required them to produce them.  We want them

20   and we want to try the case.

21             **MR. BROOKS:**  We have produced all the records

22   that relate to our affirmative defenses.  The only thing we

23   have not produced is a damage study that was performed by

24   certified public accountants by order of the FTC, which is

25   subject to Judge O'Toole's order.  Everything else they

have.

What they're fighting about is all of these other documents relating to other business activities unrelated to Supreme Greens, unrelated to Healthy Solutions or Cappseals. We have other products.

The FTC has received all of those documents of our other business activities.  They want all of that.  They want everything that the FTC has had access to, which is every business record that we have.  It's got nothing to do with this product, nothing to do with these parties.

We had produced everything that relates to our claims and our counterclaims.  The only thing that is missing is the detail of the damage analysis of this report (indicating) which we have said over and over again we will produce to them the moment, the day that Judge O'Toole says it's released from my confidentiality.

**THE COURT:**  He is making this representation. He puts his ticket on the line when he does that.

**MR. SILVERMAN:**  Your Honor, and I think that's a mistake because we already have provided to this court a document that shows that that is just not the case.

The FTC in communications that I have had with them have specifically represented that the vast majority of the documents which they say goes over about fifty thousand relates to Supreme Greens.  And, in fact, they have filed

1   affidavits with this Court before Judge O'Toole attaching

2   documents relating to Supreme Greens and the marketing of

3   the Supreme Greens that ITV has not produced to us.

4           It's quite clear, Your Honor, I have attached a

5   document that was --

6                   THE COURT:  What is the case that Judge

7   O'Toole has?

8                   MR. SILVERMAN:  I'm sorry, Your Honor, I

9   didn't hear what you said.

10                  THE COURT:  You are talking about the FTC.  Is

11  this litigation before Judge O'Toole?

12                  MR. SILVERMAN:  This present litigation?  No,

13  Your Honor.  What's before Judge O'Toole is claims regarding

14  the marketing of Supreme Greens by ITV and Healthy

15  Solutions.  We are not a party to that case.

16          But as I mentioned, Your Honor, attached to a reply

17  brief that was submitted by the FTC, that was also an

18  exhibit to the affidavit that I submitted to this court, is

19  an email describing how ITV should be -- it's an email sent

20  out by Donald Barrett, that is, the principal of ITV to his

21  underlings saying we should now be using the original

22  version of the Supreme Greens infomercial.

23          The reason why that is critical, Your Honor, is

24  because that was sent out in February, late February of

25  2004, well after we shipped the product to ITV and well

1    after they were supposed to pay for that product.

2              But they're now claiming that in reliance on

3    representations by Healthy Solutions they invested all sorts

4    of money in this product.  And they had allegations against

5    them by the FTC and they are going to be losing millions of

6    dollars.  That they were still accepting shipments from us,

7    selling the product, making money on the product and

8    deciding not to --

9              **MR. KELLY:**  Clear of the specific elements

10   which they say that they relied.  In other words, they claim

11   Guerrero who was the head of Healthy Solutions was not a

12   doctor, that he was lying about the product.

13             Well, the FTC told them he was lying about the

14   product.  They knew about it.  And yet they continued to

15   market it in the same fashion that they did before.

16             All of those documents associated with their

17   knowledge and the issue of reliance and whether it was

18   reasonable or not they have withheld from us.  They have

19   produced them in the FTC action but have withheld them from

20   us.

21             They should not be able to hide behind this

22   ten-page report.  You know, Judge, I'm content -- if

23   Mr. Brooks says we produced every document that has to do

24   with our affirmative defenses, I'm content with an order

25   saying they're precluded from relying on any other document.

1     THE COURT:  Of course.

2     MR. KELLY:  And that report as far as I'm

3  concerned is inadmissible because it's simply an

4  accountant's --

5     THE COURT:  Of course.  Of course.

6     MR. KELLY:  -- hearsay so they can't rely on

7  the report either.

8     THE COURT:  Absolutely I'd issue an order.

9     MR. KELLY:  So we're prepared to go forward.

10    THE COURT:  All right.  Good.  Let's go

11  forward.

