UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| ITV, INC., )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>HEALTHY SOLUTIONS, LLC, ET. AL., )<br>)<br>    Defendants. )<br>)<br>CAPPSEALS, INC., )<br>)<br>    Plaintiff-in-Intervention )<br>)<br>v. )<br>)<br>HEALTHY SOLUTIONS, LLC, d/b/a )<br>DIRECT BUSINESS CONCEPTS; ITV, )<br>INC. AND DIRECT FULFILLMENT, )<br>LLC. )<br>)<br>    Intervenor-Defendants. )<br>) | C. A. No. 04-CV10421-JLT |

**CAPPSEALS INC.'S CONCISE
STATEMENT OF MATERIAL FACTS SUPPORTING ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff-in-Intervention Cappseals, Inc. ("Cappseals"), through counsel and pursuant to Local Rule 56.1, submits the following concise statement of material facts in support of its motion for summary judgment.

1.　In or around the early part of 2003, Donald Barrett, the President and CEO of ITV Direct ("ITV"), instructed an ITV accountant, Bill Tarmey, to put together a distribution agreement (hereinafter the "Distribution Agreement") with Healthy Solutions, LLC, d/b/a Direct

Business Concepts. ("Healthy Solutions"). Barrett Depo., p. 55.[1]

2. Mr. Barrett did not discuss with Mr. Tarmey the terms of the Distribution Agreement as negotiated with Healthy Solutions but instead instructed Mr. Tarmey to make it using his best judgment. Barrett Depo., pp. 55-56.

3. Mr. Barrett did not discuss any of the negotiations regarding the Healthy Solutions contract with Mr. Tarmey. Rather, Mr. Barrett signed the Distribution Agreement after briefly reviewing it, on or around April 11, 2003, the same day ITV filmed the initial infomercial for Supreme Greens with MSM ("Supreme Greens"). Barrett Depo., pp. 57-58.

4. The Supreme Greens infomercial featured Alex Guerrero who made claims about the ability of Supreme Greens to cure various chronic illnesses such as diabetes and cancer. Barrett Aff., ¶16.[2] The infomercial was later run on a variety of nationwide media outlets. Barrett Aff., ¶¶ 63, 75-76.

5. In June 2003, ITV was contacted by the Federal Trade Commission ("FTC") regarding claims made in different infomercials it produced to market another health product called Coral Calcium. Barrett Aff., ¶ 10. The FTC expressed concern that claims in the infomercial were based on unreliable scientific support. ITV agreed to immediately pull the Coral Calcium infomercial. *Id.*

6. In August 2003, the FTC's investigation turned to the Supreme Greens infomercial. Young Aff., ¶6.[3]

---

[1] The transcript from Donald Barrett's August 23, 2004 deposition is attached as **Exhibit 1**. References to deposition testimony herein will be cited to Barrett Depo., p.

[2] Mr. Barrett's June 4, 2004 Affidavit filed in the related action brought against ITV, *FTC vs. Direct Marketing Concepts, Inc.*, Civil Action No. 04-11136-GAO (the "FTC Action") is attached hereto as **Exhibit 2** less all exhibits but for Exhibit E, the Distribution Agreement which is described herein.

[3] The May 30, 2004 affidavit of FTC attorney Kial Young is attached hereto as **Exhibit 3**. This affidavit was also filed in the FTC Action.

7. On September 17, 2003, Mr. Barrett emailed Alex Guerrero requesting that he put together a list of documents to back up the claims that were made within the Supreme Greens infomercial. Barrett Depo., p. 79. However, even at this stage, Mr. Barrett was unsatisfied with the material he received in response.

> Q: My next question is subsequent to the filming of the infomercial, did your company make any steps or take any steps to research the accuracy of those statements?
> A: I believe at one time I e-mailed [Mr. Guerrero] for a documentation file, meaning put a list of documents together that can back up the claims that you made.
> Q: Did he do that?
> A: I don't know. Maybe. If he did, he did it, you know, very little, just a little bit of backup. If we needed 10,000 pages, he gave us a half a page. He screwed us.

Barrett Depo., pp. 78-79.

8. Shortly after communications began with ITV, the FTC expressed its concerns with the Supreme Greens infomercial:

> During September and October of 2003, ITV's counsel was contacted by the FTC concerning the Supreme Greens infomercial. In those conversations, the FTC identified several concerns with the content of the infomercial. The FTC claimed that it did not believe that there existed competent and reliable scientific evidence for the claims in the infomercial. In response to these concerns, ITV both sought additional scientific evidence from Guerrero and Healthy Solutions, and edited the program to address the FTC's concerns. In October 2003, the edited tape was sent to the FTC, and the FTC concluded that the edited tape was a "substantial improvement.

Barrett Aff., ¶ 18.

9. Kial Young, counsel for the FTC, confirmed these landmark conversations took place on October 3, 2003:

> During the Fall of 2003, I participated in numerous conversations with counsel for DMC [Healthy Solutions] and Barrett relating to the FTC's investigation of DMC and Barrett generally, and the Supreme Greens infomercial specifically. On or about October 3, 2003, FTC attorneys informed counsel by telephone that we believed many claims made in the Supreme Greens infomercial were false and/or

  unsubstantiated, and we stated that DMC and Barrett had to cease airing the infomercial if they wanted to continue negotiating a resolution of the FTC's investigation.

