UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ITV DIRECT, INC., <br>     Plaintiff, <br><br> v. <br><br> HEALTHY SOLUTIONS, LLC, et al., <br>     Defendants. <br><br> RELATED CASES | ) <br> ) <br> ) <br> ) <br> )   CIVIL ACTION NO. 04-CV-10421-JLT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ITV DIRECT, INC.'S STATEMENT OF MATERIAL FACTS IN DISPUTE**

Plaintiff, ITV Direct, Inc. ("ITV" or "Plaintiff"), pursuant to Local Rule 56.1 and in opposition to the plaintiff-in-intervention, Cappseals, Inc.'s ("Cappseals"), Motion for Summary Judgment, hereby submits this Statement of Material Facts as to which there exists a genuine issue to be tried.

1.      ITV is in the business of marketing and distributing various healthcare related products to individual and retail customers through the utilization of infomercials.  (ITV's First Amended Complaint ("Amended Complaint"), ¶¶ 10-11.)

2.      In or about early 2003, defendants Michael Howell ("Howell") and Greg Geremesz ("Geremesz") advised ITV's sales manager that their friend and business associate, defendant Alejandro Guerrero ("Guerrero"), had recently developed an organic dietary supplement known as "Supreme Greens with MSM" ("Supreme Greens" or "Product") and suggested that there be a meeting with ITV's principals to discuss ITV developing a market for the new product. (Affidavit of Donald Barrett, dated May 19, 2004 ("Barrett Aff.") at ¶3, filed as Exhibit A to Plaintiff's Surreply to Defendants' Reply in Support of Motion for Temporary Restraining Order (docket entry #32, attachment 1); Amended Complaint, ¶13.)

3.      Over the following months, ITV's principals met with Guerrero, Howell, and Geremesz to explore whether a financial commitment by ITV was possible. The Defendants lacked the necessary capital to successfully launch the product on their own and looked to ITV to contribute the millions of dollars necessary for production of one or more infomercials, test-marketing, and the purchase of media airtime. (Amended Complaint, ¶14.) In consideration for ITV's investment, the Defendants agreed that ITV would, among other things, own the trademark rights to "Supreme Greens with MSM." (Id.)

4.      During these meetings, Guerrero repeatedly referred to himself as a doctor and stated that he operated an active clinic with a number of patients. He also referred to himself as an OMD, which is a designation under California law that requires a medical degree or a doctorate degree from an accredited university in the State of California. (Id., ¶15; Barrett Aff. ¶3; Affidavit of Robert Maihos, dated April 30, 2004, "Maihos Aff.", ¶3, filed in Opposition to Defendants' Motion for Temporary Restraining Order, (docket entry #26.)) Guerrero also made numerous health claims about the Product, which he claimed were supported by documentary and clinical evidence. (Id.)

5.      On April 4, 2003, ITV entered into an exclusive "Distribution Agreement" with Healthy Solutions for the manufacture and distribution of Supreme Greens ("Distribution Agreement"). (Maihos Aff., ¶2, Barrett Aff., ¶4.) The terms of the Distribution Agreement were negotiated between ITV and Geremesz, Howell and their counsel, including price terms for the Product. (Deposition of Gregory Geremesz, dated August 18, 2004, ("Geremesz Dep. Vol. I") attached to the Affidavit of Susan W. Gelwick ("Gelwick Aff."), filed herewith, as Exhibit A, p. 75.) It went through several iterations during these negotiations, where terms were added by the parties, before the final agreement was reached. Healthy Solutions' counsel participated in all of

these negotiations and reviewed the Distribution Agreement before it was executed. (Id., pp. 79-82.) The Distribution Agreement was also reviewed by officers and employees of ITV. (Barrett Dep., p. 56, attached to Affidavit of Scott A. Silverman as Ex. 1; Deposition of Jason Bernabei, dated August 20, 2004, ("Bernabei Dep.") attached to Gelwick Aff., Ex. B, pp. 46-47.)

