## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC., <br>               Plaintiff, <br><br> v. <br><br> HEALTHY SOLUTIONS, LLC, et al., <br>               Defendants. <br><br> RELATED CASES | ) <br> ) <br> ) <br> ) <br> )   CIVIL ACTION NO. 04-CV-10421-JLT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ITV DIRECT'S OPPOSITION TO CAPPSEALS, INC.'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, ITV Direct, Inc. ("ITV" or "Plaintiff"), submits this opposition to Plaintiff-in-Intervenor Cappseal, Inc.'s ("Cappseals") Motion for Summary Judgment. For the reasons set forth below, Cappseals has failed to show that it is entitled to judgment as a matter of law against ITV on its reach and apply claim where Healthy Solutions, LLC ("Healthy Solutions") has not obtained a judgment against ITV on its counterclaim and ITV has valid defenses to that claim. Even if Healthy Solutions were to recover on its counterclaim, ITV has claims against Healthy Solutions that, if reduced to a judgment, will far exceed and will setoff any such judgment obtained by Healthy Solutions. Accordingly, Cappseals' reach and apply claim cannot be decided until there is a trial on the merits of ITV's claims against Healthy Solutions.

## PRELIMINARY STATEMENT

Cappseals cannot prevail on its motion because it cannot establish as a matter of law that Healthy Solutions will prevail in obtaining a judgment against ITV on its counterclaim for alleged amounts owed under the distribution agreement between ITV and Healthy Solutions, or that such judgment will be greater than any judgment obtained by ITV on its claims against the Healthy Solutions defendants (the "Defendants"). These claims, which arise under and are inextricably intertwined with the parties' distribution agreement, cannot be separated from the

delivery of product under the same agreement.  In this case the distribution agreement identified the price and type of product to be delivered and all of the terms governing the sale, and was also expressly incorporated into every purchase order.  Thus, contrary to the argument advanced by Cappseals, there was no separation of the purchase orders from the distribution agreement and ITV was entitled to setoff its damages arising out of Healthy Solutions' fraud and its breach of the distribution agreement from the cost of goods sold under that same agreement under M.G.L. ch. 106, § 2-717.

Even assuming that ITV could not setoff its damages under the §2-717, ITV has a common law right to a setoff of any recovery awarded to Healthy Solutions on its counterclaim against the judgment that ITV may recover on its claims against Healthy Solutions before final judgment can enter in this case.  Accordingly, the court cannot determine as a matter of law that there is any "property" of Healthy Solutions that can be attached by Cappseals until the competing judgments are setoff and final judgment is entered.  That determination can only be made after a trial on the merits of the entirety of ITV's claims and Healthy Solutions' counterclaims, thereby defeating Cappseals' motion for summary judgment.

## I.    STATEMENT OF FACTS[1]

ITV is in the business of marketing and distributing healthcare related products to individual and retail customers through the utilization of infomercials.  (Statement of Facts, ¶1.) In early 2003, defendants Michael Howell ("Howell") and Greg Geremesz ("Geremesz") wanted to meet with ITV to discuss ITV developing a market for a new organic dietary supplement known as "Supreme Greens with MSM" ("Supreme Greens" or "Product") that their business associate, Alejandro Guerrero ("Guerrero"), had developed.  (Id. ¶2.)  The parties met over the following months, and during these meetings, Guerrero repeatedly referred to himself as a doctor

---

[1] ITV has filed a separate Statement of Material Facts in Dispute ("Statement of Facts"), which includes all citations to the record.  Citations in this Opposition will be to the relevant paragraphs of the Statement of Facts.

and an OMD, a designation under California law that requires a medical or doctorate degree, and stated that he operated an active clinic with a number of patients.  He also made numerous health claims about the Product, which he claimed were supported by documentary and clinical evidence.  (Id., ¶¶3-4.)

On April 4, 2003, ITV entered into an exclusive "Distribution Agreement" with Healthy Solutions for the manufacture and distribution of Supreme Greens ("Distribution Agreement"). (Statement of Facts, ¶5.)  The terms of the Distribution Agreement were negotiated between ITV and Geremesz, Howell and their counsel.  It went through several iterations during these negotiations, where terms were added by the parties, before the final agreement was reached. (Id.)  The Distribution Agreement provided that ITV would produce an infomercial for the Product featuring Guerrero, and that ITV would be the exclusive distributor of the Product.  (Id., ¶6.)  The Distribution Agreement also identified the product to be manufactured and its price, and included, among other terms, the terms of sale, terms of payment, and product warranties. In addition, the Distribution Agreement specifically contemplated that purchase orders would be issued in accordance with its terms, and stated that all purchase orders would be "placed under the terms and conditions of the Distributor Agreement between Distributor and Manufacturer." (Id.)  Thus, each purchase order expressly incorporated all of the agreement's terms and conditions. (Id.)

Between April 4, 2003 and February 6, 2004, ITV issued purchase orders to Healthy Solutions for the purchase of Supreme Greens in varying quantities.  (Id., ¶7.)  In order to promote the sale of the Product, ITV expended millions of dollars on advertising, primarily in connection with the production and airing of two infomercials featuring Guerrero.  ITV also developed the Product's logo and label, although all of  the recommended dosage information and information on the contents of the Product was provided by Defendants.  (Id., ¶8.)

