UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| ITV DIRECT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| HEALTHY SOLUTIONS, LLC, ET. AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| CAPPSEALS, INC., | ) |
| | ) |
| Plaintiff-in-Intervention, | ) C. A. No. 04-CV10421-JLT |
| | ) |
| v. | ) |
| | ) |
| HEALTHY SOLUTIONS, LLC, d/b/a | ) |
| DIRECT BUSINESS CONCEPTS; ITV | ) |
| DIRECT, INC. AND DIRECT | ) |
| FULFILLMENT, LLC. | ) |
| | ) |
| Intervenor-Defendants. | ) |
| | ) |

**CAPPSEALS, INC.'S REPLY TO ITV'S OPPOSITION TO CAPPSEAL'S
MOTION FOR SUMMARY JUDGMENT**

Cappseals, Inc. ("Cappseals") respectfully submits this reply to ITV Direct, Inc.'s ("ITV") Opposition to Cappseal's Motion for Summary Judgment ("Opposition") in order to address ITV's refusal to acknowledge the applicable Massachusetts law controlling this dispute and, to distinguish the foreign holdings cited by ITV from the unequivocal law in this jurisdiction.[1]

ITV wishes the Court to believe the purchase order it issued ("Purchase Order 1101") to Healthy Solutions, LLC ("Healthy Solutions") incorporated the terms of a separate distribution

---

[1] This Reply is filed pursuant to and in accordance with the briefing schedule previously endorsed by the Court (Docket No. 115).

agreement (the "Distribution Agreement") between the parties notwithstanding the fact that Purchase Order 1101 does not contain any reference to the Distribution Agreement. However, Massachusetts law is clear, even when two contracts have a strong and logical relationship, if incorporation is to occur, the subsequent writing *must* contain specific language referencing the terms to be incorporated from the previously executed document.

With regard to its alleged right to set-off, ITV tries to introduce the foreign concept of "inextricably interwoven" based on decisions out of New York, Louisiana, and Oregon to overcome the fact that Purchase Order 1101 was never combined with the Distribution Agreement to form a single contract. However, this Court and the First Circuit have consistently interpreted Massachusetts law recognizing a controlling presumption that distribution agreements are separate contracts from purchase orders for the purposes of set-off. Accordingly, ITV's obligation to pay for the product pursuant to Purchase Order 1101 is unrelated to claims ITV may have arising from the separate Distribution Agreement.

Essentially, ITV has asked this Court to follow the law of other jurisdictions – in contravention of Massachusetts law – but without coming out and saying so. Beyond pointing out this fundamental and fatal flaw in ITV's Opposition, this Reply also addresses ITV's failure to properly notice its intent to seek set-off, Cappseals' right to judgment, and, the deficiencies of ITV's fraud claims as a matter of law. It is for these reasons and those articulated in more detail within Cappseals' underlying Memorandum of Law (Docket No. 121) that Cappseals is entitled to Judgment on its Reach and Apply claim against ITV.

## ARGUMENT

**A.    PURCHASE ORDER 1101 IS A SEPARATE CONTRACT FROM THE DISTRIBUTION AGREEMENT.**

The linchpin of ITV's Opposition is its belief that its obligation to pay for the product shipped by Cappseals flows from the Distribution Agreement because Purchase Order 1101 was

combined with the Distribution Agreement to form a single integrated contract.  Based on this flawed assumption, ITV believes that its counterclaims – that do arise from the Distribution Agreement – can be used to offset the $1.8 million dollars it owes for the product.  However, ITV's assertion that the Distribution Agreement and Purchase Order 1101 were one contract is not based on any legal theory recognized in Massachusetts.[2]  This is because, under Massachusetts law, Purchase Order 1101 (issued eight months after the Distribution Agreement) constituted an individual contract that *never* incorporated the terms of the Distribution Agreement when it requested shipment of the product at a specified price, in a previously unspecified quantity, and in a form that deviated from the Distribution Agreement.

