**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ITV DIRECT, INC.,<br>　　　　　Plaintiff,<br><br>v.<br><br>HEALTHY SOLUTIONS, LLC, et al.,<br>　　　　　Defendants.<br><br>RELATED CASES | )<br>)<br>)<br>)<br>) CIVIL ACTION NO. 04-CV-10421-JLT<br>)<br>)<br>)<br>)<br>) |

**ITV DIRECT'S SURREPLY TO CAPPSEALS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, ITV Direct, Inc. ("ITV" or "Plaintiff"), submits this surreply to the Plaintiff-in-Intervenor Cappseal, Inc.'s ("Cappseals") Motion for Summary Judgment. Despite Cappseals' attempts to ignore the express terms of the Distribution Agreement and distinguish the case law cited by ITV, a reading of the terms of the agreement and the relevant case law establishes that the Distribution Agreement effectively incorporated its terms and conditions into each purchase order and that the parties intended that the documents operate as one contract. Moreover, Cappseals fails to challenge the substantial body of First Circuit case law establishing that, even in the absence of a set-off under § 2-717 of the U.C.C., ITV's claims against Healthy Solutions, if reduced to a judgment, will setoff any judgment obtained by Healthy Solutions on its counterclaim. Accordingly, Cappseals' reach and apply claim cannot be decided until there is a trial on the merits of ITV's claims against Healthy Solutions.

**I.　　LEGAL ARGUMENT**

**A.　　The Distribution Agreement And Purchase Orders Were One Contract.**

Cappseals can not avoid the fact that the Distribution Agreement executed between ITV and Healthy Solutions expressly provided that all of its terms and conditions would be

incorporated into each of the purchase orders that were contemplated by, and were issued pursuant to, the Distribution Agreement. The terms of the Distribution Agreement were negotiated by the parties, and the agreement was reviewed by the parties before it was executed. (ITV's Statement of Facts, ¶5.) These terms included, among others, the identity and price of goods, the rights and duties of the parties with respect to the purchase orders, all of the terms of sale and of payment, shipping and packaging terms and product warranties. (See Distribution Agreement, pp. 1, 3-6.) Thus, it was the parties' intention, as expressed in the agreement itself, that the Distribution Agreement would govern the relationship between the parties and that each purchase order ITV issued would incorporate all of its terms and conditions. The parties demonstrated their intention to be bound to those terms by signing the Distribution Agreement, creating a binding contract. See Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000)("[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.").

     Not one of the cases cited by Cappseals involves a contract that *expressly* provides that all of its terms and conditions are to be incorporated into each of the purchase orders to be executed pursuant to the contract, and therefore are inapposite to this case. For example, Cappseals relies heavily on the case of Chicopee Concrete Service, Inc. v. Hart Engineering Co., 398 Mass. 476 (1986), which, contrary to Cappseals' assertion, does *not* stand for the proposition that parties cannot prospectively incorporate provisions into an agreement that does not yet exist. In fact, the court did not even address that issue or consider the effect of an express incorporation clause in a contract on further purchase orders, such as in the parties' Distribution Agreement here. (Reply at 4.)

Rather, in <u>Chicopee</u>, the defendant general contractor tried to incorporate certain terms of its general contract with the town of Holyoke into a subcontract that the defendant entered into with Chicopee for the supply of concrete, but it failed to include any general reference to the prime contract in the subcontract.[1]  Unlike in this case, the parties to the general contract were not the same as the parties to the subcontract, and there was no evidence the subcontractor knew of, or had notice of, the terms of the general contract that the defendant sought to enforce against the subcontractor.  <u>Id.</u>, 398 Mass. at 122.  In fact, the <u>Chicopee</u> court noted that had the defendant presented record support for its position that the subcontractor knew of, or had notice of, the terms and conditions of the general contract before it entered into the subcontract and was thus bound by the terms of the general contract, the defendant could have defeated summary judgment on the plaintiff's breach of contract claim.  <u>Id</u>. at 479.

Here, there is no concern about notice of the contract terms, as there is no question that Healthy Solutions had knowledge of, or was at least on notice of, the provision in the Distribution Agreement that expressly incorporated all of its terms and conditions into each of the parties' subsequent purchase orders, and it is bound by such terms.  <u>See Id</u>. at 479.

