UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>HEALTHY SOLUTIONS, LLC, )<br>)<br>Defendants. )<br>) | |
| CAPPSEALS, INC., )<br>)<br>Plaintiff-in-Intervention )<br>)<br>v. )<br>)<br>HEALTHY SOLUTIONS, LLC, d/b/a )<br>DIRECT BUSINESS CONCEPTS; ITV )<br>DIRECT, INC., AND DIRECT )<br>FULFILLMENT, LLC., )<br>)<br>Intervenor-Defendants. )<br>) | C. A. No. 04-CV10421-JLT |

**CAPPSEALS, INC.'S EMERGENCY MOTION FOR
POST-JUDGMENT RELIEF**

Plaintiff-in-Intervention, Cappseals, Inc. ("Cappseals"), a judgment creditor in the amount of $1,041,684.49, respectfully requests emergency injunctive relief, attachments, and access to the financial records of the judgment debtors, ITV Direct, Inc. ("ITV Direct") and Direct Fulfillment, LLC ("Direct Fulfillment") (ITV Direct and Direct Fulfillment are collectively referred to herein as the "ITV Parties" or "Judgment Debtors") to identify and secure assets that may be used to satisfy the outstanding debt recognized by this Court within its Order of July 20, 2005 (the "Older") and the Court's final judgment dated August 3, 2005 (the "Judgment"). Cappseals' Proposed Order outlining the requested relief is attached as **Exhibit 1**.

*Denied*
*J Tauro  AJ*
*8/9/05*

For the reasons set forth below and in other papers contemporaneously filed with the Court,[1] Cappseals is now entitled to the full arsenal of remedies available in order to preserve and protect assets subject to judgment collection – interim remedies without which Cappseals Judgment may be rendered uncollectible.

The limited financial records made available by the ITV Parties during discovery cause Cappseals to have great concern over its ability to satisfy the Judgment. The financial records indicate that those in control of the ITV Parties have historically drained their assets -- transferring them to related entities and the principals of the companies for little to no consideration. This combined with the fact that the ITV parties will not confirm whether they intend on paying the Judgment leads Cappseals to justifiably conclude that the ITV Parties intend to evade their obligations.[2] Accordingly, injunctive relief and attachments are necessary to freeze the remaining assets of the ITV Parties and maintain the status quo while Cappseals moves forward with satisfying its Judgment. Additionally, the ITV Parties must make partial interim payments to Cappseals, turn over their accounting records, and make a full disclosure of their financial affairs so compliance with the Court's "freeze order" can be tested and so that Cappseals can assess the next appropriate steps to identify and locate the assets of the ITV Parties.

Cappseals states that emergency consideration of this Motion is necessary because the ITV Parties have already evidenced a pattern of intra-company transfers the result of which has

---

[1] See Cappseals' *Motion for Leave to Amend Its Complaint-in-Intervention* as well as the supporting Affidavit of Scott A. Silverman filed herewith ("Silverman Aff.").

[2] On July 27, 2005 counsel for Cappseals wrote to counsel for the ITV Parties requesting that they disclose whether they would comply with their payment obligations following the Judgment. The July 27, 2005 letter and the response of the ITV Parties with their equivocal position are attached to the Silverman Affidavit as **Exhibits A** and **Exhibit B** respectively. Essentially, the ITV Parties alluded to a "proposal" that would be made early this week to "address" the Judgment. No such "proposal" has ever been made.

been to significantly diminish the assets that may be subject to collection. Any "freeze order" issued after significant notice will only invite the ITV Parties to further alienate their assets.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY.[3]

### A. The ITV Parties' Debt For The Shipments Received.

In early April 2003, ITV Direct and defendant-in-counterclaim, Healthy Solutions ( d/b/a Direct Business Concepts) entered into a distribution agreement (the "Distribution Agreement") by which ITV Direct was to produce an infomercial for the purpose of marketing a health supplement developed by Healthy Solutions called Supreme Greens (the "Product"). The undisputed (and primarily stipulated) facts demonstrate that Healthy Solutions sold the ITV Parties 303,643, bottles of the Product all of which were manufactured and shipped by Cappseals. The 303,643 bottles were made up of six separate shipments placed in response to a "standing" purchase order ("Purchase Order 1101") that the ITV Parties issued on November 21, 2003 requesting shipments of 50,000 bottles of the Product per week. The ITV Parties received the shipments of the Product pursuant to Purchase Order 1101, were invoiced $1,821,864.00 – $890,000 (approx.) of which was owed to Cappseals – and thereafter sold the Product at a significant profit. After the ITV Parties refused to pay the balance owed for the Product the present action ensued.[4]

