# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC.,          ) | |
|                        ) | |
|              Plaintiff,      ) | |
|                        ) | |
| v.                      ) | |
|                        ) | |
| HEALTHY SOLUTIONS, L.L.C., et al.,   ) | |
|                        ) | |
|            Defendants.     ) | |
| CAPPSEALS, INC.,         ) | Civil Action No.  04-CV-10421-JLT |
|                        ) | |
|       Plaintiff-in-Intervention,   ) | |
|                        ) | |
| v.                      ) | |
|                        ) | |
| HEALTHY SOLUTIONS, L.L.C., d/b/a   ) | |
| DIRECT BUSINESS CONCEPTS; ITV   ) | |
| DIRECT, INC.; and DIRECT      ) | |
| FULFILLMENT, LLC,        ) | |
|                        ) | |
|       Intervenor-Defendants.   ) | |

## JUDGMENT

TAURO, D.J.

This action came before the Court upon Plaintiff-in-Intervention Cappseals Inc.'s Motion

for Summary Judgment. The issues have been heard and an ORDER and MEMORANDUM

were issued on July 20, 2005, by TAURO, D.J. ALLOWING Cappseals' Motion for Summary

Judgment and finding that "there is no just reason to further delay payment."

**WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED**

Pursuant to Fed. R. Civ. P. 54(b) judgment is hereby entered for Cappseals, Inc. on its

claim against Reach and Apply Defendants ITV Direct Inc., and Direct Fulfillment, LLC in the

amount of $1,041,684.49, said amount consisting of:

1) Principal due in the amount of $890,183.09.

2) Pre-Judgment interest through April 15, 2005 in the amount of $123,609.00 pursuant to the *Judgment Against Healthy Solutions, LLC* [Docket #91].

3) Pre-judgment interest due from April 16, 2005 through July 22, 2005 in the amount of $27,892.40 calculated at the statutory rate of 12%.[1]

IT IS SO ORDERED.

DATED: **8/3/05**

JUDGE, UNITED STATES DISTRICT COURT

---

[1] Computed pursuant to Mass. Gen. Laws ch. 231, § 6C.

2

B0422739v1

# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC.,                 ) | |
|               Plaintiff,    ) | |
| v.                    ) | |
|                ) | |
| HEALTHY SOLUTIONS, LLC, ET. AL.,   ) | |
|           Defendants.   ) | |

ITV DIRECT, INC.,

                Plaintiff,

v.

HEALTHY SOLUTIONS, LLC, ET. AL.,

                Defendants.

CAPPSEALS, INC.,

                Plaintiff-in-Intervention

                              C. A. No. 04-CV10421-JLT

v.

HEALTHY SOLUTIONS, LLC, d/b/a
DIRECT BUSINESS CONCEPTS; ITV
DIRECT, INC., AND DIRECT
FULFILLMENT, LLC.,

                Intervenor-Defendants.

## CAPPSEALS, INC.'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT-IN-INTERVENTION

Plaintiff-in-Intervention, Cappseals, Inc. ("Cappseals"), a judgment creditor in the
amount of $1,041,684.49, respectfully requests leave of Court to amend its complaint-in-
intervention to add claims to address fraudulent conveyances that have diverted assets from the
judgment debtors, ITV Direct, Inc. and Direct Fulfillment, LLC (the "ITV Parties" or "Judgment
Debtors"). Cappseals also seeks leave to add as parties those entities and persons who have
benefited from such fraudulent transactions in a further effort to satisfy the judgment they have
achieved against the ITV Parties.

*Denied*
*Tauro J*
*8/9/05*



Cappseals is still in the process of identifying and securing assets of the ITV Parties that may be used to satisfy the outstanding debt recognized by this Court within its Order of July 20, 2005 (the "Older") and the Court's final judgment dated August 3, 2005 (the "Judgment"). The limited financial records made available by the ITV Parties indicates that those in control have historically drained their assets – transferring them to related entities and the principals of the ITV Parties for little to no consideration all in a continuing effort to evade creditors.

Cappseals must be allowed to amend its pleadings so that this Court may assert jurisdiction over the non-parties who now control the assets of the ITV Parties and/or who are the alter-egos of the ITV Parties and should be equally responsible for paying the Judgment. For these reasons and those articulated further herein, Cappseals' requests the Court provide it leave to file and serve *Amendments to Cappseals' Complaint-in-Intervention* in the form attached as **Exhibit 1**.

