UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEALTHY SOLUTIONS, LLC, ET. AL., <br><br> Defendants. <br><br> CAPPSEALS, INC., <br><br> Plaintiff-in-Intervention <br><br> v. <br><br> HEALTHY SOLUTIONS, LLC., D/B/A DIRECT BUSINESS CONCEPTS; ITV DIRECT, INC. AND DIRECT FULFILLMENT, LLC. <br><br> Intervenor-Defendants. | C. A. No. 04-CV10421-JLT <br> (DEIN, J) |

**CAPPSEALS, INC.'S SUPPLEMENTAL BRIEF
IN RESPONSE TO THE ITV PARTIES' MEMORANDUM
<u>REGARDING JUDGMENT ENFORCEMENT</u>**

Plaintiff-in-Intervention and judgment creditor Cappseals, Inc. ("Cappseals") respectfully submits this Supplemental Brief to specifically respond to the extraneous arguments and facts raised by the ITV Parties (defined herein) in their memorandum (the "Memorandum") that was requested by the Court to address the third-party subpoenas (the "Subpoenas") issued by

Cappseals during post-judgment discovery.[1]  The Court requested the ITV Parties submit legal arguments - akin to a motion for a protective order – justifying their objections to the Subpoenas. However, the ITV Parties have presented arguments that are completely irrelevant to their objections.  Instead, the Memorandum contains arguments primarily concerning Cappseals' claims in a separate but related action involving the parties – *Cappseals, Inc. v. Direct Marketing Concepts, Inc., et al.*, C.A. No. 05-11907-JLT (the "Related Action").  While these irrelevant arguments should generally be ignored, Cappseals is compelled to respond in this proceeding through the present supplemental filing so that the facts surrounding the parties' relationship and the procedural history of all relevant matters are properly clarified for the Court.

In their Memorandum, plaintiff ITV Direct, Inc. ("ITV Direct"), Direct Marketing Concepts, Inc. ("DMC"), Seyfarth Shaw LLP ("Seyfarth") and Wayne Callahan ("Callahan")(collectively the "ITV Parties") have essentially renewed their opposition to the Court's supplementary process proceedings using arguments which Judge Tauro already considered and rejected prior to allowing Cappseals' application for supplementary process. Additionally, the ITV Parties have re-asserted substantive arguments with respect to Cappseals' ability to enforce the Judgment that were also unsuccessfully presented to the Court in the Related Action.  The ITV Parties' obvious efforts to camouflage these prior adverse rulings and re-assert their arguments are a desperate attempt to confuse the Court and further delay payment of the Judgment that Cappseals has been trying to collect for the past fifteen (15) months.[2]

---

[1]    Cappseals has already filed its initial response to the ITV Parties' Memorandum (Dkt. No. 166) that directly addresses the issues presently before the Court that were raised when Cappseals issued subpoenas to non-parties for documents concerning the judgment debtors business activities.  This Brief addresses the additional issues raised by the ITV Parties' that are primarily related to a separate but related action as described herein.

[2]    In August 2006, Cappseals submitted its application for Supplementary Process to the Court ("Application").  In the Application, Cappseals identified the various statements by ITV Direct on its website in support of Cappseals' request to examine ITV Direct about its assets and ability to pay the Judgment.  In response to the Application, ITV Direct filed an opposition in which it asserted that there was "no need to involve the Court" in

I.   **BRIEF BACKGROUND.**[3]

Between December 2003 and February 2004, ITV Direct received seven shipments of a health supplement called Supreme Greens with MSM (the "Product") that it ordered from a company named Healthy Solutions d/b/a Direct Business Concepts. These shipments resulted from a "standing" purchase order numbered 1101 that was issued on November 21, 2003 for the production and delivery of 50,000 units of the Product per week ("Purchase Order 1101").

Pursuant to Purchase Order 1101, at the request of Healthy Solutions, Cappseals manufactured and delivered the Product to ITV Direct. Healthy Solutions issued seven (7) invoices to DMC and ITV Direct for the Shipments under Purchase Order 1101. The invoices, numbered 20 through 26, were made in the amounts of: (1) $300,024 for the December 19, 2003 shipment of the Product; (2) $300,078.00 for the December 29, 2003 shipment of the Product; (3) $185,472.00 for the January 5, 2004 shipment of the Product; (4) $323,712.00 for the January 14, 2004 shipment of the Product; (5) $376,146.00 for the January 21, 2004 shipment of the Product; (6) $318,216.00 for the January 29, 2004 shipment of the Product; and (6) $318,240.00 for the February 5, 2004 shipment of the Product (collectively the "Invoices"). The total price of the goods delivered in response to Purchase Order 1101 and invoiced by Healthy Solutions was $2,121,942.00. All of these Invoices referenced Purchase Order 1101. While post-judgment discovery revealed that DMC paid the initial invoice (No. 20), neither

---

such proceedings. Notwithstanding ITV Direct's objections, the Court ordered supplementary process to proceed and referred the matter to this Court.

