UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>HEALTHY SOLUTIONS, LLC, ET. AL.,<br><br>    Defendants.<br><br>CAPPSEALS, INC.,<br><br>    Plaintiff-in-<br>    Intervention<br><br>    v.<br><br>HEALTHY SOLUTIONS, LLC., D/B/A<br>DIRECT BUSINESS CONCEPTS; ITV<br>DIRECT, INC. AND DIRECT<br>FULFILLMENT, LLC.<br><br>    Intervenor-<br>    Defendants. | C. A. No. 04-CV10421-JLT<br>(DEIN, J) |

**CAPPSEALS, INC.'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE
INHERENT POWERS OF THE COURT**

Plaintiff-in-Intervention and judgment creditor Cappseals, Inc. ("Cappseals") requests

that the Court sanction plaintiff ITV Direct, Inc. ("ITV Direct") and its counsel, Seyfarth Shaw

LLP ("Seyfarth Shaw"), for their continuing pattern of inaccurate, baseless, inconsistent and bad

faith representations aimed solely at prolonging and obstructing Cappseals' efforts to collect the

judgment (the "Judgment") previously issued by this Court. The testimony that has been offered

in the present supplementary process hearings has served to highlight the bad faith nature of the

submissions made by ITV Direct and its counsel during the post-judgment phase of this matter. Cappseals should not be forced to endure further proceedings and expend additional resources in order to navigate the maze of misrepresentations proffered by ITV Direct to solely delay the inevitable payment of the Judgment.

Throughout this and the separate but related action involving the parties, *Cappseals, Inc. v. Direct Marketing Concepts, Inc., et al.*, C.A. No. 05-11907-JLT (the "Related Action"), ITV Direct has repeatedly presented facts regarding the operations of ITV Direct that conveniently support their position in an effort to survive the immediate issue presented to the Court. ITV Direct has made such representations despite its inconsistent statements in prior pleadings and the true facts known to ITV Direct and its counsel. For example, in response to Cappseals' efforts to collect the Judgment, ITV Direct (along with its principals and related companies) has asserted the novel argument that it is merely a media buying agency that coincidentally ceased operations commensurate with the Judgment. However, in all other contexts - including representations to the Court in this and other matters - ITV Direct holds itself out as a thriving company that advertises and sells product generating significant revenues more than sufficient to satisfy the Judgment. These tactics, undertaken deliberately and in bad faith in order to deceive Cappseals and the Court, are sanctionable under both 28 U.S.C. § 1927 and the court's inherent powers.[1]

---

[1]    Cappseals intends to serve a motion pursuant to Fed. R. Civ. P. 11 on ITV Direct and its related parties in the Related Action along with a request that ITV Direct withdraw its Summary Judgment Opposition that was based upon misrepresentations highlighted herein that have been re-asserted in the Related Action to avoid summary judgment. Also, there may be additional inconsistencies and misrepresentations that arise from further Supplementary Process hearings and, specifically, testimony from ITV Direct's principal, Donald Barrett. However, Cappseals has filed the present motion now as it should not have to endure additional bad faith efforts to avoid the payment of its judgment.

For these reasons, and based upon the inconsistent representations detailed further below, ITV Direct and Seyfarth Shaw, LLP should be sanctioned and required to reimburse Cappseals the reasonable post-judgment expenses it has incurred in attempting to enforce the Judgment.[2]

## I.     PROCEDURAL HISTORY

### A.     ITV Direct Files Suit.

From the outset of this case, plaintiff ITV Direct portrayed itself to the Court as a successful company.  In its Complaint filed with this Court by Seyfarth Shaw in early 2004 and again in its Amended Complaint filed in April 20, 2004, ITV Direct stated, in relevant part, that:

> ITV, among other things, markets and distributes various healthcare related products to individual and retail consumers.
>
> . . .
>
> Since its inception, ITV utilized infomercials for the promotion of a variety of nutritional products.  To this day, a substantial portion of ITV's revenues is derived from telephone orders for products that are advertised on 30-minute infomercials that are produced and owned by ITV or its affiliated companies.  As a result of its success, ITV is considered a leader in the development and use of infomercials to market vitamin and mineral supplements.
>
> . . .
>
> In or about late 2002, [Healthy Solutions] began purchasing products from ITV, and thereafter, were in frequent contact with one of ITV's top sales managers…[3]
>
> . . .

