UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>HEALTHY SOLUTIONS, LLC, ET. AL.,<br><br>        Defendants.<br><br>CAPPSEALS, INC.,<br><br>        Plaintiff-in-Intervention<br><br>v.<br><br>HEALTHY SOLUTIONS, LLC., D/B/A DIRECT BUSINESS CONCEPTS; ITV DIRECT, INC. AND DIRECT FULFILLMENT, LLC.<br><br>        Intervenor-Defendants. | C. A. No. 04-CV10421-JLT<br>(DEIN, J)<br><br>LEAVE TO FILE GRANTED ON DECEMBER 11, 2006 |

**CAPPSEALS, INC.'S REPLY TO THE ITV PARTIES'
OPPOSITION TO CAPPSEALS' MOTION FOR SANCTIONS**

Plaintiff-in-Intervention and judgment creditor Cappseals, Inc. ("Cappseals") respectfully submits this reply to the Opposition (the "Opposition") filed by plaintiff ITV Direct, Inc. ("ITV Direct") and its counsel, Seyfarth Shaw LLP ("Seyfarth Shaw") in response to Cappseals' Motion for Sanctions (the "Motion for Sanctions").[1] The Opposition provides little explanation for the Respondents' bad faith conduct that was detailed within the Motion for Sanctions.

---

[1] Collectively ITV Direct and Seyfarth Shaw are referred to herein as "Respondents."

ME1 6019463v.2

-2-

Rather, Respondents have proffered further baseless and inconsistent arguments to avoid payment of the August 3, 2005 judgment at issue (the "Judgment"). Since Cappseals originally filed the Motion for Sanctions, the transcripts from the second and third hearing days became available which include the testimony from ITV Direct's principles Robert Maihos and Donald Barrett. The highlights from these transcripts - detailed herein - reveal additional evidence of a concerted plan to disregard the facts and present unsupportable assertions to delay an adverse finding.[2]

Overall, the testimony that has been elicited during the supplementary process hearings reveals that the flow of revenue into ITV Direct was stopped commensurate with the Judgment. Thereafter, ITV Direct, its owners and Seyfarth Shaw began to implement their strategy of manipulating the relevant financials and creating artificial distinctions between the related entities and owners to protect their assets and personal wealth. Most telling was Donald Barrett's assertion that future business would be funneled though yet another separate entity:

> Q. So a new show that was not in existence a year ago that gets produced now is essentially a new asset, correct?
> A. Yeah. I would start a new company if I did a new show today, most likely.
>     THE COURT: Why?
>     THE WITNESS: Why? Because of all the ongoing litigation with this company.

(Day 3, p. 118:1-8)

---

[2] The facts asserted within this Reply are supported by the testimony from ITV Direct's supplementary process witnesses. Citations to the relevant transcripts are presented as "Day_, page: line." The transcripts for Day 1 (October 17, 2006), Day 2 (October 26, 2006) and Day 3 (November 20, 2006) are Docket Nos. 175, 171, and 174 respectively.

ME1 6019463v.2

-3-

While Mr. Barrett attempted to garner sympathy by asserting that his "companies" were going "belly-up," (Day 3, p. 86), he also verified that his salary was raised from $10,000 per week to $15,000 per week as recently as July.[3]

In the end, the Respondents' Opposition reveals they are essentially willing to concede liability against DMC (and/or concede ITV Direct's use of funds in DMC's name) because they are likely to transfer operations to another new entity as threatened by Mr. Barrett. In fact, on October 31, 2006, between the second and third supplementary process hearing dates, Mr. Barrett and his partner, Robert Maihos, formed another new entity for the stated purpose of "Distribution of Products and Services Through Network Marketing."[4] Accordingly, Mr. Barrett's strategy was not a threat, but rather a disclosure of further obstructionary tactics that have already been initiated.