12    MR. BROOKS:  Absolutely acceptable.

13    THE COURT:  You just prepare a form of order

14  and I will sign it.

15    When do you want to try the case?

16    MR. BROOKS:  Your Honor, there is one other

17  thing I'm confused on.

18    THE COURT:  No.  First when do you want to try

19  the case?  You guys have got a history and I can possibly

20  make you history.  When do you want to try the case?

21    MR. KELLY:  We're prepared to try this case

22  within the next three to four weeks, Judge, if you have room

23  on your calendar.

24    THE COURT:  How long will it take?

25    MR. KELLY:  Our affirmative case in chief will

1   take no more than two hours.

2           **THE COURT:**  The whole case?

3           **MR. KELLY:**  If they're barred from asserting

4   these affirmative defenses, which I believe they now are,

5   then the case will take a day.

6           **THE COURT:**  I didn't say that I am going to

7   bar them from asserting anything.  I am going to bar them

8   from offering anything that doesn't have a Bates stamp on it

9   or however else you want to identify it.

10          **MR. KELLY:**  Well, Judge, I anticipate that

11  their witness is going to get up there and say we incurred

12  all these damages.  We incurred three million for this,

13  three million for that, but they haven't produced any

14  documents supporting that so they should be barred from

15  testifying about --

16          **THE COURT:**  I can't do that.

17          **MR. KELLY:**  Well, then we need the documents,

18  Judge.

19          **THE COURT:**  You know I can't do that.  What

20  good is their testimony without any documents?  You would

21  murder them on cross-examination.

22          Give them a trial date.  How long to try this case?

23  All of it?

24          **MR. KELLY:**  One day.

25          **THE COURT:**  Is it jury or jury-waived?

1             **MR. KELLY:**  Jury-waived.

2             **MS. CHRISTENSEN:**  I'm sorry, Your Honor.  I'm

3   not quite tracking that.

4             **MR. BROOKS:**  We don't know what case we are

5   trying.  I'm sorry to interrupt you.

6             **MS. CHRISTENSEN:**  That's fine.

7             **THE COURT:**  Whatever is pending.  I want to

8   try it all.

9             **MR. BROOKS:**  We have settled.  The plaintiff

10  and the defendant have settled the case by agreement to

11  dismiss the claims.  So we don't know -- what Cappseals is

12  trying to do is to force us to try a case that we don't want

13  to try.

14      We've settled the underlying debt by saying we

15  don't owe -- neither party owes anybody any money.  We've

16  agreed to that.  We've signed it.  We have asked you to

17  dismiss the case between us.

18      So Cappseals seems to want to now come in and try

19  Healthy Solutions' case against us, a claim that we agreed

20  to dismiss.  So I don't know how long it's going to take to

21  try.  If you're going to force us to try --

22            **THE COURT:**  Because you want to get paid.

23            **MR. KELLY:**  Exactly.  We never consented to

24  that settlement.  We have an injunction barring them from

25  settling.

1      THE COURT: It is a sham they say, your

2  settlement. They are not going to get paid.

3      MR. BROOKS: It's certainly not a sham. We

4  have a two million dollar claim against them or more. They

5  have a two million dollar claim against us.

6      THE COURT: And you say forget it. That

7  leaves them out in the cold --

8      MR. BROOKS: No, it doesn't. They still have

9  direct claims against us. If you look at their pretrial,

10  they are suing us as an intended beneficiary --

11      THE COURT: That is the case you want to try.

12      MR. KELLY: No, we want to try the reach and

13  apply case and the third-party beneficiary case.

14      THE COURT: All right. We will try both

15  cases. Give them a date. No more conversation.

16      THE CLERK: One day? Two days?

17      MR. BROOKS: Your Honor, if we're trying the

18  underlying fraud claim --

19      THE COURT: You are trying his direct claim.

20  In other words, as I understand it, he is a third-party

21  claimant.

22      MR. KELLY: Yes. On a reach and apply theory

23  and also on a third-party beneficiary.