Young Aff., ¶ 7.

  10. During his deposition, Mr. Barrett explained how he did not perform a detailed review of the claims made by Alex Guerrero in the infomercial because he believed he was indemnified:

> Q: Before you spent millions of dollars on advertising, what steps if any did you or your – again when I say "you," I mean your company – take to determine whether any of the statements that Alex Guerrero made in the infomercial were accurate?
>
> A: Well, I believed, like I said I didn't review it in detail, but I believed that I was indemnified. He held me harmless against the claims he made? I didn't make the claims, he made the claims.
>
> Q: You believed that it really didn't matter what he said, you weren't responsible no matter what he said?
>
> A: I believed he would back up what he said.
>
> Q: Why did you believe that?
>
> A: Unless he was lying to me or making things up when I interviewed him. I mean, I don't know.
>
> Barrett Depo., pp. 77-78.

  11. After being notified that the FTC considered Mr. Guerrero's claims to be unsubstantiated, ITV did not void the Distribution Agreement or stop ordering Supreme Greens. Rather, on October 8, 2003, ITV issued a "standing purchase order" to Healthy Solutions, requesting shipment of 160,000 bottles of Supreme Greens per month to be shipped to Direct Fulfillment. Silverman Aff., Ex. 1 & Joint Stipulation, ¶1.[4]

---

[4] A true and accurate copy of the October 8, 2003 Purchase Order (Purchase Order 1078) is attached as **Exhibit A** to the supporting affidavit of Scott A. Silverman submitted herewith. Many of the facts contained herein are also supported by various stipulations agreed to by the parties and previously submitted to the Court as the parties' Joint

12. On October 24, 2003, ITV edited the infomercial and sent the tape to the FTC.

Barrett Aff., ¶ 18.

13. While the FTC acknowledged the new infomercial was an improvement, it still required ITV to substantiate all of their claims even in the new version of the infomercial:

> On or about November 18, 2003, I participated in another telephone conversation with counsel for DMC and Barrett. The FTC attorneys stated that the revised Supreme Greens infomercial represented a good faith improvement and that we would like to see it substantiated immediately. We further indicated that DMC and Barrett must have substantiation for all claims made in the revised version. Counsel for DMC and Barrett stated they would find out how quickly the revised version could be substituted for the original.

Young Aff., ¶ 12.

14. Despite the FTC's demands, ITV abandoned its effort to obtain substantiation after a damaging conclusion became apparent:

> Q: What steps, if any, did your company take to follow up with further requests as far as you are aware?
>
> A: We went back and forth, and Eileen would know more about this. This is to Eileen.
>
> Q: Did Eileen Barrett Maihos tell you what the progress of her efforts was?
>
> A: Yes.
>
> Q: What do you remember her saying?
>
> A: Progress was bleak, meaning we weren't moving forward with progress and we really couldn't back up anything in question.
>
> Q: Do you recall when she came to that conclusion or told you that?
>
> A: I don't think she ever came to that conclusion. She said it's obvious that he doesn't have a lot of the information to back up the claims that he made. I don't know when that, I don't know exactly when that happened, though.

---

Stipulations of Fact (Docket No. 113). References herein to the Joint Stipulations of Fact will be cited to "Joint Stipulation, ¶#." The Joint Stipulations are attached hereto as **Exhibit 4** for the Court's convenience.

Barrett Depo., at 80.

15. While the FTC's concerns about unsubstantiated claims remained unresolved, on November 21, 2003, ITV issued a replacement "standing" purchase order to Healthy Solutions (Purchase Order 1101), requesting shipments of 50,000 bottles of Supreme Greens per week - a 25% increase over its previous order. Silverman Aff., Ex. 2 & Joint Stipulation, ¶ 2.[5]

16. Purchase Order 1101 specifically set forth the price ($6.50 per bottle), type (capsules or powders), quantity of goods (50,000 per week), and method of cancellation (30 days notice). Purchase Order 1101 also contained several terms that were inconsistent with the Distribution Agreement. Barrett Aff., Ex. E. The Distribution Agreement required 50% down payment upon ordering (Distribution Agreement §15 - Barrett Aff., Ex. E) while no up front payment was required (nor was it made) pursuant to Purchase Order 1101. Additionally, the Distribution Agreement provides that certain language should be included on each purchase order referencing the Distribution Agreement. (Distribution Agreement §14 - Barrett Aff., Ex. E). However, this practice was not observed by the parties – any language referencing the Distribution Agreement is conspicuously absent from any of ITV's purchase orders including Purchase Orders 1078 and 1101. (Silverman Aff., Exs. 1 & 2).