6.  The Distribution Agreement provided that ITV would produce an infomercial for the Product featuring Guerrero, and that ITV would be the exclusive distributor of the Product in connection with the infomercial. (Maihos Aff., ¶2, Barrett Aff., ¶4.) The Distribution Agreement also identified the product that would be manufactured and its price, and included, among others, the terms of sale, terms of payment, and product warranties. (See Distribution Agreement, attached as Exhibit D to Defendants' Counterclaim.) In addition, the Distribution Agreement signed by the parties specifically contemplated that purchase orders would be issued for the Product in accordance with its terms, and stated that all purchase orders would be "placed under the terms and conditions of the Distributor Agreement between Distributor and Manufacturer." (Id., p. 5.) Thus, each purchase order expressly incorporated all of the terms and conditions of the Distribution Agreement and were part of this agreement. (Id.)

7.  Between April 4, 2003 and February 6, 2004, ITV issued purchase orders to Healthy Solutions for the purchase of Supreme Greens in varying quantities. (Maihos Aff., ¶4.) In order to promote the sale of the Product, ITV expended millions of dollars on advertising for the Product, primarily in connection with the production and airing of two separate infomercials featuring Guerrero. (Id., ¶5.)

8.  ITV also developed the logo for Supreme Greens with MSM, and with the encouragement and approval of Healthy Solutions, filed an application for federal registration of the name "Supreme Greens with MSM". (Maihos Aff., ¶5.) All of the recommended dosage

information and information regarding the contents of the product was provided by Defendants and added to the label, which was designed by ITV. (Amended Complaint, ¶19.)

9. ITV's only relationship in connection with its purchases of Supreme Greens with MSM was with Healthy Solutions. (Affidavit of Robert Maihos, dated March 22, 2004, ("Maihos March Aff."), at ¶¶3-4, attached to ITV's Opposition to Cappseals' Motion for Temporary Restraining Order as Exhibit B (docket entry #7.)) At no time did ITV have any relationship, contractual or otherwise, with Cappseals. (Id., ¶8.) ITV never spoke to anyone at Cappseals, never ordered any product from Cappseals, never received an invoice from Cappseals, never corresponded in any way with Cappseals, and never paid any money to Cappseals. (Id.)

10. Nothing in the Distribution Agreement or in any other agreement specified any particular manufacturer of the product other than Healthy Solutions. (See Distribution Agreement, Exhibit D to Healthy Solutions' Counterclaim.) Healthy Solutions' decision to order product from Cappseals was entirely its own and was never discussed or approved by ITV. (Maihos March Aff., ¶¶3, 8.)

11. In the infomercial produced by ITV, and in other media, Guerrero states that he is a doctor and operates a clinic in California, where he has cancer patients, AIDS patients, and patients with MS, diabetes and Parkinson's disease. (Maihos Aff., ¶3, Barrett Aff., ¶¶5, 6.) He also made numerous controversial claims regarding the health benefits of Supreme Greens. (Id.) In support of these claims, Guerrero represented that he conducted a study of over 200 of patients through his clinic, all of whom were diagnosed as terminally ill, and that all but eight of these patients are still alive. (Id.) In addition, Guerrero represented that he received a doctorate degree in Traditional Chinese Medicine from the Samra University in California, and that he was

an OMD (doctor of oriental medicine). (Maihos Aff., ¶3 and Exhibits B & C. (docket entry # 26.)) On several occasions prior to and after production of the infomercials, Guerrero confirmed to ITV that he possessed competent and reliable documentary and clinical support for each and every representation he made in the infomercials. (Maihos Aff., ¶3.)

12. In late 2003, ITV learned that Healthy Solutions had filed a competing trademark application for federal registration of the name "Supreme Greens with MSM," in violation of the parties' agreement that the trademark would belong to ITV. The Defendants assured ITV that it had been filed to protect the trademark pending the filing of ITV's application, and that they would withdraw the application. (Id., ¶6; Amended Complaint ¶21.)

13. Based solely on the efforts of ITV, the initial infomercial was successful and the Healthy Solutions Defendants received millions of dollars in product orders from ITV. These orders, however, did not generate sufficient income for ITV to recoup its tremendous investment in marketing the product. (Amended Complaint, ¶¶ 22, 23.) As a result, in early 2004, the parties orally modified the prior Distribution Agreement, and agreed, among other things, that the Defendants would (i) pay royalties to ITV for their direct sales of Supreme Greens with MSM over the Internet, (ii) transfer to ITV of ownership of the website address "www.supremegreens.com", and (iii) withdraw Healthy Solutions' competing trademark application. (Maihos Aff., ¶6.)