ITV's only relationship in connection with its purchases of Product was with Healthy Solutions. (Id., ¶9.) At no time did ITV have any relationship, contractual or otherwise, with Cappseals. ITV never spoke to or corresponded with anyone at Cappseals, never ordered any Product from Cappseals, never received an invoice from Cappseals, and never paid any money to Cappseals. (Id.) The Distribution Agreement did not specify any particular manufacturer of the Product other than Healthy Solutions, and Healthy Solutions' decision to order Product from Cappseals was entirely its own and was never discussed or approved by ITV. (Id., ¶10)

In the infomercial and in other media, Guerrero states that he is a doctor and an OMD and operates a clinic in California, where he has cancer patients, AIDS patients, and patients with MS, diabetes and Parkinson's disease. (Statement of Facts, ¶11.) He also made numerous controversial claims regarding the health benefits of Supreme Greens, which he claimed were supported by a study he conducted of 200 of terminally ill patients through his clinic. (Id.) On several occasions, Guerrero confirmed to ITV that he possessed competent and reliable documentary and clinical support for each representation he made in the infomercials. (Id.)

In or about February 2004, the United States Food and Drug Administration (FDA) made an onsite inquiry at ITV regarding Supreme Greens and concerning the health claims made by Guerrero both in the product labeling and in the packaging information that he and Healthy Solutions provided. (Statement of Facts, ¶¶17, 18.) ITV was also contacted by the Federal Trade Commission (FTC) concerning the health claims that Guerrero has made in connection with Supreme Greens, including the claims he has made in the infomercials. (Id., ¶17.) Both agencies indicated that they did not believe that Healthy Solutions or Guerrero could provide competent and reliable scientific evidence to support these health claims. (Id.)

On February 13, 2004, ITV gave notice to Healthy Solutions that, on account of the FDA's inquiry, ITV was suspending all future product shipments until further notice. ITV also notified Healthy Solutions that it had issued a stop check order for a payment that had been sent

4

to Healthy Solutions for the Product, and that all invoice payments to Healthy Solutions or its entities were suspended pending the outcome of the FDA's investigation.  (Id., ¶18.)

 As a result of the FDA's investigation, ITV engaged in corrective action at its own expense to correct label defects and alleged misrepresentations by Guerrero as identified by the FDA in connection with the Product.  (Id., ¶21.)  ITV also conducted its own investigation into the background of Guerrero, and discovered that he is not a doctor or an OMD as he represented, and that he has never received a doctorate of any kind.  (Id., ¶23.)  Thereafter, on May 25, 2004, the FTC filed an action in the District of Massachusetts against ITV and Healthy Solutions, seeking millions of dollars in restitution for the false claims made by Guerrero.  (Id., ¶22.)

In the Distribution Agreement, Healthy Solutions agreed to indemnify and hold ITV harmless from any and all claims and actions relating to the manufacture and content of Supreme Greens, and claims made by Guerrero concerning the claimed impact the Product would have on the health of users of the Product.  (Statement of Facts, ¶16.)  Based on the FTC and FDA investigations, and the discovery that Guerrero is not a doctor, on April 21, 2004, ITV sent an indemnification demand to Healthy Solutions seeking indemnification under the Distribution Agreement of all liabilities and expenses it has incurred and may incur in connection with the FTC and FDA investigations.  (Id., ¶24.)   Healthy Solutions refused ITV's demand.  (Id., ¶25.)

Based on the Defendants' fraudulent representations concerning the Product and the qualifications of Guerrero, indemnification obligations, and other breaches of contract in labeling and other acts, ITV notified Healthy Solutions a second time that it was suspending payment under the Distribution Agreement when it filed this action.  (Id., ¶26.)

## II.    LEGAL ARGUMENT

### A.    Genuine Issues of Fact Exist Regarding Healthy Solutions' Claims Against ITV

It is well settled that application of Massachusetts' reach and apply statute, G.L. c. 214, § 3(6), requires "a two step process to establish (1) the indebtedness of the defendant and (2) the

defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." Hunter v. Youthstream Media Networks, Inc., 241 F. Supp. 2d 52, 57 (D. Mass. 2002)(citations omitted). In the second step, a plaintiff must satisfy the debt "out of property held by one who owes a debt to the principal defendant." Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 688 (1984). Where a plaintiff cannot meet both of these statutory prerequisites, reach and apply is not available. Hunter, 241 F.Supp. 2d. at 58.

Although a creditor may seek to reach and apply its debtor's cause of action against another, that action has no value unless it is reduced to a judgment in favor of the debtor. Bethlehem Fabricators, Inc. v. H.D. Watts Co., 286 Mass. 556, 563 (1934) (where plaintiff sought to reach and apply debtor's cause of action against third party, a final decision must be issued to determine whether there was any property to reach); Digney v. Blanchard, 229 Mass. 235 (1918) (pending cause of action has no value until reduced to judgment). Once the cause of action is reduced to a final judgment in favor of the debtor, its creditor may reach and apply that judgment, as long as the third party is subject to execution by the debtor on such judgment. See White Sewing Mach. Co. v. Morrison, 232 Mass. 387 (1919); Orange Hardware Co. v. Ryan, 272 Mass. 413, 416-17 (1930).

Although Cappseals has obtained a judgment against Healthy Solutions, Cappseals must also establish as a matter of law that ITV has a "debt" due and owing to Healthy Solutions that can be attached. Massachusetts Elec. Co., 391 Mass. at 688. Cappseals cannot meet this statutory prerequisite. Contrary to Cappseals' assertion, ITV *has not* agreed that it owes Healthy Solutions the $1.8 million it was invoiced for Product. (Cappseals' Memorandum, p. 9.) Rather, ITV asserts that, as a result of its claims and defenses against Healthy Solutions, which far exceed the $1.8 million Healthy Solutions is seeking for Product, it is Healthy Solutions who owes a debt to ITV.

6

Accordingly, Cappseals' claim to reach and apply has no value and can not proceed unless and until Healthy Solutions obtains a judgment against ITV on its counterclaim and such judgment is in an amount greater than any judgment obtained by ITV on its claims against Healthy Solutions.  Thus, Cappseals' right to attach a judgment in favor of Healthy Solutions cannot be determined before a trial is conducted on the entirety of the claims of ITV and Healthy Solutions.