If it was ITV's intention to incorporate the terms of the Distribution within Purchase Order 1101 it was required to include an appropriate cross-reference within Purchase Order 1101 expressing its intentions.  *Chicopee Concrete Service, Inc. v. Hart Engineering*, 398 Mass. 476, 478 (1986) (terms of prime contract were *not* incorporated within purchase order because subsequent purchase order failed to contain necessary cross-reference).  ITV's *intentions* must be determined from the plain language of Purchase Order 1101 and a court will only consider extrinsic evidence (such as the Distribution Agreement) to discern intent if a term of Purchase Order 1101 is ambiguous.  *In re Cambridge Biotech Corp.*, 186 F.3d 1356 (D. Mass. 1999); *see also ERHoldings, Inc. v. Norton Co.*, 735 F. Supp. 1094 (D. Mass. 1990) (Massachusetts law enforces express terms of a contract in the absence of an ambiguity); *Coll v. PB Diagnostic Systems*, 50 F.3d 1115 (1st Cir. 1995)(held that under Massachusetts law, parties are bound by the plain terms of their contract); *Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 592 N.E.2d 1289 (1992) (unambiguous agreement must be enforced according to its terms).

---

[2]  The Distribution Agreement was previously submitted as Exhibit A to Robert Maihos' April 30, 2004 Affidavit (Docket No. 26).  The Distribution Agreement is attached hereto as **Exhibit 1** for the Court's convenience.

### 1. Purchase Order 1101 Did Not Contain Any Language Necessary To Incorporate The Terms Of The Distribution Agreement.

The Massachusetts Supreme Judicial Court has held that even in the context of the strong relationship between a general contract and a subcontract, there still must be a provision in the subsequent document clearly stating what terms are being extracted from a prior writing for "incorporation" to occur. *Chicopee*, 398 Mass. at 478. Parties cannot prospectively incorporate provisions in an agreement that does not yet exist. *Id*. at 479. Rather, an appropriate cross reference is necessary in the subsequent writing to accomplish incorporation. *Id*. While there is no "magic language" under Massachusetts law necessary to incorporate terms from a prior writing, words like "pursuant to" or "in accordance with" are the type of plain language necessary to incorporate the terms of a prior writing. *United States v. Boston Scientific, 167 F.Supp.2d 424, 431-32 (D. Mass. 2001)*. It is clear ITV understood this concept and knew how to properly incorporate terms because in the Distribution Agreement it agreed to language that had to be printed on a purchase order to accomplish incorporation:

> During the term of this Agreement, Distributor shall issue purchase orders to Manufacturer for the Products, with purchase orders shall state:
>
> "This purchase order is placed under the terms and conditions of the Distributor Agreement between Distributor and Manufacturer, dated March __, 2003".

Distribution Agreement at 14.

*Lowney v. Genrad, Inc.,* 925 F. Supp. 40 (D. Mass. 1995) is also instructive in this regard. The *Lowney* Court granted *summary judgment* when the agreement at issue did not expressly incorporate the extraneous document as alleged by one party. *Id*. at 47. The Court found particularly compelling the fact that the parties had demonstrated its ability to properly incorporate another document elsewhere within their agreement using the phrase "incorporated herein by reference." *Id*. at 47.

However, conspicuously absent from Purchase Order 1101 is any language that could even purport to "incorporate" the terms of the Distribution Agreement including the terms the parties agreed to use if they wanted to accomplish incorporation. Therefore, ITV had the knowledge and understanding to properly "incorporate" but issued Purchase Order 1101 without doing so. These facts present the type of compelling circumstances that warrant a summary judgment finding that the terms of the Distribution Agreement were never incorporated within Purchase Order 1101. *Lowney*, 825 F. Supp. at 47.