Likewise, the other case law cited by Cappseals on the issue of "incorporation by reference," do not involve contracts under the U.C.C., let alone contracts that contain an express incorporation clause stating that the terms and conditions of the agreement are to be incorporated into each purchase order issued under that agreement.  For example, in <u>Lowney v. Genrad, Inc.</u>, 925 F.Supp. 40 (D. Mass. 1995), the defendant, plaintiff's former employer, agreed to pay the plaintiff an additional monthly sum of money as a retirement benefit, so that the plaintiff would be paid substantially the same monthly amount that was paid under the employer's voluntary

---

[1]  There is no indication in the decision that the general contract expressly provided that its terms would be incorporated into each subcontract, and the court presumably would have addressed such a provision had it existed.

3

early retirement program. The plaintiff claimed that his agreement with the defendant created a new and independent ERISA plan, or that it incorporated the complex administrative scheme of the employer's existing ERISA plan for the entire company. The Court rejected both arguments, finding that the agreement did not create an ERISA plan, and that it did not incorporate the employer's ERISA Plan, where there was no provision expressly incorporating the Plan, and the Plan did not refer to the plaintiff's agreement. Id. at 47. See also Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1 (1st Cir. 2004) (employment agreement and asset purchase agreement that were executed together did not expressly incorporate the other, dealt with different aspects of the sale, and clauses cannot "be plucked at random from one agreement and inserted into the other."). As the First Circuit stated in Fit Tech, Inc., "[t]he contract must show an intent to incorporate the other document and make it part of the contract itself," which is exactly what the parties' Distribution Agreement did in this case. Id., at 10.[2] Aside from Cappseals' rhetoric, none of the "controlling" Massachusetts case law cited by Cappseals holds that a contract cannot prospectively incorporate its terms into the purchase orders that were contemplated by, and issued pursuant to, the contract.

Rather, as argued in ITV's Opposition, Massachusetts courts have enforced a similar express incorporation clause in a distribution agreement that incorporated its terms and conditions into subsequent purchase orders. Everett J. Prescott, Inc. v. S&H Contracting Co., Inc., 2000 WL 781585 (Mass. Super. April 13, 2000.) (Defendant's acceptance of contract included acceptance of its term that each purchase order was subject to contract's terms and

---

[2]  Cappseals also cites the case of U.S. v. Boston Scientific Corp., 1267 F.Supp. 2d 424, 431 (D. Mass. 2001), which involved the issue of whether a licensing agreement between the defendant and an unrelated party were incorporated into an FTC consent decree. The court found that the licensing agreement was incorporated, where language indicated the parties' intent to so incorporate. Id. at 432. That case did not involve a distributor agreement governed by the U.C.C., and did not even discuss whether a contract can prospectively incorporate its terms into future purchase orders, as the Distribution Agreement here.

4

conditions.)  The Prescott case is consistent with a line of Massachusetts cases that hold that, if the parties' intent is clearly established in the contract, a contract can incorporate laws that did not exist when it was executed.  According to such cases, laws that are enacted after the execution of an agreement can be considered part of the agreement if its provisions "clearly establish that the parties intended to incorporate subsequent enactments into their agreement." Atlas Truck Corp. v. Crosby, 41 Mass. App. Ct. 429, 432 (1996) (release incorporated law enacted after release was executed) (citing Arthur D. Little, Inc. v. Commissioner of Healty & Hosps. of Cambridge, 395 Mass. 535, 551, n. 1 (1985); see also Polaroid Corp. v. Rollins Envtl. Servs (NJ), Inc., 416 Mass. 684, 694 (1993)(indemnity clause in purchase order between generators and transporter entered into prior to enactment of CERCLA incorporated CERCLA liability); Feakes v. Bozyczko, 373 Mass. 633, 636 (1977).  As stated in Feakes, under Massachusetts law, the interpretation of the contract clause at issue turns on the "expectations and intentions of the parties, at the time of agreement, with regard to the future effect of [the clause]."  Id. at 636.

Because it is clear from the express language of the Distribution Agreement that the parties intended that the Distribution Agreement and the purchase orders were a single integrated agreement, the contract must be enforced pursuant to its terms, and the Distribution Agreement and purchase orders must be construed as one contract.

ITV's position is supported by another case relied on by Cappseals, ECHO, Inc. v. Whitson Co., Inc., 52 F.3d 702, 706 (7th Cir. 1995), which establishes that under appropriate circumstances, a distribution agreement could include language to make itself part of every purchase order, rendering the distribution agreement and purchase orders one agreement.  Id., 52 F.3d at 706-707.  In ECHO, Inc., the defendant distributor argued that the distributorship agreement at issue expanded its rights of set-off under § 2-717 to include set-off against

termination of the distributorship agreement. Id. at 706. The defendant relied on a provision in the distributor agreement that designated what language would control when a purchase order conflicted with the terms of the distributorship agreement. Id. at 706. Although the Court acknowledged that parties can expand their rights of set-off under §2-717 by contract, the court found that the particular provision of the contract at issue did not provide such greater rights of set-off because it had a "very narrow sphere of influence," as it only applied if a purchase order and the distribution agreement were in conflict, and because "it does not make the distributorship agreement part of *every* purchase order." Id. at 707. Here, the Distribution Agreement does make its terms and conditions part of *every* purchase order, and contained no limiting language.