### B. Cappseals Judgment Against the ITV Parties.

---

[3] The facts described herein are supported by Cappseals' summary judgment filings and associated documents that were previously submitted to the Court and included the Joint Stipulations of Fact [Docket #113] agreed upon between the parties. Many of the facts detailed herein were specifically adopted by the Court within its July 20, 2005 Memorandum wherein summary judgment was granted to Cappseals on its reach and apply claim against the ITV Parties.

[4] At the outset of this case the Court granted Cappseals a Preliminary Injunction enjoining ITV Direct from paying any amount to Healthy Solutions until further Order of the Court. The present motion seeks to expand that protection now that Cappseals' allegations – and the debt owed to it by the ITV Parties – has been reduced to a judgment.

On July 20, 2005 this Court granted Cappseals summary judgment motion and determined – as a matter of law – that the ITV Parties were indebted to Cappseals for the six shipments of the Product manufactured by Cappseals. The Court endorsed a judgment in favor of Cappseals having determined that "there is no just reason to further delay payment for goods delivered, accepted and re-sold." Order at 6 (internal quotations omitted).[5] Final Judgment was thereafter issued on August 3, 2005 in the amount of $1,041,684.49.

C.      **The ITV Parties Have Co-Mingled Assets with Related Parties and Persons.**

The Judgment in favor of Cappseals was issued against ITV Direct and Direct Fulfillment, LLC. However, discovery has revealed that the ITV Parties have conducted their distribution operations in conjunction with a third related corporate entity, Direct Marketing Concepts, Inc ("DMC"), a company wholly owned by the principals of ITV Direct, Donald Barrett and Robert Maihos.[6] Discovery has also revealed that the ITV Parties have transferred their assets to DMC and their principals leaving the ITV Parties with insufficient monies to satisfy the Judgment and to create a layer between the ITV Parties and their creditors.[7]

---

[5]    Throughout the present proceeding the ITV Parties had claimed a fraud perpetuated by Healthy Solutions caused the ITV Parties to unnecessarily spend "millions of dollars" on marketing the Product through infomercials. The ITV Parties also claimed Healthy Solutions must indemnify them against potential liability in a separate lawsuit brought against the ITV Parties and its principals by the Federal Trade Commission (hereinafter the "FTC") (FTC vs. Direct Marketing Concepts, Inc., Civil Action No. 04-11136-GAO (the "FTC Action")) wherein the FTC maintains ITV and Healthy Solutions are responsible for restitution to consumers for their alleged deceptive marketing of the Product. The ITV Parties claimed the cumulative total of these two categories of unspecified "damages" had to be set-off against the amounts owed to Cappseals. Within its July 20 Order this Court determined that none of the ITV Parties' "defenses" go to the essence of the purchase-and-sale transactions that resulted in the debt to Cappseals and could not be used to set-off or reduce that obligation.

[6]    Within the few documents produced by the ITV Parties, it appears that ITV Direct *and* DMC both issued Purchase Order 1101 that requested the production and delivery of the Product. Attached as **Exhibit C** to the Silverman Affidavit are true and accurate copies of purchase orders produced by the ITV Parties indicating DMC and ITV Direct were both the originators of the request for the Product.

[7]    Concurrent with the filing of the present motion Cappseals has also filed a *Motion for Leave to Amend Its Complaint-in-Intervention* in order to demonstrate various fraudulent transfers from the ITV Parties as well as the fact that the ITV Parties and DMC are alter egos and not separate entities.