## I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY.[1]

**A.    The ITV Parties' Debt For The Shipments Received.**

In early April 2003, ITV Direct and defendant-in-counterclaim, Healthy Solutions ( d/b/a Direct Business Concepts) entered into a distribution agreement (the "Distribution Agreement") by which ITV Direct was to produce an infomercial for the purpose of marketing a health supplement developed by Healthy Solutions called Supreme Greens (the "Product"). The undisputed (and primarily stipulated) facts demonstrate that Healthy Solutions sold the ITV Parties 303,643, bottles of the Product all of which were manufactured and shipped by Cappseals. The 303,643 bottles were made up of six separate shipments placed in response to a

---

[1]    The facts described herein are supported by the Joint Stipulations of Fact [Docket #113] agreed upon between the parties. This section is also supported by the facts stated within and the documents attached to the Affidavit of Scott A. Silverman filed with the Court concurrent with the present Motion in connection with Cappseals' *Emergency Motion for Post-Judgment Relief* , .

"standing" purchase order ("Purchase Order 1101") that the ITV Parties issued on November 21, 2003 requesting shipments of 50,000 bottles of the Product per week. The ITV Parties received the shipments of the Product pursuant to Purchase Order 1101, were invoiced $1,821,864.00 – $890,000 (approx.) of which was owed to Cappseals – and thereafter sold the Product at a significant profit. After the ITV Parties refused to pay the balance owed for the Product the present action ensued.[2]

**B.    Cappseals Judgment Against the ITV Parties.**

On July 20, 2005 this Court granted Cappseals summary judgment motion and determined – as a matter of law – that the ITV Parties were indebted to Cappseals for the six shipments of the Product manufactured by Cappseals. The Court endorsed a judgment in favor of Cappseals having determined that "there is no just reason to further delay payment for goods delivered, accepted and re-sold." Order at 6 (internal quotations omitted).[3] Final Judgment was thereafter issued on August 3, 2005 in the amount of $1,041,684.49.

**C.    The ITV Parties Have Co-Mingled Assets with Related Parties and Persons.**

The Judgment in favor of Cappseals was issued against ITV Direct and Direct Fulfillment, LLC. However, discovery has revealed that the ITV Parties have conducted their

---

[2]    At the outset of this case the Court granted Cappseals a Preliminary Injunction enjoining ITV Direct from paying any amount to Healthy Solutions until further Order of the Court. The present motion seeks to expand that protection now that Cappseals' allegations – and the debt owed to it by the ITV Parties – has been reduced to a judgment.

[3]    Throughout the present proceeding the ITV Parties had claimed a fraud perpetuated by Healthy Solutions caused the ITV Parties to unnecessarily spend "millions of dollars" on marketing the Product through infomercials. The ITV Parties also claimed Healthy Solutions must indemnify them against potential liability in a separate lawsuit brought against the ITV Parties and its principals by the Federal Trade Commission (hereinafter the "FTC") (FTC vs. Direct Marketing Concepts, Inc., Civil Action No. 04-11136-GAO (the "FTC Action")) wherein the FTC maintains ITV and Healthy Solutions are responsible for restitution to consumers for their alleged deceptive marketing of the Product. The ITV Parties claimed the cumulative total of these two categories of unspecified "damages" had to be set-off against the amounts owed to Cappseals. Within its July 20 Order this Court determined that none of the ITV Parties' "defenses" go to the essence of the purchase-and-sale transactions that resulted in the debt to Cappseals and could not be used to set-off or reduce that obligation.

distribution operations in conjunction with a third related corporate entity, Direct Marketing

Concepts, Inc ("DMC"), a company wholly owned by the principals of ITV Direct, Donald

Barrett and Robert Maihos.[4]  Discovery has also revealed that the ITV Parties have transferred

their assets to DMC and their principals leaving the ITV Parties with insufficient monies to

satisfy the Judgment and to create a layer between the ITV Parties and their creditors.

After several motions to compel (and a motion for sanctions) the ITV Parties produced an

accounting report (the "Accounting Report") dated August 16, 2004 disclosing the financial

status of both ITV Direct and DMC as well as financial information relating to their sales of the

Product.[5]

Cappseals was originally directed to ship the Product to Direct Fulfillment pursuant to

Purchase Order 1101. See Silverman Aff., Ex. C. However, the Accounting Report indicates

that at some point in time after delivery, "ownership" of the of the Product inventory was

transferred on the books and records to DMC who was credited for making payment for the

Product to Healthy Solutions/Direct Business Concepts. Accounting Report tab 14. This

"transfer" of assets is further supported by the fact that revenues and profits generated from sales

of the Product have solely been attributed to DMC. In fact, the Accounting Report indicates that

DMC generated revenues exceeding $16 million associated with sales of the Product through

June 2004. Accounting Report tab 1. This significant revenue has lead to net assets of $4.6

million (approx.) for DMC as of June 2004. Accounting Report tab 14.