[3]   The following is a summary of the facts that warranted the Court's summary judgment decision in Cappseals favor on July 20, 2005 (the "Memorandum of Decision," Dkt. No. 134), and, the filing of the Related Action against the judgment debtor's related entities in an effort to collect the Judgment that has remained unpaid. The facts described herein are supported by Cappseals' Concise Statement of Material Facts that was submitted in the Related Action [Dkt. No. 12] as well as the Joint Stipulations of Fact in the present matter [Dkt. No. 113]. Many of the facts detailed herein were also adopted by the Court within its Memorandum of Decision.

DMC nor ITV Direct paid the final six Invoices. Furthermore, Cappseals was never paid for the Product which it manufactured.

After ITV Direct refused to pay the balance owed to Healthy Solutions, ITV initiated this lawsuit against Healthy Solutions wherein the parties litigated the debt owed for the Product. Cappseals intervened on April 14, 2004, making claims against the existing parties based upon their failure to pay Cappseals for its part in the manufacturing and delivery of the Product. The Judgment arose after the Court granted Cappseals' summary judgment motion its reach and apply claims that was based on extensive stipulated facts which support most of the assertions herein.[4]

On October 24, 2005, the Court granted Cappseals' Motion for Post-Judgment Relief providing injunctive relief and allowing broad post-judgment discovery of ITV Direct and its related entities. During this post-judgment discovery, ITV Direct and DMC produced records disclosing their financial status as well as financial information relating to their sales of the Product. The records indicate that the Product inventory was eventually transferred on to the books and records of DMC, which was credited for making payment for the Product to Healthy Solutions d/b/a Direct Business Concepts. DMC's records reveal entries that identically match the Invoices identified above including the Invoice numbers, dates and the $1,821,864.00 owed for shipments pursuant to Purchase Order 1101.

Finally, the revenues and profits generated from sales of the Product have solely been attributed to DMC in its financial records. In fact, DMC's records indicate that it generated revenues exceeding $16 million associated with sales of the Product through June 2004. While the relevant financials records indicate that DMC has generated significant assets through sales

---

[4]     ITV Direct appealed the Judgment to the First Circuit that later affirmed this Court's summary judgment ruling. See *ITV Direct, Inc. v. Healthy Solutions*, LLC, 445 F.3d 66 (1st Cir. 2006).

of the Product, at the same time, ITV Direct has served as nothing more than a "pass-through" entity. ITV Direct's and DMC's financial records indicate that the strategy implemented by the ITV Parties' and their principals have left ITV Direct with no material assets.

However, until late July of 2005, the ITV Parties were still transacting business through ITV Direct. Concurrent with the Court's issuance of the Judgment (and associated summary judgment decision), ITV Direct's operations essentially stopped from an accounting perspective. ITV Direct's general ledger shows that on average ITV Direct recorded 398 transactions per month during May, June and July, 2005. From July 20, 2005 – the date of the summary judgment Memorandum – through the printing of the ITV Direct's General Ledger on September 30, 2005 (2 ½ months), ITV Direct recorded a total of 9 transactions. ITV Direct's bank statements tell a similar story with it averaging $1.8 million flowing in and out of its accounts during the months of May, June and July, 2005 whereas that number dropped to $100,000 in August, 2005. ITV Direct's 2006 financial records show that it has no business activity whatsoever. In short, ITV Direct's financial records show that after this Court issued the Judgment, ITV Direct stopped doing business.

The liquidation of ITV Direct's bank accounts is not the end of the ITV Direct story. Rather, ITV Direct has apparently continued operations - advertising and selling products, filing lawsuits, producing infomercials, and funding new ventures for its principals while using funds held in DMC's name. At the same time ITV Direct's intellectual property continues to generate what the ITV Parties represent to be "hundreds of millions" of dollars in revenue each year. However, no consideration appears to have ever been paid to ITV Direct for the use of its marks.