---

[2]     Upon a finding of the Court, Cappseals will submit an affidavit verifying the fees incurred by its counsel.

[3]     Significantly, ITV Direct, Inc. was not even incorporated until January 2003.

> …ITV produced the first of two infomercials promoting [the
> Goods] in April 2003, at ITV's studio in Beverly, Massachusetts…
> and ITV's principal, Donald Barrett, hosted the infomercial.

Complaint and Amended Complaint, ¶¶ 10-12, 16, 17 [Dkt. Nos. 1 and 24]. All of these

representations portray ITV Direct as an outwardly successful company engaged in the business

of marketing and distributing health care products such as the disputed goods, Supreme Greens

(the "Product"), and fulfilling orders generated from infomercials that it produced in its studios

in Beverly, Massachusetts.

### B.    Cappseals Intervenes.

Shortly after ITV Direct filed this action, Cappseals moved to intervene to recover

amounts owed for its part in manufacturing the Product. The Court granted Cappseals' Motion

to Intervene and at Cappseals' request, entered a preliminary injunction prohibiting ITV Direct

from bypassing Cappseals and disbursing funds to Healthy Solutions to pay for the Product.

Later, Healthy Solutions also moved for a restraining order against ITV Direct in order to

prevent ITV Direct from dissipating its assets. ITV Direct opposed Healthy Solutions' motion

arguing that it would be irreparably harmed if the Court granted Healthy Solutions' request for a

preliminary injunction. To support its argument, in April 2004 Seyfarth Shaw filed papers on

behalf of ITV Direct wherein they represented to the Court that:

> ***ITV's gross sales revenue for the Product far exceeds the
> approximately $1.8 million*** that the Defendants claim they are due
> from ITV in their counterclaim (citing to the affidavit of Robert
> Maihos, ¶ 10)
>
> … [ITV Direct] could be subject to an FTC action, which could
> result in substantial damages in the amount of the Product's gross
> sales, shut down its business, and put hundreds of Massachusetts
> employees out of work. Attaching $1.8 million of the Plaintiff's
> funds from its lawful sales of the Product ***would put ITV's***

> ***business and the jobs of its employees in jeopardy*** (citing to the
> affidavit of Robert Maihos, ¶ 10)[4] (emphasis added)

ITV Direct's Opposition to Healthy Solutions' Motion for TRO, pp. 17, 19-20. [Dkt. No. 25].

Thus, in order to convince the Court not to order preliminary injunctive relief, ITV Direct

represented that an injunction would jeopardize its very existence and the livelihood of ***its***

***hundreds of employees***.  ITV Direct further asserted that it had already laid off employees.

Finally, ITV maintained that it carried an inventory of goods, sought to continue sales of the

goods and that an injunction would interfere with ITV Direct's rights in that respect.  *See*

Opposition to Healthy Solutions' Motion for TRO, pp. 18-19 n. 6.

When Cappseals later moved for summary judgment in July 2004, ITV Direct opposed

that Motion, continuing to portray itself as a successful company with ample revenue to support

a possible judgment reiterating that:

> ITV is in the business of marketing and distributing various
> healthcare related products to individual and retail customers
> through the utilization of infomercials. ***To this day, a substantial***
> ***portion of ITV's revenue is derived from telephone orders for***
> ***products that are advertised on 30-minute infomercials*** that are
> produced and owned by ITV or its affiliated companies

Opposition to Cappseals' Motion for Partial Summary Judgment, p. 3.  [Dkt. No. 52].

## C.    Cappseals' Second Summary Judgment Motion.

Almost a year later, on May 26, 2005, Cappseals moved for summary judgment against

ITV Direct on its reach and apply claim.  During that process, ITV Direct stipulated to various

---

[4]    In his affidavit supporting ITV Direct's opposition, Donald Barrett declared under the pains and penalties
of perjury that:

> The remedies that each agency could seek against ITV in connection with these
> investigations could shut down the business and put hundreds of employees out of
> work….***ITV has also been forced to lay off fifty employees*** because it was required to
> pull the infomercial when it discovered Guerrero's fraud.