As discussed in the Motion for Sanctions, an award of attorney's fees pursuant to 12 U.S.C. Section 1927 is appropriate where a party has exhibited obstructionary tactics and/or "'acted in bad faith, vexatiously, wantonly or for oppressive reasons,'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-6 (1991). The predicate "bad faith" can be inferred, and a Section 1927 finding is justified "'when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *ACLI Government Securities, Inc. v. Rhoades*, 907 F. Supp. 66, 68 (S.D.N.Y. 1995), *quoting Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995). Thus, bad faith conduct has been inferred

---

[3] To the extent ITV Direct owed Barrett any money for the services he rendered, he was paid through Direct Marketing Concepts ("DMC"). Day 3, p. 32. This is consistent with ITV Direct's 2005 Corporate Tax Return that shows no compensation paid to its officers. Opposition Exhibit 1, p. 1, line 12. However, the 2005 Corporate Tax Return for DMC - that was not attached to the Opposition - evidences officer compensation of over $1.4 million. DMC's 2005 Corporate Tax Return is attached as **Exhibit 1**. There are only two shareholders and officers of DMC, Donald Barrett and Robert Maihos. Exhibit 1 at pages bates labeled DMC 05529 and DMC05532.

[4] A copy of the initial filing of DBRM, LLC that was filed with the Massachusetts' Secretary of State on October 31, 2006 is attached as **Exhibit 2**.

where a party was pursuing "frivolous contentions" *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A*, 782 F.2d 329, 345 (2d Cir. 1986). Cappseals has submitted this brief to further identify the bad faith obstructionary tactics that have been exhibited by the Respondents. The testimony from ITV Direct's witnesses that is highlighted below - and the arguments pressed in their Opposition - are exactly the type of frivolous and meritless conduct that Section 1927 seeks to prohibit.

I.   **THE RESPONDENTS HAVE OFFERED UNSUPPORTABLE ARGUMENTS IN AN ATTEMPT TO AVOID THEIR MISREPRESENTATIONS.**

Throughout these proceedings, the Respondents submitted wildly inconsistent representations to the Court to serve their immediate needs without regard to the consequences of their statements. Along these lines, the Respondents' Opposition failed to address the admissions by Wayne Callahan and Robert Maihos regarding the various inaccuracies within the pending lawsuit ITV Direct initiated against the Electronic Retailing Association, No. 06-10239 (D. Mass. filed February 10, 2006) (the "ERA Case.") (The amended complaint in the ERA Case (Supplementary Process Exhibit 4) is referred to herein as the "ERA Complaint"). More specifically, ITV Direct never responded to how Mr. Callahan and Mr. Maihos testified that ITV Direct's representations in the ERA Complaint regarding its on-going business activities were wholly inaccurate. Day 1, p. 35:17 - 25 and Day 2, 55:10 - 59:16.

After this discrepancy was highlighted in Cappseals' original Motion for Sanctions, Mr. Barrett took the stand on Day 3 and tried to avoid making similar troubling statements by asserting the novel theory that the ERA Complaint *accurately* described ITV Direct's operations. Day 3, pp. 9:11-12:7. Surprisingly, Mr. Barrett claimed the product involved in the ERA Complaint, Sea Vegg, *was* an ITV Direct "product." Mr. Barrett did not know where his companies directed revenue generated by Sea Vegg sales (Day 3, p. 44:10-13), however, he was

ME1 6019463v.2

willing to confirm that any Sea Vegg revenue *should* be directed to ITV Direct. Day 3, p. 51.

He was also willing to concede that revenue for Sea Vegg exceeded $2 million. Day 3, p. 13.[5]

Mr. Barrett's tactic of endorsing the ERA Complaint was a transparent and frivolous effort aimed at avoiding the consequences of the inconsistencies created by ITV Direct's actions. Several facts make his assertion completely implausible:

- Mr. Maihos already confirmed that Sea Vegg was sold by DMC, and *not* ITV Direct. Day 2, p. 77:17-24.

- Mr. Maihos had already confirmed the fact that "ITV Direct" was simply the name used by DMC for all marketing purposes including web-sites and infomercials. Day 2, p. 86:17-20.

- Mr. Callahan and Mr. Maihos were already on record as stating that revenue in ITV Direct came from payments for media purchase made by DMC – not payment for sales of product such as Sea Vegg. Day 2, pp. 37:9-22; 41:12-44:1; and 103:9-15.

- Once DMC brought the media purchasing "in-house" shortly after the Judgment, ITV Direct's operations effectively ceased. Day 2, pp. 41:12-44:1.

- The representations in the ERA Case were made as late as May 19, 2006 (Supplementary Process Exhibit 33), however, there has been no activity in the ITV Direct bank accounts since the Judgment was issued on August 3, 2005 – more than 9 months earlier.