24      THE COURT: We will see how it goes.

25      MR. BROOKS: He has to prove the underlying

1   debt between us.

2           THE COURT:  Whatever he has to do.

3           MR. BROOKS:  That is a five- to seven-day

4   trial.

5           THE COURT:  Whatever.  I am here.

6           MR. BROOKS:  Okay.

7           THE COURT:  My whole day is just dedicated to

8   people like you.  Whatever it takes it takes.

9       (Laughter.)

10          MR. BROOKS:  My apologies.

11          MS. CHRISTENSEN:  Your Honor, I'm sorry.  We

12  have tried to dismiss.  And we're looking at five to seven,

13  I think maybe even ten days on the counterfeiting, on the

14  trademark infringement --

15          THE COURT:  Whatever it is.

16          MS. CHRISTENSEN:  That is all in?

17          THE COURT:  It is all going to be in.  That is

18  the only way I can get it out is to try it.  My chief Judge

19  Young has a great philosophy.  Sometimes he doesn't even

20  talk to you people.  He just gives you a trial date and,

21  bingo, everything goes away for him.  I am going to do the

22  same thing here.

23          THE CLERK:  Is this jury, a jury trial?

24          THE COURT:  Jury-waived.

25          MR. BROOKS:  I think there's a jury demand.

1    MS. CHRISTENSEN:  There are jury demands.

2    THE COURT:  Not in his case though.

3    MR. BROOKS:  The problem is his case is

4  twofold.  He has to prove the debt from Cappseals to Healthy

5  Solutions --

6    MR. KELLY:  Which we've already proved.

7    MR. BROOKS:  And then he has to prove the debt

8  of ITV to Healthy Solutions.

9    THE COURT:  He doesn't have to do it to a

10  jury.

11    MR. BROOKS:  Well, we have --

12    THE COURT:  He is coming in in a different

13  posture than your case was.  He didn't file a jury claim;

14  did you?

15    MR. KELLY:  I did not.

16    MR. BROOKS:  I think the underlying claim

17  between us has to be tried.  There is no settlement that, we

18  are not going to give up our multimillion dollar claim

19  against Healthy Solutions --

20    THE COURT:  That is up to you.

21    MR. BROOKS:  Well, that's the jury claim.

22    THE COURT:  Well, except we are not going to

23  try that --

24    MR. KELLY:  If we try the reach and apply

25  claim, that's an equitable action.  We can do that first and

1    we don't need a jury for that.

2                    THE COURT:  Give them a date.

3                    THE CLERK:  When do you want to try it?

4                    MR. BROOKS:  June is fine for me.  I have

5    problems in May.

6                    MR. KELLY:  I would prefer in three weeks.

7                    MR. BROOKS:  I think I just said I had some

8    problems in May so June would be great for me.

9                    THE COURT:  We will try to make it as

10   comfortable for everyone.

11        In the meantime, before you leave the building, it

12   would probably be useful if you had a little chat, all of

13   you, and see if you can't resolve this case.

14                    THE CLERK:  Are we still talking about one day

15   now?

16                    MR. KELLY:  I believe we're talking about a

17   week.

18                    THE CLERK:  Nonjury?

19                    MR. KELLY:  Nonjury.

20                    THE COURT:  We have to know that because we

21   only impanel on Monday.

22                    MR. KELLY:  I understand.

23                    THE CLERK:  May 31st.

24                    THE COURT:  Okay.

25                    MR. KELLY:  So the only other housekeeping,

1    Judge, is without our having an opportunity to file the

2    opposition, you mistakenly entered an order dismissing their

3    claims.  So we need -- we filled a motion for

4    reconsideration because we had not been permitted to file an

5    opposition.

6            **THE COURT:**  I will withdraw it.  We will issue

7    an order withdrawing the dismissal.

8            **MR. KELLY:**  Thank you.

9            **THE COURT:**  Okay.  If I were you, I would chat

10    though.

11

12        (WHEREUPON, the proceedings were recessed at 11:20

13        a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377