17. On November 25, 2003, Healthy Solutions issued a corresponding purchase order to Cappseals, requesting shipment of 50,000 bottles of Supreme Greens per week to be sent to Direct Fulfillment to satisfy Purchase Order 1101. Anderson Aff., Ex. B.[6]

18. On or around December 19, 2003, Cappseals shipped 50,004 bottles of Supreme

---

[5] A true and accurate copy of the November 21, 2003 Purchase Order (Purchase Order 1101) is attached as **Exhibit B** to the supporting affidavit of Scott A. Silverman submitted herewith.

[6] A true copy of this standing purchase order, dated November 25, 2003, is attached as Exhibit B to the Affidavit of Harry Anderson III dated April 7, 2004 (hereinafter "Anderson Aff."). Mr. Anderson's Affidavit is attached hereto as **Exhibit 5**.

Greens to Direct Fulfillment. Anderson Aff., ¶ 2 & Ex. A.

19. Between December December 29, 2003 and February 5, 2004, Cappseals delivered six shipments of Supreme Greens to ITV/Direct Fulfillment. The total amount shipped was 303,643 bottles of Supreme Greens capsules and/or jars of Supreme Greens powder all of which were received by ITV/Direct Fulfillment.[7] Anderson Aff. ¶4 , & Joint Stipulation, ¶¶ 4, 7, 10, 13, 16 & 19.

20. For each of the Supreme Greens shipments between December 29, 2003 and February, 2004, upon delivery, Direct Fulfillment took physical custody of the goods and, Direct Fulfillment and ITV had a reasonable opportunity to inspect the Supreme Greens received. Joint Stipulation, ¶ 22.

21. Direct Fulfillment and ITV never rejected any of the Supreme Greens contained in the six shipments received between December 29, 2003 and February, 2004. Joint Stipulation, ¶ 24.

22. Direct Fulfillment and ITV never tendered back to Healthy Solutions or Cappseals any of the Supreme Greens contained in the six shipments Direct Fulfillment received between December 29, 2003 and February, 2004. Joint Stipulation, ¶ 26 & 27.

23. Direct Fulfillment and ITV did not provide notice to Healthy Solutions or Cappseals of its intent to reject any of the Supreme Greens contained in the six shipments Direct Fulfillment received between December 29, 2003 and February, 2004. Joint Stipulation, ¶¶ 28 & 29.

24. ITV has sold units of the Supreme Greens contained in the six shipments it

---

[7] For all intents and purposes ITV and Direct Fulfillment LLC are one and the same company. Both use the same address (the address the goods were shipped to is the same as the address provided for ITV Direct for billing purposes), and more importantly, the goods were shipped to Direct Fulfillment in order to fill the purchase orders issued by ITV.

received between December 29, 2003 and February, 2004. Joint Stipulation, ¶ 30.

25. ITV continues to sell units of the Supreme Greens contained in the six shipments it received between December 29, 2003 and February, 2004. Joint Stipulation, ¶ 31.

26. As of August 23, 2004 Donald Barrett was still taking Supreme Greens. Joint Stipulation, ¶ 32.

27. For each of the six shipments, ITV received invoices (Nos. 21 through 26) from Healthy Solutions indicating the amount owed for each of the six shipments. Joint Stipulation, ¶¶ 5, 8, 11, 14, 17 & 20. In total, ITV was invoiced $1,821,864.00 for the six shipments of Supreme Greens Direct Fulfillment received between December 29, 2003 and February 6, 2004. Joint Stipulation, ¶ 34.

28. Neither ITV nor any of its related entities have paid Invoices 21, 22, 23, 24, 25 or 26. Joint Stipulation, ¶¶ 6, 9, 12, 14, 18 & 21.

29. As of February 13, 2004 Direct Fulfillment had 333,918 units of Supreme Greens in inventory. Joint Stipulation, ¶ 35.

30. By August 23, 2004 Direct Fulfillment had less than 100,000 units of Supreme Greens in inventory. Joint Stipulation, ¶ 36.

31. Between February 13, 2004 and August 23, 2004 ITV sold more than 200,000 units of Supreme Greens. Joint Stipulation, ¶ 37.

-9-

                    Respectfully Submitted,
                    CAPPSEALS, INC.
                    By its attorneys,

/s/ Scott A. Silverman
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO # 638087
ssilverman@ghlaw.com
Peter Antonelli, BBO # 661526
pantonelli@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

June 3, 2005

## CERTIFICATE OF SERVICE

      I hereby certify that true and accurate copies of the foregoing <u>Cappseals Inc.'s Concise Statement of Material Facts Supporting Its Motion for Summary Judgment</u> with exhibits was served on the foregoing attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

<u>Via electronic notification:</u>

Peter S. Brooks      pbrooks@seyfarth.com

Susan W. Gelwick      sgelwick@seyfarth.com

Dustin F. Hecker      dhecker@pbl.com

Christopher F. Robertson      crobertson@seyfarth.com

Becky Christensen      bvc@ocmiplaw.com

 

/s/ Scott A. Silverman  
Daniel J. Kelly BBO# 553926  
dkelly@ghlaw.com  
Scott A. Silverman, BBO #638087  
ssilverman@ghlaw.com  
Gadsby Hannah LLP  
225 Franklin Street  
Boston, MA 02110  
DATED: June 6, 2005      (617) 345-7000