14. Relying on this modified agreement, ITV expended well in excess of a million dollars on additional marketing and advertising for the product which it has yet to recoup. (Id.; Barrett Aff., ¶7.) In addition, on January 9, 2004, ITV forwarded a check in an additional amount of $7,500 to confirm Healthy Solution's agreement to transfer ownership of the website.

Healthy Solutions has cashed this check, confirming the agreement. (Maihos Aff., ¶6 and Exhibit D.)

15. In February 2004, ITV learned that, despite the modified agreement, payment for the website and ITV's continued expenditures on marketing and advertising, Healthy Solutions had failed to provide an accounting of its substantial Internet sales to ITV, failed to pay royalties due to ITV for direct sales of the Product, and had failed to withdraw its trademark application as promised. (Maihos Aff., ¶7; Amended Complaint, ¶31.) Healthy Solutions also sought to establish relationships with other distributors and media production companies, despite the exclusivity provision in the Distribution Agreement. (Maihos Aff., ¶7.)

16. In the Distribution Agreement, Healthy Solutions agreed to defend, indemnify and hold harmless ITV and its officers, directors, employees, shareholders and affiliates from any and all claims, lawsuits, actions and proceedings in court or by any governmental unit, relating to the manufacture and content of Supreme Greens, and the health claims made by Guerrero concerning the claimed impact the Product would have on the health of users of the Product. (Maihos Aff., ¶9 and Exhibit A; Barrett Aff., ¶8.) Specifically, the Distribution Agreement provides that:

> Manufacturer [Healthy Solutions] agrees upon demand to defend, indemnify and hold harmless Distributor [ITV], its officers, directors, employees, shareholders and affiliates from any and all claims, lawsuits, actions and proceedings in any court or by any governmental unit arising out of or relating to the Product as manufactured, its contents or impact n the health of any person. (Maihos Aff., ¶9 and Exhibit A at ¶ 24.)

17. In or about February 2004, ITV was contacted by both the United States Food and Drug Administration ("FDA") and the Federal Trade Commission ("FTC") concerning the health claims that Guerrero has made in connection with Supreme Greens, both in the product labeling and packaging information provided by Guerrero and Healthy Solutions and in the infomercials.

(Maihos Aff., ¶10; Affidavit of Christopher Robertson, Esq. ("Robertson Aff."), ¶¶ 3, 6-7, filed in Opposition to Defendants' Motion for Temporary Restraining Order (docket entry # 27.)) Each agency indicated that they did not believe Healthy Solutions or Guerrero could provide competent and reliable scientific evidence to support the health claims made by Guerrero in connection with Supreme Greens. (Id.) Neither agency told ITV to stop selling or marketing the Product, or to stop running the infomercials altogether. (Robertson Aff., ¶¶ 3, 6-7.)

      18. On February 11, 2004, an investigator from the FDA arrived at ITV's offices, and informed ITV that the FDA was conducting an investigation into Supreme Greens concerning the labeling and packaging information and product inserts. (Affidavit of Eileen Barrett ("E. Barrett Aff.") at ¶2.)

      19. As a result of the FDA's investigation, on February 13, 2004, ITV provided written notice to Healthy Solutions, through Geremesz and Guerrero, that ITV was suspending all future shipments of Supreme Greens and all shipments in transit. ITV also informed Healthy Solutions that it had stopped payment on its check that was issued to pay for the Product, and that it was suspending all future invoice payments pending the outcome of the FDA's inquiry. (E. Barrett Aff., ¶3 and Exhibit A; see also Deposition of Gregory Geremesz, dated August 19, 2004, ("Geremesz Dep. Vol. II"), attached to Gelwick Aff., Ex. C, p. 44-46.) ITV also conducted a conference call with representatives of Healthy Solutions during which they discussed the pending FTC and FDA investigations, due to which ITV was withholding its payments for shipments of the Product. (E. Barrett Aff., ¶5.)