**B.      ITV Has A Right Of Set Off Under M.G.L. ch. 106, § 2-717.**

ITV has numerous defenses to the counterclaim being asserted by Defendants, such as Defendants' fraud in the inducement of the Distribution Agreement by representing that they possessed reliable clinical and scientific support for the health claims that Guerrero made about the Product, and their representations about Guerrero's status as a doctor.  ITV has also asserted that Healthy Solutions has itself breached the Distribution Agreement by, *inter alia*, its product labeling and failure to indemnify ITV, thereby excusing any alleged breach by ITV.  Such defenses serve as an setoff to Defendants' claim for breach of contract for ITV's failure to pay for certain shipments of Supreme Greens pursuant to the Distribution Agreement, and involve disputed issues of fact that cannot be determined as a matter of law at this stage of the case.[2]

Under a provision of the Uniform Commercial Code ("U.C.C.") as adopted in Massachusetts, G.L. c. 106 § 2-717, ITV may setoff the damages it has incurred as a result of Healthy Solutions' breach of the Distribution Agreement from any amounts Healthy Solutions claims it is owed under that same agreement.  Specifically, § 2-717 provides that "[t]he buyer on notifying the seller of his intention so to do may deduct all or any part of the damages resulting

---

[2] ITV's defenses include, among others, Healthy Solutions' breach of the Distribution Agreement in failing to defend and indemnify ITV in connection with the action taken by the FDA and FTC, failing to pay ITV royalties for internet sales of Product, fraudulently inducing ITV into entering into the Distribution Agreement and misrepresenting the credentials of Guerrero and that they possessed reliable clinical and documentary support for the health claims they made in connection with the Product.

from any breach of the contract from any part of the price still due under the same contract." <u>Id</u>. In addition, under Article 2 of the U.C.C., the remedies available to a buyer for a seller's fraud include all remedies available for a seller's nonfraudulent breach.  G.L. c. 106, § 2-721.

ITV notified Healthy Solutions on February 13, 2004 that, as a result of the FDA investigations into the health claims made by Guerrero concerning Supreme Greens, it was withholding payment under the Distribution Agreement and canceling future orders.  On March 2, 2004, ITV filed its complaint in this action, again notifying Healthy Solutions that as a result of the government investigations, its fraudulent representations and breaches of the Distribution Agreement, ITV was withholding payment under the Distribution Agreement in order to setoff the damages it was incurring.  (See ITV's Complaint)  ITV has properly exercised its rights under G.L. c. 106, § 2-717 and § 2-721 and is entitled to a setoff of its damages resulting from Healthy Solutions' fraud in the inducement, misrepresentation, and breaches of the Distribution Agreement against Healthy Solutions' counterclaim for goods sold and delivered.

    1.    **The Distribution Agreement and the Purchase**
              **<u>Orders Were Part Of A Single Integrated Contract.</u>**

Attempting to avoid ITV's setoff for the claims that it has against Healthy Solutions in connection with the Distribution Agreement, Cappseals argues that ITV is not entitled to a setoff under § 2-717 because its damages do not stem from a breach of the same contract under which Healthy Solutions is seeking to recover its price, asserting that the purchase orders ITV issued to Healthy Solutions created separate contracts from the Distribution Agreement.  (Cappseals' Mem., pp. 10-12.)  This argument, however, fails to recognize that the Distribution Agreement and all of its terms and conditions were ***expressly incorporated*** by the Distribution Agreement into every purchase order issued by ITV.  <u>See</u> Distribution Agreement, p. 5; <u>Everett J. Prescott, Inc. v. S&H Contracting Co., Inc</u>., 2000 WL 781585 (Mass. Super. April 13, 2000.) (Defendant's acceptance of contract included acceptance of its term that each purchase order was subject to

contract's terms and conditions.)  This express incorporation, which inextricably intertwines the Distribution Agreement with the purchases of Product, distinguishes this case from each of the cases cited by Cappseals.[3]

Here, it is clear from the express language of the Distribution Agreement that the parties intended that the Distribution Agreement and the purchase orders were a single integrated agreement.  The damages that ITV alleges it incurred as a result of Healthy Solutions' fraud and breach of contract thereby stem from the same contract under which Healthy Solutions is seeking to recover its price.  See Hackel v. FDIC, 858 F.Supp. 289, 291-292 (D.Mass. 1994) (whether separate documents should be read together as one integrated agreement is a question of fact, turning on the intentions of the parties); S&F Concrete Contractors, Inc. v. Strickland Systems, Inc., 1995 WL 808874 (Mass. Super. April 25, 1995) (whether purchase orders are separate contracts turns on the intentions of the parties, and cannot be resolved on summary judgment.)