As recently as July of this year, the First Circuit analyzed the doctrine of incorporation by reference and endorsed the same concepts that Cappseals articulates herein. See *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 379 F.3d 1, 10 (1st Cir. 2004) ((subsequent writing must contain language evidencing intent to incorporate if terms of prior agreements are to be incorporated). ITV's failure to cite and/or explain why its position is inconsistent with *Chicopee*, *Lowney, Boston Scientific* and *Fit Tech* is a prime examples of ITV ignoring applicable case law in Massachusetts that is controlling on this issue but clearly inconsistent with ITV's position.

### 2.    ITV Citations to Superior Court Cases Do Not Support its Position.

ITV attempts to rely on three Superior Court decisions (*Prescott, Inc. v. S&H Contracting Co., Inc.*, 2000 WL 781585 (Mass. Super. April 13, 2000); *S&F Concrete Contractors, Inc. v. Strickland Systems, Inc.*, 1995 WL 808874 (Mass. Super. April 25, 1995); and, *Coral Systems, Inc. v. Lucent Technologies, Inc.*, 2005 WL 705953 (Mass. Super. Feb. 25, 2005)) to support its weak incorporation argument. Opposition at 8 – 10. Each of these decisions are either easily distinguished from the appeal cases Cappseals has relied on, or, inapplicable to the present analysis.

In *Prescott* the court never analyzed the incorporation by reference issue nor did it discuss whether the purchase orders at issue contained any cross reference to the parties' general

agreement. Instead, the court's analysis supports Cappseals' argument (detailed in section B, infra) when it held that a buyer was *not* entitled to set-off because: (1) it accepted goods from the supplier, (2) never revoked its acceptance, and (3) despite conversations regarding problems, the buyer only began making financial claims more than one month after receiving the invoice at issue. *Id*. at 5.

Second, ITV cites *S&F Concrete* in support of ITV's contention that, despite the absence of any language in Purchase Order 1101 referencing the Distribution Agreement, its *intention* was to include terms from the Distribution Agreement. This position flies in the face of well settled Massachusetts law on contract interpretation that prohibits the use of extrinsic evidence to discern intent unless an ambiguity exists. See *In re Cambridge Biotech Corp.*, 186 F.3d 1356 (D. Mass. 1999).[3]

Finally, ITV cites *Coral Systems* to support its assertion that Purchase Order 1101 and the Distribution Agreement were one integrated contract. While the *Coral Systems* decision quotes language from a general contract that references future purchase orders, the Court *never* performs any analysis with regard to incorporation. In fact, the cited provision requiring the cross reference was nothing more than gratuitous dicta and completely irrelevant to the disputed issues discussed in the case. Even if the *Coral* court performed an "incorporation" analysis (as implied by ITV) it would have been inapplicable to this case because, in *Coral Systems* New Jersey law controlled the interpretation of the agreement at issue. *Id*. at 3.[4]

---

[3] Interpretation of an unambiguous contract is a question of law left to the Court. *Lowney v. Genrad, Inc.*, 925 F.Supp. at 44. Furthermore, it is well settled in Massachusetts that where the terms of a written document are clear, unequivocal, and unambiguous, evidence may not be received to change its content or show a different agreement **or to create an ambiguity**. *Johnson v. Enterprise Rent-a-Car Co. of Boston, Inc.*, 2001 WL 599873, 2 (Mass. App. Div. 2001) (quoting *Jancsy v. Hy-Land Realty Inc.*, 58 Mass. App. Dec. 152, 157 (1976)).

[4] The facts of this case are easily distinguishable from those situations where multiple writings are concurrently executed and thus are treated as one agreement between two parties. See *Donoghue v. IBC USA (Publications), Inc.*, 70 F.3d 206, 212 (1st Circuit 1995). ITV confuses this concept with the doctrine of

In short, ITV wishes to have Purchase Order 1101 incorporate the terms of the Distribution Agreement. However, Purchase Order 1101 did not discuss or even mention the Distribution Agreement, nor did it contain the language ITV agreed to use in order to accomplish incorporation. Under the present circumstances, Purchase Order 1101 did not incorporate any terms of the Distribution Agreement and it remained a separate and distinct contract.[5]