While stating that Massachusetts law presumes that purchase orders and distribution agreements are separate agreements, Cappseals has not cited to a single case that contains a contract with the express incorporation language like that in the Distribution Agreement.[3] Because the damages that ITV alleges it incurred as a result of Healthy Solutions' fraud and breach of contract stem from the same contract under which Healthy Solutions is seeking to recover its price, ITV is entitled to a set off under M.G.L. c. 106, § 2-717.

Moreover, even if the Distribution Agreement and the purchase orders were not treated as one contract, ITV is still entitled to setoff under § 2-717. As the First Circuit recognized in Gutor Intern'l AG v. Raymond Packer Co., Inc., 493 F.2d 938 (1st Cir. 1974), there are cases in

---

[3] Cappseals' continued reliance on C.R. Bard, Inc. v. Medical Electronics Corp., 529 F.Supp. 1382 (D.Mass. 1982) and Travenol Laboratories, Inc. v. Zotal, Ltd., 394 Mass. 95, 97-98 (1985) is unavailing. A reading of these cases establishes that they are easily distinguishable from the Distribution Agreement here. First, in C.R. Bard, the plaintiff terminated the defendant's distribution agreement and sued for the price of goods sold. The court found that the defendant's claims that plaintiff's manager failed to support it, tried to lure away one of its key sales managers, and falsely assured it that their relationship would continue, were not defenses to plaintiff's claim. Without citing to any precedent or U.C.C. Commentary, the court found that the defendant's claims concerning the termination of the distributorship agreement were too "remote" from the plaintiff's sale of goods to act as a setoff under G.L. c. 106, § 2-717. C.R. Bard has never been cited or relied on by the First Circuit. Likewise, in Travenol Laboratories, the court relied on C.R. Bard to find that the defendant's alleged damages were incurred after the termination of his exclusive distributorship agreement, were too "remote" and could not be used as a set off for the goods sold and delivered. Neither case involved purchase orders that were expressly incorporated into the Distribution Agreement, nor did they involve an affirmative defense of fraud in the inducement of the very contract for the sale of goods, as here.

6

which a buyer's claim for breach of the distributor agreement is so bound up with the seller's claim for price of goods sold that the setoff provision of the U.C.C. will apply.[4]  ITV has asserted that the Distribution Agreement itself, which controlled the parties' relationship and pursuant to which all purchase orders were issued, was induced by fraud, a claim that goes to "the essence of the transaction under which the seller seeks to recover his price."  See C.R. Bard, 529 F.Supp. at 1387.  The existence of ITV's claim for fraudulent inducement in connection with the Distribution Agreement distinguishes this case from each of the cases cited by Cappseals.  ITV is not alleging some remote breach of contract or that it incurred damages as a result of the termination of its distributorship agreement, as in C.R. Bard and Travenol, but it is asserting an affirmative defense that goes to the viability of the contract relationship itself.  The setoff provision of M.G.L. c. 106, § 2-717 clearly applies under these circumstances.

**B.     ITV Provided The Requisite Notice Of Intent To Set-Off Its Damages**

Cappseals next tries to argue that ITV did not provide the requisite notice with regard to five of the six invoices that were sent by Healthy Solutions when it filed this action, stating that this action was filed months after Healthy Solutions issued such invoices.  On the contrary, Healthy Solutions sent its first of the six unpaid invoices on December 31, 2003, with payment due in thirty days, or on January 31, 2004.  (Silverman Aff., Ex. 4, ¶5.)  When ITV gave its notice to Healthy Solutions on February 13, 2004 that it was withholding payment, four of the six invoices from Healthy Solutions were not even due.  (Id., ¶¶8-21.)  It then filed its action on March 2, 2004, only thirty days after the first invoice had become due and before Healthy Solutions had even made a demand for payment.  (ITV Stmt. of Facts, ¶¶19, 26.)  This is clearly

---

[4]   As discussed in ITV's Opposition, because the defendant in Gutor Intern'l AG failed to take appropriate action to notify the seller of its intent to setoff under §2-717, "the [defendant] forfeited whatever right, or claim of right, it might have had under the Uniform Commercial Code to treat [plaintiff's] alleged breach as a defense to nonpayment."  Id.

not a case in which ITV sat on its rights for months without giving Healthy Solutions notice of its intent to setoff payments. Moreover, § 2-717 only requires that notice be given of a buyer's intent to deduct its damages from any part of the price still due under the contract. There is no question that ITV's notice was provided while the amounts were "still due" under the contract.