-4-

After several motions to compel (and a motion for sanctions) the ITV Parties produced an accounting report (the "Accounting Report") dated August 16, 2004 disclosing the financial status of both ITV Direct and DMC as well as financial information relating to their sales of the Product.[8]

Cappseals was originally directed to ship the Product to Direct Fulfillment pursuant to Purchase Order 1101. See Silverman Aff., Ex. C. However, the Accounting Report indicates that at some point in time after delivery, "ownership" of the of the Product inventory was transferred on the books and records to DMC who was credited for making payment for the Product to Healthy Solutions/Direct Business Concepts. Accounting Report tab 14. This "transfer" of assets is further supported by the fact that revenues and profits generated from sales of the Product have solely been attributed to DMC. In fact, the Accounting Report indicates that DMC generated revenues exceeding $16 million associated with sales of the Product through June 2004. Accounting Report tab 1. This significant revenue has lead to net assets of $4.6 million (approx.) for DMC as of June 2004. Accounting Report tab 14.

While DMC has generated significant assets through sales of the Product, ITV Direct has served as nothing more than a "pass-through." While DMC's assets grew, ITV was not paid any consideration for the transfer of assets. Rather, any assets ITV generated for its part in the companies' business were transferred to the principals of the ITV Parties and DMC leaving it a shell entity with a negative balance sheet. More specifically, ITV transferred $357,000 to Mr. Maihos and DMC during 2003. Accounting Report tab 12 & 13. The Accounting Report

---

[8] A true and accurate copy of the Accounting Report is submitted herewith as **Exhibit D** to the Silverman affidavit. The Accounting Report has been designated as "confidential" by the ITV Parties pursuant to the Protective Order issued in this case. Accordingly, the present Motion, Mr. Silverman's affidavit and the attached Accounting Report have all been submitted by hand to the Court in a sealed envelope.

-5-

indicates that this left ITV with a negative balance sheet, showing a deficit of $93,450 as of June 2004. Accounting Report tab 15.

ITV Direct is not the only entity from which assets have been fraudulently transferred. After payment for the Product became due and owing in early 2004, DMC transferred $200,000 to Mr. Barrett individually. Accounting Report tab 12.

While these accounting activities indicate a strategy of debt avoidance, the company's principal, Donald Barrett, confirmed the strikingly similar ownership and management structure between the related entities that contradicts any real corporate "separation":

> A: I own a company called ITV Direct and Direct Marketing Concepts along with my business partner.
> Q: What do you do for ITV Direct?
> A: I host the infomercial aspect of the direct response business.
> Q: Do you have any title for your work at ITV Direct?
> A: My title is present and CEO.
> Q: Are you a shareholder?
> A: Yes, I am.
> Q: What percentage of the shares do you own?
> A: I believe fifty percent.
> Q: You mentioned a business partner. Who is that?
> A: His name is Robert Maihos, M A I H O S.
> Q: What percentage of shares does he own?
> A: The other fifty percent.
> Q: What about Direct Marketing Concepts, what do you do for them?
> A: The same thing.
> Q: When you say "the same thing" would you describe your duties for me.
> A: The Direct Marketing Concepts was the original company that we started. ITV Direct was a company that I started to actually produce the infomercials. Direct Marketing Concepts doesn't produce the infomercials any more, they are mainly the company that answers the telephones.
> Q: Do you have a title at Direct Marketing Concepts?
> A: It would be the same, president and CEO.
> Q: Do you own some shares in Direct Marketing Concepts?
> A: Exact same as Direct Marketing Concepts. Same as ITV Direct, rather.

Barrett Dep. pp. 6 -- 7.[9]

From the limited discovery conducted in this case, it is clear that Mr. Barrett and Mr. Maihos have operated the ITV Parties and DMC as one single entity using intra-company transfers in a feigned attempt to strip the ITV parties of any assets leaving them ostensibly judgment proof. To this point, further testimony from Mr. Barrett's deposition addresses the reasons for establishing ITV Direct as well as the absence of any meaningful difference between ITV and DMC:

> Q: I want to make sure I understand this. ITV Direct essentially produces the infomercials, and Direct Marketing Concepts answers the phone, places the orders, that sort of thing, is that a fair statement?
>
> A: I really came up with ITV Direct because I liked the name more. I kind of weaseled, not weaseled but said ITV Direct, we can use that it for the production end of it and we'll use Directing Marketing Concepts for the bank end of the business. I liked the ITV name. It incorporated TV. I just liked the name better. That's frankly why I did it.