---

[4]       Within the few documents produced by the ITV Parties, it appears that ITV Direct _and_ DMC both issued
Purchase Order 1101 that requested the production and delivery of the Product. Attached as **Exhibit C** to the
Silverman Affidavit are true and accurate copies of purchase orders produced by the ITV Parties indicating DMC
and ITV Direct were both the originators of the request for the Product.

[5]       A true and accurate copy of the Accounting Report is attached as **Exhibit D** to the Silverman Affidavit
supporting Cappseals' _Emergency Motion for Post-Judgment Relief_ filed concurrently with this Motion. The
Accounting Report has been designated as "confidential" by the ITV Parties pursuant to the Protective Order issued
in this case.

While DMC has generated significant assets through sales of the Product, ITV Direct has
served as nothing more than a "pass-through." While DMC's assets grew, ITV was not paid any
consideration for the transfer of assets. Rather, any assets ITV generated for its part in the
companies' business were transferred to the principals of the ITV Parties and DMC leaving it a
shell entity with a negative balance sheet. More specifically, ITV transferred $357,000 to Mr.
Maihos and DMC during 2003. Accounting Report tab 12 & 13. The Accounting Report
indicates that this left ITV with a negative balance sheet, showing a deficit of $93,450 as of June
2004. Accounting Report tab 15.

ITV Direct is not the only entity from which assets have been fraudulently transferred.
After payment for the Product became due and owing in early 2004, DMC transferred $200,000
to Mr. Barrett individually. Accounting Report tab 12.

While these accounting activities indicate a strategy of debt avoidance, the company's
principal, Donald Barrett, confirmed the strikingly similar ownership and management structure
between the related entities that contradicts any real corporate "separation":

> A: I own a company called ITV Direct and Direct Marketing Concepts
> along with my business partner.
> Q: What do you do for ITV Direct?
> A: I host the infomercial aspect of the direct response business.
> Q: Do you have any title for your work at ITV Direct?
> A: My title is present and CEO.
> Q: Are you a shareholder?
> A: Yes, I am.
> Q: What percentage of the shares do you own?
> A: I believe fifty percent.
> Q: You mentioned a business partner. Who is that?
> A: His name is Robert Maihos, M A I H O S.
> Q: What percentage of shares does he own?
> A: The other fifty percent.
> Q: What about Direct Marketing Concepts, what do you do for them?
> A: The same thing.
> Q: When you say "the same thing" would you describe your duties for
> me.

> A: The Direct Marketing Concepts was the original company that we
> started. ITV Direct was a company that I started to actually produce the
> infomercials. Direct Marketing Concepts doesn't produce the
> infomercials any more, they are mainly the company that answers the
> telephones.
> Q: Do you have a title at Direct Marketing Concepts?
> A: It would be the same, president and CEO.
> Q: Do you own some shares in Direct Marketing Concepts?
> A: Exact same as Direct Marketing Concepts. Same as ITV Direct, rather.

Barrett Dep. pp. 6 – 7.[6]

From the limited discovery conducted in this case, it is clear that Mr. Barrett and Mr.

Maihos have operated the ITV Parties and DMC as one single entity using intra-company

transfers in a feigned attempt to strip the ITV parties of any assets leaving them ostensibly

judgment proof. To this point, further testimony from Mr. Barrett's deposition addresses the

reasons for establishing ITV Direct as well as the absence of any meaningful difference between

ITV and DMC:

> Q: I want to make sure I understand this. ITV Direct essentially produces
> the infomercials, and Direct Marketing Concepts answers the phone,
> places the orders, that sort of thing, is that a fair statement?
>
> A: I really came up with ITV Direct because I liked the name more. I
> kind of weaseled, not weaseled but said ITV Direct, we can use that it for
> the production end of it and we'll use Directing Marketing Concepts for
> the bank end of the business. I liked the ITV name. It incorporated TV. I
> just liked the name better. That's frankly why I did it.

Barrett Dep. pp. 10-11.

---

[6]     The relevant pages from the transcript of Mr. Barrett's August 23, 2004 deposition are attached as **Exhibit
D** to Mr. Silverman's Affidavit.

## II.    ARGUMENT

Fed. R. Civ. P. 15(a) provides that leave of court to amend a pleading "shall be freely given when justice requires." The United States Supreme Court has articulated the standards governing amendments under Rule 15(a) affirming that the leave should be freely given:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded ... . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Leave to amend should not be denied unless the non-moving party can show (1) undue prejudice; (2) undue delay; or (3) futility of the amendment. *Id.*; See also *Nasco, Inc. v. Public Storage, Inc.*, 29 F.3d 28, 35 (1st Cir. 1994) ("where there is no compelling reason for disallowing an amendment, Rule 15(a)'s admonition that leave to amend shall be 'freely given' is to be heeded").