In short, the principals of ITV Direct have controlled the assets and operations of ITV Direct and DMC and orchestrated their odd relationship to avoid payment of the Judgment and

other debts of ITV Direct.[5] In addition to the overwhelming evidence of financial intermingling regarding the Product, ITV Direct and DMC are generally operated as a single business entity. The companies share common principals, stockholders, place of business, and attorneys which collectively contradict any real corporate "separation." This is confirmed in a recent lawsuit against the Federal Trade Commission ("FTC") filed jointly by DMC, ITV Direct and Donald Barrett on October 11, 2005 wherein the parties state that the principal place of business for DMC and ITV Direct is the same, 55 Cherry Hill Drive, Beverly Massachusetts, a fact that belies any argument that DMC and ITV Direct are separate entities. ITV Direct also recently filed a lawsuit against an industry association and other individuals in February 2006 (*ITV Direct, Inc. v. The Elec. Retailing Ass'n, et al.*, No. 1:06-cv-10239-GAO (D. Mass.) making claims arising fromits involvement in business activities that are actually conducted by DMC.

Based upon the facts detailed above that have been uncovered through post-judgment discovery, and because ITV Direct has failed to pay the Judgment, Cappseals commenced the Related Action against the defendants ITV Direct, DMC, Donald Barrett and Robert Maihos in an effort to collect the debt owed. Cappseals' Amended Complaint seeks recovery based on several theories including: (1) Fraudulent Transfer pursuant to M.G.L. c. 109A (Counts I and II); (2) Alter Ego (Count III); (3) Declaratory Judgment pursuant to 28 U.S.C. § 2201 (Count IV); (4) Constructive Trust (Count V); (5) Reach and Apply (Count VI). In addition, on August 29, 2006, this Court granted Cappseals' request to add a claim asserting violations of M.G.L. c. 93A based upon the ITV Parties' efforts to avoid payment of the Judgment.

---

[5]  Financial records show that in 2003, DMC compensated its two shareholders, Robert Maihos and Donald Barrett a total of $780,000, and distributed to Messrs. Maihos and Barrett an additional $844,217. In 2004, DMC compensated its two shareholders $1,024,000 and distributed to Messrs. Maihos and Barrett $1,388,653. In these two years, they received $4 million despite the fact that Cappseals remains unpaid for goods sold and delivered.

## II.    DISCUSSION.

### A.    Supplementary Proceedings Under Fed. R. Civ. P. 69 Are Broad In Scope.

The purpose of the supplementary process statute "is to provide a searching inquiry into the ability of the judgment debtor to pay his legal obligation." *Aetna Cas. & Sur. Co. v. Rodco Autobody*, 965 F. Supp. 104, 107 (D. Mass. 1996) (internal quotes and citations omitted). The supplementary process "procedure savors strongly of proceedings in equity." *Giarruso v. Payson*, 272 Mass. 417, 420 (1930). "Supplementary proceedings are essential to a court's enforcement power." *Condaire, Inc. v. Allied Piping, Inc.*, 286 F.3d 353, 357 (6th Cir. 2002)(discussing enforcement of judgment under Rule 69(a)). As the First Circuit noted in *U.S.I. Properties Corp. v. M.D. Const. Co.*, 230 F.3d 489, 496 (1st. Cir. 2000):

> Without the ability to enforce judgments rendered, the judicial power would be incomplete, and the entirely inadequate to the purposes for which it was intended. *Bank of the United States v. Halstead*, 23 U.S. (10 Wheat) 51, 53 (1825). Consequently, the Court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. *Wayman v. Southard*, 23 U.S. (10 Wheat) 1, 23 (1825) (original quotations omitted).

Given this well-settled principle, federal courts routinely retain supplemental jurisdiction to enforce judgments by reaching the property of the judgment debtor, including property held by third parties. *See U.S.I. Properties Corp.*, 230 F.3d at 496-97.

### B.    Cappseals Is Entitled to Payment of the Judgment From Accounts That ITV Direct Controls.

As the Supreme Court stated in *Helvering v. Horst*, 311 U.S. 112, 118 (1940):

> The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it.

Although *Helvering* involved a dispute over taxes owed, the principle is clear that the exercise of a right to control income, as well as the corresponding payment of expenses with that income, is equivalent to ownership of said funds.  *See Helvering*, 311 U.S. at 119 (income taxable "when he who is entitled to receive it makes use of his power to dispose of it in procuring satisfactions which he would otherwise procure only by the use of the money when received."); *see also Marcus v. Commissioner*, T.C. Memo. 1992-234 at page 5 (T.C. 1992)("[G]ross income includes all 'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion'"), *citing Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955).  As the *Marcus* court noted, the taxpayer "exercised complete dominion over the accounts … He had unfettered access to the funds … [He] had the power to, and did, dispose of the accounts as he saw fit."  *Marcus* at 5.