> Affidavit of Donald Barrett, ¶¶ 9, 12. [Dkt. No. 33].

facts with respect to its business activities ("Joint Stipulation"). [Dkt. No. 113].  In particular,

ITV Direct expressly conceded that:

> On November 21, 2003, ITV issued a purchase order to Healthy Solutions, requesting shipments of 50,000 bottles of Supreme Greens per week;

> ITV has sold units of the Supreme Greens contained in the six shipments it received between December 29, 2004 through February, 2004;

> ITV continues to sell units of the Supreme Greens contained in the six shipments it received between December 29, 2004 through February, 2004;

> Between February 13, 2004 and August 23, 2004 ITV sold more than 200,000 units of Supreme Greens.

Joint Stipulation of Facts, ¶¶ 2, 30-31, 37 .[5]

Based on these facts, Cappseals submitted its papers, moving for judgment as a matter of

law on its claim for goods sold and delivered to ITV Direct.  In response, on June 13, 2005, ITV

Direct submitted the affidavit of Eileen Barrett (made under oath) in support of its opposition to

Cappseals' motion.  In her affidavit, Ms. Barrett stated, in relevant part, that:

> [She was] the former Director of Operations of ITV Direct, Inc. ("ITV") and was responsible for operation of the company. **I am currently an ITV employee.**

Affidavit of Eileen Barrett, ¶ 1. [Dkt. No. 127-1].  Thus, as of June, 2005, ITV Direct continued

to market and sell nutritional supplements and had employees.

---

[5]    Mr. Maihos also previously stated in his affidavit supporting ITV Direct's opposition to Healthy Solutions' Motion for TRO that:

> Between April 4, 2003 and February 6, 2004**, ITV issued purchase orders to Healthy Solutions for the purchase of the Supreme Greens with MSM** product in varying quantities.

### D.    Cappseals Obtains The Judgment.

On July 20, 2005, the Court allowed Cappseals' summary judgment motion and issued an order holding ITV Direct liable for the amount of the product manufactured by Cappseals (the "Order"). [Dkt. No. 134]. As stated in the Order, the Court found (expressly based on the Joint Stipulations) that ITV Direct had ordered, received, and accepted but failed to pay for the Product. *See* Order, p. 1. On August 3, 2005, the Court entered judgment in favor of Cappseals and against ITV Direct in the amount of 1,041,684.49. [Dkt. No. 140].

### E.    Cappseals Seeks Post-Judgment Relief.

On August 4, 2005, in an effort to enforce the Judgment, Cappseals sought post-judgment relief in the form of discovery and injunctive relief against ITV Direct and its related entities. [Dkt. No. 142 & Dkt. No. 143].

On August 30, 2005, in its opposition to Cappseals' Motion for Post-Judgment relief, ITV Direct represented to the Court that:

> Critically, Cappseals cannot establish that it will suffer irreparable harm if the requested injunction does not issue because ***there is no evidence in the record to support its allegation that ITV has dissipated its assets in order to avoid payment of the judgment in this case***.

ITV Direct's Opposition to Cappseals' Motion for Post-Judgment Relief, pp. 1-2. [Dkt. No. 147]. The Court allowed Cappseals' motion and it commenced post-judgment discovery. [Dkt. No. 156].

### F.    Cappseals Commences The Related Action To Enforce The Judgment.

Because ITV Direct failed to pay the August 3, 2005 Judgment, Cappseals commenced the Related Action against ITV Direct, a related entity Direct Marketing Concepts ("DMC"), Donald Barrett and Robert Maihos in an effort to collect the Judgment. During those

proceedings, ITV Direct continued to represent that it was – at least prior to the Judgment being

issued – a real business.  ITV and DMC stated that:

> The judgment entered against ITV and Direct Fulfillment in the
> related action and the Court's Memorandum allowing Cappseals'
> Motion For Summary Judgment ("Memorandum") are based in
> part on the Joint Stipulations of Fact entered into by the parties in
> the related action with regard to product ordered by ITV for which
> ITV failed to pay Healthy Solutions.  DMC was not a party to the
> related action and **none of the stipulations related to DMC**.

DMC's Statement of Facts, ¶ 2. (Related Action), [Dkt. No. 16].