ITV simply bought media time for DMC using money fronted by DMC. Day 2, p. 37:16-22. As soon as the Judgment was issued, the Respondents coordinated rolling the media purchasing process back into DMC. Day 2, p. 42:1-15 and 43:24 - 44:1. Callahan confirmed that this roll-in occurred commensurate with the Judgment on August 3, 2005. Day 2, p. 45:15 -

---

[5] Barrett deferred to Wayne Callahan and Mr. Maihos on all financial issues, for example, he testified:

> A. I am the president of the company.
> Q. And the buck stops with you, correct?
> A. No.
> Q. No? Who is ultimately responsible at ITV Direct?
> A. I do the marketing, Bob does the accounting. That's how it worked. Me and Bob are 50/50 partners. I'm the marketer, he does the accounting.

Day 3, pp. 26:21-27:2.

ME1 6019463v.2

48:8. These facts revealed during supplementary process are consistent with Cappseals' theory of the relationship between ITV and DMC that was originally presented in the affidavit of accountant Andrew Prague previously submitted in the Related Action.[6] Accordingly, Mr. Barrett's attempt at "spinning" the representations in the ERA complaint are nothing more than unsupportable assertions made to further hinder Cappseals' efforts.

To the extent that it is at all relevant, ITV Direct's allegations that Cappseals knew the relationship between ITV Direct and DMC before the Judgment is simply false. First, financial records of ITV Direct and DMC were not released until after the Court ruled on Cappseals Motion for Post-Judgment Relief. See Docket No. 156. Additionally, ITV Direct's operations were not shut-down and/or rolled into DMC until after the Judgment was issued in August, 2005. Day 2, p. 45:15 - 48:8.

## II.   THE RESPONDENTS TRY TO AVOID RESPONSIBILITY FOR THEIR CONDUCT.

The Respondents have also caused Cappseals to navigate the maze of their corporate structure by avoiding any legitimate explanation as to their internal governance. Mr. Barrett, like Mr. Callahan and Mr. Maihos before him, asserted that his web-site at www.itvdirect.com (the "ITV Direct Site") inaccurately described various facts regarding ITV Direct including its multimillion dollar studio (Day 3, p. 20), an exploding customer base (Day 3, p. 52), and an on-

---

[6] Mr. Prague's affidavit was submitted in *Cappseals, Inc. v. Direct Marketing Concepts, Inc., et al.*, C.A. No. 05-11907-JLT (the "Related Action") as Docket No. 21 and is submitted herewith - less attachments - as **Exhibit 3** for the Court's convenience. Within his affidavit, Mr. Prague detailed the fact that ITV Direct was simply a pass-through completely funded by DMC payments. Exhibit 3, ¶¶ 8 -9. The 2005 ITV Direct Corporate Tax Return - produced just weeks ago on December 1, 2006 - is completely consistent with the 2003 and 2004 returns that were examined by Mr. Prague to the extent that the gross receipts for ITV Direct of $10,114,932 was within $5,000 dollars of the costs of goods sold (media purchases of $10,110,084). Opposition Exhibit 1, p. 1, lines 2 and 3.

ME1 6019463v.2

going campaign with Kevin Trudeau (Day 3, p. 55).[7] However, each of the ITV Direct representatives attempted to avoid responsibility for the representations they have made to the public.[8] For example, while Mr. Maihos specifically pointed to Mr. Barrett as the person in charge of marketing who could answer questions about the ITV Direct Site (Day 2, p. 61:11-16), Mr. Barrett then testified that a "copyrighter" at his offices was responsible for populating the ITV Direct Site with false information. Day 3, p. 21.[9] Counsel for ITV Direct represented that he would call a witness to explain how these misrepresentations were made. Day 2, p. 97:5 - 98:12. However, ITV Direct has chosen to forego providing such an explanation with its decision not to call any witnesses to testify during supplementary process.