      20. On March 12, 2004, ITV requested that Healthy Solutions send it the formulation for Supreme Greens because it had been requested by the FDA investigators, although Healthy

Solutions ignored this request. (E. Barrett Aff., ¶4 and Exhibit B; Geremesz Dep. Vol. II, pp. 46-48.)

21. In response to the FDA's warning letter issued to ITV on April 19, 2004 regarding the Product's labeling, ITV engaged in corrective action at its own significant expense to correct the labeling defects and the alleged misrepresentations by Guerrero identified by the FDA in connection with the Product. (Amended Complaint, ¶34.) To the extent the information provided by Healthy Solutions in the labeling of Supreme Greens was in violation of federal law, the Product was nonconforming. (See Distributio Agreement, pp. 3-4, 8.)

22. On May 25, 2004, the FTC filed a civil injunction action in the District of Massachusetts against ITV and Healthy Solutions in Civil Action No. 04-1136-GAO, seeking millions of dollars in restitution for the false claims made by Guerrero. (See Docket Report for FDIC v. Direct Marketing Concepts, Inc., et al., C.A. No. 04-cv-11136-GAO, attached to Gelwick Aff., Ex. D.) ITV's gross sales revenue for the Product, which is its potential exposure to the FTC's action, far exceeds the approximately $1.8 million that the Defendants claim they are due from ITV in their counterclaim. (Maihos Aff., ¶10.)

23. In addition, in connection with the FDA and FTC investigations, ITV investigated the background of Guerrero, and discovered that he is not a doctor and an OMD. Rather, it appears that Guerrero received only a Masters Degree from Samra University in Los Angeles, and has never received a doctorate of any kind at any time. (Maihos Aff., ¶11; Robertson Aff., ¶7.)

24. As a result of the FTC and FDA investigations regarding the health claims made by Guerrero concerning Supreme Greens, the labeling of the Product, and the discovery that Guerrero is not a doctor as he repeatedly represented to ITV and publicly, on April 21, 2004,

ITV sent an indemnification demand to Healthy Solutions seeking indemnification under the Distribution Agreement of all liabilities and expenses it has incurred and may incur in connection with the pending FTC action and FDA investigation. (Robertson Aff., ¶8 and Exhibit A.)

25. Healthy Solutions has not defended or indemnified ITV in the FTC's action or for the corrective action it took in response to the FDA's investigation, and instead, refused ITV's demand for indemnification. (See Defendants' Letter of April 29, 2004, attached as Exhibit 1 to Gelwick Aff.)

26. ITV has refused to pay Healthy Solutions under the Distribution Agreement based on the Defendants' fraudulent representations concerning the Product, which were made for the purpose of inducing ITV into entering the Distribution Agreement, in addition to their indemnification obligations, failure to account to ITV for Internet sales, breaches of contract in labeling of the Product, and other acts, and has filed this action. (See Amended Complaint.) At the time ITV filed this action on March 2, 2004, the payment for the last delivery of Supreme Greens shipped by Cappseals on February 6, 2004 was not yet due. According to Healthy Solutions' invoice to ITV, payment was "Net 30" and was thus due on March 8, 2004. (See Exhibit E to Healthy Solutions' Counterclaim.)

27. In its Amended Complaint, ITV alleges that it has been and will continue to be substantially damaged by Defendants' fraud, breach of contract, and conversion. ITV believes that its damages caused by Healthy Solutions' conduct drastically exceed any amounts that Healthy Solutions currently claims is owed, that ITV is entitled to indemnification for these amounts under the Distribution Agreement and a set-off to Healthy Solutions' claim. (Id.)

|  |  |
|---|---|
|  | Respectfully submitted,<br>ITV DIRECT, INC.<br>By their attorney(s),<br><br>/s/ Susan Gelwick<br>Peter S. Brooks, BBO #058980<br>Christopher F. Robertson, BBO #642094<br>Susan W. Gelwick, BBO #567115<br>SEYFARTH SHAW LLP<br>Two Seaport Lane, Suite 300<br>Boston, MA 02210-2028<br>Telephone:    (617) 946-4800 |
| Dated: June 13, 2005 | Telecopier:    (617) 946-4801 |

BO1 15720492.1