Cappseals argues that despite the express incorporation language, the terms of the Distribution Agreement were not incorporated into the purchase orders because the so-called doctrine of "Incorporation by Reference" requires a clearly stated demonstration of intent to incorporate.  Not one of the cases cited by Cappseals involves an agreement, like the Distribution Agreement here, that clearly and expressly states the parties' intention that all of its terms and conditions would be incorporated into each purchase order, and that the purchase orders would become part of the Distribution Agreement.  Instead, Cappseals relies on cases that involve

---

[3] See, e.g., C.R. Bard, Inc. v. Medical Electronics Corp., 529 F. Supp. 1382 (D. Mass. 1982) (noting that the breach of contract alleged by defendant, which included claims that plaintiff enticed defendant's sales representative to work for plaintiff and failed to renew the agreement, was "remote"); Computer Systems Engineering, Inc. v. Qantel Corp., 571 F. Supp. 1379 (D. Mass. 1983) (similarly noting that alleged breach of agreement was "remote").  Moreover, in Qantel the issue was not whether a set-off would apply to reduce the award to the plaintiff, but whether the claim for goods sold and delivered could be maintained at all in light of the breach of the agreement.  Although the court rejected that argument, it still applied a general setoff.  Id., 571 F. Supp. at 1384; Travenol Laboratories, Inc. v. Zotal, 394 Mass. 95 (1985) (defendant sought setoff for remote breach, where it allegedly incurred damages after the plaintiff terminated its exclusive distributorship agreement and not in connection with the goods).  There is also no indication that the distribution agreement in Travenol was expressly incorporated into the purchase orders, as here. Id., 394 Mass. at 100.

agreements that failed to identify the document to be incorporated or the intent to incorporate.[4]

In Everett J. Prescott, Inc, supra, the court was faced with a similar issue, where the defendant signed a credit application with plaintiff that included a page of terms and conditions. One of the terms and conditions agreed to by the defendant was that the purchase orders issued to plaintiff were "deemed subject to the terms and conditions recited in the credit application." Id., at **1. When the plaintiff sued the defendant for goods sold and delivered, the defendant claimed that he was unaware of the terms contained in the credit application or that they applied to the purchase orders. The court rejected this argument, finding that the defendant signed the application acknowledging that he had read its terms and conditions, and that "[p]roof of the defendant's signature entitles the plaintiff to the benefit of the presumption that one who signs an instrument has read and understood its contents and has assented to its terms and legal effect." Id. at **7. The court found that the defendant's acceptance of these terms "included an acceptance of a term that each purchase order was subject to these terms and conditions." Id.; see also Coral Systems, Inc. v. Lucent Technologies, Inc., 2005 WL 705953 (Mass. Super. Feb. 25, 2005) (distribution agreement included provision that all purchase orders would incorporate its terms and that parties' intended that the orders and agreement be construed as one contract.)

Moreover, the fact that the Distribution Agreement here also set forth the price and type of product to be ordered, the rights and duties of the parties with respect to the purchase orders, all of the terms of sale and of payment, and Product warranties, further distinguishes the authority cited by Cappseals. (See Distribution Agreement, pp. 1, 3-6.) Where a distribution

---

[4] See, e.g., Lowney v. Genrad, Inc., 925 F.Supp. 40 (D. Mass. 1995) (employer's agreement to pay plaintiff additional monthly sum as retirement benefit did not incorporate complex administrative scheme of the employer's ERISA plan where there was no provision expressly incorporating the Plan, and Plan did not refer to agreement.) See also Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1 (1st Cir. 2004) (employment agreement and asset purchase agreement that were executed together did not expressly incorporate the other, dealt with different aspects of the sale, and clauses cannot "be plucked at random from one agreement and inserted into the other."). In Fit Tech, Inc. the court noted that "[t]he contract must show an intent to incorporate the other document and make it part of the contract itself," as the Distribution Agreement does in this case. Id., at 10.

agreement includes terms such as these, courts consider that the agreement and resulting purchase orders are one contract. Infusion Resources, Inc. v. Minimed, Inc., 2000 WL 1639397 (E.D. La. Oct. 31, 2000).

The Court's decision in Infusion Resources is on point. In that case, the counterclaim plaintiff argued, as Cappseals argues here, that purchase orders issued pursuant to a distribution agreement constituted separate and distinct contracts. Denying the counterclaim plaintiff's motion for summary judgment, the Infusion court noted that, unlike the cases cited by the counterclaim plaintiff, the distribution agreement set forth the price and type of goods, as well as the shipping terms. On that basis, the Court held that it "could determine that, as a matter of law, the Distribution Agreement and purchase orders are one contract." 2000 WL 1639397, *3. Here, not only is the Distribution Agreement expressly incorporated into each purchase order, but the Distribution Agreement also provides for the type and price of goods, labeling and packing instructions, ordering and shipping instructions, inspection instructions, acceptance criteria, cancellation instructions, and payment criteria. No such information is included on the purchase orders themselves, and they cannot stand alone from the Distribution Agreement.[5]

Likewise, in Pacific Western Resin Co. v. Condux Pipe Systems, Inc., 771 F.Supp. 313 (D. Ore. 1991), the court denied the seller's motion for summary judgment on its claim for breach of individual invoices, holding that triable issues of fact existed as to whether the buyer was entitled to a setoff based on its claim that the seller had breached the underlying requirements contract. As in this case, the seller argued that the buyer's obligation to pay for accepted goods and the seller's alleged breach of the requirements contract were not the same contract. Id., 771 F.Supp. at 315-316. In rejecting the plaintiff's argument, the court found that

---

[5] In rejecting counterclaim plaintiff's motion for summary judgment, the court in Infusion specifically distinguished C.R. Bard, relied upon heavily by Cappseals. The court noted that in C.R. Bard, as well as the other cases cited by counterclaim plaintiff, the distribution agreement was silent on such terms as type and price of the goods.

there was competent evidence to establish that the individual invoices did not establish separate contracts, but that the single long-term requirements contract controlled the terms of the parties' business relationship, and that all purchase orders were made pursuant to that contract.  Id.

In its analysis, the court rejected the very authorities cited by Cappseals in this case, finding that the buyer clearly had a right to claim a setoff under § 2-717 based on its claim of breach by the seller.  Pacific Western Resin Co., 771 F.Supp. at 316.  According to the court, whether the plaintiff has breached and the defendant has a right of set-off is a factual question that cannot be decided on summary judgment, recognizing that "'[a]cceptance of a seller's product, and refusal to pay, alone do not necessarily constitute breach.'"  Id. at 317, quoting Purofied Down Prod. Corp. v. Royal Down Prod., Inc., 87 F.R.D. 685, 690 (W.D. Mich. 1980) (same).  Thus, even without the Distribution Agreement's express incorporation, the Distribution Agreement included numerous detailed terms of the sale that were not included in the purchase orders.  Thus, the purchase orders were not separate contracts, but were integrated into the Distribution Agreement.