**B.    MASSACHUSETTS LAW PRESUMES PURCHASE ORDERS AND DISTRIBUTION AGREEMENTS ARE SEPARATE CONTRACTS FOR PURPOSES OF SET-OFF.[6]**

In a futile attempt to find support for its setoff argument, ITV has decided to ignore the Supreme Judicial Court's decision in *Travenol Laboratories, Inc. v. Zotal, Ltd*, 394 Mass. 95, 97-98 (1985) and this Court's decision in *C.R. Bard, Inc. v. Medical Electronics Corp.*, 529 F. Supp. 1382 (D. Mass. 1982) and instead cites to cases in New York, Louisiana, and Oregon. *Travenol* and *C.R. Bard* both stand for the proposition that purchase orders are presumptively separate contracts from distribution agreements and claims for setoff must go to essence of the purchase orders from which the sales transaction is based.

---

incorporation by reference when it cites *Hackel v. FDIC*, 858 F.Supp. 289, 291-292 (D. Mass. 1994)(note and guaranty simultaneously executed with numerous cross references within the documents).

[5]    ITV's Opposition also ignores the fact that terms of the Distribution Agreement are inconsistent with the terms of Purchase Order 1101 – another fact which courts have found is strong evidence that incorporation was not intended. *See Fit Tech, Inc.*, 374 F.3d at 10; See also *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 665 (7th Cir. 2002). For example, Purchase Order 1101 allowed for 30 day terms while the Distribution Agreement only provided ITV 10 days to inspect and reject for any issue – including packaging. Distribution Agreement at 14(b). Common sense, and the reasoning of the First Circuit, both dictate that these terms can not co-exist in one document and the parties never intended for Purchase Order 1101 to incorporate the terms of the Distribution Agreement.

[6]    In the present case, the Distribution Agreement states it is to be construed in accordance with Massachusetts law. Distribution Agreement ¶33. Because the parties have expressly provided that Massachusetts law will control, then Massachusetts law applies. *Hackel v. F.D.I.C.*, 858 F.Supp. 289, 291, n. 6 (D. Mass. 1994); See also *C.R. Bard, Inc. v. Medical Electronics Corp.*, 529 F. Supp. 1382, 1386 n.2 (D. Mass. 1982) (the court applied Massachusetts law despite the fact that California law was designated in the distribution agreement because the parties cited no California cases in their briefs and instead relied on the law of the forum).

In *C.R. Bard*, the court analyzed whether a buyer was entitled to offset his alleged claims arising from a distribution agreement against the amount he owed the seller for goods sold and delivered. See *C.R. Bard*, 529 F. Supp. at 1382. The court granted summary judgment to the seller, holding that:

> damages are deductible only against the price still due *under the same contract.* Moreover, we believe that in order for a buyer to invoke § 2-717, the asserted breach must go *to the essence of the transaction* under which the seller seeks to recover his price.
>
> ?   ?   ?
>
> The result of this rule is that a "buyer should not be able to…delay payment for goods accepted.

*C.R. Bard* at 1387. (emphasis added).

More recently, in *Travenol* the SJC was crystal clear in its interpretation of § 2-717 when it stated:

> it is well established that a buyer's obligation to pay for goods tendered and accepted *does not arise under the 'same contract' as the alleged breach of an exclusive dealing or distributorship arrangement* by the seller.

*Travenol*, 394 Mass. at 98. (original quotations omitted) (emphasis added) (citing *Hellendall Distribs., Inc. v. S.B. Thomas, Inc.*, 559 F. Supp. 573, 574-575 (E.D.Pa. 1983) & *C.R. Bard*, 529 F. Supp. at 1387). The buyer in *Travenol* challenged the application of Massachusetts law to the set-off issue providing the SJC an opportunity to distinguish Massachusetts law from that of foreign jurisdictions:

> we have no difficulty concluding that *the Massachusetts rule is the better rule.* It furthers the values of certainty and predictability, and is thus consistent with the public interest, that a seller be entitled to the price of goods accepted, regardless of the buyer's claim under some remote transaction.