**C.    Cappseals Cannot Dispute That The Court Must Setoff Any Judgment In Favor Of Healthy Solutions From Any Recovery Obtained By ITV On Its Claims.**

Despite its lengthy reply, Cappseals fails to even address ITV's argument that any recovery awarded to Healthy Solutions on its counterclaim must still be setoff against any judgment ITV obtains on its claims in this case, other than to claim it is entitled to final judgment under Fed. R. Civ. P. 54(b). This is so because Cappseals cannot dispute the First Circuit precedent that recognizes a court's power to compel a setoff of cross demands or of judgments even where setoff is not allowed by statute. See, e.g., Verderber v. Perry, 181 F.3d 81 (1st Cir. 1999); Sign-A-Way, Inc. v. Mechtronics Corp., 12 F.Supp.2d 132, 160 (D.Mass. 1998); Qantel Corporation, 571 F.Supp. 1379, affirmed 740 F.2d 59 (1st Cir. 1984)  Moreover, M.G.L. ch. 235, § 27 also provides that "executions between the same parties may, if required by either party, be set off one against the other." Id.  As set forth in ITV's opposition, the need for a setoff is ever greater in this case, where Healthy Solutions has no assets to satisfy any judgment that might be awarded to ITV on its claims, which is the very reason for Cappseals' reach and apply action. See Sign-A-Way, 12 F.Supp.2d at 160; see also ITV's Opposition, pp. 18-19.

In order to avoid such precedent, Cappseals asserts that it would be entitled to judgment under Rule 54(b) on Healthy Solutions' counterclaim. Cappseals has not explained, however, why it should be entitled to collect on a judgment against ITV on behalf of Healthy Solutions, where ITV will be unable to collect on any competing judgment that it may obtain against Healthy Solutions, and where Healthy Solutions itself could not collect on the judgment until all

8

of the underlying claims had been adjudicated. Cappseals cannot be in a better position than the party through which it seeks to assert its rights.

In the usual case, *if there is a possibility of a later setoff of a money debt,* the First Circuit has held that Rule 54(b) certification of the debt would be improper because of the inefficient and inequitable result that would occur if one party were allowed to collect money which may have to be paid back to the other party when the remaining litigation is completed. Pahlavi v. Palandjian, 744 F.2d 902, 904 (1st Cir. 1984) (District court's Rule 54(b) certification was improper where claims were related and there was a possibility for setoff.)  Because there is a "longstanding policy against allowing numerous interim dispositions through an action," Rule 54(b) orders "should not be entered routinely or as a courtesy or accommodation to counsel." Consolidated Rail Corporation v. Fore River Railway Co., 861 F.2d 322 (1st Cir. 1988) citing Spiegel v. Trustees of Tufts College, 843 F.2d 38 (1st Cir. 1988).  In Consolidated Rail Corp., because the parties still had further claims to litigate in the district court, the court found that certification under Rule 54(b) was particularly inappropriate "'when the contestants on appeal remain, simultaneously, contestants below.'"  Id., at 326, citing Spiegel, 843 F.2d at 44.  Thus, in deciding a Rule 54(b) motion, courts should consider whether, as here, there is a potential setoff to the judgment, whether the same parties will still be litigating the case in the district court, or whether the factual underpinnings of the adjudicated and unadjudicated counts are "inextricably intertwined."  Spiegel, at 45 (where counts incorporate the factual averments of other counts that are still at issue, and there is a similarity between factual or legal issues, it militates strongly against invocation of Rule 54(b)); Pahlavi, 744 F.2d at 904.  Where, as here, there exists a possibility of a setoff of judgments after adjudication of all of ITV's claims, Rule 54(b) certification must be denied.  Id. at 905.