Barrett Dep. pp. 10-11.

## II.   ARGUMENT.

### A.   Injunction & Attachment Standards.

The four-part test for injunctive relief is well established. A plaintiff must show (1) the irreparability of harm it will suffer if the injunctive relief is not granted; (2) the harm plaintiff will suffer outweighs any harm which granting injunctive relief would inflict on defendant; (3) plaintiff will likely succeed on the merits of its claims; and, (4) the public interest will not be adversely affected by the granting of the injunction. *Harrington v. Federal Deposit Ins. Corp.*, 1993 WL 294850, 5 (D. Mass. 1993) (citing *Camel Hair & Cashmere Inst., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986)). Additionally, the harm that defendant may

---

[9] The relevant pages from the transcript of Mr. Barrett's August 23, 2004 deposition are attached as **Exhibit E** to Mr. Silverman's Affidavit.

suffer "must be discounted by the degree that a plaintiff can show likelihood of success." *Harrington*, 1993 WL 294850 at 5. As articulated in the following sections, Cappseals meets all of these elements and the Court should grant the requested injunctive relief.

Cappseals has also requested an attachment by this Motion. Pursuant to Fed. R. Civ. P. 64, the remedy of attachment is available "under the circumstances and in the manner provided by the law of the state in which the district court is held." See *Johnson v. Koplovsky Foods, Inc.*, 5 F. Supp. 2d 48, 51 (D. Mass. 1998) (Harrington, J.). Rule 4.1 of the Massachusetts Rules of Civil Procedure is the "substantive standard and the procedure governing attachments" under Massachusetts law. *Id.* Under Rule 4.1, "an order approving attachment 'may be entered only after notice to the defendant and hearing and upon a finding by the court that three is a reasonable likelihood that the plaintiff will recover judgment.'" *Id.* (quoting Mass. R. Civ. P. 4.1(c)). The central question on a motion for attachment is "'whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount.'" *Id.* (quoting *Anderson Foreign Motors Corp. v. New England Toyota Distributor, Inc.*, 475 F. Supp. 973, 978 (D. Mass. 1979)). As discussed herein, Cappseals has already demonstrated more than a "likelihood" of success on its claims – in fact, the Court has already allowed final judgment in an amount exceeding $1 million on Cappseals reach and apply claim. Cappseals is therefore entitled to an attachment on the ITV Parties' real property and personal property to protect its ability to collect on the Judgment.

**B.   Cappseals Will Be Irreparably Harmed Without the Injunctive Relief Requested.**

An important purpose of an injunction is to maintain the status quo – especially important given the recent Judgment issued to Cappseals and the ITV Parties' unwillingness to commit to payment. Justifiably, Cappseals has no confidence that the ITV Parties – and the entities they control – will voluntarily pay the Judgment they owe. At the same time, there has been

-8-

extensive co-mingling of assets and an obvious liquidation of the Judgment Debtors in favor of a sister company, DMC, that received and continues to maintain significant assets ($4.6 million) as of the last accounting provided to Cappseals. In aid of preserving current assets for collection on Cappseals' Judgment it must receive – in addition to the requested freeze on the ITV Parties' assets – access to the ITV Parties' financial records to identify and locate assets to satisfy its Judgment before they are further alienated. Additionally, Cappseals has requested that the ITV Parties be ordered to produce a financial disclosure on a monthly basis so their compliance with the Court's "freeze order" can be tested.

### C. The Balancing of Harms Unquestionably Favors Cappseals.

Because the likelihood of success for Cappseals has already been determined, little consideration is given to the harm that may befall the ITV Parties if an injunction should be granted. *Exch. Comm'n v. World Radio Mission*, 544 F.2d 535, 541 (1st Cir. 1976). However, the balance of harms clearly favors Cappseals. Without the status quo/freeze order injunction, Cappseals will be irreparably harmed as the ITV Parties continue to alienate their assets through inter-company transfers and distributions to their principals. In contrast, maintaining the status quo will simply keep available the assets to resolve this matter while preventing the ITV Parties from alienating and hiding their assets through future inter-company transfers and distributions that may make the ITV Parties judgment proof.