First, the proposed new parties (Direct Marketing Concepts, Inc., Donald Barrett and Robert Maihos) will not be prejudiced by their inclusion within the present matter. In fact, the interests of Donald Barrett and Robert Maihos have been protected throughout this case despite the fact that they have not been formally included as parties. More specifically, Donald Barrett and Robert Maihos are the sole principals of two existing parties (ITV Direct, Inc. and Direct Fulfillment LLC) that have been defendants-in-intervention since the outset of this litigation in March 2004. Both individuals were deposed in this case and both individuals have submitted multiple affidavits in support of their companies throughout this litigation. Finally, both individuals have been represented by the same counsel as the ITV Parties in a related but separate litigation that has been brought against the ITV Parties and Mr. Barrett and Mr. Maihos

-7-

individually by the Federal Trade Commission (hereinafter the "FTC") (FTC vs. Direct

Marketing Concepts, Inc., Civil Action No. 04-11136-GAO (the "FTC Action")) wherein the

FTC maintains they are responsible for restitution to consumers for their alleged deceptive

marketing of the Product.[7]

Second, allowing Cappseals leave to amend its Complaint-in-Intervention to add new

causes of action will in no way prejudice the ITV Parties or the additional defendants because the

new counts are extensions of Cappseals collection efforts that have only recently begun now that

a final Judgment has issued. Cappseals proposes adding six counts as articulated below:

1.    Fraudulent Transfers pursuant to M.G.L. c. 19A, §5 (Count Eight);

2.    Fraudulent Transfers pursuant to M.G.L. c. 19A, §6 (Count Nine);

3.    Declaratory Judgment pursuant to 28 U.S.C. §2201 regarding the fraudulent
      transfers (Count Ten);

4.    Constructive Trust covering the assets fraudulently transferred (Count Eleven);

5.    Reach and Apply seeking to recover from the individual defendants those monies
      diverted and the damages caused due to their mismanagement of the judgment
      debtor (Count Twelve); and

6.    An Alter Ego claims asserting that the ITV Parties and DMC have been operated
      as one entity and, accordingly, DMC is bound by any obligation incurred by the
      ITV Parties – including the Judgment.

Each of these counts are necessary in order to preserve, protect and capture the assets of the ITV

Parties to satisfy the Judgment.

Lastly, the additional claims Cappseals seeks to add are all well justified by the facts

articulated herein. More specifically, the extensive transfers of assets out of the Judgment

Debtors coffers while debts to Cappseals and others remained outstanding – and continued to

---

[7]    With regard to DMC, Cappseals asserts, and, the existing evidence supports the fact that it is the alter-ego
of the ITV Parties and accordingly, it has been adequately represented to date because the ITV Parties share an
identical interest in any outcome.

accrue - are exactly the type of circumstances sought to be prohibited by the Fraudulent Transfer

Act. See M.G.L. c. 109A. Additionally, the ITV Parties and DMC have been operated as a

single entity and honoring the corporate separateness of ITV Direct, Direct Fulfillment and DMC

will promote fraud, create injustice and inflict gross inequity by shielding the corporate

defendants from liability for the Judgment and other amounts that may be due to Cappseals.

### III.    CONCLUSION

WHEREFORE, Cappseals respectfully request this Court to grant leave for it to file and

serve the proposed *Amendments to Cappseals' Complaint-in-Intervention* attached hereto as

**Exhibit 1**.


Cappseals, Inc.
By its attorneys,


Peter Antonelli, BBO # 661526
pantonelli@ghlaw.com
Scott A. Silverman, BBO # 638087
ssilverman@ghlaw.com
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

August 3, 2005

## CERTIFICATE OF SERVICE

I hereby certify that true and accurate copies of the foregoing <u>Cappseals, Inc.'s Motion for Leave To Amend Its Complaint-in-Intervention</u> was served on the foregoing attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

Peter S. Brooks, Esq.       (VIA HAND DELIVERY)
Susan W. Gelwick, Esq.
Christopher F. Robertson, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210

Dustin F. Hecker, Esq.      (VIA HAND DELIVERY)
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004

Becky Christensen, Esq.    (VIA OVERNIGHT MAIL)
O'Connor Christensen & McLaughlin LLP
1920 Main Street, Suite 150
Irvine, CA 92614

Daniel J. Kelly BBO# 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO #638087
ssilverman@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
DATED: August 3, 2005      (617) 345-7000

-10-