 The undisputed evidence presented in this case shows that ITV Direct filed the present lawsuit in 2004 with this Court.  Later, ITV Direct admitted that it took delivery of the Product in late 2003 and 2004 and subsequently resold them through at least 2005, collecting millions of dollars in revenue from those sales.  Since that time ITV Direct has enjoyed the proceeds derived from the sale of the Products manufactured by Cappseals, but has never paid Cappseals for the Product. Rather, the facts show that proceeds from the sales of the Product landed in DMC's bank accounts.  The evidence presented also shows that, by all outward signs, ITV Direct continues to be a thriving business using undisclosed assets to fund its operations.

According to the testimony of ITV Direct's agent and shareholder at these supplementary process hearings, ITV Direct ceased operations over a year ago, ***precisely when the Judgment was issued in August 2005***.  These individuals also now deny that they ever held any inventory of the Product or even sold any health supplements (including the Product), as they previously

stated in pleadings filed with this Court. Instead, they assert ITV Direct was simply a trade name used by DMC or that ITV Direct bought media on behalf of DMC and other entities. This testimony directly contradicts the allegations in their Complaint and the Stipulations of Fact, in addition to other pleadings filed with the Court.

Additionally, notwithstanding the ITV Parties' contradictory assertions that they have no operations, ITV Direct has continued to litigate this matter incurring substantial legal costs in the process. Moreover, ITV Direct *initiated a lawsuit in February of 2006 with this Court* claiming that it sells and markets nutritional products and seeking monetary damages. When questioned, ITV Direct's witnesses apparently had no knowledge of this lawsuit and disavowed the accuracy of the representations in the Complaint filed with the Court. Significantly, DMC was never named in that action. The testimony of ITV Direct's controller and principal shareholder also revealed that ITV Direct's attorneys have been paid for their services in connection with this and other lawsuits filed by ITV Direct, Inc.

With no money left in the ITV Direct's bank accounts, it is clear that ITV Direct is using assets held in DMC's name to pays its ongoing litigation expenses in this and other matters commenced in this Court. Under *Helvering*, because ITV Direct is apparently controlling those accounts and because those accounts contain the proceeds from the sale of the Product, Cappseals is entitled to seek payment of the judgment from ITV Direct by accessing those same accounts. Accordingly, at the close of these proceedings, Cappseals will request an order pursuant to G.L. c. 224, § 16 directing ITV Direct to pay the judgment from the same bank accounts it has accessed to satisfy its other operational expenses and into which it deposited the revenue gained from the sale of the Product.[6]

---

[6] Notwithstanding the broad scope of Rule 69 and in particular supplementary process under G.L. c. 224, the ITV Parties cite *Board of Com'rs of Stark Cty v. Cape Stone Works, Inc.*, 206 F. Supp. 2d 100 (D. Mass. 2002) for

### C.    DMC May Be Liable On The Judgment Because It Has Always Controlled This Litigation And Has Always Had a Financial Stake In Its Outcome.

The ITV Parties' broad assertions about a bar to recovery against DMC are without legal support.  Rather, decisions of the First Circuit and Supreme Court clearly hold that a non-party can be subsequently bound by a judgment issued against a different entity in a prior action.

In particular, where a non-party controls the litigation of the case underlying the judgment the non-party is bound by the judgment.  *See Explosives Corp. of America v. Garlam Enterp. Corp.*, 817 F.2d 894, 905-906 (1st Cir. 1987)("It has long been the rule that a nonparty who controls the litigation is bound by the judgment.")(citing cases); *Alman v. Danin*, 801 F.2d 1, 4-5 (1st Cir. 1986)("non-parties who 'assume control over litigation in which they have a direct financial or proprietary interest'" are bound by judgment) (quoting *Montana v. United States*, 440 U.S. 147, 154 (1979); *see also McGlaughlin v. Morton*, 977 F.2d 566, 1992 WL 289595 (1st Cir. 1992)(unpublished)("It is well settled that a nonparty is bound by a prior adjudication where there is sufficient legal identity between the nonparty and the prior litigant.").