### G.    Cappseals Commences Supplementary Process.

Notwithstanding ITV Direct's refusal to pay the Judgment, it continued to hold itself out

to the public as a thriving business.  Accordingly, in September 2006, Cappseals commenced

supplementary process pursuant to G.L. c. 224, § 14 et seq. in order to examine ITV Direct about

its assets and the ability to pay the Judgment.  [Dkt. No. 159].  The Court held hearings on

October 17, 2006 ("First Hearing") and October 26, 2006 ("Second Hearing") (collectively

"Hearings") during which Mr. Wayne Callahan and Mr. Robert Maihos testified on behalf of

ITV Direct.

During those hearings, Mr. Callahan testified that:[6]

- Since its inception, ITV Direct has never had any employees
  (Transcript of First Hearing, pp. 10:25-11:3);

- Since its inception, ITV Direct has never carried any inventory
  (Transcript of First Hearing, pp. 19:21-22; 20:12-15; 22:14;
  22:21);

- Since its inception, ITV Direct was in the business of buying and
  selling media for DMC (Transcript of First Hearing, pp. 7:11-8:3);

---

[6] The following facts are supported by citations to the transcript from the First Hearing that Cappseals obtained on
November 16, 2006 and is attached as Exhibit A.  The transcript for the Second Hearing is not yet available but will
contain testimony supporting various other assertions made herein.

- ITV Direct has only $1,800 (approximately) its bank accounts (Transcript of First Hearing, pp. 18:25-19:9; 39:25-40:2)[7]; and

- ITV Direct owns no real property (Transcript of First Hearing, p. 19:18-20).

During the Second Hearing, when questioned about the representations about ITV Direct's ongoing and successful business made on ITV Direct's website (www.itvdirect.com), Mr. Callahan testified they were inaccurate.

During the Second Hearing, Mr. Maihos corroborated essentially all of Mr. Callahan's testimony, clarifying for the Court that ITV Direct was just a name used by DMC for marketing purposes. When questioned about the representations concerning ITV Direct's ongoing and successful business made on ITV Direct's website, Mr. Maihos testified that they pertained to DMC not ITV Direct.

In short, Mr. Callahan's and Mr. Maihos' testimony directly contradicted the representations made by ITV Direct throughout this lawsuit with respect to its business activities. According to Mr. Callahan and Maihos, ITV Direct was never the entity it represented to the Court with hundreds of employees supporting a business that markets and sells healthcare supplements to consumers. Rather, they testified that ITV Direct was just a corporate entity used to purchase media for DMC's operations. Nevertheless, by all outward appearances ITV Direct continues to be, as it was when it filed this lawsuit, a thriving business.

---

[7] *See supra*, p. 4, ITV Direct claimed sales revenue would far exceed any judgment and would be available to satisfy any judgment on the $1.8 million debt.

## II.    ARGUMENT

**A.    ITV Direct's And Its Counsel's Conduct Meets The Standard Required For Sanctions Under 28 U.S.C. § 1927 And The Inherent Powers Of The Court.**

Section 1927 of Title 28 of the U.S. Code provides, in pertinent part, that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1980). Essentially, the purpose of this section is to "deter unnecessary delays in litigation." See H.R. Conf. Rep. no. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code Cong. & Admin. News 2716, 2782.

An award of attorney's fees pursuant to Section 1927 is appropriate where a party has "'acted in bad faith, vexatiously, wantonly or for oppressive reasons,'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-6 (1991) (*quoting Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-9 (1975)), where the court finds that "fraud has been practiced upon it," *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946), or where a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 (1978). Such awards allow courts both to "vindicate judicial authority" and compensate the prevailing party for the attorney's fees and costs incurred as a result of the opposing party's obstinacy. *See Chambers*, 501 U.S. at 46.

Circuits have applied varying standards to the "unreasonably and vexatiously" language. However, the First Circuit does not require a finding of *subjective* bad faith as a predicate to sanctions under Section 1927. *See Cruz v. Savage*, 896 F.2d 626, 631-2 (1st Cir. 1990); *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 817-8 (1st Cir. 1987); *Action Mfg., Inc. v. Fairhaven Textile Corp.*, 790 F.2d 164, 166 (1st Cir. 1986). "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so." *Cruz*, 896 F.2d at 632. Moreover, the

-10-

Supreme Court has made clear that "[s]anctions may be imposed years after a judgment on the merits." *See Chambers*, 501 U.S. at 5.