Additional confusion arose when Cappseals attempted to bore down on how legal expenses were paid by ITV Direct. Mr. Barrett claimed that Mr. Maihos was in charge of overseeing and coordinating legal services for the companies. Day 3, p. 38:6-9. However, Mr. Maihos had never seen the ERA Complaint and asserted he had no idea who authorized the filing. Day 2, pp. 57:12-59:8.[10] The Respondents' attempts to avoid responsibility for

---

[7] Likewise, when Mr. Callahan was confronted with similar statements such as ITV Direct brings in "millions in sales annually," he confirmed that this assertion was "absolutely inaccurate." Day 2, p. 32. Mr. Maihos similarly balked at every ITV Direct reference on the ITV Direct site.

[8] Despite the Respondents' efforts in the Opposition to downplay the discrepancies in the sites www.ITVDirect.com and www.ITVVentures.com, Mr. Maihos confirmed that attorney Mike Sciucco was hired for the specific purpose of reviewing third party communications. Day 2, p. 66:3-16. Mr. Barrett also confirmed that legal counsel reviews all infomercials. Day 3, p. 43.

[9] Similarly, when Mr. Barrett was confronted with statement from the ITV Direct Site that claimed ITV Direct consistently has infomercials in the "top ten," he again blamed the mistake on the "copyrighter," while asserting that such information would not come from anyone at ITV Direct but instead from a third party site, "MLMrankings.com". However, the site www.mlmrankings.com does not rank infomercials and also does not identify ITV Direct in any way. Rather, www.mlmrankings.com contains content regarding the "internet popularity" of multi-level marketing programs. (A copy of the "FAQ" page from the MLM site is attached as **Exhibit 4**.)

[10] After the Court issued its Discovery Order of November 21, 2006, Seyfarth was forced to produce invoices that revealed all work in this matter (and the Related Action) performed on behalf of ITV Direct was billed to DMC. Subsequent to this production - that was strenuously opposed by ITV Direct - it agreed to stipulate that invoices for work performed on behalf of ITV Direct in this matter was billed to DMC, and, has been paid through accounts held

questionable conduct through inconsistent testimony further evidences the frivolous nature of their defense.

### III.    THE RESPONDENTS ATTEMPT TO REWRITE HISTORY.

Beyond the factual inconsistencies that highlight ITV Direct's obstructionary tactics, it has now attempted to rewrite history to support its arguments regarding the use of the trade name "ITV Direct." Immediately after the last supplementary process hearing, Respondents altered the ITV Direct Site to eliminate all traces of the word "Direct." This only exacerbated what was already a constant flip-flopping on the trade name issue. On the one hand the Respondents assert that there is nothing wrong with all of their entities using the name "ITV Direct."[11] At the same time, Mr. Barrett attempted to argue that he would never use the term "ITV Direct" in any marketing efforts.[12] In their Opposition the Respondents flip again: "At bottom, the evidence both before and after judgment demonstrates that Direct Marketing Concepts and ITV Direct both used the name 'ITV Direct' in connection with the Supreme Greens and Sea Vegg promotions." Opposition, p. 2.

This summary statement is problematic for at least two reasons. First, since the last hearing, the Respondents have altered all of their marketing material to remove references to "ITV Direct" in an apparent effort to cure the misuse of the mark. Second, it is a complete

---

in the name of DMC. In fact, since the Judgment was issued (August 3, 2005) and ITV shut down its operations, Seyfarth Shaw has been paid over $294,565.86 for work performed in this matter and the Related Action through DMC accounts. A copy of the Seyfarth Shaw invoices related to the present matter are attached as **Exhibit 5** and will be submitted into evidence by stipulation at the next supplementary process hearing. A copy of payment records produced by Seyfarth Shaw is attached as **Exhibit 6**.

[11] Mr. Barrett confirmed for the Court that when he referred to ITV Direct he meant to reference DMC. Day 3, p. 82:11-18.

[12] While Mr. Barrett attempted to assert that he does not confuse ITV and DMC similar to his underlings, he confirmed participating in a recorded interview (still airing on the internet at www.fruitytimes.com) within the last two months wherein he represented ITV Direct was a leading infomercial producer employing over 600 people with "millions and millions in advertising every month" and doing "over $100 million a year in sale right now." Day 3, p. 93 - 94.

fallacy that the use of the "ITV Direct" name has been limited to the products Supreme Greens and Sea Vegg. Rather, the evidence submitted to date reveals that the Respondents' web-site marketing and infomercials were all built around, and all use the "ITV Direct" mark.[13] This was confirmed by Robert Maihos who testified that the trade name "ITV Direct" has been used by DMC for all marketing purposes. Day 2, p. 86:17-20.