**2.      ITV's Claims Are Inextricably Interwoven With
Healthy Solutions' Claim for Goods Sold and Delivered.**

Cappseals next argues that the ITV is not entitled to a setoff of any amounts due and owing for Product because ITV had not made a claim that goes to the essence of the transaction, namely, a claim relating to the conformity of the goods.[6]  (Cappseals' Mem., p. 12.)   In the first instance, because the Distribution Agreement and the purchase orders are one integrated

---

[6] Cappseals fails to explain why the broad language of the indemnification clause is limited to claims for non-conforming goods.  Rather, Healthy Solutions agreed to indemnify ITV for "any and all claims . . . arising out of or relating to the Product …." (Statement of Facts, ¶16.)  Similarly misplaced is Cappseals' argument that none of ITV's claims go to the non-conformity of the goods.  Although such a claim is not necessary in order for ITV to invoke its right to setoff, ITV's indemnification claim relates to the FTC's and FDA's investigation of the "labeling" of the Product, which was the responsibility of Healthy Solutions under the Distribution Agreement and which it had to do in compliance with state and federal law.  (Distribution Agreement, p. 8.)  To the extent that ITV has suffered damages because the labeling of the Product was in violation of federal law, that claim does relate to the nonconformity of the goods.  In addition, this labeling issue further demonstrates how intertwined the sale of these particular goods was with the Distribution Agreement, which set out the labeling criteria.

contract, ITV can setoff the damages incurred as a result of Healthy Solutions' fraud and breach of the Distribution Agreement from amounts due to Healthy Solutions under that same contract.

In any event, contrary to Cappseals' assertion, ITV does not need to make a claim against Healthy Solutions for non-conforming goods to invoke its right to setoff. Where, as here, the buyer's claim against the seller is "inextricably interwoven" with the seller's cause of action, the buyer is entitled to claim a right of setoff and summary judgment cannot be granted on the seller's breach of contract claim. RPJ Sportswear, Inc. v. Xylo Tex, LTD, 681 F.Supp. 225 (S.D.N.Y. 1988). Here, ITV's claims for fraud and misrepresentation, and its claim for indemnification, all go to the very essence of the parties' contract, as the Defendants' false representations concerning Guerrero and the Product induced ITV into entering the Distribution Agreement under which it marketed and sold the Product, and are the reason for the FTC's and FDA's action against ITV for which it seeks indemnification. These claims are clearly "inextricably interwoven" with Healthy Solutions' claim for goods sold and delivered under the same Distribution Agreement, as these are the very goods about which Guerrero and Healthy Solutions made unsupported health claims and warranties. In such a case, ITV has a right to claim a setoff against Healthy Solutions' claim for price. This requires a resolution of factual issues concerning ITV's claims under the Distribution Agreement, precluding the entry of summary judgment. Id., 681 F.Supp. at 228.

The case of RPJ Sportswear, Inc. is instructive. The court recognized therein that the buyer had a claim for setoff, although it was not based on the non-conformity of the goods sold and delivered. Rather, the buyer, RPJ, claimed a right to setoff based on its claim that the seller had breached the parties' exclusivity agreement, by which the seller agreed that it would provide certain goods and patterns exclusively to RPJ. Id., 681 F. Supp. at 226. When the defendant provided other manufacturers with the same goods and patterns, RPJ refused to pay the outstanding amount of the invoice for the goods it had bought. Id., 681 F. Supp. at 226. On the

seller's motion for summary judgment on the unpaid invoices, the court found that the RPJ's claim for breach of the underlying contract of sale was "inextricably interwoven" with the seller's claim, and summary judgment could not be granted. Id. at 228-229. The court recognized that RPJ had a right of set-off under § 2-717 of the U.C.C., despite the fact that it had not claimed that the goods delivered by the defendant were non-conforming. Id. See also Gutor Intern'l AG v. Raymond Packer Co., Inc., 493 F.2d 938 (1st Cir. 1974), in which the First Circuit recognized that there may be cases where a buyer's claim for breach of the distributor agreement may be so bound up with the seller's claim for price of goods sold that the setoff provision of the U.C.C. will apply.[7]

This is such a case. Here, ITV has not asserted some remote breach of contract, but has asserted that the Distribution Agreement itself was induced by fraud and was then breached by Healthy Solutions' failure to indemnify ITV, among other acts, and the setoff provision of § 2-717 should apply. Because ITV's claims require a resolution of factual issues, Cappseals cannot establish as a matter of law that ITV owes a "debt" to Healthy Solutions, and its motion must be denied. See Pacific Western Resin Co., 771 F.Supp. at 317 (whether plaintiff has breached and the defendant has a right of set-off is a factual question that cannot be decided on summary judgment); see also Purofied Down Prod. Corp., 87 F.R.D. at 690 (summary judgment not appropriate when buyer claimed a right of set-off under § 2-717); see also American Elec. Power Co. v. Westinghouse Elec. Corp., 418 F.Supp. 435, 460 (S.D.N.Y. 1976)(seller's summary

---

[7] The defendant in Gutor Intern'l AG had argued that the purchasing of machines from the plaintiff was so bound up with the future of its franchise, that cancellation of the franchise entitled it to withhold payment. Id., 493 F.2d at 943. According to the court, "discontinuance of the distributorship might well have left [defendant] without incentive or means to sell and service the machines. Indeed, [defendant] might not have accepted them if it had known of [plaintiff's] concealed plans." Id. at 943. However, the defendant failed to give timely notice to the plaintiff under § 2-717 of its election to offset damages allegedly stemming from distributorship termination directly against plaintiff's claim for the price. According to the court, "[b]y failing to take appropriate action [defendant] forfeited whatever right, or claim of right, it might have had under the Uniform Commercial Code to treat [plaintiff's] alleged breach as a defense to nonpayment." Id.

judgment motion denied where buyer's claims as to seller's breach and its right to set-off cannot be resolved until trial).