*Travenol* at 100 (emphasis added).

In *Travenol* the SJC adopted the restrictive interpretation of §2-717 established by the court in *C.R. Bard*. This "restrictive interpretation" starts with the presumption that purchase orders and distribution agreements are not the same contract for § 2-717 purposes. See *Columbia Vital Sys., Inc. v. Infusaid, Inc*,. 1992 WL193551 *4 (N.D. Ill.) (also adopting the "*restrictive scope of §2-717 as construed by the court in C.R. Bard*") (emphasis added). In order to overcome this presumption, the parties must affirmatively show the court that the two documents were incorporated which ITV has been unable to accomplish. See *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 706 (7th Cir. 1995)(distribution agreements and the purchase orders that arise there from are not the same contract for purposes of set-off – parties have a right to contract around this rule by making distribution agreement part of every purchase order).

Instead of recognizing Massachusetts law as established by *C.R. Bard* and *Travenol*, ITV argues that its claims arising from the Distribution Agreement are "inextricably interwoven" with Healthy Solutions' claim for goods sold and delivered pursuant to Purchase Order 1101. Opposition at 12. While impressive sounding, the doctrine of "inextricably interwoven" is not recognized in Massachusetts, and ITV's reliance on *RPJ Sportswear, Inc. v. XyloTex, LTD,* 681 F. Supp. 225 (S.D.N.Y. 1988) instead of *C.R. Bard* or *Travenol*, is misplaced.[7]

In fact, all of the cases that ITV cites in support of its contention that the purchase orders are "inextricably interwoven," and thus entitle ITV to setoff, are from other jurisdictions that also deviate from the standards established by *Travenol* and *C.R. Bard.*. Opposition at 12-15.[8] Under

---

[7] Neither the Court of Appeals nor any District Court in the circuit has ever relied on the liberal standard adopted in *RPJ Sportswear*, notwithstanding the fact that *RPJ Sportswear* was decided four years after *C.R. Bard*.

[8] ITV cites to *Pacific Western Resin Co. v. Condux Pipe Svs., Inc*., 771 F.Supp. 313 (D.Ore. 1991), *RPJ Sportswear Sportswear, Inc. v. XyloTex, LTD*., 681 F.Supp. 225 (S.D. N.Y. 1988), *Purofied Down Prod. Corp. v. Royal Down Prod. , Inc*., 87 F.R. D. 685 (W.D. Mich. 1980), *American Elec. Power Co. v. Westinghouse Elec. Corp*., 418 F.Supp. 435 (S.D.N.Y. 1976). Interestingly, ITV claims that the court in *Pacific Western* "rejected the very authorities cited by Cappseals in this case." Opposition at 12. In fact, the *Pacific Western* court did not reject *C.S. Bard*'s holding.

*C.R. Bard* and *Travenol*, Purchase Order 110 and the Distribution Agreement are different contracts as a matter of law and therefore no offset is available.[9]  Accordingly, ITV's set-off argument fails because none of ITV's claims go to the essence of the sales transactions as required under Massachusetts law.[10]

### C.     ITV FAILED TO NOTICE ITS INTENT TO CLAIM SET-OFF.

As Cappseals has previously detailed, proper notice to claim set-off is a pre-requisite to ITV making many of the arguments detailed within its Opposition.  Cappseals' Memorandum at 13.[11]  ITV asserts that its notice of "stop payment" on February 13, 2004 (the "Stop Payment") and the filing of the present action against Healthy Solutions should serve as sufficient notice to seek set-off because both actions took place within 30 days of the final invoice sent by Healthy Solutions.  Opposition at 15.  Surprisingly, ITV cites *M.K. Associates. v. Stowell Products, Inc.,* 697 F. Supp. 20, 21 (D. Me. 1988) to support its position (Opposition at 15) despite the fact that the buyer in *M.K. Associates* waived its set-off claims when it failed to give proper notice of set-off before the seller sued to recover his price.  *Id*.