Cappseals' misconstrues <u>New Life Baptist Church Academy v. Town of East Longmeadow</u>, 718 F.Supp. 2 (D.Mass. 1988) when it states that "the present situation is identical" to that case. In <u>New Life Baptist Church</u>, the plaintiffs sought to enjoin the town's efforts to apply a state statute requiring that local school committees approve of private schools in their jurisdiction to the Church's school. After a non-jury trial, the district court found that the town statute violated the Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution. All parties to the case requested the entry of final judgment pursuant to Rule 54(b), as the only other issues remaining to be decided were plaintiffs' damages, costs and attorneys' fees. According to the court, there were important reasons why an appeal of the issues already decided by the court should not wait for final resolution of the question of plaintiffs' damages, as it was in the interests of the students at the church school that the constitutionality of the town's conduct be authoritatively decided as promptly as possible. In its analysis, the court considered the fact that there ***was no claim or counterclaim*** in that case, which could result in a set-off against the judgment to be made final. <u>Id</u>. Here, on the other hand, there are several claims by ITV that could result in a set-off of any judgment on Healthy Solutions' counterclaim.

**D.** <u>**ITV's Claims And Defenses Cannot Be Decided On Summary Judgment.**</u>

Lastly, Cappseals again tries to establish on summary judgment that ITV's fraud claims against Healthy Solutions fail as a matter of law. Cappseals relies on the affidavit of Kial Young, which is itself hearsay and is the subject to ITV's motion to strike, and the recent filing by the FTC of a motion to amend the preliminary injunction order, which was entered in an unrelated action and that has been vigorously opposed by ITV. The very fact that Cappseals feels the need to introduce these filings from the unrelated action in support of its motion for summary judgment is an acknowledgement by Cappseals that there needs to be an adjudication

10

on ITV's claims and defenses asserted against Healthy Solutions. Such an adjudication cannot be made on summary judgment.

As a practical matter, Healthy Solutions has not even moved for summary judgment on ITV's affirmative claims, and Cappseals does not have standing to defend against ITV's claims on behalf of Healthy Solutions. In any event, the record establishes that there are numerous material facts that are disputed by the Defendants relating to Healthy Solutions' fraud and its breaches of contract for its failure to: (i) indemnify ITV against the FDA and FTC actions, (ii) pay royalties to ITV, (iii) transfer the Supreme Greens trademark rights to ITV, or (iv) transfer ownership of the domain name to ITV. Cappseals fails to even address ITV's breach of contract claims, and cannot possibly expect to establish that ITV's fraud claims fail *as a matter of law* by simply attaching the hearsay affidavit of Kial Young and a recent motion filed by the FTC, especially given the fact that the FTC never told ITV to stop buying or selling the Supreme Greens product at issue at any time during its investigation, and Healthy Solutions continued to represent that it had support for its claims about the product. (Statement of Facts, ¶¶ 4, 11, 17.) Based on the facts in the summary judgment record, ITV's claims cannot be decided on summary judgment, even assuming Healthy Solutions had filed such a motion.[5]

Cappseals' reply confirms that it cannot establish as a matter of law that ITV failed to rely on the fraudulent representations of the Defendants, or that such reliance was unreasonable,

---

[5] Absurdly, Cappseals asserts that ITV has not disputed a single factual assertion within Cappseals' Rule 56.1 Statement. On the contrary, as ITV filed its own Statement of Material Facts In Dispute pursuant to Local Rule 56.1, in which it disputed many of the factual assertions made by Cappseals, some of which were merely distortions of the record to which they cited for support. There is no requirement in Local Rule 56.1 that the party opposing a motion for summary judgment respond to the moving party's statement of facts using the same paragraph numbers. For the Court's convenience, the following paragraph numbers dispute Cappseals' Statement:

| Cappseals' Statement | ITV's Statement |
|---|---|
| ¶¶1-3 | ¶5 |
| ¶¶6, 8-9 and 13 | ¶17; Motion to Strike |
| ¶10 | ¶¶4, 10 |
| ¶11 | ¶17 |
| ¶14 | ¶20 |

11

as ITV's claim requires the resolution of numerous facts that are disputed by the Defendants. ITV has a right to a trial on all of its claims against Healthy Solutions, and Cappseals must wait for the entry of final judgment on all of the underlying claims before determining whether there is any property of the Defendants to reach and apply.

## CONCLUSION

Based on the foregoing arguments and those set forth in ITV's Opposition, Cappseals' motion for summary judgment against ITV must be denied.

> Respectfully submitted,
> ITV DIRECT, INC.
> By their attorney(s),
>
> /s/ Susan Gelwick
> Peter S. Brooks, BBO #058980
> Christopher F. Robertson, BBO #642094
> Susan W. Gelwick, BBO #567115
> SEYFARTH SHAW LLP
> Two Seaport Lane, Suite 300
> Boston, MA 02210-2028
> Telephone:    (617) 946-4800
> Telecopier:   (617) 946-4801

Dated: June 21, 2005