### D. The Public Interest Favors Enforcement of ITV's Debt.

The public will suffer no adverse effect in the event the Court issues the requested injunctive relief. Rather, the public's interest is indirectly served by this Court's enforcement of the debt owed to Cappseals. The protection of sellers/manufacturers and their justifiable expectation to receive payment for goods "delivered, accepted and re-sold" is critical to the supply of goods and the maintenance of a healthy economy. Other than Cappseals being

negatively harmed if the Court does NOT issue the requested injunctive relief, this is a private transaction between the parties and there is no other direct public interest to be effected.

### III.   CONCLUSION.

WHEREFORE, Plaintiff-in-Intervention and judgment creditor Cappseals respectfully requests that this Court consider its Motion for Post-Judgment Relief on an emergency basis, and, enter the proposed Order attached hereto as **Exhibit 1** that provides

A. The ITV Parties, as well as each of their directors, officers, agents, servants, employees and attorneys and all persons in active concert and participation with them, pending payment of the Judgment, are hereby enjoined from:

> 1) Removing, transferring, disposing of, wasting, liquidating, investing, conveying, encumbering in any fashion, or attempting to remove, conceal or in any way interfere with any real or personal property, assets effects or funds in any bank, or any and all real or personal property of the ITV Parties except as the same may be necessary for the usual and normal day-to-day activities of the ongoing lawful business of the corporation, said "accounts payable" to be approved by the Court through a submission within 1 week from the date this Order is entered; and
>
> 2) Entering into any contracts not incidental to the normal and usual operation of said business without prior approval of the Court.

B. The ITV Parties shall transfer to Cappseals any proceeds derived from their accounts receivable over and above amounts necessary to cover its over-head expenses and payroll as determined by salaries and commission arrangements in place prior to July 20, 2005.

C. Cappseals is hereby granted an attachment on any and all real property, personal property or other assets of the ITV Parties not to exceed its judgment in the amount of $1,064,000.

D. The ITV Parties shall prepare and submit a financial report to Cappseals by the 1st day of each month, which fully describes their current financial status including, but not limited to, a description of all disbursements from and deposits into their accounts as well as a description of the companies' assets, liabilities, accounts payable and accounts receivable.

E. Cappseals shall have the immediate right to inspect any and all financial records, including but not limited to, any and all records of deposits into or disbursements from the bank accounts of the ITV Parties and any related entity at the offices of the ITV Parties or at any bank or financial institution where it maintains bank accounts, at any time, provided that such inspection shall take place during normal business hours of the company.

> Cappseals, Inc.
> By its attorneys,
>
> */s/ Scott A. Silverman/*
>
> Peter Antonelli, BBO # 661526
> pantonelli@ghlaw.com
> Scott A. Silverman, BBO # 638087
> ssilverman@ghlaw.com
> Daniel J. Kelly, BBO # 553926
> dkelly@ghlaw.com
> Gadsby Hannah LLP
> 225 Franklin Street
> Boston, MA 02110
> (617) 345-7000

August 3, 2005

Local Rule 7.1 Certification

I, Scott A. Silverman, counsel for moving party Cappseals, Inc., hereby certify that I have conferred with opposing counsel in a good faith attempt to resolve or narrow the issues raised in this motion, but have been unable to do so.

*/s/ Scott A. Silverman/*
Scott A. Silverman

## CERTIFICATE OF SERVICE

I hereby certify that true and accurate copies of the foregoing *Emergency Motion for Post-Judgment Relief* was served on the foregoing attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

Peter S. Brooks, Esq.                    (VIA HAND DELIVERY)
Susan W. Gelwick, Esq.
Christopher F. Robertson, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA  02210

Dustin F. Hecker, Esq.                   (VIA HAND DELIVERY)
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199-8004

Becky Christensen, Esq.                  (VIA OVERNIGHT MAIL)
O'Connor Christensen & McLaughlin LLP
1920 Main Street, Suite 150
Irvine, CA  92614

/s/ Daniel J. Kelly

Daniel J. Kelly BBO# 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO #638087
ssilverman@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

DATED: August 3, 2005