Thus, a non-party corporation which controls or directs the litigation of a case that results in a money judgment may subsequently be bound by that money judgment.  *See Almin*, 801 F.2d at 5 (related company controlled by same people who directed litigation held liable for prior judgment); *Explosives Corp. of America*, 817 F. 2d at 907 (related company held liable for full

---

their argument that Cappseals is barred from seeking property beneficially owned and controlled by ITV Direct but nominally owned by third parties through supplementary process proceedings.  However, *Board of Com'rs* does not support their position.  In *Board of Com'rs*, the court analyzed the judgment creditor's request for a re-delivery of goods pursuant to Rule 69(a) and G.L. 214, § 3 (the reach and apply statute).  *Board of Com'rs,* 206 F.Supp.2d at 102.  In declining the judgment creditor's request for equitable relief pursuant to Rule 69(a) and in the form of replevin pursuant to G.L. 214, § 3, the Court expressly left open the question of whether their requested remedy was available under supplementary process, stating that "*although the statute cited by the plaintiff does not provide it with the remedy it seeks, the provisions of Mass.Gen.L. c. 224 may.*"  *Board of Comr's*, 206 F.Supp.2d at 105.  (emphasis added).  The Court then ordered the plaintiff to file an application for supplementary process.  *Id.*  Additionally, *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 348-49 (1st Cir. 1997) does not reach the issue of whether supplementary process may be used to reach ITV Direct's assets that are nominally owned by other parties such as DMC.  *See Aetna*, 114 F.3d at 348 ("At issue is not a supplementary process order but a writ of *ne exeat*.").

amount of judgment because it financed and controlled litigation); *Data General Corp. v. Grumman Data Systems Corp.*, 886 F. Supp. 927 (D. Mass. 1994)(related company held liable for judgment because defendant had financial stake in outcome of litigation and participated in and controlled defense of prior litigation).

Moreover, as a procedural matter, the Federal Rules allow a successor company to the judgment debtor to be substituted in the same underlying case and be bound by the judgment to the same extent as the judgment debtor. *See Explosives Corp. of America*, 817 F. 2d at 905-907. "Substitution may be ordered ***after judgment has been rendered in the District Court for the purpose of subsequent proceedings to enforce judgment***." *Id.* at 906, 907 (emphasis added)(original quotes and citations omitted).

In this action, although Cappseals has not yet made such a request, substitution of DMC under Rule 25 may be appropriate. In particular, there is ample evidence to suggest that DMC and its principals have controlled and indeed continue to control the litigation of this case. Furthermore, by ceasing ITV's operations coincidentally with this Court's issuance of the Judgment and folding them into DMC's operations, DMC demonstrated that it has a vested financial stake in the outcome of this lawsuit, namely to avoid ever paying the Judgment. Moreover, this evidence demonstrates that DMC is the *de facto* successor of ITV. For these reasons, to the extent the ITV Parties rely on the narrow equitable doctrines of election and merger to assert a bar to further supplementary process hearings (and Cappseals' claims in the Related Action) their reliance is entirely misplaced.[7]

---

[7] To the extent that the ITV Parties argue that Cappseals' claims against DMC in the Related Action must fail because they followed the Judgment, this argument is not only inappropriate to these supplementary proceedings, but is unsupported by First Circuit precedent. *See for example Goya Foods, Inc. v. Unanue*, 233 F.3d 38, 44 (2000)("strip[ping] away the corporate fig leaf to hold corporate alter ego liable for judgment in prior action); *Goya Foods, Inc. v. Unanue-Casal*, 982 F. Supp. 103 (D.P.R. 1997)(entering judgment against alter ego for full amount of prior judgment; *Data General Corp. v. Grumman Data Systems Corp.*, 886 F. Supp. 927 (D. Mass. 1994)(related company held liable for prior judgment in second action commenced after motion to amend denied

### D. The ITV Parties Previously Asserted, And The Court Rejected, Their Merger Argument In The Related Action.

In their Memorandum, the ITV Parties depart entirely from the discovery issue the Court asked them to brief and instead question the appropriateness of remedies that are available in supplementary process proceedings and the Related Action. Having framed this inquiry *sua sponte* in order to end these proceedings, the ITV Parties proceed to make the sweeping pronouncement that the holding in the case of *Williams v. Investors Syndicate*, 327 Mass. 124 (1951) bars Cappseals "as a matter of law from *ever* obtaining any relief against Direct Marketing Concepts." (original emphasis). Memorandum, p. 2. This sweeping generalization is a misapplication of *Williams* and ignores applicable First Circuit case law – cited above – that addresses judgment enforcement against third-parties. Furthermore, the ITV Parties' argument resting on the *Williams* holding is also a regurgitation of the merger argument they made in the Related Action that was previously rejected by Judge Tauro.