Although a finding of "bad faith" is a prerequisite for the imposition of sanctions under Section 1927, bad faith will be inferred "'when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *ACLI Government Securities, Inc. v. Rhoades*, 907 F. Supp. 66, 68 (S.D.N.Y. 1995), *quoting Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995). Thus, bad faith conduct has been inferred where a party was pursuing "frivolous contentions," *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A*, 782 F.2d 329, 345 (2d Cir. 1986), and "frivolous motions," *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977).

In addition to sanctions under Section 1927, the District Court has the inherent power to sanction parties or their attorneys. In *Chambers*, the U.S. Supreme Court reaffirmed that in addition to the specific sanctioning authority which is granted under individual statutes and rules of procedure, *see e.g.*, 28 U.S.C. § 1927; Fed. R. Civ. P. 37, the federal courts also have the "inherent power" to sanction litigants for bad faith conduct "even if procedural rules sanction the same conduct." *Chambers*, 501 U.S. at 49. While the general rule is that litigants pay their own attorney's fees absent an enabling statute or contract term, in *Chambers*, the Supreme Court added a modification by holding that where a district court finds that a "fraud has been practiced upon it, or that the very temple of justice has been defiled," it may invoke its inherent power to award attorneys fees as a sanction for that conduct. *Id.* at 46.

In *Whitney Brothers Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995), the First Circuit acknowledged the ability to shift fees as a penalty for bad faith conduct; "[i]t is beyond serious

dispute that a district court may use its inherent powers to assess attorney's fees against a party

that has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Whitney Bros.*, 60

F.3d at 13 (*quoting Chambers*, 501 U.S. at 45-46); *see also Goya Foods, Inc. v. Wallack*

*Management Co.*, 344 F.3d 16, 20-21 (1st Cir. 2003) (District Court has broad latitude to

determine appropriate sanctions for bad faith conduct). The First Circuit in *Whitney* also went so

far as to declare that perjury, standing alone and without more, qualifies as bad faith warranting

sanctions including the award of attorney's fees. *Id.* at 14.[8]

By consistently misrepresenting the nature of ITV Direct's business, its financial and

operational stability and its ability to pay a future judgment, ITV Direct's attorneys have

unnecessarily prolonged the litigation of this case in bad faith.  This conduct also demonstrates

that ITV Direct has perpetrated a fraud on the Court, aided and abetted by its attorneys at every

step that continues unabated to this day.

In order to support and prosecute its affirmative claims, ITV Direct has represented to the

Court that it is a successful company that markets and sells various healthcare products.  In

particular, it has consistently represented to the Court that it buys and sells goods, employs

hundreds of people and generates substantial revenue from its operations.  This pattern continued

until recently when ITV Direct changed its "story" and made completely contradictory

representations for the defensive purpose of avoiding payment of the Judgment.  During the

recent Hearings, ITV Direct disavowed virtually ***every prior representation*** it made to this Court

regarding its business activities.

---

[8]    Although the Court of Appeals vacated an award of attorneys' fees, it did so only because it did not agree
with the District Court's conclusions of "bad faith" conduct, and held that "[i]n the end, we think the District Court's
cursory explanation of the basis for the fee award is simply inadequate, particularly in light of the fact that no
hearing was held on the issue."  *Whitney Bros.*, 60 F.3d at 15.  In the present matter the bad faith is overwhelming
and any need for a hearing can be satisfied before a final ruling.

ITV Direct's (and its counsel's) pattern of conduct has, therefore, unnecessarily prolonged the litigation of this matter by forcing Cappseals to initiate the Related Action and commence supplementary proceedings, all in an effort to pursue enforcement of the Judgment issued almost a year and a half ago (for goods that were delivered about three (3) years ago). During this time period, ITV Direct has continued to be a thriving business content with paying its lawyers to obstruct the Court's enforcement powers as much as possible. ITV Direct's and its counsel's pattern of conduct has thus far rendered the Court's Judgment unenforceable.

1. **ITV Direct Has Unnecessarily Prolonged The Litigation Of This Matter By Misrepresenting Its Business And Transferring ITV Direct's Functions.**

More specifically, according to Messrs. Callahan and Maihos, and contrary to ITV Direct's prior assertions, ITV Direct never sold goods, carried inventory, had employees (or even laid them off as asserted by Donald Barrett in his affidavit). Instead, based on the recent testimony of Mr. Callahan and Maihos, these statements were false. However, post-judgment discovery revealed more troubling facts.