The Respondents have gone to great lengths to remove any reference to "Direct" on the sites they operate.[14] Nevertheless, their historical unauthorized use of the ITV DIRECT mark speaks to their true intent. By continuing to maintain their registration of the domain name <itvdirect.com> and operate the www.itvdirect.com website, the Respondents have systematically infringed and misappropriated the goodwill associated with the ITV DIRECT mark in violation of the Lanham Act. See 15 U.S.C. sec. 1125(d)(1)(A).[15]

## IV.  ITV VENTURES BEGINS SELLING ITV DIRECT'S PRODUCTS.

ITV Direct's relationship with DMC is not the only questionable corporate relationship that the Respondents have engineered to continue operations and avoid the debt owed to Cappseals. Mr. Barrett is also the president of ITV Ventures that operates the web-site www.itvventures.com (the "ITV Ventures Site"). Beyond making further allegedly inaccurate

---

[13] Mr. Maihos confirmed that he was well aware the Trudeau infomercial involved ITV Direct:

> Q. And, at the beginning of that infomercial, it says: "Brought to you by ITV Direct," doesn't it?
> A. That's correct.

Day 2, p. 54:7-9. Because Cappseals disproved his unsupportable position that ITV Direct was only involved in Supreme Greens and Sea Vegg, Mr. Barrett tried to deny this link until confronted with screen shots. Unable to still deny ITV Direct's involvement, Mr. Barrett then tried to assert that the apparent involvement of ITV Direct - and/or the use of its mark - in the Kevin Trudeau Natural Cures infomercial was yet another mistake. Day 3, p. 110 - 112.

[14] The Respondents have also coordinated altering the Kevin Trudeau Natural Cures video (Supplementary Process Exhibit 32) that appears at www.naturalcures.com. This video previously contained the mark "ITV Direct" at the beginning of the presentation. Now the video - at least on the referenced site - has been roughly chopped to remove the reference.

[15] Of significant note, nothing has been paid to ITV Direct for use of its trade name. Day 2, 88:20-25.

claims regarding ITV Direct (Day 3, p. 58), the ITV Ventures Site currently promotes and offers for sale all of the products listed for sale on the ITV Direct Site. These products include those that even Respondents admit are associated with ITV Direct - Supreme Greens and Sea Vegg. Day 3, p. 60 and 69.

In an effort to respond to this strange situation, Mr. Barrett suggested that there may be an agreement between ITV Ventures whereby ITV Direct was compensated by ITV Ventures. Day 3, p. 62. However, Mr. Barrett could not positively identify such an agreement, and for over a year there has not been any revenue flowing into ITV Direct despite the active sales offerings.

## V.    ITV DIRECT FILED FALSE AFFIDAVITS.

ITV Direct cannot escape the fact that the affidavits of Eileen Barrett Maihos and Donald Barrett were purposely proffered to convince the Court that ITV Direct was an active, vibrant business by describing the volume of people it employed.[16] ITV Direct also falsely asserted that it had, and would have, ample funds to satisfy any judgment. However, as detailed herein, ITV Direct never had employees, never generated any meaningful profits, never paid its own expenses and was simply used by Respondents as a shield to prevent Cappseals from collecting the amounts it is owed. ITV Direct and its attorneys now seem to assert the unbelievable argument - completely inconsistent with previous filings - that this arrangement was fully disclosed:

> Other witnesses in addition to Mr. Barrett and Mr. Maihos regularly referred to themselves interchangeably as employees of Direct Marketing Concepts and ITV Direct. In addition, documents produced by ITV Direct in discovery, such as checks for payment of amounts on behalf of ITV Direct, made clear that

---

[16] In an interview given as recently as a couple of months ago, Donald Barrett continued to make similar statements regarding ITV Direct's "hundreds" of employees as well as its financial success in an effort to lure investors into his new project, ITV Ventures. See *infra*, f.n. 13.

>Direct Marketing Concepts was making payments on behalf of ITV Direct.