### 3.     ITV Provided The Requisite Notice Of Intent To Set-Off Its Damages

There is also no merit to Cappseals' argument that no notice was provided to Healthy Solutions regarding ITV's intent to setoff amounts for breach of the Distribution Agreement from amounts allegedly due for goods delivered to ITV.  Contrary to Cappseals' assertion, ITV did not need to tender the Product back to Healthy Solutions or reject the Product in order to invoke its right to setoff under § 2-717, but it merely needed to notify Healthy Solutions of its intention to deduct all or any part of the damages resulting from Healthy Solutions' breach of contract and fraud from any part of the price still due under the contract.  G.L. c. 106, §§ 2-717, 2-721.  The U.C.C. does not require that any particular language be included in a buyer's notice under § 2-717, rather "any language which reasonably indicates that buyer's reason for holding up his payment is sufficient."  M.K. Assoc. v. Stowell Products, Inc., 697 F.Supp. 20 (D. Maine 1988) (discussing identical setoff provision under Maine law); see also Comments to G.L. c. 106, §2-717 (1999).  In addition, a buyer does not need to give notice of the exact amount of damages that will be incurred, as long as the seller is on notice of the reason for withholding payment. M.K. Assoc., 697 F.Supp. at 22, citing Custom Automated Mach. v. Penda Corp., 537 F.Supp. 77, 86 (N.D.Ill. 1982).

By Cappseals' own admission, the last delivery of product was made to ITV on February 6, 2004, under an invoice that stated its terms were "Net 30" and thus due on March 8, 2004. (See Cappseals' Statement of Facts, ¶¶27, 28; Statement of Facts, ¶26.)  On February 13, 2004, well before this invoice was due to be paid, ITV provided notice to Healthy Solutions that it was stopping the check for its last invoice payment and was suspending all invoice payments as a result of the investigation by the FDA into the health claims about the Product.  (Id., ¶19.) Healthy Solutions was aware of the reasons for ITV's refusal to pay for the goods.  (Id.)  In

addition, on March 2, 2004, again before this invoice was due to be paid, ITV filed the present

action in this Court against Healthy Solutions, specifically stating that the Distribution

Agreement had been breached and that it had been defrauded, and that it refused to pay for the

goods that had been delivered until its claims for damages were adjudicated.  (Id., ¶26.)  Shortly

thereafter, ITV served its demand for indemnification on Healthy Solutions in connection with

the FDA and FTC investigations regarding the health claims made in connection with Supreme

Greens.  (Id., ¶24.)  Without question, ITV's notice was provided while the amounts were "still

due" under outstanding invoices, and informed Healthy Solutions of ITV's intention to setoff

payments due to Healthy Solutions and the reason for that setoff, satisfying G.L. c. 106 § 2-717.

### 4.    Healthy Solutions Has Waived Or Is Estopped From Making A Claim That The Purchase Orders Are Separate Contracts.

Healthy Solutions' counterclaim asserts that ITV breached the Distribution Agreement in

failing to pay for the Product, and attaches a copy of the Distribution Agreement.  Healthy

Solutions also brought claims for an account stated and open account, and attached copies of the

invoices that it claimed ITV allegedly failed to pay.  (Counterclaim, Counts I-III.)  Healthy

Solutions makes no mention anywhere in its counterclaim of the purchase orders that Cappseals

seeks to enforce here, which are not attached to its claim, and has never claimed that the rights it

is seeking to enforce emanate from the individual purchase orders.  Healthy Solutions has always

sought to enforce its rights, and ITV's obligation to pay, under the Distribution Agreement, and

has waived any claim that the purchase orders are separate contracts by subsuming them under

the Distribution Agreement, or it is estopped from making that argument now for the first time.

Whether Healthy Solutions has waived or is estopped from asserting its rights requires the

resolution of factual disputes that cannot be resolved on summary judgment, and Cappseals'

cannot succeed on its motion.  Infusion Resources, Inc., 2000 WL 1639397. *3.

In <u>Infusion Resources, Inc.</u>, the defendant, in three separate writings, had referred to the plaintiff's obligation to pay for goods sold and delivered as arising out the distribution agreement.  The court found that more factual development was necessary in order to determine whether the defendant had waived its rights under the separate purchase orders by subsuming them under the distribution agreement at issue, or similarly, whether the defendant was estopped from raising that argument, thereby precluding summary judgment.  <u>Id</u>. 2000 WL 1639397. *3.

**C.    In Entering Final Judgment, the Court Must Setoff Any Judgment In Favor Of <u>Healthy Solutions From Any Recovery Obtained By ITV On Its Claims.</u>**

Even assuming that Cappseals were to succeed in establishing that ITV was not entitled to a setoff against Healthy Solution's counterclaim under § 2-717, any recovery awarded to Healthy Solutions on this claim must still be setoff against any judgment ITV obtains on its claims in this case.  Thus, ITV's claims against Healthy Solutions must first be decided so that the Court can determine whether Healthy Solutions' counterclaim will setoff any competing judgment obtained by ITV.   Fed.R.Civ.P. 13(c)(counterclaim may or may not diminish or defeat the recovery sought by the opposing party.)  In its brief, Cappseals incorrectly asserts that if this Court finds that ITV is not entitled to a setoff under § 2-717, that ITV and Healthy Solutions will settle the claims between them.  On the contrary, if ITV is unable to invoke its rights to setoff under § 2-717, ITV fully intends to proceed to trial on all of its claims against the Defendants.