In *M.K. Associates* the seller informed the buyer of defects and even attempted to cancel pending orders.  *Id*. at 21.  However, the buyer was precluded from claiming set-off in the

---

[9] Whether purchase orders are contracts separate from the distribution agreement is a question of law not fact.  *Carlisle Corp. v. Uresco Constr. Materials, Inc*., 823 F. Supp. 271, 274 (M.D. Pa. 1993) (citing *Hellendall Distribs., Inc. v. S.B. Thomas, Inc*., 559 F. Supp. 573, 574 (E.D.Pa. 1983) and *Travenol Laboratories, Inc. v. Zotal, Ltd*, 394 Mass. 95, 97-98 (1985)).

[10] ITV's attempt to rely on *Gutor International AG v. Raymond Packer Co.,* 493 F.2d 938 (1st Cir. 1974) similarly fails to save its set-off argument.  Eight years after *Gutor,* the *C.R. Bard* Court interpreted *Gutor* when holding:

> Contrary to the defendant's argument, the First Circuit did not recognize the right of a buyer to offset damages stemming from termination of a distributorship.

*C.R. Bard* at 1388.

[11] A buyer's failure to provide notice to the seller, within a reasonable time after he discovers or should have discovered any breach, will effectively bar the buyer from exercising his rights under § 2-717.  *See* G.L. c. 106, §§ 2-717 and 2-607(3)(a).

resulting suit brought by the seller to recover his price because, during the communications between the parties, the buyer never claimed a "breach of contract" after accepting the goods and using them in its business. *Id*. Notice of breach and an intention to "deduct" as essential to any §2-717 notice:

> The requirement that a commercial buyer's notice must include an indication that the buyer considers the contract breached is consistent with the policies behind the notice requirement, which include ensuring finality for transactions and allowing the seller to prepare for negotiation and settlement. In the conversation with [seller], however, [buyer] did not clearly let [seller] know that [buyer] considered the contract breached.

*Id*. at 21.

ITV's pre-litigation communications parroted those of the buyers in *M.K. Associates* when it failed to inform Healthy Solutions that it failed to claim a "breach" of the parties' agreement. The Stop Payment states:

> As you know, Wayne Callahan informed you that a stop check order was issued on our check #5060 and that in addition to the suspension of product shipments to Direct Marketing Concepts, Inc. all invoice payments to Direct Business Concepts, Inc. are suspended until the outcome of FDA's inquiry
>
> Direct Marketing Concepts' intention is to keep the lines of communication open between our companies until this issue is resolved. As soon as it is administratively feasible we will begin discussions regarding our continued business relationship.

Eileen Barrett Affidavit, Ex. A (Docket No. 127).

As a matter of law, ITV's Stop Payment failed to comply with the requirements of §2-717. Accordingly, ITV is left with the filing of the present litigation as its potential notice – another act that the Court found deficient in M.K. Associates. Id. at 22. Even if the filing of this action could serve as proper notice, it was filed months after Healthy Solutions issued the first 5

invoices pursuant to Purchase Order 1101; those 5 invoices total more than $1.5 million and are still unpaid. (Invoices Nos. 21 - 25) See Joint Stipulations at ¶¶ 5 – 17.[12]

For the purposes of this summary judgment proceeding, Cappseals is willing to concede that ITV may have noticed its intention to use its claims under the Distribution Agreement to reduce the amount it owed under the final invoice of $318,240 ("Invoice No. 26").[13] However, notice under §2-717 does not mean that ITV had a right to claim set-off. Notice was simply a pre-requisite to ITV asserting a right to set-off which assertion still fails because ITV's claims fail to go to the essence of Purchase Order 1101.