In particular, in the papers submitted by ITV Direct and DMC during the summary judgment phase in the Related Action, they relied on the same case upon which the *Williams* holding rests. *See* Opposition, pp. 12-13 [Dkt. No. 15]; Surreply, pp. 7-9 [Dkt. No. 23]; Proposed Memorandum, pp. 8-9, n. 15 [Dkt. No. 34] (citing the case of *Lonquist v. Lammi*, 242 Mass. 574, 577-78 (1922) in support of merger argument). Rather than citing directly to *Lonquist,* the ITV Parties now cite to *Williams* (which expressly relies on *Lonquist*) in an effort to falsely present a newer novel argument. What's more, the ITV Parties failed to mention in

---

because defendant had financial stake in outcome of litigation and participated in and controlled defense of prior litigation).

their Memorandum that Judge Tauro rejected their argument and *their request for summary judgment* as submitted in their Proposed Order.  *See* Proposed Order, pg. 13.[8]

To the extent that the election doctrine is relevant to any claim in the Related Action, it would only be relevant to Cappseals' co-obligor claim, if at all, because this was the only claim previously litigated and adjudicated in this action. Nevertheless, the fact remains that *ITV Direct commenced this action* and remained the sole plaintiff throughout this action.  ITV Direct stipulated to its receipt and subsequent resale of the Product.  At precisely the same time Cappseals obtained the Judgment, ITV Direct ceased all operations, and, according to testimony in these supplementary proceedings, DMC took those operations in-house.  ITV Direct and DMC apparently now seek to invoke an equitable doctrine to endorse their blatant efforts to circumvent payment of the Judgment and payment for the Product they accepted and re-sold for millions of dollars.  To the extent that this argument relates to Cappseals' claims in the Related action but nonetheless requires a response in these proceedings, the ITV Parties' actions simply do not warrant an inequitable result such as the one they now seek.

---

[8] As noted in Cappseals' summary judgment reply memorandum [Dkt. No. 21], numerous courts recognize that equitable concerns qualify the application of the merger doctrine where its effect frustrates the "ends of justice." *See United States v. Ringley*, 750 F. Supp. 750, 757 (D. Va. 1990)("The doctrine of merger may be carried no further than the ends of justice require… It would be inequitable for the partners to elude payment…based upon their merger argument."); *Orix Credit Alliance v. Horten*, 965 F. Supp. 481, 485 (D.N.Y. 1997)(doctrine should not be applied in "rigid or technical manner"); *United States v. Peckham*, 72 F.3d 672, 675 (8th Cir. 1995)(application of doctrine limited by "equitable concerns"); *Byram v. Miner*, 47 F.2d 112, 119 (8th Cir. 1931); *Cutler Hardware Co. v. Hacker*, 238 F. 146, 147 (5th Cir. 1916)(merger in judgment is the "general rule, yet according to recognized exceptions the judgment will be construed as a new form of the old debt when justice and equity require."); *In re Koch*, 54 B.R. 26, 28 (Bankr. D. Wis. 1985)("The doctrine of merger of a cause of action in the judgment rendered thereon is calculated to promote justice, and will be applied with due consideration of the demands of justice and equity, it may be carried no further than the ends of justice require."); *Burke v. Burke*, 86 A.2d 51, 53 (Del. Ch. 1952)(same).

## **CONCLUSION**

WHEREFORE, Cappseals respectfully requests that the Court continue these proceedings as scheduled and ORDER the ITV Parties to produce the documents previously requested and identified by Cappseals.

CAPPSEALS, INC.
By its attorneys,

/s/ Scott Silverman
Daniel J. Kelly, BBO # 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO # 638087
ssilverman@ghlaw.com
Peter Antonelli, BBO # 661526
pantonelli@ghlaw.com
McCarter & English, LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was served on the attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

<u>Via electronic notification:</u>

Peter S. Brooks      pbrooks@seyfarth.com

Susan W. Gelwick      sgelwick@seyfarth.com

Christopher F. Robertson      crobertson@seyfarth.com


                                             /s/ Scott Silverman
                                             Daniel J. Kelly BBO# 553926
                                             dkelly@ghlaw.com
                                             Scott A. Silverman, BBO #638087
                                             ssilverman@ghlaw.com
                                             Peter Antonelli, BBO # 661526
                                             pantonelli@ghlaw.com
                                             McCarter & English, LLP
                                             225 Franklin Street
                                             Boston, MA 02110
DATED:  November 10, 2006           (617) 345-7000

B0490330v1