Precisely at the time the Court issued the Order and entered the Judgment, ITV Direct's financial records show that it ceased operations. In particular, the facts indicate that prior to late July 2005, ITV Direct had millions of dollars flowing into the bank accounts in its name each month. Mr. Callahan's testimony at the First Hearing confirmed that these actions took place. Thus, the substantial revenue ITV Direct did have (up until the time the Order was issued) simply disappeared shortly *after* the Court issued its Order and entered Judgment.

The timing of such transfers was hardly coincidental. Rather, it demonstrates ITV Direct's and its counsel's audacious efforts to flout the Court's enforcement powers. The result of this conduct was to force Cappseals to launch a second case, the Related Action, in an effort to enforce the Judgment. ITV Direct and its attorneys engaged in this conduct while it has

-13-

continued to enjoy a successful business that profits its principals and lawyers at Cappseals' expense.

These facts and the underlying contradictions they reveal demonstrate that ITV Direct and its attorneys have made a concerted bad faith effort to insulate themselves from liability on the Judgment. Although ITV Direct was a robust business with hundreds of employees for the purpose of litigating its claims, according to the most recent testimony, it is and always was a "media buying company" with no employees, product sales, or inventory for the purposes of paying the Judgment.

The active participation of ITV Direct's counsel in perpetrating this fraud on the Court and thereby unnecessarily prolonging the litigation of this matter amounts to unreasonable and vexatious behavior. Accordingly, Seyfarth Shaw's conduct violating the letter and spirit of Section 1927 warrants sanctions by the Court.

### 2.    ITV Direct Submits Baseless Objections To Cappseals' Subpoenas.

As another example of its vexatious conduct, ITV Direct and its attorneys have continued to oppose post-judgment discovery based on objections that are unsupported by fact or law. In response to four (4) subpoenas Cappseals issued in the supplementary process hearings for records concerning ITV Direct's operations, ITV Direct (as well as the related parties) issued objections and failed to produce any responsive documents. During the Second Hearing, ITV Direct's counsel asserted that the statute controlling Cappseals' post-judgment efforts did not enable Cappseals to issue such subpoenas to non-parties. The Court asked ITV Direct to brief this issue to substantiate their objections.

In response, ITV Direct skirted the issue, submitting arguments that were completely irrelevant to their objections. Instead, their memorandum contained arguments primarily concerning Cappseals' claims in the Related Action - essentially renewing their opposition to the

Court's supplementary process proceedings using arguments which Judge Tauro already

considered and rejected prior to allowing Cappseals' application for supplementary process.

Additionally, ITV Direct and Seyfarth Shaw re-asserted substantive arguments with respect to

Cappseals' ability to enforce the Judgment that were also unsuccessfully presented to the Court

in the Related Action.  The ITV Parties continued these obstructionist tactics by submitting yet

more papers related to the issues on November 15, 2006 [Dkt. No. 169].

     This conduct has forced Cappseals' to respond to ITV Direct's and its counsel's baseless

objections so that these proceedings may continue and Cappseals can ultimately collect the

Judgment.  The time and effort spent by Cappseals was unnecessary and ITV Direct actions were

solely intended to prolong these proceedings and hinder Cappseals' right to enforce the

Judgment.  Accordingly, the Court should issue sanctions against ITV Direct and Seyfarth Shaw.

     **3.**     **ITV Direct Files Suit Against The Electronic Retailing Association.**

     Notwithstanding Mr. Callahan's testimony that ITV Direct ceased all "transactions" well

over a year ago, ITV Direct (through Seyfarth Shaw) recently filed ***another*** lawsuit against the

Electronic Retailing Association which was removed to this Court on February 8, 2006, *ITV*

*Direct, Inc. v. The Electronic Retailing Association, et al.*, No. 06-cv-10239 (the "ERA Case").

In its Complaint filed earlier this year, ITV Direct represented that:

> 5.     ***ITV is engaged in the business of advertising and selling***
> ***consumer products***, including dietary supplements, through
> feature-length promotions known as infomercials.  Among other
> products, ITV sells a popular dietary supplement known as "Sea
> Vegg."
>
>            . . .
>
> 6. . . . ***ITV sells Sea Vegg*** for use in conjunction with proper diet
> and exercise and an overall healthy lifestyle, as promoted in the
> infomercial.

. . .