Opposition at 5. This is another disingenuous attempt at re-writing history. The underlying litigation was initiated by ITV Direct and the affidavits were filed to support the claims of ITV Direct. To no end, Seyfarth Shaw has asserted the distinction between ITV Direct and the related entity, DMC, for purposes of objections during supplementary process and in the context of defending the Related Action. However, it now wants the Court to believe that the employees of the company, including its two shareholders and Eileen Barrett Maihos (the sister and wife of the shareholders) were completely ignorant of the distinction. This is yet another frivolous assertion as Mr. Barrett specifically denied any confusion when he testified that he never believed ITV had hundreds of employees. Day 3, p. 24:3-5.

By their own admission, ITV Direct's principals are unsophisticated businessmen who relied on Seyfarth to guide them every step of the way.[17] Because of ITV Direct's unfamiliarity with legal proceedings, Seyfarth has acted as the architects of the game plan and drafters of each filing, submitting ITV Direct's representations to the Court with full knowledge of the

---

[17]  Q. So you don't pay much attention to the representations that your company makes?
A. On television, absolutely. We make sure that every show has proper substantiation. What is on the website -- see, I started this business with two telephones out of my mother's house. There's a lot of things that I don't know about running a big corporation. I started with two telephones out of my mother's house. And since I started, yes, has the business exploded? I guess that's a euphemism. Yeah, I guess the business has exploded from having two telephones above my mother's garage. Which you say, "You don't know about accounting, you don't know about this." You know, I was a pizza cook six years ago before this business took off. I had no idea, you know, what it took to run a large organization. So there are some things that fall through the cracks.
Day 3, pp. 52:21-53:12.

. . .

Q. And you pay particular attention to the disclaimers and the information that precedes your interview, correct?
A. Right. I don't pay particular -- but the lawyers, really -- we have legal review on those shows, yes. I do the show and then I hand it to the lawyers, and then they tell me what's compliant or not. I don't really sit there and decide what's compliant or not.
Q. Which lawyers?
A. Seyfarth and Shaw.
Day 3, p. 55:7-16.

ME1 6019463v.2

inaccuracies. This Court can now readily observe a pattern of conduct by ITV's lawyers which rises to the level of sanctionable conduct under Section 1927. During the course of this much prolonged litigation, Seyfarth Shaw has submitted pleadings and sworn affidavits and proffered testimony from their clients whose expedient purpose was to defeat the efforts by Cappseals to seek relief. However, the blatant inconsistencies, about-faces, and omissions that are apparent when the pleadings, affidavits and testimony are compared demonstrate that it was Respondents' intent to avoid paying the Judgment by misleading the Court. As a result, Cappseals still has not been paid and has incurred enormous expense in seeking to enforce its judgment. There is no better example of conduct which warrants sanctions under Section 1927.

## CONCLUSION

In bad faith ITV Direct and its counsel have vexatiously delayed the present matter causing a needless multiplication of Cappseals' efforts to navigate the maze of misrepresentations they have used to avoid the Judgment. Accordingly, this Court should sanction ITV Direct and Seyfarth Shaw in an amount equal to the reasonable post-judgment attorneys' fees incurred by Cappseals and grant such other and further relief as it deems proper.[18]

        CAPPSEALS, INC.
        By its attorneys,

        /s/ Scott Silverman
        Daniel J. Kelly, BBO # 553926
        dkelly@ghlaw.com
        Scott A. Silverman, BBO # 638087
        ssilverman@ghlaw.com
        Peter Antonelli, BBO # 661526
        pantonelli@ghlaw.com
        McCarter & English, LLP
        225 Franklin Street
        Boston, MA 02110
        (617) 345-7000

---

[18] Should the Court grant the Motion for Sanctions, Cappseals shall submit details of the amount and nature of the fees and costs incurred by Cappseals in a form acceptable to the Court either by affidavit or testimony.

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was served on the attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

<u>Via electronic notification:</u>

Peter S. Brooks        pbrooks@seyfarth.com

Susan W. Gelwick     sgelwick@seyfarth.com

Christopher F. Robertson     crobertson@seyfarth.com

DATED: December 15, 2006

/s/ Scott Silverman
Daniel J. Kelly BBO# 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO #638087
ssilverman@ghlaw.com
Peter Antonelli, BBO # 661526
pantonelli@ghlaw.com
McCarter & English, LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000