In ordering a final judgment, a "court must state the judgment in a way that fairly and finally adjudicates the claims asserted by the parties and facilitates appellate review."  <u>Sign-A-Way, Inc. v. Mechtronics Corp.</u>, 12 F.Supp.2d 132, 160 (D.Mass. 1998).  In the absence of a statute, courts have the power to compel a setoff of cross demands or of judgments.  <u>Id.</u>, <u>citing</u> <u>Mass. Motor Vehicle Reins. Facility v. Commissioner of Ins.</u>, 379 Mass. 527, 538 (1980); <u>also citing</u> <u>James E. Brady & Co. v. Eno</u>, 992 F.2d 864, 870 (8th Cir. 1993)(post trial judgment for setoff permissible even though verdict forms made jury's calculation of a setoff impractical).

Thus, a setoff is employed by the court "where the parties have reciprocal or mutual obligations to one another." Verderber v. Perry, 181 F.3d 81 (1st Cir. 1999). Moreover, under M.G.L. ch. 235, § 27, "executions between the same parties may , if required by either party, be set off one against the other."

Where setoff is not allowed by statute, federal courts in Massachusetts often setoff the judgment awarded to one party on all of its claims against the judgment awarded to the other party in entering final judgment. Sign-A-Way, Inc. 2 F.Supp.2d at 160 (employing setoff of competing judgments on claim and counterclaim); Qantel Corporation, 571 F.Supp. 1379, affirmed 740 F.2d 59 (1st Cir. 1984). See also Gass v. Gamble-Skogmo, Inc., 357 F.2d 215, 220 (7th Cir. 1966)("judgment on the counterclaim is available as a set-off against the judgment for the plaintiffs"). In Qantel Corporation, despite the fact that the court did not allow plaintiff a setoff under § 2-717 as a defense to the defendant's counterclaim for goods sold and delivered, seemingly because the plaintiff did not provide notice under §2-717, the court still setoff the damages awarded to the defendant on its counterclaim against the damages awarded to the plaintiff on its claims before entering final judgment. Id., 571 F.Supp. at 1384. Thus, although the defendant succeeded on its claim for goods sold and delivered, its recovery merely reduced the amount of plaintiff's recovery, and final judgment was entered in favor of the plaintiff. Id.

Setoff is often employed in practice by courts in bankruptcy and other insolvency contexts, even when it is not formally ordered as part of the terms of the judgment. Sign-A-Way, 12 F.Supp.2d at 160. Courts find that a setoff is justified where a plaintiff owes a debt to an insolvent party and will be forced to pay that debt without being allowed to recover a debt the insolvent party owes to the plaintiff. Id. at 161. See also FDIC v. Mademoiselle of California, 379 F.2d 660, 664 (9th Cir.1967) ("It is well settled that the insolvency of a party against whom a set-off is claimed constitutes a sufficient ground for the allowance of a set-off not otherwise available.") Thus, the need for a setoff is ever greater in this case, where Healthy Solutions has

18

no assets to satisfy any judgment that might be awarded to ITV on its claims, which is the very reason for Cappseals' reach and apply action.

Accordingly, even if this Court finds that ITV is not entitled to a setoff under § 2-717, there must still be a trial on the merits of ITV's claims against Healthy Solutions before the Court can determine whether there will be a setoff of competing judgments. Based on the fact that Healthy Solutions has no assets, this Court should not allow Cappseals to collect on a judgment against ITV on behalf of Healthy Solutions where ITV will be unable to collect on any competing judgment that it may obtain against Healthy Solutions. As a reach and apply plaintiff, Cappseals cannot be in a better position than the party through which it seeks to assert its rights, and obtain a judgment against ITV where Healthy Solutions could not. Even if Cappseals were an assignee of Healthy Solutions, which it is not, it would still stand in the shoes of Healthy Solutions and would have no greater rights against ITV than Healthy Solutions would have. Graves Equipment, Inc. v. M. DeMatteo Const. Co., 397 Mass. 110 (1986) (assignee subject to debtor's defense of set-off of damages from amount due to assignor).

Because this court should apply a setoff of any competing judgments in this case, Cappseals must wait for the entry of final judgment before determining whether there is any property of the Defendants to reach and apply, and its motion must be denied.[8]

**D.     ITV's claims Against Defendants Involve Numerous Factual Disputes That Cannot be Decided On Summary Judgment.**

ITV has asserted that the Defendants fraudulently induced ITV into entering the Distribution Agreement at issue, misrepresented material facts, breached the Distribution

---

[8] Should Cappseals argue that a separate and final judgment should enter on Healthy Solutions' counterclaim pursuant to Fed. R. Civ. P. 54(b), it will be unable to establish it is entitled to Rule 54 certification. Before it can certify a judgment as final under Rule 54(b), a court must consider several factors, including: "***the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final,***" as well as "economic and solvency considerations," which will preclude a Rule 54(b) certification in this case. New Life Baptist Church Academy v. town of East Longmeadow, 718 F.Supp. 2, 5 (D. Mass. 1988) (citing Spiegel v. The Trustees of Tufts College, 843 F.2d 38 (1st Cir. 1988).