**D.   CAPPSEALS IS ENTITLED TO FINAL JUDGMENT UNDER F.R.C.P. 54.**

As it did in *C.R. Bard*, this Court should enter final judgment for Cappseals pursuant to Fed. R. Civ. P. 54(b).[14] If the Court finds that there is "no just reason for delay" and that an

---

[12] ITV also relies on the 30 day reference within Purchase Order 1101 to support its argument despite the fact that this provision explicitly contradicts the 10 day notice period in the distribution agreement:

> Inspection and acceptance of the Products shall take place at destination. Distributor may reject the Products that fail to meet the Manufacturer's formulation, or are damaged or not packaged in accordance with the terms hereof or defective in any other manner within ten (10) days after receipt. Distributor may, at its option, return rejected Products to Manufacturer for replacement at no additional expense to Distributor and Manufacturer shall pay all freight charges incurred in returning the defective Product and redelivering it to Distributor.

Distribution Agreement at 14.

[13]   Cappseals only seeks to reach and apply amounts ITV owes Healthy Solutions to satisfy Cappseals' judgment of $1,013,791.09 plus post judgment interest (Docket No. 91). Consequently, even without Invoice No. 26, ITV would still owe Healthy Solutions an amount that exceeds the debt that Cappseals seeks to reach and apply in satisfaction of its claims.

[14]   See Fed. R. Civ. P. 54(b):

**(b) Judgment Upon Multiple Claims or Involving Multiple Parties.**

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the

-12-

appellate court would not have to "visit the same issue twice," final judgment under Rule 54(b) is appropriate. See *C.R. Bard* at 1388 (granting final judgment under Rule 54(b) because, among other things, the issues raised by the seller were independent of the buyer's claims under the distribution agreement); see also *Carlisle Corp*, 823 F. Supp. at 276 (granting final judgment under 54(b) since the remaining claims were related to a separate contract there was "no chance the Court of Appeals would be required to visit the same issue twice.")

Similarly, in another case strangely cited by ITV, *New Baptist Church Academy v. Town of East Longmeadow*, 718 F.Supp. 2, 5 (D. Mass. 1988), this Court also entered final judgment pursuant to Rule 54(b) when it determined the adjudicated claims were distinct from those remaining, and, "there [was] no claim or counterclaim which could result in setoff against the judgment sought to be made final." *Id*. at 5. The present situation is identical. Purchase Order 1101 is a separate contract from the Distribution Agreement and, as a matter of law, the results of ITV's claims arising from the Distribution Agreement can not be used to offset the amounts owed under Purchase Order 1101. Accordingly, Cappseals should not have to participate in a future trial solely relating to claims that can not impact its final judgment.

**E.    ITV KNOWINGLY MARKETED THE PRODUCT USING DECEPTIVE TACTICS.[15]**

ITV argues that existing factual disputes surrounding its fraud claim prevent summary judgment. However, ITV has not disputed a single factual assertion within Cappseals' Rule 56.1 statement. Accordingly, ITV's fraud claims fail because the timing of ITV's conduct precludes

---

order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

[15]    As previously articulated, ITV's claims of fraud arise from the Distribution Agreement and do not go to the essence of the sales transactions under Purchase Order 1101.

any reasonable reliance that is essential to its cause of action.  Cappseals' Memorandum at 15.  In an effort to avoid the fatal aspect of its claims, ITV makes the following statement:

> The fact that ITV issued a purchase order at about the time that the FTC started its investigation of Guerrero and his claims concerning Supreme Greens is of no moment.

Opposition at 21.

This statement goes beyond reasonable advocacy.  As highlighted in Cappseals' underlying memorandum, the FTC's investigation of *ITV* began in June, 2003.  In August, 2003 the FTC focused on Supreme Greens, and, after months of conversations with ITV representatives, on October 3, 2003 "the FTC claimed that it did not believe that there existed competent and reliable scientific evidence for the claims in the infomercial." CS, ¶ 8 (Barrett Aff., ¶ 18) & CS, ¶ 9 (Young Aff., ¶ 7).  On November 21, 2003, more than a month after the FTC's explicit warnings,  ITV ignored the FTC and issued Purchase Order 1101.  Despite ITV's spin, the undisputed time-line of events demonstrates that ITV is no "innocent victim."  On the contrary, the facts demonstrate the opposite: ITV issued Purchase Order 1101 notwithstanding the known potential ramifications of its conduct.