       15. . . . ITV has, as a result, suffered substantial financial loss and damage as a result of the interference with ITV's ability to broadcast the Sea Vegg infomercial.

. . .

       25. . . . As a result, ***ITV has lost millions of dollars in revenue*** that would have been received from the sale of the Sea Vegg Product.

Amended Complaint, ¶¶ 5 - 6, 15, 25 (emphasis added).  [Dkt. No. 10-1].  Moreover, On May 19, 2006, in further proceedings filed in the ERA Case, ITV Direct reiterated all of these representations to the Court in order to avoid a stay of the proceedings.  *See* Opposition to Joint Stay, p. 2. [Dkt. No. 22].  However, during his testimony during the First Hearing, Mr. Callahan testified that it was his understanding – as the controller of ITV Direct – that ITV Direct does not sell product.  Transcript of First Hearing, p. 33:19-20.  When confronted with the allegations contained in the Amended Complaint filed in the ERA, Mr. Callahan confirmed the inconsistent representations by his company when asked about the business activity described in Paragraph 5 of the Amended Complaint that is quoted above:

       Q.     Do you dispute the statements in this amended complaint, Mr. Callahan?

       A.     Regarding Page 2, [Number] - - Paragraph 5?  ITV Direct does not sell any product.

       Q.     So that would be a misrepresentation; correct, Mr. Callahan?

       (Pause while witness reviews document.)

       A.     It's not accurate, according to my understanding, no.

Transcript of First Hearing, p. 35:17-25.  Mr. Maihos also agreed at the Second Hearing that these representations were not accurate.

There are limits to zealous advocacy and fact "spinning" that have been exceeded in this case.  Seyfarth Shaw has been responsible for every filing in this action beginning with the Amended Complaint.  In addition, Seyfarth Shaw filed the ERA Case.  As shown by the lengthy record in this matter and the ERA Case filed by ITV Direct in this Court, ITV Direct and its principals have engaged in a pattern of intentional misrepresentation aided and abetted by their attorneys, Seyfarth Shaw.  Their audacity demonstrates that ITV Direct seeks to have it both ways, using the Court's power offensively to prosecute its claims against different parties, while simultaneously manipulating the Court in a defensive effort to avoid the consequences of its actions.

Another supplementary process hearing is scheduled for November 20, 2006 at which time ITV Direct's president, Donald Barrett, will be interrogated as to ITV Direct's business activities and assets available to satisfy the Judgment.  Based upon the misstatements highlighted herein, Cappseals has every reason to believe Mr. Barrett will say whatever is necessary – irrespective of the truth – to further delay ITV Direct's payment obligations while it continues its profitable operations.

**CONCLUSION**

In bad faith ITV Direct and its counsel have vexatiously delayed the present matter causing a needless multiplication of Cappseals' efforts to navigate the maze of misrepresentations they have used to avoid the Judgment. Accordingly, this Court should sanction ITV Direct and Seyfarth Shaw in an amount equal to the reasonable post-judgment attorneys' fees incurred by Cappseals and grant such other and further relief as it deems proper.

                    CAPPSEALS, INC.
                    By its attorneys,


                    /s/ Scott Silverman
                    Daniel J. Kelly, BBO # 553926
                    dkelly@ghlaw.com
                    Scott A. Silverman, BBO # 638087
                    ssilverman@ghlaw.com
                    Peter Antonelli, BBO # 661526
                    pantonelli@ghlaw.com
                    McCarter & English, LLP
                    225 Franklin Street
                    Boston, MA  02110
                    (617) 345-7000

## CERTIFICATE OF SERVICE

       I hereby certify that a true and accurate copy of the foregoing was served on the attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

Via electronic notification:

Peter S. Brooks            pbrooks@seyfarth.com

Susan W. Gelwick       sgelwick@seyfarth.com

Christopher F. Robertson      crobertson@seyfarth.com


                                 /s/ Scott Silverman
                                 Daniel J. Kelly BBO# 553926
                                 dkelly@ghlaw.com
                                 Scott A. Silverman, BBO #638087
                                 ssilverman@ghlaw.com
                                 Peter Antonelli, BBO # 661526
                                 pantonelli@ghlaw.com
                                 McCarter & English, LLP
                                 225 Franklin Street
                                 Boston, MA 02110
DATED:  November 17, 2006          (617) 345-7000