Agreement by, *inter alia*, failing to pay ITV royalties for internet sales of Product and in product labeling.  In addition, ITV is entitled to indemnification from Healthy Solutions under the terms of the Distribution Agreement for any penalties or fines that may be assessed against ITV by the FTC or FDA as a result of Defendants' fraudulent representations about Guerrero's status as a doctor, the health claims about the Product, the scientific substantiation for such health claims, the potential harm these fraudulent representations may have on the health of consumers, or as a result of the labeling of the Product.  (Statement of Facts, ¶16.)  On April 21, 2004, ITV sent an indemnification demand to Healthy Solutions, which Healthy Solutions refused.  (Id., ¶¶24, 25.) ITV's potential legal exposure to the FTC, and potential indemnification that it will be entitled to from Defendants, far exceeds any amount that Healthy Solutions claims it is due under the Distribution Agreement.[9]  (Id., ¶19.)  See, e.g., FTC v. Febre, 128 F.3d 530, 534-535 (7th Cir. 1997).  See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 13 (1st Cir. 1987) (withholding of amounts due as a set-off is appropriate). These claims are disputed by the Defendants and involve issues of fact that cannot be determined on summary judgment.[10]   See Created Gemstones, Inc. v. Union Carbide Corp., 47 N.Y.2d 250, 255, 391 N.E.2d 987, 989 (1979) ("a buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying sales agreement."); Espinal v. Liberty Mutual Ins. Co., 47 Mass. App. Ct. 593, 598 (1999) (rejecting argument that reach and apply defendant could not raise fraud between itself and principal defendant to defeat liability).

---

[9] Cappseals dismisses ITV's claim for indemnification against Healthy Solutions, arguing that it cannot support a set-off because the FTC's lawsuit is solely related to the marketing of Supreme Greens, and ITV is not indemnified for such claims.  Contrary to Cappseals' assertion, however, the FTC's cause of action against ITV includes claims for injury to the health of consumers as a result of Defendants' representations about the Product, which fall squarely within the coverage of the indemnification clause.

[10] The existence of a claim of fraudulent inducement in connection with the Distribution Agreement distinguishes this case from the cases cited by Cappseals for the proposition that set-off is inapplicable in cases alleging goods sold and delivered.  In Dubied Machinery Co. v. Vermont Knitting Co., Inc., 739 F. Supp. 867, 871-72 (S.D.N.Y. 1990), for example, the court found that there were genuine issues of fact as to liability.  In doing so, the Court distinguished similar authority cited by the plaintiff, stating that "in none of the cases cited was the Court faced with an affirmative defense going to the viability of the contract relationship."

Cappseals attempts to argue that ITV is not entitled to a trial on the merits of its claims against Healthy Solutions by asserting that ITV's reliance on the Defendants' representations was unreasonable, misstating the facts in the summary judgment record. Contrary to Cappseals' assertion, the facts in the record establish that ITV relied on the Defendants' fraudulent representations about the Product and Guerrero at the time it entered into the Distribution Agreement and when it continued to expend money marketing the Product. The fact that ITV issued a purchase order at about the time that the FTC started its investigation of Guerrero and his claims concerning Supreme Greens is of no moment. Cappseals cannot prove on this summary judgment record that it was unreasonable as *a matter of law* for ITV to issue a purchase order under the Distribution Agreement when it had not been ordered by the FTC or the FDA to stop buying or selling the Product, when neither the FTC or the FDA had concluded that there was no scientific support for the Product, and when it was Healthy Solution's obligation under the Distribution Agreement to provide all documentary support for the Product, which support the Defendants continuously assured ITV that they possessed. (Statement of Facts, ¶¶4, 11, 17.) When it became clear that the FDA wanted ITV to take corrective action, and later that no support existed for the health claims Guerrero made about the Product, ITV stopped paying Healthy Solutions for the Product, stopped accepting shipments and instituted its own investigation of Guerrero. (Id., ¶19.)

There is also no merit to Cappseals' last ditch argument that ITV relied on the indemnification provision rather than Defendants' representations in entering into the Distribution Agreement, which is based on a single misconstrued statement of one of ITV's principals, Donald Barrett ("Barrett") in his deposition. Barrett merely testified that he believed the representations that Guerrero made during the first infomercial and that Guerrero had support for what he claimed, and he also believed that Guerrero would hold ITV harmless and indemnify ITV for the claims that he made. (Ex. 1 to Silverman Affidavit, pp. 76-77.) In any event, the

Distribution Agreement that includes the indemnification provision was not even drafted when the Defendants first made fraudulent representations to ITV in order to induce ITV into agreeing to market and distribute the Product, thereby defeating Cappseals' assertion.[11]  (Statement of Facts, ¶3.)

Cappseals cannot establish as a matter of law that ITV failed to rely on the fraudulent representations of the Defendants, or that such reliance was unreasonable, as ITV's claim requires the resolution of numerous facts that are disputed by the Defendants.  ITV has a right to a trial on all of its claims against Healthy Solutions.

## CONCLUSION

Based on the foregoing, Cappseals' motion for summary judgment against ITV must be denied.

Respectfully submitted,
ITV DIRECT, INC.
By their attorney(s),

 /s/ Susan Gelwick
Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Dated:  June 13, 2005
Telecopier:    (617) 946-4801

---

[11] Contrary to ITV's unsupported assertion, ITV did not ignore the FTC's warnings regarding the Product.  Rather, as Barrett testified, another employee at ITV, Eileen Barrett, was responsible for dealing with the FTC and FDA. Once she was informed of their concerns, she immediately requested from Defendants all of the clinical and documentary support for Supreme Greens.  (Barrett Dep., pp. 27, 76-79.)  It was not until months later that ITV discovered Guerrero's credentials were fraudulent and that there was no clinical support for the health claims he made about Supreme Greens, and ITV is entitled to indemnification from the Defendants as a result of this fraud.