If ITV's malfeasance and the deficiency of its fraud claims were not clear already, they are further supported by recent filings by the Federal Trade Commission ("FTC") in a separate action currently pending before Judge O'Toole (Federal Trade Commission (hereinafter the "FTC") (*FTC vs. Direct Marketing Concepts, Inc.*, Civil Action No. 04-11136-GAO (the "FTC Action")).  Through its recent motion the FTC has requested the Court appoint a receiver to operate ITV because its dishonorable business practices that form the foundation for the FTC's action have continued and expanded since the FTC Action was initiated.[16]  As detailed within the

---

[16]   A copy of the FTC's May 25, 2005 Motion (the "FTC's Motion") is attached as Exhibit 2.  The FTC Motion is supported by detailed factual affidavits that were also filed in

FTC's Motion, its on-going investigation has revealed that more than a year after the FTC Action was filed ITV has continued to disseminate the exact same questionable claims it now attempts to blame on Alex Guerero and Healthy Solutions. In an infomercial currently being aired by ITV to promote Sea Vegg, a dietary supplement containing sea vegetation, the segment begins with Donald Barrett's introduction of his "guest":

> This half an hour, again, we're going to be talking about health. If you're out there and you suffer from cancer, arthritis, diabetes, fibromyalgia, really any chronic degenerative disease, or if you don't want to get a chronic degenerative disease, this is a show you're not going to want to miss. On our show today we have Scott Kennedy, who's a firm believer that most chronic degenerative diseases can be prevented and reversed from nutrients that come from the ocean. We have a very controversial show, so stay with us.

Mr. Barrett's claims in these opening lines are identical to the questionable statement he made in the opening of the Supreme Greens infomercial:

> Dr. Guerrero claims that most chronic degenerative diseases – such as cancer, arthritis, diabetes, even the number one killer out there, heart disease – can and are being cured and there are natural healing techniques being suppressed in this country. We have a very controversial show, so stay with us.

FTC's Motion at 6.

ITV has consistently evidenced a pattern and practice of making questionable claims on the hope that it can either evade liability or blame others for its knowing conduct. There is no factual dispute to litigate in this case. The FTC's warnings – and common sense - prevented ITV from reasonably believing Supreme Greens cured cancer when ITV issued Purchase Order 1101.

## CONCLUSION

For the reasons sets forth herein Cappseals' Motion for Summary Judgment should be GRANTED.

        Cappseals, Inc.
        By its attorneys,


        /s/ Scott A. Silverman
        Peter Antonelli, BBO # 661526
        pantonelli@ghlaw.com
        Scott A. Silverman, BBO # 638087
        ssilverman@ghlaw.com
        Daniel J. Kelly, BBO # 553926
        dkelly@ghlaw.com
        Gadsby Hannah LLP
        225 Franklin Street
        Boston, MA  02110
        (617) 345-7000

-17-

## CERTIFICATE OF SERVICE

      I hereby certify that true and accurate copies of the foregoing <u>Cappseals, Inc.'s Reply Memorandum</u> was served on the foregoing attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

<u>Via electronic notification</u>:

Peter S. Brooks        pbrooks@seyfarth.com

Susan W. Gelwick        sgelwick@seyfarth.com

Dustin F. Hecker        dhecker@pbl.com

Christopher F. Robertson        crobertson@seyfarth.com

                                              /s/ Scott A. Silverman
                                              Daniel J. Kelly BBO# 553926
                                              dkelly@ghlaw.com
                                              Scott A. Silverman, BBO #638087
                                              ssilverman@ghlaw.com
                                              Gadsby Hannah LLP
                                              225 Franklin Street
                                              Boston, MA 02110
DATED: June 17, 2005                     (617) 345-7000

B0418207v